**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYLER HIMES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FIVE BELOW, INC., and JOEL ANDERSON, <br><br> Defendants | Case No. <br><br> **CLASS ACTION** <br><br> <u>Demand for Jury Trial</u> |

## <u>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>

Plaintiff Tyler Himes ("Plaintiff"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Five Below, Inc. ("FIVE" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of FIVE's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired FIVE's securities between March 20, 2024 to July 16, 2024, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      Defendants provided investors with false and/or materially misleading information about FIVE's financial strength and operations, including its outlook for the first quarter and full year 2024. This information included FIVE's statement that net sales are expected to be in the range of $826 million to $846 million based on opening approximately 55 to 60 new stores in the first quarter. Further, FIVE claimed that net sales for the full year are expected to be in the range of $3.97 billion to $4.07 billion based on opening between 225 and 235 new stores.

3.      Investors discovered that these statements were false and/or materially misleading when, on June 5, 2024, FIVE announced disappointing first quarter 2024 sales result and cut its full year 2024 guidance stating, "Net sales are expected to be in the range of $3.79 billion to $3.87 billion based on opening approximately 230 new stores." At the same time, FIVE claimed that for the second quarter, "Net sales are expected to be in the range of $830 million to $850 million based on opening approximately 60 new stores." In response to the disclosure, FIVE's stock price declined $14.07/per share within the span of just one day.

4.      The following month, investors discovered that FIVE's financial and operational problems were significantly worse than represented. On July 16, 2024, FIVE announced the sudden departure of CEO Joel Anderson and guidance cut for the second quarter. In pertinent part, FIVE told investors that "the Company now expects sales for the fiscal second quarter ending

August 3, 2024 to be in the range of $820 million to $826 million." In response to the news, FIVE's stock price declined by $25.57/share.

5.      Plaintiff brings this action on behalf of himself and other similarly situated investors to recover the losses they sustained as a result of Defendants' false and/or materially misleading statements.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7.      The claims asserted herein arise under and pursuant to §§10(b) and 18 of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as FIVE is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

11.     Plaintiff purchased FIVE's common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud.

12.     FIVE is a Pennsylvania corporation with its principle executive offices located at701 Market Street, Suite 300, Philadelphia, Pennsylvania. During the Class Period, the Company's common stock traded on the NASDAQ under the symbol "FIVE".

13.      Defendant Joel Anderson ("Anderson") was at all relevant times, the Chief Executive Officer, and President of FIVE.

14.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of FIVE's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

15.     FIVE is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

16.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to FIVE under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

17.     FIVE is a Pennsylvania corporation formed in 2002. It is a specialty value retailer offering merchandise targeted at the tween and teen demographic. FIVE offers an edited assortment of products, with most priced at $5 and below.

18.     FIVE's edited assortment of products includes select brands and licensed merchandise. The Five believes its merchandise is readily available, and that there are a number of potential vendors that could be utilized, if necessary, under approximately the same terms the five is currently receiving; thus, it is not dependent on a single vendor or a group of vendors.

### **False and Misleading Statements**

### *March 20, 2024*

19.     On March 20, 2024, Defendants issued a press release announcing results for the fiscal year 2023 and guidance for full year 2024 stating "Net sales are expected to be in the range of $3.97 billion to $4.07 billion based on opening between 225 and 235 new stores and assuming an approximate flat to 3% increase in comparable sales; Net income is expected to be in the range of $318 million to $346 million."

20.     On an earnings call the same day, Anderson acknowledged a slower start to the year (due to slower start of tax refunds and shrink headwinds) but highlighted FIVE's accelerating store traffic, merchandising opportunities and store expansions to help drive long-term growth for 2024.

21.     Analysts reported favorably in response to Anderson's comments. For example, Deutsche Bank wrote on March 25, 2024, that: "All in, we continue to like the long-term story, consisting of a long runway for store expansion (with NSP in the mid-80% range), solid

merchandising consisting of innovation and newness (strength in Hello Kitty, Disney, Harry Potter), and the Five Beyond opportunity (driving higher frequency visits)."

22.     Unbeknownst to analysts and investors, Defendants provided investors with materially false and misleading information concerning FIVE's anticipated growth and net sales. In truth, macroeconomic pressures were interfering with the Company's strategic operations and preventing FIVE from executing successfully.

**Partial Corrective Disclosure**

*June 5, 2024*

23.     On June 5, 2024, FIVE announced disappointing first quarter 2024 sales results and cut its full year 2024 guidance stating, "Net sales are expected to be in the range of $3.79 billion to $3.87 billion based on opening approximately 230 new stores and assumes an approximate 3% to 5% decrease in comparable sales; Net income is expected to be in the range of $275 million to $297 million."

