**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYLER HIMES, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:24-cv-03638-GAM |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| FIVE BELOW, INC., and JOEL ANDERSON, | |
| Defendants. | |
| CITY OF ORLANDO POLICE OFFICERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:24-cv-04905-GAM |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| FIVE BELOW, INC., JOEL ANDERSON, KENNETH BULL, and KRISTY CHIPMAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ARKANSAS PUBLIC EMPLOYEES' RETIREMENT SYSTEM AND ARKANSAS TEACHER RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF SELECTION OF CO-LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND .................................................................... 4

III.  ARGUMENT ............................................................................................. 7

    A.    The Arkansas Funds Should Be Appointed Lead Plaintiffs ................... 7

        1.    The Arkansas Funds' Motion is Timely ....................................... 8

        2.    The Arkansas Funds Have the Largest Financial Interest in the Relief Sought by the Proposed Class .................................................... 8

        3.    The Arkansas Funds Satisfy the Requirements of Rule 23 ......................... 9

        4.    The Arkansas Funds Are Precisely the Type of Lead Plaintiffs Contemplated By the PSLRA ...................................................... 11

    B.    The Court Should Approve The Arkansas Funds' Choice of Co-Lead Counsel .. 14

    C.    The Related Actions Should Be Consolidated ....................................... 16

IV.   CONCLUSION ........................................................................................ 16

i

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*Allegheny County Employees' Ret. Sys. v. Energy Transfer LP*,
2020 WL 815136 (E.D. Pa. Feb. 19, 2020) .................................................. 12, 13, 15

*Arbitrage Fund v. Toronto-Dominion Bank*,
2023 WL 5550198 (D.N.J. Aug. 29, 2023) ............................................................ 12

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) ............................................................ 13

*Burton v. Ozburn Hessey Logistic*,
615 F. App'x 84 (3d Cir. 2015) ............................................................................. 16

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d. Cir. 2001)................................................................... 4, 9, 10, 11

*In re Herley Ind., Inc.*,
2010 WL 176869 (E.D. Pa. Jan. 15, 2010) ............................................................ 14

*Lewis v. Lipocine Inc.*,
2016 WL 7042075 (D.N.J. Dec. 2, 2016) .............................................................. 12

*Lucas v. United States Oil Fund, LP*,
2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020)........................................................ 2

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001).................................................................................... 9

*Ortiz v. United States Steel Corp.*,
2017 WL 3503142 (W.D. Pa. Aug. 16, 2017) ....................................................... 16

*Ragan v. AppHarvest, Inc.*,
No. 21-cv-7985 (LJL), 2021 WL 5909116 (S.D.N.Y. Dec. 13, 2021)...................... 2

*Reid v. Hemispherx Biopharma, Inc.*,
2010 WL 11707722 (E.D. Pa. Feb. 12, 2010) ........................................................ 2

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ................................................... 12, 13

Statutes

15 U.S.C. § 78u-4(a)(1) ........................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(A)-(B) ............................................................................... 8

15 U.S.C. § 78u-4(a)(3)(A)(ii) ................................................................................. 8

15 U.S.C. § 78u-4(a)(3)(B)....................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................... 2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................ 2, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................. 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................ 8

15 U.S.C. § 78u 4(a)(3)(B)(iii)(I)(cc) ......................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................. 4, 14

15 U.S.C. §§ 78j(b), 78t(a) ....................................................................................... 1

Rules

Fed. R. Civ. P. 23 ............................................................................................. passim

Fed. R. Civ. P. 23(a)(3)-(4) ......................................................................................... 9

Fed. R. Civ. P. 42(a) ......................................................................................... 1, 4, 16

Regulations

17 C.F.R. § 240.10b-5 ................................................................................................ 1

Other Authorities

*Securities Litigation Reform*, H.R. Rep. No. 104-369, (1995),
     *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ................................................... 4, 11

Arkansas Public Employees' Retirement System ("APERS") and Arkansas Teacher Retirement System ("ATRS") (collectively, the "Arkansas Funds") respectfully submit this Memorandum of Law in support of their Motion for: (i) appointment as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (ii) approval of their selection of Berger Montague PC ("Berger Montague") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel for the proposed Class; (iii) consolidation of the above-captioned securities class actions (the "Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (iv) for any such further relief as the Court may deem just and proper.

## I.    INTRODUCTION

On September 16, 2024, City of Orlando Police Officers' Pension Fund ("Orlando Police"), through its counsel, Bernstein Litowitz, filed one of the above-captioned securities class actions, alleging violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Five Below, Inc. ("Five Below" or the "Company") and certain of its current and former senior executives (collectively, "Defendants"). Orlando Police's action was brought on behalf of all investors that purchased or otherwise acquired Five Below common stock between December 1, 2022, and July 16, 2024, both dates inclusive (the "Class Period").[1] The Actions

---

[1] Two related securities class actions are currently pending before this Court. *See Himes v. Five Below, Inc.*, No. 2:24-cv-03638-GAM (E.D. Pa. filed Aug. 1, 2024) ("*Himes*"); *City of Orlando Police Officers' Pension Fund v. Five Below, Inc.*, No. 2:24-cv-04905-GAM (E.D. Pa. filed Sept. 16, 2024) ("*Orlando Police*"). The allegations in the Actions are substantially similar, but *Himes* asserts a class period of March 20, 2024, to July 16, 2024 (*see Himes*, ECF No. 1 ¶ 1), while *Orlando Police* asserts a longer class period of December 1, 2022, to July 16, 2024, as well as claims against additional defendants (*see Orlando Police*, ECF No. 1 ¶ 1). For purposes of this Motion, the broadest and most inclusive alleged class period – the class period alleged in *Orlando*

1

allege that, throughout the Class Period, Defendants misled investors regarding the Company's ability to execute on its business plan – that is, offering on-trend inventory in its stores to its primary market of teens and pre-teens – and pressures on Five Below's financial performance, including from increased rates of lost or stolen inventory, known in the retail industry as "shrink."

The PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the Exchange Act. Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is to appoint as Lead Plaintiff the movant or movants that: (i) make a timely motion under the PSLRA's sixty-day deadline; (ii) assert the largest financial interest in the litigation; and (iii) satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Arkansas Funds meet these requirements because they timely filed this Motion, and, by virtue of the substantial loss of approximately $5.02 million as calculated under a last-in, first-out ("LIFO") basis that they incurred on their investments in Five Below securities during the Class Period, to the best of their counsel's knowledge, they have the largest financial interest in this litigation. *See infra,* Section III.A.[2]

---

*Police* – is used. *See Reid v. Hemispherx Biopharma, Inc.*, 2010 WL 11707722, at *2 (E.D. Pa. Feb. 12, 2010) (stating upon consideration of lead plaintiff motions that, "[a]t this stage in the litigation, I will accept the longest class period pleaded in the *Kletman* and *DaForno* complaints: February 18, 2009 to December 1, 2009."); *see also, Ragan v. AppHarvest, Inc.*, 2021 WL 5909116, at *7 (S.D.N.Y. Dec. 13, 2021) ("Where there are two potential class periods, courts addressing lead plaintiff motions generally apply the longer class period.") (citing *Lucas v. United States Oil Fund, LP*, 2020 WL 5549719, at *4 (S.D.N.Y. Sept. 16, 2020)). In addition, while *Orlando Police* asserts claims on behalf of purchasers of Five Below "common stock," *Himes* alleges claims on behalf of purchasers of Five Below "securities." At this stage, the Arkansas Funds seek appointment as Lead Plaintiffs for the more broadly defined proposed Class. *See Himes*, ECF No. 1 ¶ 2; *Orlando Police*, ECF No. 1 ¶ 1.

[2] The Arkansas Funds' PSLRA-required Certifications are attached as Exhibit A to the Declaration of Michael Dell'Angelo in Support of the Motion of Arkansas Public Employees' Retirement System and Arkansas Teacher Retirement System for Appointment as Lead Plaintiffs, Approval of Selection of Co-Lead Counsel, and Consolidation of Related Actions ("Dell'Angelo Decl."). In

2

In addition to asserting the largest financial interest, the Arkansas Funds satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class, and they will fairly and adequately represent the interests of the Class. As set forth in greater detail in the Joint Declaration submitted herewith, the Arkansas Funds have a pre-existing relationship, and both have experience serving as lead plaintiff in securities class actions, including previously working together as lead plaintiff. *See* Dell'Angelo Decl., Ex. C ¶¶ 3, 5-6.[3] The Arkansas Funds fully understand the duties and obligations to the Class under the PSLRA and are willing and able to undertake those responsibilities to ensure the vigorous prosecution of this action. *See id*. ¶¶ 3, 5, 11-12, 16. Before seeking appointment as Lead Plaintiff, representatives of the Arkansas Funds conferred together and discussed, among other things, the possibility of seeking appointment jointly and whether doing so would be in their and the proposed Class's best interests. *See id*. ¶ 9. Following those deliberations, the Arkansas Funds independently determined that it was in each of their best interests and in the best interests of the proposed Class for the Arkansas Funds to partner with each other to lead this case. *See id*. ¶ 10.

The Arkansas Funds have further demonstrated their adequacy through their selection of Berger Montague and Bernstein Litowitz to serve as Co-Lead Counsel for the Class. Both firms are highly experienced in prosecuting claims under the federal securities laws, and have previously worked together in shareholder litigation. As the "most adequate plaintiff" under the PSLRA, the

---

addition, charts providing calculations of the Arkansas Funds' financial interests are provided as Exhibit B to the Dell'Angelo Decl.

[3] *See* Joint Declaration of Mark White and Amy Fecher in Support of the Motion of Arkansas Public Employees' Retirement System and Arkansas Teacher Retirement System for Appointment as Lead Plaintiffs, Approval of Selection of Co-Lead Counsel, and Consolidation of Related Actions ("Joint Declaration"), Dell'Angelo Decl., Ex. C.

3

Court should defer to the Arkansas Funds' selection of Berger Montague and Bernstein Litowitz as Co-Lead Counsel for the proposed Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Moreover, as two sophisticated institutional investors with more than $31 billion in assets, the Arkansas Funds are the quintessential Lead Plaintiff envisioned by Congress, and their appointment would therefore fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d. Cir. 2001) (identifying Congress's preference for institutional investors as lead plaintiffs).

Finally, the Arkansas Funds respectfully request that the Court consolidate the Actions. As the complaints in both cases allege substantially similar claims against overlapping defendants, with substantially overlapping facts and circumstances, consolidation of these related Actions is appropriate under Rule 42(a).

Based on the Arkansas Funds' significant financial interest in the outcome of this action, and their ability to jointly oversee the prosecution of the litigation in a cohesive manner, the Arkansas Funds respectfully request that the Court appoint them Lead Plaintiffs and otherwise grant their Motion.

## II.   FACTUAL BACKGROUND

Founded in 2002 and headquartered in Philadelphia, Five Below defines itself as an "extreme value" retailer with merchandise targeted at the "tween" and teen demographic. It offers a curated assortment of popular, or "trend-right," inventory, with most of its products – including clothing, sporting equipment, and small tech accessories such as phone cases and chargers – priced at or below $5. The Company's business depends on identifying and sourcing trend-right products

at low costs, and then selling them quickly enough to capitalize on trends before they fade, and new trends emerge.

The Actions allege that, throughout the Class Period, investors were keenly focused on Five Below's ability to execute on its business plan in the face of potential macroeconomic headwinds following the COVID-19 pandemic. The market questioned whether Five Below's business had experienced pressure from increased rates of lost or stolen inventory, known as "shrink," because, among other things, Defendants often attributed disappointing financial results to that factor. Nevertheless, during the Class Period, Five Below executives repeatedly affirmed the Company's ability to execute on its business plan and stock trend-right inventory.

Defendants' assurances were false. In truth, Five Below was struggling to identify and capitalize on trending products, and the Company's growth plan was stalling. But rather than admit that these challenges existed, Five Below executives assured investors that the Company's growth and sales was intact, and repeatedly blamed the Company's disappointing financial results on elevated levels of shrink and other macroeconomic factors. As a result of Defendants' misrepresentations, shares of Five Below common stock traded at artificially inflated prices during the Class Period.

The truth began to emerge on March 20, 2024, when the Company reported fourth quarter 2023 results. On that date, Five Below disclosed that it had missed Earnings Per Share ("EPS") analyst consensus by $0.13 per share, or approximately 3.5%. These disclosures caused Five Below's share price to decline by $32.18 per share, or over 15%, from a closing price of $208.97 per share on March 20, 2024, to a closing price of $176.79 per share on March 21, 2024. However, Five Below continued to represent that shrink was the primary reason for the Company's disappointing financial results. Indeed, during the Company's earnings call on March 20, 2024,

5

Five Below's then-Chief Executive Officer ("CEO"), Defendant Joel Anderson, specifically represented to investors that the negative results could be "fully attributed to higher-than-planned shrink."

On June 5, 2024, Five Below released its first quarter 2024 results and disclosed a nearly 15% year-over-year decline in operating income and reduced net sales and earnings guidance in light of weak first quarter sales. Indeed, the Company disclosed that it had made what analysts described as "deep cuts" to its sales guidance for the remainder of the year after first quarter sales "fell short." As a result of these disclosures, the Company's stock price declined by an additional $14.07 per share, or approximately 11%, from a closing price of $132.79 per share on June 5, 2024, to a closing price of $118.72 per share on June 6, 2024.

Finally, on July 16, 2024, Five Below belatedly revealed that its financial and operational problems were significantly worse than previously represented. After the market closed on that date, Five Below issued a press release announcing the sudden departure of its longtime Chief Executive Officer, Defendant Anderson, effective immediately, and simultaneously reduced its second quarter guidance. In particular, the Company disclosed that "[c]omparable sales decreased 5.0% versus the restated and comparable period ended July 15, 2023," and that as a result, Five Below expected "sales for the fiscal second quarter ending August 3, 2024 to be in the range of $820 million to $826 million and assume[d] an approximate 6% to 7% decrease in comparable sales." The Company further stated that "[d]iluted income per common share is expected to be in the range of $0.53 to $0.56." These disclosures caused the Company's stock price to decline by another $25.57 per share, or 25%, from a closing price of $102.07 per share on July 16, 2024, to a closing price of $76.50 per share on July 17, 2024.

6

Analysts subsequently reported that in their conversations with Five Below's management following this announcement, those individuals had admitted that the Company had "incurred a lot of self-inflicted wounds" and "needed to refocus their product on 'trend right' goods and strong value," which stood in stark contrast to Defendants' prior representations.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, the Arkansas Funds and other proposed Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    The Arkansas Funds Should Be Appointed Lead Plaintiffs

The PSLRA establishes the procedure for selecting the lead plaintiff in class actions arising under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the plaintiff who files the action must publish a notice within twenty days of filing the action informing class members of: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the Court to be appointed as Lead Plaintiff within sixty days of the publication of the notice. 15 U.S.C. § 78u4(a)(3)(A)(i).

Second, the PSLRA provides that the Court shall consider any timely motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is:

the person or group of persons that-

(aa)    has either filed the complaint or made a motion in response to a notice ... ;

7

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 1.    The Arkansas Funds' Motion is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within sixty days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B).  On August 1, 2024, Plaintiff Tyler Himes filed the first of the Actions.  *See Himes*, ECF No. 1.  On the same day, counsel for Himes published a notice on *GlobeNewswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by September 30, 2024. *See* Dell'Angelo Decl., Ex. D.[4] Accordingly, the Arkansas Funds satisfy the PSLRA's sixty-day requirement through the filing of this Motion.

### 2.    The Arkansas Funds Have the Largest Financial Interest in the Relief Sought by the Proposed Class

To be eligible for the "most adequate plaintiff" presumption, a movant must also possess the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As shown by the PSLRA certifications and the loss charts submitted by the

---

[4] On September 16, 2024, Orlando Police, through its counsel, Bernstein Litowitz, filed a similar securities class action against Defendants in this District. That same day, Bernstein Litowtiz published a notice on *Business Wire* alerting investors to the pendency of that action, and reiterating the September 30, 2024, deadline to seek appointment as Lead Plaintiff. *See* Dell'Angelo Decl., Ex. E. The deadline to move for Lead Plaintiff does not change even if another complaint is filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]").

Arkansas Funds, the Arkansas Funds purchased 67,676 shares of Five Below common stock during the Class Period and suffered a loss of $5,022,205.67 as calculated on a LIFO basis. *See* Dell'Angelo Decl., Exs. A and B. To the best of the Arkansas Funds' counsel's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Therefore, the Arkansas Funds satisfy the PSLRA's prerequisite of having the largest financial interest of any qualified movant seeking Lead Plaintiff status.

### 3.    The Arkansas Funds Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u 4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). On a motion to serve as lead plaintiff, a movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See In re Cendant*, 264 F.3d at 263 (finding that at the lead plaintiff stage, movants are only required to make a "*prima facie* showing of typicality and adequacy").

The Arkansas Funds' claims are typical of the claims of other Class members. The typicality requirement is satisfied if the movant's claims are not "markedly different" than those of other Class members and the legal theories upon which those claims are based do not differ. *Id*. at 265; *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183-84 (3d Cir. 2001), as amended (Oct. 16, 2001) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."). The Arkansas Funds satisfy the typicality requirement because, like all other proposed Class members, they purchased Five Below securities during the Class Period at prices

9

that were artificially inflated through Defendants' alleged false and misleading statements, and thereby suffered damages. Indeed, the Arkansas Funds' claims arise from the same facts and involve substantially the same legal arguments as those of the other Class members. *See In re Cendant*, 264 F.3d at 265. Thus, the Arkansas Funds' claims are typical of those of other members of the proposed Class.

The Arkansas Funds likewise satisfy the adequacy requirement of Rule 23. "In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Id*. (citations and internal quotations omitted). The Arkansas Funds satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the claims of the proposed Class. The Arkansas Funds' interests are directly aligned with those of the other members of the proposed Class and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Arkansas Funds and other members of the proposed Class.

Further demonstrating their ability to litigate this case in the best interests of the proposed Class, the Arkansas Funds submitted a Joint Declaration, which describes how and why they came to work together in this action. *See* Dell'Angelo Decl., Ex. C ¶¶ 6-10. The Joint Declaration also affirms the Arkansas Funds' understanding of the duties owed to the proposed Class, and discusses the Arkansas Funds' experience working together and with other institutional investors in securities class action litigation. *See id*. ¶¶ 3, 5-6. Through the Joint Declaration and their certifications, the Arkansas Funds have demonstrated that they understand and accept the fiduciary

obligations they will assume if appointed as Lead Plaintiffs and will zealously represent the interests of all members of the proposed Class. *See* Dell'Angelo Decl., Exs. A and C.

The Arkansas Funds have also demonstrated their adequacy through their selection of Berger Montague and Bernstein Litowitz as Co-Lead Counsel to represent the proposed Class in this case. As discussed more fully below, Berger Montague and Bernstein Litowitz are highly qualified and experienced in securities class action litigation and have repeatedly demonstrated an ability to conduct such litigation effectively. Accordingly, as demonstrated herein, the Arkansas Funds satisfy the typicality and adequacy requirements of Rule 23.

### 4. The Arkansas Funds Are Precisely the Type of Lead Plaintiffs Contemplated By the PSLRA

As sophisticated institutional investors with over $31 billion in combined assets under management, and with prior experience serving as a lead plaintiff under the PSLRA, the Arkansas Funds are the prototypical investors Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34, *as reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *In re Cendant*, 264 F.3d at 244 (identifying Congress' preference for institutional investors as lead plaintiffs).

Further, the Arkansas Funds understand the duties and responsibilities with which a lead plaintiff is charged under the PSLRA, including the obligation to oversee and supervise the litigation separate and apart from counsel. As set forth in the Joint Declaration, the Arkansas Funds have attested to their willingness and ability to fulfill those duties and have demonstrated their commitment to working cohesively in the prosecution of this action. *See* Dell'Angelo Decl., Ex. C. The text of the PSLRA expressly permits the appointment of a group of class members to serve

11

as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *id.* § 78u-4(a)(3)(B)(i). Accordingly, courts in this District, including this Court, as well as others in the Third Circuit have repeatedly recognized the propriety of appointing small groups of investors that demonstrate they can function cohesively to effectively manage the litigation.[5]

As discussed in the Joint Declaration, the Arkansas Funds comprise a small, cohesive group of sophisticated institutional investors with a long-standing pre-existing relationship that determined their joint appointment as Lead Plaintiff would advance the Class's best interests. *See id.* ¶¶ 6, 9-10. Given the magnitude of their losses, their prior experience serving as lead plaintiff, and the importance of the claims asserted against Defendants, the Arkansas Funds believe that this case should be prosecuted by sophisticated institutional investors with significant resources and a financial interest substantial enough to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the Class. *See id.* ¶¶ 8, 10-13.

Through the course of their evaluation of this case and recognizing the benefits that could be realized by working together, the Arkansas Funds each expressed an interest in cooperating with each other in seeking appointment as Lead Plaintiff. *See id.* ¶¶ 3, 5, 8, 10-11. The Arkansas Funds agreed that their partnership would benefit the representation of the Class in this action. Given the Arkansas Funds' significant history of success working together as part of lead plaintiff groups, including their pre-existing relationship working together in such a case, the Arkansas

---

[5] *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 815136, at *8 (E.D. Pa. Feb. 19, 2020) (McHugh, J.) (appointing a group of five institutional investors); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2014 WL 1395059, at *7 (E.D. Pa. Apr. 10, 2014) (appointing a group of four institutional investors); *Arbitrage Fund v. Toronto-Dominion Bank*, 2023 WL 5550198, at *5 (D.N.J. Aug. 29, 2023) (appointing as lead plaintiff four institutional investors who "have both the ability and incentive to represent the purported class vigorously"); *Lewis v. Lipocine Inc.*, 2016 WL 7042075, at *5 (D.N.J. Dec. 2, 2016) (appointing as lead plaintiff a group of three investors whose financial interest "creates a strong incentive for them to fully prosecute this action").

Funds understand that their joint leadership would allow for the benefits of joint decision-making and the sharing of experiences and resources, all of which would benefit the Class. *See id.* ¶ 10. Significantly, the Joint Declaration also demonstrates that the Arkansas Funds have already taken, and will continue to take, numerous meaningful measures to ensure the vigorous prosecution of this action and oversee their counsel. *See id.* ¶¶ 6, 8, 12, 15, 16. Specifically, before seeking appointment as Lead Plaintiff, representatives of the Arkansas Funds met and discussed together, among other things, the possibility of collaborating to jointly prosecute this case. *See id.* ¶¶ 9-10. Following those discussions, the Arkansas Funds independently determined that it was in each of their best interests and the Class's best interests for the Arkansas Funds to partner with each other in this case. *See id.* Further, the Arkansas Funds are aware that Berger Montague and Bernstein Litowitz have extensively investigated the claims against Five Below, and that Bernstein Litowitz filed a complaint expanding the claims and allegations made in a previously filed complaint. *See id.* ¶ 15.

The evidence submitted by the Arkansas Funds establishing their commitment to zealously and efficiently representing the interests of the proposed Class is more than sufficient to satisfy the adequacy and typicality requirements here. *See, e.g.*, *Energy Transfer*, 2020 WL 815136, at *8 (appointing a group of five institutional investors based on attestations in a joint declaration regarding the group's willingness to prosecute the case in the best interest of all class members, which the court determined "must be accorded substantial weight"); *DFC Glob.*, 2014 WL 1395059, at *7 (appointing a group of four institutional investors that "submitted a joint declaration" in which the members "agree[d] to take full responsibility for providing fair and adequate representation and overseeing counsel and espouse[d] its commitment to prosecuting this litigation vigorously and efficiently"); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,

13

2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutions that "conferred with one another . . . [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation" (alteration in original)).

In sum, the Arkansas Funds are sophisticated institutional investors with the experience and resources sufficient to vigorously prosecute the action and supervise class counsel.

**B.**      **The Court Should Approve The Arkansas Funds' Choice of Co-Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "Unless a lead plaintiff's selection of counsel would fail to protect the interest of the class, a court should not interfere with the selection process." *In re Herley Ind., Inc.*, 2010 WL 176869, at *5 (E.D. Pa. Jan. 15, 2010).

Here, the Arkansas Funds have selected the law firms of Berger Montague and Bernstein Litowitz as Co-Lead Counsel to represent the proposed Class. As set forth in its firm resume submitted herewith, Berger Montague has a long record of success in securities litigation and has achieved many of the largest securities recoveries since Congress enacted the PSLRA. The firm advises clients on litigation and recovery options in securities proceedings throughout the United States and internationally. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases, both within this District and beyond, where substantial settlements were achieved on behalf of investors, including: *In re CIGNA Corp. Securities Litigation* (E.D. Pa.) (settlement of $93 million); *In re Rite Aid Corp. Securities Litigation* (E.D. Pa.) (settlements totaling $334 million); *In re Merrill Lynch Securities Litigation* (S.D.N.Y.) (recovery of $475 million); *In re Sotheby's Holding, Inc. Securities Litigation* (S.D.N.Y.) (a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant); and *In re KLA Tencor Securities Litigation* (N.D. Cal.) (settlement of $65 million); and *In re CVR*

14

*Refining, LP Unitholder Litigation* ($78.5 settlement after a four day trial). *See* Dell'Angelo Decl., Ex. F.

Likewise, Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Dell'Angelo Decl., Ex. G. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which recoveries totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class.  Other significant examples in which courts within the Third Circuit, including this Court, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Schering-Plough Corporation/Enhance Litigation*, No. 08-cv-397 (D.N.J.), and *In re Merck & Co. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.) (combined recoveries of $688 million for investors); *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-cv-621 (D.N.J.) (recovering $667 million for investors); *In re DaimlerChrysler Securities Litigation*, No. 00-cv-993 (D. Del.) (recovering $300 million for investors); *In re DFC Global Corp. Securities Litigation*, No. 13-cv-6731 (E.D. Pa.) (recovering $30 million for investors); and *Allegheny County Employees' Retirement System v. Energy Transfer LP*, No. 20-cv-200-GAM (currently serving as co-class counsel).

Berger Montague and Bernstein Litowitz also have experience working together as co-lead counsel in shareholder litigation. For example, the firms collaborated as co-lead counsel in *In re CVR Refining, LP Unitholder Litigation*, No. 2019-0062 (Del. Ch.), and achieved a $78.5 million recovery for investors.

Accordingly, the Court should approve the Arkansas Funds' selection of Co-Lead Counsel for the proposed Class.

15

**C.    The Related Actions Should Be Consolidated**

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See Burton v. Ozburn Hessey Logistic*, 615 F. App'x 84, 87 (3d Cir. 2015) ("As the District Court explained, under Fed.R.Civ.P. 42(a), it has discretion to consolidate actions involving 'a common question of law or fact.'"). Each of the Actions presents substantially similar factual and legal issues, as they both allege violations of Sections 10(b) and 20(a) of the Exchange Act, present the same or similar theories for recovery, and are based on the same allegedly wrongful course of conduct. Specifically, each action asserts that Five Below and its senior executives made materially false and misleading statements or omissions regarding the Company's ability to identify and source trend-right products, attributing pressure on earnings to macroeconomic factors and shrink. As such, the Actions present virtually identical factual and legal issues arising out of the same alleged misconduct by overlapping defendants during substantially overlapping class periods.

Because these Actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Rule 42(a) is appropriate. *See Ortiz v. United States Steel Corp.*, 2017 WL 3503142, at *1 (W.D. Pa. Aug. 16, 2017) ("securities class actions are well-suited to consolidation pursuant to Fed. R. Civ. P. 42(a)").

**IV.    CONCLUSION**

For all the foregoing reasons, the Arkansas Funds respectfully request that the Court: (i) appoint them as Lead Plaintiffs; (ii) approve their selection of Berger Montague and Bernstein Litowitz to serve as Co-Lead Counsel for the proposed Class; (iii) consolidate the above-captioned related actions; and (iv) grant any such further relief as the Court may deem just and proper.

Dated: September 30, 2024

By: */s/ Michael Dell'Angelo*
Michael Dell'Angelo
Andrew D. Abramowitz
Alex B. Heller
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
mdellangelo@bm.net
aabramowitz@bm.net
aheller@bm.net

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Hannah Ross
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff the Arkansas
Funds and Proposed Co-Lead Counsel for the Class*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo
