**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TYLER HIMES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIVE BELOW, INC., and JOEL ANDERSON,<br><br>Defendants. | Case No.  2:24-cv-03638-GAM |
| CITY OF ORLANDO POLICE OFFICERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIVE BELOW, INC., JOEL ANDERSON, KENNETH BULL, and KRISTY CHIPMAN,<br><br>Defendants. | Case No.  2:24-cv-04905-GAM |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF THE NOVA SCOTIA PUBLIC SERVICE SUPERANNUATION PLAN
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND
<u>APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...............................................................................1

II.   STATEMENT OF ALLEGED FACTS..................................................................3

III.  ARGUMENT..........................................................................................................5

      A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
            PURPOSES....................................................................................................5

      B.    PSS SHOULD BE APPOINTED LEAD PLAINTIFF..........................................7

            1.    PSS Is Willing to Serve as a Class Representative .....................................8

            2.    PSS is the Most Adequate Plaintiff Within the Meaning of the
                  PSLRA ...............................................................................................10

                  a. PSS Has the "Largest Financial Interest" in the Related Actions .........10

                  b. PSS Otherwise Satisfies the Requirements of Rule 23 .........................12

            3.    The Presumption Favoring PSS Cannot Be Rebutted................................14

      C.    LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL SHOULD BE
            APPROVED .................................................................................................15

IV.   CONCLUSION.....................................................................................................16

CERTIFICATE OF SERVICE ..........................................................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A1 Credit Co. v. RAIT Fin. Tr.*,No. 2:07 cv-03148-LDD,
  2007 WL 9677273 (E.D. Pa. Oct. 25, 2007)..............................................................................6

*Allegheny Cty. Emples. Ret. Sys. v. Energy Transfer LP*, No. 20-200,
  2020 WL 815136 (E.D. Pa. Feb. 19, 2020) ....................................................................12, 13, 15

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ...........................................................................................................12

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)........................................................................................................12

*Grodko v. Cent. European Distribution Corp.*,No. 12-5530,
  2012 WL 6595931  (D.N.J. Dec. 17, 2012).............................................................................3, 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)......................................................................................................2, 14

*In re Emergent Biosolutions, Inc. Sec. Litig.*,
  No. 8:21-cv-00955-DLB (D. Md.)...............................................................................................15

*In re Toronto-Dominion Bank Sec. Litig.*, No. 117CV1665NLHJS,
  2019 WL 12323620 (D.N.J. Oct. 4, 2019)..................................................................................16

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  225 F.R.D. 508 (E.D. Pa. 2004)............................................................................................11, 14

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
  1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ...........................................................................10, 11

*O'Meara v. Shift4 Payments, Inc.*, No. 5:23-cv-03206-JFL,
  2023 WL 7276491 (E.D. Pa. Nov. 03, 2023) .............................................................................6

*Patel v. Coinbase Glob., Inc.*, No. 22-4915 (BRM) (LDW),
  2022 WL 17582549 (D.N.J. Dec. 12, 2022)...............................................................................6, 7

*Patel v. Zoompass Holdings, Inc.*, No. 17-3831 (JLL),
  2017 WL 4179814 (D.N.J. Sept. 20, 2017) ................................................................................11

*Pelletier v. Endo Int'l PLC*,
  316 F. Supp. 3d 846 (E.D. Pa. 2018) .................................................................................3, 11, 14

ii

*Roby v. Ocean Power Tech., Inc.*, Nos. 14-cv-3799 (FLW) (LHG),
    2015 WL 1334320 (D.N.J. Mar. 17, 2015)........................................................6, 7, 14

*Rubenstahl v. Philip Morris Int'l Inc.*, No. 17-13504 (ES) (MAH),
    2019 WL 585429 (D.N.J. Feb. 13, 2019) ...............................................................11

*Stires v. Eco Science Solutions, Inc.*, Civ. A. Nos. 17-3707, 17-3760, 17-5161,
    2018 WL 5784817 (D.N.J. Feb. 14, 2018) ......................................................6, 7, 11

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) .....................................................................15

## **Statutes**

15 U.S.C. § 78u-4 .....................................................................1, 2, 5, 7, 8, 10, 12, 15

Private Securities Litigation Reform Act of 1995 .....................1, 2, 3, 5, 7, 8, 9, 10, 11, 13, 14, 15

## **Rules**

Fed. R. Civ. P. 23.................................................................................................2, 8, 12, 13

Fed. R. Civ. P. 42.................................................................................................1, 6

The Nova Scotia Public Service Superannuation Plan ("PSS") respectfully submits this Memorandum of Law in support of its motion, pursuant to Federal Rule of Civil Procedure 42 and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing PSS as Lead Plaintiff on behalf of a class (the "Class") consisting of all investors that purchased or otherwise acquired Five Below, Inc. ("Five Below") securities between December 1, 2022 and July 16, 2024, both dates inclusive (the "Class Period"); and (3) approving PSS's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## I.    PRELIMINARY STATEMENT

The initial complaints in the Related Actions collectively allege that Five Below, Joel Anderson, Kenneth Bull, and Kristy Chipman (altogether, the "Defendants") defrauded investors in violation of Exchange Act §§10(b) and 20(a), causing Five Below investors, including PSS, to incur significant losses following the disclosure of the alleged fraud, which caused the prices of Five Below securities to fall sharply, damaging PSS and the Class members.

Pursuant to the PSLRA, under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the

---

[1]    As defined in the *Himes* action, the class consisted of all investors who purchased or otherwise acquired Five Below securities between March 20, 2024 and July 16, 2024, inclusive. No. 2:24-cv-03638, ECF 1 ("*Himes* Complaint") ¶1. As defined in the *City of Orlando* action, it consisted of all investors who purchased or otherwise acquired Five Below common stock between December 1, 2022 and July 16, 2024, inclusive. No. 2:24-cv-04905, ECF 1 ("*City of Orlando* Complaint") ¶1. To avoid excluding any potential Class members, this motion adopts the broader *Himes* class definition and the broader *City of Orlando* class period ("Class Period"), which PSS respectfully submits the Court should adopt for purposes of assessing financial interest of lead plaintiff movants, consistent with PSLRA jurisprudence. *See* Section III.B.2.a., *infra*.

'most adequate plaintiff')."  The PSLRA creates a rebuttable presumption favoring the movant that, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rule of Civil Procedure". 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

PSS believes itself to be the "most adequate plaintiff" within the meaning of the PSLRA and should therefore believes it should be appointed as Lead Plaintiff.  During the Class Period, PSS: (1) purchased or acquired 6,280 shares of Five Below common stock; (2) expended $1,214,442 on Five Below common stock; (3) retained 5,570 shares of Five Below common stock at the first alleged revelation of fraud; and (4) incurred losses of approximately $305,501.  *See* Declaration of Matthew L. Tuccillo ("Tuccillo Decl."), Exhibit ("Ex.") A.  Accordingly, PSS believes that it has the largest financial interest in the relief sought.

Beyond its considerable financial interest, PSS also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members, and it will fairly and adequately represent the Class's interests.  As a sophisticated institutional investor, PSS is a paradigmatic lead plaintiff under the PSLRA, and its appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  Indeed, Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect the interest of class members.  *Id.* For this reason, courts in the Third Circuit, and this Judicial District, strongly prefer appointment of institutional investors to lead complex securities class actions.  *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("[T]he purpose of the [PSLRA] was to encourage

institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members"); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 847, 853-55 (E.D. Pa. 2018) (concluding "the institutional investor preference outweighs the presumptive lead plaintiff rule" in appointing an institutional investor as lead plaintiff over non-institutional investors with slightly larger losses); *Grodko v. Cent. European Distribution Corp.*, No. 12-5530 (JBS-KMW), 2012 WL 6595931, at *8 (D.N.J. Dec. 17, 2012) (appointing lead plaintiff, citing its status as "an institutional investor, *i.e.*, the type of investor whom Congress encouraged to serve as lead plaintiff by enacting the PSLRA").

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, PSS has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume and discussed below.

PSS respectfully asks the Court to enter an Order appointing it Lead Plaintiff for the Class and approving its selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF ALLEGED FACTS

Founded in 2002, Five Below is headquartered in Philadelphia, Pennsylvania.  *City of Orlando* Complaint ¶2.  Five Below has traditionally targeted a customer segment of tweens and teens by offering popular or "trend-right" merchandise, *e.g.*, clothing, sporting equipment, and small accessories such as phone cases and chargers, with most items priced at $5 and below.  *Id.* Its business depends on identifying and sourcing such products at low costs and then quickly selling them to capitalize on existing trends before those trends fade and new trends emerge.  *Id.*

Throughout the Class Period, investors were keenly focused on Five Below's ability to execute on its business plan in the face of potential macroeconomic headwinds following the

COVID-19 pandemic. *Id.* ¶3. The market also questioned whether its business was pressured by increased rates of lost or stolen inventory, known in the retail industry as "shrink," on which Defendants often blamed disappointing financial results. *Id.* During the Class Period, Five Below executives repeatedly affirmed Five Below's ability to execute on its trend-right products strategy, and often attributed pressure on earnings to shrink and macroeconomic factors. *Id.*

Defendants also touted Five Below's financial strength and operations, including its outlook for Q1 2024 and full year 2024. *Himes* Complaint ¶2. Among other things, Five Below said Q1 2024 net sales were expected to be in the range of $826 million to $846 million, based on opening 55 - 60 new stores. *Id.* Further, it claimed full year 2024 net sales were expected to be in the range of $3.97 billion to $4.07 billion, based on opening 225 - 235 new stores. *Id.*

These assurances were materially false or misleading. *City of Orlando* Complaint ¶4; *Himes* Complaint ¶3. In actuality, Five Below was struggling to identify and capitalize on trending products and trends, and its growth plan was stalling. *City of Orlando* Complaint ¶4. Rather than admit it, Five Below executives repeatedly blamed its disappointing financial results on elevated levels of shrink and other macroeconomic factors, while assuring investors that Five Below's growth and sales remained intact. *Id.* As a result of Defendants' misrepresentations, shares of Five Below common stock traded at artificially inflated prices during the Class Period. *Id.*

The truth began to emerge on March 20, 2024, when Five Below reported Q4 2023 results and missed earnings per share analyst consensus by $0.13 per share, or approximately 3.5%. *Id.* ¶5. On this news, Five Below's stock price declined by $32.18 per share, or over 15%. *Id.*

Despite these disappointing results, Five Below's senior executives continued to downplay broader problems with its business and blamed the disappointing results entirely on greater than

4

expected levels of shrink. *Id.* ¶6. Indeed, Five Below's former CEO told investors that the negative results could be "fully attributed to higher-than-planned shrink." *Id.*

On June 5, 2024, however, Five Below released its Q1 2024 results, disclosing a nearly 15% year-over-year decline in operating income and making what analysts described as "deep cuts" to its sales guidance for the rest of the year after Q1 sales "fell short." *Id.* ¶7; *Himes* Complaint ¶3. On this news, its shares declined by $14.07 per share, or approximately 11%. *Id.*

The following month, Five Below revealed that its financial and operational problems were significantly worse than represented. *City of Orlando* Complaint ¶8; *Himes* Complaint ¶4. On July 16, 2024, after the market closed, Five Below announced the sudden departure of its CEO effective immediately, and further reduced its net sales and earnings guidance, which had already been severely cut just weeks prior. *Id.* These disclosures caused Five Below's stock price to decline by another $25.57 per share, or 25%. *Id.*

Analysts subsequently reported that, in their conversations with Five Below following this announcement, Five Below's management admitted that it had "incurred a lot of self-inflicted wounds" and "needed to refocus their product on 'trend right' goods and strong value," which stood in stark contrast to Defendants' prior representations. *City of Orlando* Complaint ¶9.

## III. ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Under the PSLRA, this Court must resolve requests to consolidate multiple securities class actions before addressing competing lead plaintiff motions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial

purposes or for trial, the court shall not make the determination required by clause (i) [to appoint a lead plaintiff] until after the decision on the motion to consolidate is rendered.").

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact, such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. *See* Fed. R. Civ. P. 42(a). Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See id.*; *O'Meara v. Shift4 Payments, Inc.*, No. 5:23-cv-03206-JFL, 2023 WL 7276491, at *2 (E.D. Pa. Nov. 03, 2023); *A1 Credit Co. v. RAIT Fin. Tr.*, No. 2:07 cv-03148-LDD, 2007 WL 9677273, at *1 (E.D. Pa. Oct. 25, 2007); *Patel v. Coinbase Glob., Inc.*, No. 22-4915 (BRM) (LDW), 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See Coinbase*, 2022 WL 17582549, at *2; *Stires v. Eco Science Solutions, Inc.*, Civ. A. Nos. 17-3707, 17-3760, 17-5161, 2018 WL 5784817, at *3 (D.N.J. Feb. 14, 2018) (consolidating securities class actions proposing different class periods because "[d]espite minor differences, the complaints center on the same set of operative facts during substantially the same time period"); *Roby v. Ocean Power Tech., Inc.*, Nos. 14-cv-3799 (FLW) (LHG) *et al.*, 2015 WL 1334320, at *3 (D.N.J. Mar. 17, 2015) (consolidating securities class actions where "[a]ll four cases involve the same subject matter, are based on substantially the same conduct, and largely name the same defendants").

The Related Actions clearly involve common questions of law **and** fact.  *See generally Himes* Complaint; *City of Orlando* Complaint.  Each was brought against overlapping Defendants in connection with violations of Exchange Act §§10(b) and 20(a), and Rule 10b-5 promulgated thereunder, arising from substantially the same alleged fraudulent misconduct.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely that Defendants issued materially false and misleading statements and omissions during the Class Period, which artificially inflated the price of Five Below securities and subsequently damaged the putative Class members when the price of Five Below securities plummeted as the truth began to emerge.  Consolidation of the Related Actions is therefore appropriate.  *Coinbase*, 2022 WL 17582549, at *2; *Eco Science*, 2018 WL 5784817, at *3 (consolidating securities class actions proposing different class periods because "[d]espite minor differences, the complaints center on the same set of operative facts during substantially the same time period"); *Ocean Power*, 2015 WL 1334320, at *3 (consolidating securities class actions where "[a]ll four cases involve the same subject matter, are based on substantially the same conduct, and largely name the same defendants").

For all these reasons, before turning the question of appointment of PSLRA lead plaintiff, PSS respectfully submits that the Court should consolidate the Related Actions, adopt a consolidated caption, and employ a master docket, as set forth in the accompanying Proposed Order.

### B.    PSS SHOULD BE APPOINTED LEAD PLAINTIFF

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of the PSLRA notice of an action (the "Notice"), which in this case was published on August 1, 2024 (*see* Tuccillo Decl., Ex. B).  *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).  The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of notice publication (30 days after the motion deadline), or (ii) as soon as practicable after the Court decides any pending motion

7

to consolidate.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i) & (ii).  PSS's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')."  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).  PSS respectfully submits that it is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  As set forth below, PSS satisfies all three of these criteria and thus believes that it is entitled to the rebuttable presumption that it is the most adequate plaintiff within the meaning of the PSLRA.  Specifically, PSS, a sophisticated institutional investor, and moreover a pension fund, that is willing to serve as lead plaintiff, has the largest financial interest in the Related Actions to its knowledge and otherwise satisfies the requirements of Rule 23.

For all these reasons, as set forth in greater detail below, PSS respectfully urges the Court to appoint it to serve as Lead Plaintiff overseeing the Related Actions.

### 1.     PSS Is Willing to Serve as a Class Representative

On August 1, 2024, counsel for initial plaintiff in the *Himes* Action caused the statutorily required Notice of that action to be published over *Globe Newswire* pursuant to PSLRA §21D(a)(3)(A)(i), announcing the action had been filed against Defendants and advising investors

in Five Below securities they had until September 30, 2024—*i.e.*, 60 days from the Notice's publication date—to file a motion to be appointed as lead plaintiff. *See* Tuccillo Decl., Ex. B.

PSS files this motion pursuant to the Notice and has attached a Certification signed by Steve Mahoney, as Chief Investment Officer of the Nova Scotia Pension Services Corporation ("NS Pension"), PSS's Administrator pursuant to the Nova Scotia Pension Services Corporation Act and the Public Service Superannuation Act. *See* Tuccillo Decl., Ex. C ¶¶2-3. As Mr. Mahoney has attested in PSS's Certification, NS Pension is duly authorized by statute and by the Nova Scotia Public Service Superannuation Plan Third Amended and Restated Administration Services and Investment Management Agreement to enter PSS into legally binding agreements and to initiate and oversee the conduct of litigation by PSS to recover investment losses in its pension assets, including the investment losses incurred in connection with the fraud alleged in this litigation. *See id.* ¶¶2-4. Accordingly, under the PSLRA, PSS's actions were timely and legally sufficient.

PSS is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA. PSS is a registered defined benefit pension plan, with a prescribed funding policy, that offers its members a lifetime pension when they retire. PSS is one of the largest public sector pension plans in Atlantic Canada, serving over 43,700 members as of December 31, 2023, including 20,522 active members, 19,617 retirees, and 3,583 deferred members, consisting of workers in a Nova Scotia government department or at a participating municipality, university, agency, board, or commission. PSS's oversight and administration is well-defined, multitiered, and robust. The Public Service Superannuation Plan Trustee, Inc. ("PSSPTI") is PSS's Trustee with fiduciary responsibility for PSS, including its overall operations and investment of its assets. PSSPTI has an independent Chair and 12 Board members representing participating unions, non-union employees, the Nova

9

Scotia government, and other employers. PSS's dedicated Administrator, NS Pension, fulfills express responsibilities including undertaking securities litigation on its behalf, thus ensuring that the prosecution of PSS and the Class's claims in this litigation will be overseen by qualified professionals. *See* Tuccillo Decl., Ex. C ¶¶2-4. NS Pension, under PSSPTI's direction, also manages day-to-day operation of PSS's investments and administration. NS Pension itself has an eight-person Board with four seats held by PSSPTI representatives. As of March 31, 2024, PSS had over CAD $7.906 billion in assets, which it invests in a diversified manner, including 27.62% in equities. For the 2023-2024 fiscal year, PSS ranked in the top quartile among its Canadian peers for absolute returns and, as of March 2024, was 103.8% funded.

## 2. PSS is the Most Adequate Plaintiff Within the Meaning of the PSLRA

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i). PSS respectfully submits that it is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

### a. PSS Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). To the best of its knowledge, PSS has the largest financial interest of any Five Below investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Exchange Act §10(b), courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance*

10

*Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997): (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. In accord with other courts nationwide, these so-called *Lax* factors have been adopted and routinely applied by courts in the Third Circuit. *See, e.g.*, *Endo*, 316 F. Supp. 3d at 848; *Rubenstahl v. Philip Morris Int'l Inc.*, No. 17-13504 (ES) (MAH), 2019 WL 585429, at *2 (D.N.J. Feb. 13, 2019); *Patel v. Zoompass Holdings, Inc.*, No. 17-3831 (JLL), 2017 WL 4179814, at *1 (D.N.J. Sept. 20, 2017); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 510 (E.D. Pa. 2004).

As a threshold matter, the Court should assess financial interest using the broader Class Period alleged in *City of Orlando* (December 1, 2022 through July 16, 2024), rather than the shorter and less inclusive class period pled in *Himes* (March 20, 2024 through July 16, 2024). At the lead plaintiff appointment stage of PSLRA actions, where different class periods are alleged among related actions that are the subject of consolidation motions, courts generally adopt the longest and most inclusive of the possible class periods in assessing financial interest and appointing a lead plaintiff. *See*, *e.g.*, *Eco Science*, 2018 WL 5784817, at *1 n.2 ("For the purpose of determining Lead plaintiff, this Court finds that the use of the longer period proposed . . . is proper."). Accordingly, the Court should adopt the longer *City of Orlando* Class Period to assess financial interest in evaluating lead plaintiff motions.

During the Class Period, PSS: (1) purchased 6,280 shares of Five Below common stock; (2) expended $1,214,442 in net funds on Five Below common stock; (3) retained 5,570 of its shares of Five Below common stock at the first alleged revelation of fraud; and (4) suffered a loss of approximately $305,501. *See* Tuccillo Decl., Ex. A. Thus, under the *Lax* factors, PSS believes it has the largest financial interest among any potential lead plaintiff movants, thereby entitling PSS

11

to a rebuttable presumption that it is the "most adequate plaintiff" within the PSLRA's meaning (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), given that it also satisfies the requirements of Rule 23.

### b.    PSS Otherwise Satisfies the Requirements of Rule 23

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that it is the "most adequate plaintiff," it must also demonstrate that it "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  At this stage of the inquiry, courts need only consider typicality and adequacy.  *Allegheny Cty. Emples. Ret. Sys. v. Energy Transfer LP*, No. 20-200, 2020 WL 815136, at \*6 (E.D. Pa. Feb. 19, 2020).

PSS satisfies the threshold for Rule 23(a)(3) typicality, which is satisfied where "the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).  PSS's claims are typical of those of the Class members.  Like all Class members, PSS alleges that: (1) Defendants violated the Exchange Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning Five Below; (2) PSS and the Class members purchased or acquired Five Below securities during the Class Period at prices allegedly inflated by Defendants' misrepresentations or omissions; and (3) PSS and the Class members were damaged upon revelation of the truth about Five Below's business and operations, which drove Five Below's stock price downward.  These shared claims, which are based on the same legal theories and arise from the same underlying facts and course of conduct, demonstrate PSS's typicality under Rule 23(a)(3).

PSS also satisfies the Rule 23(a)(4) adequacy requirement, which is met where it is established that representative parties "will fairly and adequately protect the interests of the class." "When assessing a movant's adequacy to be lead plaintiff, 'courts should consider whether [it] has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class.'" *Allegheny*, 2020 WL 815136, at *7 (quotation omitted). Here, PSS has submitted a signed Certification declaring its commitment to protect the Class's interests. *See* Tuccillo Decl., Ex. C. PSS has no conflicts of interest or antagonism with the Class of Five Below investors it seeks to represent. PSS's significant losses from its investments in Five Below securities demonstrate that it has a sufficient interest in the outcome of this litigation that aligns with the interests of Class members.

As noted above, PSS is also a large pension fund and a sophisticated institutional investor with significant assets under management. Its service as Lead Plaintiff would satisfy the PSLRA's express legislative intent. In enacting the PSLRA, Congress intended to "increas[e] the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733. Congress noted the outsized marketplace presence of institutional investors as creating a powerful incentive on their part to ensure securities litigation is well-conducted. *Id.* (noting that institutions held $9.5 trillion in total assets and 51% of the equity market when the PSLRA was passed and "have the most to gain from meritorious securities litigation"). Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect the interest of class members. *Id.* (noting that pension funds held $4.5 trillion or nearly

13

half of all institutional assets).  To this end, courts in this Circuit and throughout the country consistently recognize that Congress intended the PSLRA to place institutional investors like PSS in charge of securities class actions, recognizing the clear advantages of doing so.  Indeed, courts in the Third Circuit, and this Judicial District, strongly prefer the appointment of institutional investors to lead complex securities class actions, such as the present Related Actions.  *See, e.g.*, *Cendant*, 264 F.3d at 273 ("[T]he purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members"); *Endo*, 316 F. Supp. 3d at 847, 853-55 (concluding "the institutional investor preference outweighs the presumptive lead plaintiff rule" in appointing an institutional investor as lead plaintiff over non-institutional investors with slightly larger losses); *Vicuron*, 225 F.R.D. at 512 (noting "the PSLRA favors institutional investors seeking to serve as lead plaintiff" in rejecting competing movants' arguments against an institutional investor group's lead plaintiff appointment); *Grodko*, 2012 WL 6595931, at *8 (appointing lead plaintiff, citing its status as "an institutional investor, *i.e.*, the type of investor whom Congress encouraged to serve as lead plaintiff by enacting the PSLRA"); *Ocean Power*, 2015 WL 1334320 at *6 (D.N.J. Mar. 17, 2015) ("The legislative history of the PSLRA . . . demonstrates a preference for institutional investors.").

### 3.    The Presumption Favoring PSS Cannot Be Rebutted

The presumption favoring PSS's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

14

15 U.S.C. §78u-4(a)(3)(B)(iii)(II). PSS's ability and desire to fairly and adequately represent the Class, discussed above, cannot be credibly disputed. PSS is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.

### C. LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See id.* §78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Allegheny*, 2020 WL 815136, at *8; *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 417 (E.D. Pa. 2019).

PSS has selected Pomerantz to serve as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions and recovered billions of dollars on behalf of investors over its 80+ year history, as detailed in its firm resume. *See* Tuccillo Decl., Ex. D. Pomerantz is based in New York, with offices in Chicago, Los Angeles, Paris, Tel Aviv, and London, and the firm regularly litigates federal securities fraud class actions in courts nationwide. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of Petrobras investors, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the U.S. *Id.* The Pomerantz Partner who will oversee this litigation, Matthew L. Tuccillo, has 25 years of relevant experience, including most recently as lead litigation counsel in a securities fraud class action lawsuit where a $40 million class-wide settlement was submitted this month for preliminary approval in *In re Emergent Biosolutions, Inc. Sec. Litig.*, No. 8:21-cv-00955-DLB (D. Md.). His work within the Third Circuit includes litigating and achieving a $13.25 million class-

15

wide settlement in a securities fraud class action lawsuit in *In re Toronto-Dominion Bank Sec. Litig.*, No. 117CV1665NLHJS, 2019 WL 12323620, at \*2 (D.N.J. Oct. 4, 2019).

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, PSS's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable it to prosecute this litigation effectively and expeditiously. The Court may be assured that by approving PSS's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, PSS respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel for the Class.

## IV.    CONCLUSION

For the foregoing reasons, PSS respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing PSS as Lead Plaintiff for the Class; and (3) approving PSS's selection of Pomerantz as Lead Counsel for the Class.

Dated:   September 30, 2024                          Respectfully submitted,

**POMERANTZ LLP**

*s/ Emily C. Finestone*
Emily C. Finestone (SBN 323709)
Matthew L. Tuccillo
(*pro hac vice* application forthcoming)
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
efinestone@pomlaw.com
mltuccillo@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

16

*Counsel for Lead Plaintiff Movant Nova Scotia
Public Service Superannuation Plan and Proposed
Lead Counsel for the Class*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2024, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF

participants.

Dated:  September 30, 2024

<div align="center" style="margin-left:50%">

*s/ Emily C. Finestone*

Emily C. Finestone

</div>

18