IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYLER HIMES, Individually and on Behalf of All Others Similarly Situated** | : : : | |
| | : | **CIVIL ACTION No. 24-3638** |
| v. | : : | |
| **FIVE BELOW, INC. and JOEL ANDERSON** | : : | |

| | | |
|---|---|---|
| **CITY OF ORLANDO POLICE OFFICERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated** | : : : : : | |
| | : | **CIVIL ACTION No. 24-4905** |
| v. | : : | |
| **FIVE BELOW, INC., JOEL ANDERSON, KENNETH BULL, and KRISTY CHIPMAN** | : : : : | |

**McHUGH, J.**                                                                                                               **October 28, 2024**

### MEMORANDUM

Two related securities class actions are currently before this Court. *See Himes v. Five Below, Inc. et al.*, 24-3638 (E.D. Pa.) ("*Himes*"); *City of Orlando Police Officers Pension Fund v. Five Below, Inc.,* 24-4905 (E.D. Pa.) ("*Orlando Police*"). These putative class actions are filed against Five Below, Inc. and several of its senior executives for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act – as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") – and SEC Rule 10b-5. There are competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel. One Motion was filed by two Arkansas retirement funds ("Arkansas Funds Group"), consisting of the Arkansas Public Employees' Retirement and the Arkansas Teacher Retirement System. The other competing

Motion that remains was filed by Trevor Bixby. Both parties argue that they are the "most adequate plaintiff" as that term is used in the PSLRA and defined by case law. After review, I will appoint the Arkansas Funds Group as Lead Plaintiff and approve Lead Plaintiff's selection of the law firms Berger Montague PC and Bernstein Litowitz Berger & Grossmann LLP as Co-Lead Counsel.

## I.     Relevant Background

Five Below is a Philadelphia-based retail company that operates stores across the United States. *Orlando Police*, ECF 1, ¶ 16, 22-23. Its merchandise primarily targets the tween and teen demographic, with most products priced under five dollars. *Id*. ¶ 22. Five Below is publicly traded, and its stock is actively traded on the NASDAQ. *Id.* ¶ 48; *Himes*, ECF 1, ¶ 30. As a result, Five Below files periodic public reports with the SEC and NASDAQ, and publicly communicates with investors on a regular basis. *Id*.

Over the past years, Five Below often projected strong financial results and growth in communications to investors. On December 1, 2022, Five Below executives[1] touted financial growth and their ability to adjust to market trends. *Orlando Police,* ECF 1 at ¶ 25. Over the next year, Five Below continued to project strong performance, and informed investors of shrink (product loss) mitigation and their ability to quickly respond to trends. *Id.* ¶¶ 25-31.

---

[1] Five Below executives named as defendants in these actions include Chief Executive Officer Joel Anderson (resigned on July 15, 2024), Kenneth Bull (serving as Chief Financial Officer until July 2023, as Chief Operating Officer since March 2023, and as interim President and Chief Executive Officer since July 15, 2024), and Chief Financial Officer and Treasurer Kristy Chipman (assumed her role in July 2023). *Orlando Police*, ECF 1, ¶¶ 17-19.

2

On March 20, 2024, Five Below issued a press release ("guidance") summarizing its 2023 fiscal year performance and providing its expectations for 2024. *Himes*, ECF 1, ¶ 19. That same day on an earnings call, Five Below CEO Anderson shared positive trends in foot traffic and store expansion. *Id.* ¶ 20. Analysts reported out favorably as a result of these communications. *Id.* ¶ 21. However, on June 5, 2024, Five Below announced disappointing first quarter sales and reduced its 2024 guidance, estimating a 3-5 percent decrease in comparable sales. *Id*. ¶ 23-24. Subsequently, on June 6, the price of Five Below stock declined by $14.07 per share. *Id*. ¶ 29. Then, on July 16, Five Below announced the departure of its CEO Anderson and decreased its projections for second quarter sales, estimating a 6-7 percent decrease in comparable sales. *Id.* ¶ 26. The day after this announcement, the share price of Five Below fell $25.57 per share. *Id.* ¶ 29.

Two class action lawsuits quickly followed, both currently before this Court.

**II.     Procedural Posture**

The first securities class action related to the events described above was filed on August 1, 2024. *See Himes,* 24-3638 (E.D. Pa.). The *Himes* action asserted claims pursuant to Sections l0(b) and 20(a) of the Securities Exchange Act and SEC Rule l0b-5 on behalf of investors who purchased or otherwise acquired Five Below securities between March 20, 2024 and July 16, 2024.

Upon filing, counsel for plaintiff provided public notice of the pending action, as the PSLRA mandates. 15 U.S.C. § 78u-4(a)(3)(A)(i). In that notice, counsel for plaintiff notified class members that any investor who acquired Five Below securities during the class period could, no later than September 30, 2024, seek appointment as lead plaintiff. *Id.* § 78u-4(a)(3)(A)(i)(II)

(noting that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class").

On September 16, 2024, the City of Orlando Police Officers Pension Fund ("Orlando Police") filed another securities class action under the same three provisions. *See Orlando Police,* 24-4905 (E.D. Pa.). The Orlando Police Complaint is substantially similar to the *Himes* complaint. It encompasses the same violations of the securities laws and the same class of investors who suffered losses. However, Orlando Police assert a longer class period (December 1, 2022 through July 16, 2024), includes two additional individual defendants, and asserts claims on behalf of purchasers of "common stock" as opposed to "securities." On the same day the Orlando Police filed suit, its counsel published notice apprising investors of the action and confirming that the deadline for seeking appointment as lead plaintiff remained September 30, 2024.[2]

On September 30, 2024, five entities filed motions seeking appointment as lead plaintiff in the *Himes* action, and concurrently sought consolidation with the *Orlando Police* action. *Himes* ECFs 14, 15, 16, 17, 18; *see also Orlando Police*, ECF 3.[3] One movant subsequently withdrew;

---

[2] The deadline to move for lead plaintiff does not change even if another complaint is filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]").

[3] The Arkansas Funds Group specifically seeks to be appointed as Lead Plaintiffs "for the most broadly defined proposed class" of the two actions. *Himes*, ECF 17-1 at 2, n.1. Courts considering lead plaintiff motions typically accept the longer class period pleaded at this stage of litigation. *See Reid v. Hemispherx Biopharma, Inc.,* 2010 WL 11707722, at *2 (E.D. Pa. Feb. 12, 2010) (stating upon consideration of lead plaintiff motions that, "[a]t this stage in the litigation, I will accept the longest class period pleaded."); *see also Ragan v. AppHarvest, Inc.*, 2021 WL 5909116, at *7 (S.D.N.Y. Dec. 13, 2021) ("Where there are two potential class periods, courts addressing lead plaintiff motions generally apply the longer class period.")

another two conceded that they did not possess the "largest financial interest in the relief sought by the class," as required by the PSLRA, 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(I)(bb), and notified the Court that they would not oppose the appointment of Arkansas Funds Group as lead plaintiff. The choice now is between two entities, the Arkansas Funds Group and Trevor Bixby, each arguing that it is the "most adequate plaintiff" under the PSLRA.

## III. Discussion

### A. Standard for deciding lead plaintiff in PSLRA class actions

The PSLRA directs the Court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that (1) has either filed the Complaint or moved the Court to be appointed lead plaintiff; (2) has the largest financial interest in the relief sought by the class as determined by the Court; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, specifically with respect to typicality and adequacy. *Id.* § 78u-4(a)(3)(B)(iii)(I); *In re Cendant Corp. Litigation*, 264 F.3d 201, 222 (3d Cir. 2001). Rival candidates for lead plaintiff may rebut this presumption by coming forward with "proof" that the plaintiff with the largest financial interest (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u- 4(a)(3)(B)(iii)(II).

---

(internal citations omitted). Because I am consolidating these cases, I will accept the longer class period and appoint a single lead plaintiff for both complaints.

Considering the record here, I am persuaded that the Arkansas Funds Group has the largest financial interest at stake and that it further satisfies the requirements of Rule 23.

**B. The Arkansas Funds Group has the largest financial interest of the movants**

*Cendant* is the controlling case in this Circuit and a leading case nationally on the appointment of lead plaintiffs and lead counsel in securities class actions. In *Cendant*, the Third Circuit articulated three factors district courts must consider in determining which movant has the largest financial interest in the case: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant*, 264 F.3d at 262. All three factors support selecting the Arkansas Funds Group as lead plaintiff.[4]

In determining each proposed lead plaintiff's financial interest in the litigation, courts have identified the third *Cendant* factor – the amount of losses suffered by the prospective lead plaintiff – as the most critical. *See Allegheny County Employees' Retirement System v. Energy Transfer*

---

[4] The PSLRA expressly permits the Court to appoint a "group of persons" to serve as lead plaintiff. However, courts must investigate "whether that group would fairly and adequately protect the interests of the class." *In re Cendant*, 264 F.3d at 266-67. In other words, "it is this test" – adequacy – "not one of relatedness, with which courts should be concerned." *Id.* at 267. The Arkansas funds have demonstrated that, as a group, they will be able to adequately represent the class. The two institutional investors that comprise the Arkansas Funds Group have a longstanding relationship that predated the filing of these actions. *Himes,* ECF 17-6, ¶¶ 6, 9-10. They have competently served as group lead plaintiffs together in other securities class actions and recovered funds for the class. *Id*. ¶ 6. They also each have experience working with other institutional investors in group lead plaintiff settings. *Id.* ¶ 11. They have established procedures to enable timely joint decision making and have a clear understanding of the time and fiduciary obligations when serving as group lead plaintiff and are prepared to meet those obligations. *Id.* ¶¶ 12, 16. In conclusion, the funds demonstrate that they have extensive experience and are prepared to work cohesively to prosecute this action and satisfy the PSLRA's adequacy requirement.

*LP,* 2020 WL 815136 at *8 (E.D. Pa. Feb. 19, 2020); *Tomaszewski v. Trevena, Inc.*, 383 F.Supp.3d 409, 412-413 (E.D. Pa. 2019) (Rufe, J.); *Kanefsky v. Honeywell Int'l Inc.*, 2019 WL 936662, at *1 (D.N.J. Feb. 26, 2019) (collecting cases).  Here, the Arkansas Funds Group seeks to aggregate its two members' individual losses to determine its total loss.  Taken together, the Arkansas Funds Group suffered losses on the order of $5 million,[5] calculated on a "last-in-first-out," or "LIFO," basis, giving the Arkansas Funds Group the largest financial interest by a wide margin.  *Himes*, ECF 17-5.  Trevor Bixby, on the other hand, suffered approximately $44,000 in aggregate LIFO losses.  *Himes*, ECF 16-7.  Bixby's loss is less than two percent of the losses suffered by each individual Arkansas fund, and less than one percent of the Arkansas Funds Group's combined losses.

The remaining two *Cendant* factors – the number of shares that the movant purchased during the class period and the total net funds expended by the plaintiffs during the class period – also favor selecting the Arkansas Funds Group as lead plaintiff.  The Arkansas Funds Group purchased 67,676 shares Five Below stock during the putative class period, while Bixby purchased approximately 4,500.  *Himes*, ECF 17-1 at 9 (Arkansas Funds Group); *Himes*, ECF 16-6 (Bixby).[6]  Neither movant provided the Court with their total net funds expended during the period, but based on the number of shares purchased and the range of security prices during the class period, it is

---

[5] Arkansas Public Employees' Retirement System lost $2.39 million and Arkansas Teacher Retirement System lost $2.64 million.  *Himes*, ECF 17-5.  Thus, each member of the proposed Arkansas Funds Group individually suffered significant losses far greater than any other movant.

[6] Bixby failed to provide this *Cendant* factor in his filings, but the Court was able to determine it based on Schedule A transaction tables attached to his filings.  *Himes*, ECF 16-6.

7

reasonable to assume that the Arkansas Funds Group expended far more net funds. Thus, all three of the *Cendant* factors weigh squarely in favor of the Arkansas Funds Group. Provided that the Arkansas Funds Group can make the typicality and adequacy inquiry – which I discuss in the next section – it is the presumptive lead plaintiff.

### C. The Arkansas Funds Group otherwise satisfies the requirements of Rule 23

Because the Arkansas Funds Group has shown that it has the largest financial interest in the relief sought, I must now examine whether it otherwise satisfies the requirements of Rule 23. For the purposes of examining a motion for the appointment as lead plaintiff, the Rule 23 analysis "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy." *In re Cendant*, 264 F.3d at 263. Indeed, "the statutory structure and the legislative history suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive." *Id.* at 264. As explained below, the Arkansas Funds Group has demonstrated that it satisfies both prongs of Rule 23.

#### 1. The Arkansas Funds Group is a collection of typical plaintiffs

The typicality requirement demands that the court "consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based." *Id*. at 265 (cleaned up). The Arkansas Funds Group easily satisfies the typicality requirement. The claims of the Group are representative of the claims of the class. The Arkansas Funds Group alleges it was injured by artificially inflated Five Below stock prices that

resulted from materially false statements or omissions by Five Below and senior executives, and the subsequent decline in value of its stock holdings once the alleged misrepresentations were exposed. That legal theory is shared by both complaints, (*Orlando Police*, ECF 1; *Himes*, ECF 1), as well by other members of the class who moved for appointment of lead plaintiff. *Himes*, ECFs 14, 15, 16, 17, 18. It is a prototypical legal theory for this type of litigation. *See, e.g., Allegheny County,* 2020 WL 815136, at *6. The Arkansas Funds Group therefore satisfies the typicality requirement.

### 2. The Arkansas Funds Group will adequately represent the class

When assessing a movant's adequacy to be lead plaintiff, "courts should consider whether it has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *In re Cendant*, 264 F.3d at 265 (cleaned up). Courts must "also inquire whether a movant group is too large to represent the class in an adequate manner." *Id*. at 267. Like typicality, the Arkansas Funds Group easily makes a *prima facie* showing of adequacy.

In their sworn Joint Declaration, the two members of the Arkansas Funds Group describe their prior experience with PSLRA class actions and articulate their ongoing coordination with each other and in the oversight of counsel. *See Himes*, ECF 17-6. Their chosen law firms have experience successfully litigating PSLRA class actions. *Id*. ¶¶ 13, 14. These firms have the resources and experience to zealously prosecute this litigation and protect the interests of the class. Furthermore, there is no apparent basis for a conflict between the Arkansas Funds Group's claims and the claims of other class members. And, as discussed above, the appointment of the two

Arkansas funds as a group in no way erodes their ability to fulfill the task of lead plaintiff. *See supra* n.4.

Finally, I consider the size of the proposed group. The *Cendant* Court endorsed the position offered by the Securities Exchange Commission as an amicus "that courts should generally presume that groups with more than five members are too large to work effectively." *In re Cendant,* 264 F.3d at 267. The Arkansas Funds Group contains two members and does not run afoul of *Cendant's* recommended upper limit. Consequently, it has made a successful preliminary showing of adequacy and typicality, and that it is the most adequate lead plaintiff for the present action.

### D. Trevor Bixby has not rebutted the presumption of the Arkansas Funds being adequate lead plaintiff

Under the PSLRA, once a court determines which prospective lead plaintiff is most adequate, another movant has the opportunity to present evidence in rebuttal. "The presumption 'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id*. at 268 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).[7]

---

[7] The Third Circuit noted the seeming circularity of the first prong of the rebuttal analysis, as a court should have already found that the lead plaintiff would fairly and adequately protect the interests of the class before reaching this stage of the analysis. *In re Cendant,* 264 F.3d at 263 ("The statute thus simultaneously appears to make 'typicality' and 'adequacy' both part of the threshold identification of the presumptive lead plaintiff *and* the sole means of rebutting the lead plaintiff presumption."). The Court resolved that conceptual tension by holding that, in conducting its own prior inquiry regarding Rule 23, a court must only determine whether a movant has made a *prima*

10

Neither Trevor Bixby nor any other class member has presented evidence or argument that the Arkansas Funds Group will not fairly or adequately represent the class or is subject to any unique defenses.  Because no class member has rebutted the presumption that the Arkansas Funds Group is adequate lead plaintiff, I will grant the Arkansas Funds Group's Motion for Appointment of Lead Plaintiff.

### E. Appointment of lead counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Nevertheless, the Court will not disturb a lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the class."  *In re Cendant*, 264 F.3d at 274.  The court should generally employ a deferential standard in reviewing the lead plaintiff's choices for counsel.  *See id*.

Here, the Arkansas Funds Group has selected Berger Montague PC and Bernstein Litowitz Berger & Grossmann LLP as Co-Lead Counsel.  Courts have not taken issue with two firms sharing lead counsel responsibilities when they are assured of their competency and experience. *See, e.g., In re Cendant,* 264 F.3d at 219-20 (appointing Bernstein Litowitz Berger & Grossman LLP and another firm as co-lead counsel); *Allegheny County,* 2020 WL 815136, at *8 (same); *Rabin v. John Doe Market Makers*, 254 F.Supp.3d 754, 761 (E.D. Pa. 2015) (appointing Berger Montague PC and another firm as co-lead counsel).  Both Berger Montague PC and Bernstein

---

*facie* showing.  This *prima facie* showing can then be rebutted by the presentation of proof from another putative class member.

Litowitz Berger & Grossmann LLP have substantial experience litigating complex securities class actions and appear well positioned to do so here. With respect to co-counsel, I expect that there will be no duplication of attorneys' services, and that the use of co-lead counsel will not in any way lead to an increase in attorneys' fees or expenses.

**IV.    Conclusion**

For the reasons set forth above, the Arkansas Funds Group's Motion for Appointment of Lead Plaintiff and Lead Co-Counsel will be granted, and Trevor Bixby's will be denied. An appropriate order follows.

 /s/ Gerald Austin McHugh  
United States District Judge