24.     Management blamed the poor results and outlook on macro pressures and lower income customers reducing their spending. On an earnings call the same day, Anderson stated: "Our #1 focus is on driving sales as well as driving cost optimization to maximize margins. I will give you some examples of exactly what we are doing. First, chasing trends has always been a strength of ours, and we will continue to quickly identify and capitalize on trends, bringing them in store quickly and communicate the value we provide to customers across our social media channels. Second, we recently kicked off a pricing test in about 100 stores to measure the impact of price reductions on driving sales."

25.     At the same time, Defendants continued to mislead investors by FIVE claimed that for the second quarter, "Net sales are expected to be in the range of $830 million to $850 million

based on opening approximately 60 new stores."  These statements concealed from investors the true extent of FIVE's operational difficulties and financial weaknesses.

**Final Corrective Disclosure**

*July 16, 2024*

26.     On July 16, 2024, FIVE issued a press release announcing the sudden departure of Anderson and a further guidance cut for the second quarter of fiscal 2024. The Company again blamed it on "macro pressures related to the low income consumer again." The press release stated "Joel Anderson has stepped down from his roles of President and CEO, and from the Board of Directors, to pursue other interests…Comparable sales decreased 5.0% versus the restated and comparable period ended July 15, 2023. As a result, the Company now expects sales for the fiscal second quarter ending August 3, 2024 to be in the range of $820 million to $826 million and assumes an approximate 6% to 7% decrease in comparable sales."

27.     Analysts reported unfavorably on the Company's announcement. For example, Wells Fargo wrote on July 16, 2024 that, "The knee-jerk reaction is likely to be the news confirms FIVE is broken growth. The company sees much of its issue as self-inflicted, which has only exacerbated macro/trend/comparison issues." Similarly, on July 17, 2024, J.P. Morgan wrote, "Management cited multi-year plans to remain a 'growth company' having 'strayed' from the historical three-fold playbook during and exiting the pandemic and citing the need to (i) Get back to trend-right product, (ii) Refocus on extreme values, and (iii) Execute to a more consistent, fun and enjoyable in-store experience."

***Loss Causation and Economic Loss***

28.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that

artificially inflated the price of FIVE's common stock and operated as a fraud or deceit on Class Period purchasers of FIVE's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of FIVE's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of FIVE's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

29. Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts. When the truth emerged over various corrective disclosures, investors and analysts reacted immediately as the artificial inflation in FIVE's stock price that had been created by Defendants' false statements began to dissipate. Specifically, following the aforementioned corrective disclosures, the price of Five common stock declined dramatically, as follows: on stock price declined $14.07/per share on June 6, 2024 and FIVE's stock price declined $25.57/per share on July 17, 2024.

30. At all relevant times, the market for FIVE's common stock was an efficient market for the following reasons, among others:

> (a)   FIVE's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

> (b)   FIVE communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and

other wide-ranging public disclosures, such as communications with

the financial press and other similar reporting services;

(c)     FIVE was followed by several securities analysts employed by

major brokerage firms who wrote reports that were distributed to the

sales force and certain customers of their respective brokerage firms

during the Class Period. Each of these reports was publicly available

and entered the public marketplace; and

(d)     Unexpected material news about FIVE was reflected in and

incorporated into the Company's stock price during the Class Period.

31.     As a result of the foregoing, the market for FIVE's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in FIVE's stock price. Under these circumstances, all purchasers of FIVE's common stock during the Class Period suffered similar injury through their purchase of FIVE's securities at artificially inflated prices, and a presumption of reliance applies.

32.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

### *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine*

33.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in

this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with revenue projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales and/or adequately disclose the fact that the Company at the current time did not have adequate forecasting processes.

34. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

35. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of FIVE who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise

acquired FIVE's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FIVE's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by FIVE or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of June 5, 2024, there were approximately 55,071,035 shares of outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of FIVE;

    (c)    whether the Individual Defendants caused FIVE to issue false and misleading financial statements during the Class Period;

    (d)    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

    (e)    whether the prices of FIVE's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    (f)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of*
### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of FIVE common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire FIVE's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for FIVE's securities. Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

46.     By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of FIVE's internal affairs.

48.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to FIVE's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of FIVE's common stock was artificially inflated throughout the Class Period. In ignorance of the

adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired FIVE's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

49.     During the Class Period, FIVE's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of FIVE's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of FIVE's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of FIVE's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the

disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

***Against the Individual Defendants***
***for Violations of Section 20(a) of the Exchange Act***

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about FIVE's misstatements.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by FIVE which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which FIVE disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause FIVE to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of FIVE's common stock.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company,

each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause FIVE to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants and/or FIVE are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 1, 2024           Respectfully submitted,

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder (No. 207309)
Ryan M. Ernst (No. 202191)
1204 N. King Street
Wilmington, Delaware 19801
Tel.: (302) 803-4600
Email: dklauder@bk-legal.com
Email: rernst@bk-legal.com

*Liaison Counsel for Plaintiff*

**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff*