## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE FIVE BELOW, INC. SECURITIES LITIGATION | Case No. 2:24-cv-03638-GAM<br><br>**ORAL ARGUMENT REQUESTED** |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT

**TROUTMAN PEPPER LOCKE LLP**

Jay A. Dubow (PA Bar No. 41741)
Erica H. Dressler (PA Bar No. 319953)
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Email: jay.dubow@troutman.com
Email: erica.dressler@troutman.com

Mary M. Weeks (admitted *pro hac vice*)
Hannah Baskind (admitted *pro hac vice*)
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30062
Telephone: (404) 885-3000
Email: mary.weeks@troutman.com
Email: hannah.baskind@troutman.com

*Counsel for Defendants*

Dated:  June 12, 2025

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT OR
      OMISSION ............................................................................................................ 2

      A.    Plaintiffs Do Not Allege Any False or Misleading Statement ............................. 2

            1.    The Trend-Right and Triple-Double Statements Constitute
                  Nonactionable Opinions, Corporate Optimism, or Puffery. ..................... 2

            2.    Defendants' Statements Are Forward-Looking and Protected
                  by the Safe Harbor. .................................................................... 5

      B.    Even if Any Alleged Misstatement Was Potentially Actionable,
            Plaintiffs' Claim Fails as They Have Not Pled Particularized Facts
            Supporting Falsity. ............................................................................ 6

            1.    Plaintiffs Have Failed to Meet the PSLRA's Exacting Pleading
                  Requirements. ............................................................................ 6

            2.    The CWs' General Anecdotes, Which Are Wholly
                  Disconnected from the Challenged Statements, Do Not Support
                  Falsity. .................................................................................... 9

      C.    Plaintiffs' Attempt to Rely on Subsequent Events Must Be Rejected. ................. 12

II.   THE AC FAILS TO ADEQUATELY PLEAD SCIENTER ........................................... 14

      A.    Plaintiffs Have Failed to Allege that Any Individual Defendant Acted
            with Knowledge or Reckless Disregard for the Falsity of His
            Statements. ............................................................................ 17

            1.    Plaintiffs Have Not Adequately Pled Contemporaneous
                  Knowledge to Support Scienter. ............................................... 17

            2.    The Core Operations Doctrine Adds Nothing to the Scienter
                  Calculus. .................................................................................... 23

            3.    Any Temporal Proximity Does Not Support a Finding of
                  Scienter. .................................................................................... 25

            4.    Resignation of Executives Does Not Lend to An Inference of
                  Scienter. .................................................................................... 27

      B.    Defendants' Sole Allegations of Motive Surrounding Compensation
            and Related Stock Sales Does Nothing to Support a Finding of
            Scienter. ............................................................................ 29

            1.    Defendants' Incentive Compensation Is No Motive for Fraud. ............... 29

            2.    Defendants' Stock Sales Cannot Support an Inference of
                  Scienter. .................................................................................... 33

      C.    The AC Fails to Separately Plead Scienter Against Five Below. ...................... 37

III.  THE AC FAILS TO ADEQUATELY PLEAD LOSS CAUSATION ............................ 38

IV.   PLAINTIFFS' SECTION 20(A) CLAIM AGAINST DEFENDANTS FAILS ............. 38

V.    THE COURT MAY CONSIDER EXHIBITS A, L, M AND P. ................................... 38

VI.   CONCLUSION ................................................................................................... 41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999).................................................................................19, 35

*In re Aetna Inc. Sec. Litig.*,
   34 F. Supp. 2d 935 (E.D. Pa. 1999) ...........................................................................26

*Alberici v. Recro Pharma, Inc.*,
   No. 18-CV-2279, 2021 WL 798299 (E.D. Pa. Mar. 1, 2021)...................................12

*Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*,
   744 F. Supp. 3d 355 (E.D. Pa. 2024) .........................................................................18

*Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*,
   532 F. Supp. 3d 189 (E.D. Pa. 2021) ...................................................................19, 24

*Ankele v. Hambrick*,
   286 F. Supp. 2d 485 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ...........24, 33, 37

*In re Apogee Enterprises, Inc. Securities Litigation*,
   No. 18-CV-3097, 2020 WL 1445856 (D. Minn. Mar. 25, 2020) ............................20

*In re Avon Prods., Inc. Sec. Litig.*,
   No. 05-CV-6803, 2009 WL 848017 (S.D.N.Y. Feb. 23, 2009), *report and
   recommendation adopted*, 2009 WL 10698359 (S.D.N.Y. Mar. 18, 2009) ...........36

*Baer v. Shift4 Payments, Inc.*,
   No. 5:23-CV-3206, 2024 WL 3836676 (E.D. Pa. Aug. 14, 2024) .........................28

*Baer v. Shift4 Payments, Inc.*,
   No. 23-CV-3206, 2025 WL 269715 (E.D. Pa. Jan. 22, 2025) ................................24

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430 (S.D.N.Y.2005)........................................................................27

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)...............................................................................31, 33

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) .......................................................................................9

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
   403 F. Supp. 3d 712 (D. Minn. 2019).......................................................................28

*In re Checkpoint Therapeutics Sec. Litig.*,
   No. 24-CV-2613, 2025 WL 1434400 (S.D.N.Y. May 19, 2025) .........................22, 23, 30, 37

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014).............................................................................................13

*In re Coinbase Glob., Inc. Securities Litigation*,
   No. 22-CV-0491, 2024 WL 4053009 (D.N.J. Sept. 5, 2024) ...........................................31, 35

*Connor v. Unisys Corp.*,
   No. 22-CV-4529, 2024 WL 387633 (E.D. Pa. Feb. 1, 2024) ................................................17

*In re Corrpro Sec. Litig.*,
   No. 02-CV-1198, 2003 WL 23138459 (N.D. Ohio May 27, 2003) ......................................27

*Cupat v. Palantir Techs., Inc.*,
   No. 22-CV-02384, 2025 WL 1141534 (D. Colo. Apr. 4, 2025)...........................................15

*Dang v. Amarin Corp. plc*,
   750 F. Supp. 3d 431 (D.N.J. 2024) .....................................................................................28

*DeVito v. Liquid Hldgs. Grp., Inc.*,
   No. 12-CV-6969, 2018 WL 6891832 (D.N.J. Dec. 31, 2018)..............................................15

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
   No. 19-CV-6180, 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .........................................22

*In re DVI, Inc. Sec. Litig.*,
   No. 03-CV-05336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) .........................................38

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
   595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010) .....................31

*Elam v. Neidorff*,
   544 F.3d 921 (8th Cir. 2008) .............................................................................................25

*Evanston Police Pension Fund v. McKesson Corp.*,
   No. 18-CV-06525, 411 F. Supp. 3d 580 (N.D. Cal. 2019) .....................................................32

*Fain v. USA Techs., Inc.*,
   707 F. App'x 91 (3d Cir. 2017) .....................................................................................22, 28

*In re Ferroglobe PLC Sec. Litig.*,
   No. 19-CV-00629, 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020).........................................22

*In re Fibrogen, Inc. Securities Litigation*,
   No. 21-CV-02623, 2022 WL 2793032 (N.D. Cal. July 15, 2022)..........................................32

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................................................35

*Hall v. Johnson & Johnson*,
  No. 18-CV-1833, 2019 WL 7207491 (D.N.J. Dec. 27, 2019) ..........................21, 23

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wis. 2009) ...................................................................37

*Hawes v. Argo Blockchain plc*,
  No. 23-CV-7305, 2024 WL 4451967 (S.D.N.Y. Oct. 9, 2024) ...............................29

*Head v. NetManage*,
  No. 97-CV-4385, 1998 WL 917794 (N.D. Cal. Dec. 30, 1998) ...............................37

*In re Hertz Glob. Hldgs. Inc.*,
  905 F.3d 106 (3d Cir. 2018) ...................................................................................28

*Hubiack v. Li-Cycle Holdings Corp.*,
  No. 23-CV-9894, 2024 WL 2943959 (S.D.N.Y. June 10, 2024) .............................36

*In re Initial Public Offering Sec. Litig.*,
  341 F. Supp. 2d 328 (S.D.N.Y.2004) ......................................................................40

*Inst. Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) .................................................................16, 26, 29

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................................28

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020) ...............................................................................37, 38

*Jaszczyszyn v. SunPower Corp.*,
  No. 22-CV-00956, 2024 WL 3463348 (N.D. Cal. July 17, 2024) ...........................26

*Kanefsky v. Honeywell International Inc.*,
  No. 18-CV-15536, 2020 WL 2520669 (D.N.J. May 18, 2020) ...............................19

*Kasilingam v. Tilray, Inc.*,
  No. 20-CV-03459, 2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) ..........................22

*In re K-Tel lnt'l, Inc. Sec. Litig.*,
  107 F. Supp. 2d 994 (D. Minn. 2000), *aff'd*, 300 F.3d 881 (8th Cir. 2002) ............34

*Key Equity Inv'rs, Inc. v. Sel-Leb Mktg., Inc.*,
  246 F. App'x 780 (3d Cir. 2007) ...............................................................................4

*Lewakowski v. Aquestive Therapeutics, Inc.*,
No. 21-CV-3751, 2023 WL 2496504 (D.N.J. Mar. 14, 2023)................................29

*Loc. 307, I.B. of Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
No. 10-CV-2847, 2011 WL 12855820 (N.D. Ala. June 7, 2011)....................30, 31

*Malin v. XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) .....................33

*Mallozzi v. Innovative Indus. Props., Inc.*,
No. 22-CV-2359, 2023 WL 6121499 (D.N.J. Sept. 19, 2023) ...............................30

*Marquez v. Bright Health Grp., Inc.*,
755 F. Supp. 3d 266 (E.D.N.Y. 2024) ...................................................................26

*Marsden v. Select Med. Corp.*,
No. 04-CV-4020, 2006 WL 891445 (E.D. Pa. Apr. 6, 2006) ................................34

*In re Marsh & McLennan Cos. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006)...................................................................23

*Mart v. Tactile Sys. Tech., Inc.*,
595 F. Supp. 3d 788 (D. Minn. 2022) ...................................................................35

*McDermid v. Inovio Pharms., Inc.*,
520 F. Supp. 3d 652 (E.D. Pa. 2021) ...................................................................34

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
No. 05-CV-1151, No. 05-CV-2367, 2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...................32

*In re Mylan N.V. Securities Litigation*,
No. 20-CV-955, 2023 WL 3539371 (W.D. Pa. May 18, 2023)................................7

*In re Newell Brands, Inc. Sec. Litig.*,
837 F. App'x 869 (3d Cir. 2020) ...........................................................................16

*In re Nice Systems, Ltd. Sec. Litig.*,
135 F. Supp. 2d 551 (D.N.J. 2001) .........................................................................5

*In re Novo Nordisk Sec. Litig.*,
No. 17-CV-209, 2018 WL 3913912 (D.N.J. Aug. 16, 2018) ................................27

*In re Ocugen, Inc. Sec. Litig.*,
No. 23-CV-1570, 2024 WL 1209513 (3d Cir. Mar. 21, 2024)................................41

*In re Omnicom Grp., Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008)...................................................................38

*Ortiz v. Canopy Growth Corp.*,
   537 F. Supp. 3d 621 (D.N.J. 2021) ........................................................................4

*In re Pareteum Sec. Litig.*,
   No. 19-CV-9767, 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)...........................27

*In re Party City Sec. Litig.*,
   147 F. Supp. 2d 282 (D.N.J. 2001) .......................................................................31

*In re PayPal Holdings Inc. Sec. Litig.*,
   No. 22-CV-586, 2025 WL 325603 (D.N.J. Jan. 29, 2025) .....................................5

*In re PDI Sec. Litig.*,
   No. 02-CV-0211, 2005 WL 2009892 (D.N.J. Aug. 17, 2005) ..............................40

*Pers. v. Teamsters Loc. Union 863*,
   No. 12-CV-2293, 2013 WL 5676802 (D.N.J. Oct. 17, 2013) ...................24, 33, 37

*In re Providian Financial Corporation Securities Litigation*,
   152 F. Supp. 2d 814 (E.D. Pa. 2001) .....................................................................3

*In re Radian Sec. Litig.*,
   612 F. Supp. 2d 594 (E.D. Pa. 2009) ...................................................................36

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013).................................................................................16

*Ressler v. Liz Claiborne, Inc.*,
   75 F. Supp. 2d 43 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 460 (2d Cir. 1999)...............36

*In re Rite Aid Corp. Securities Litigation*,
   No. 22-CV-04201, 2025 WL 968306 (E.D. Pa. Mar. 31, 2025)...................4, 23, 26

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015).....................................................................15

*Sapir v. Averback*,
   No. 14-CV-733, 2016 WL 554581 (D.N.J. Feb. 10, 2016) ...................................40

*Searls v. Glasser*,
   64 F.3d 1061 (7th Cir. 1995) ...............................................................................34

*SEC v. Airborne Wireless Network*,
   No. 21-CV-01772, 2023 WL 5938527 (S.D.N.Y. Sept. 12, 2023)........................36

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992)...........................................................................18, 22

*Sportsline.com Sec. Litig.*,
    366 F. Supp. 2d 1159 (S.D. Fla. 2004) ...................................................................27

*Steamfitters Local 449 Pension Fund v. Alter*,
    No. 09-CV-4730, 2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ..............................4

*Strougo v. Mallinckrodt Pub. Ltd. Co.*,
    No. 20-CV-10100, 2022 WL 17740482 (D.N.J. Dec. 16, 2022)...........................14

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)....................................................................................34

*In re Synchronoss Sec. Litig.*,
    705 F. Supp. 2d 367 (D.N.J. 2010) ........................................................................33

*In re Synchronoss Techs., Inc. Sec. Litig.*,
    No. 17-CV-2978, 2019 WL 2849933 (D.N.J. July 2, 2019)...................................30

*Tanaskovic v. Realogy Holdings Corp.*,
    No. 19-CV-15053, 2021 WL 211049 (D.N.J. Jan. 21, 2021) .................................16

*Tomaszewski v. Trevena, Inc.*,
    482 F. Supp. 3d 317 (E.D. Pa. 2020)  ..............................................................39, 40

*In re Toronto-Dominion Bank Sec. Litig.*,
    No. 17-CV-1665, 2018 WL 6381882 (D.N.J. Dec. 6, 2018)...............................8, 29

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    176 F. Supp. 3d 387 (D. Del. 2016)........................................................................26

*In re Urban Outfitters, Inc. Securities Litigation*,
    103 F. Supp. 3d 635 (E.D. Pa. 2015) .....................................................................19

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017)........................................................................6, 12, 17

*Wilson v. Bernstock*,
    195 F. Supp. 2d 619 (D.N.J. 2002) ........................................................................32

*Woolgar v. Kingstone Cos.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020).....................................................................37

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ....................................................................23

**Statutes**

15 U.S.C. § 78j(b) ("Section 10(b)") ..............................................................................5, 38

15 U.S.C. § 78t ("Section 20(a)") ................................................................38

15 U.S.C. § 78u-4(b)(4) ...............................................................................38

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................22

# INTRODUCTION[1]

Five Below—"a leading high-growth value retailer offering trend-right, high-quality products loved by tweens, teens and beyond," MTD, Ex. Q at 6—has time and again warned investors of numerous risks inherent in its business, including its potential inability to select and market merchandise profitably, successfully manage inventory shrinkage, and implement its growth strategy, *id*. at 18, 19, 25. In response to a few quarters of disappointing financials, Five Below revised its business strategy to meet market forces (*e.g.*, an industrywide spike in shrink) and shifting customer preferences (*e.g.*, "customers being 'far more deliberate with their discretionary dollars[2]'"). Plaintiffs now seek to contort the Company's candor with the market about its change of course into a securities fraud claim. Plaintiffs attempt to do so not through particularized facts suggesting any Defendant knew or should have known that Five Below's statements were false or misleading but, rather, by relying upon impermissible fraud-by-hindsight.

The Opposition confirms the faulty foundation from which Plaintiffs' claims are rooted. Plaintiffs rely solely on (1) later-in-time statements that Plaintiffs mischaracterize as purported admissions; (2) disjointed allegations from former employees who lacked company-wide knowledge and only had familiarity with a miniscule number of Five Below's stores; and (3) patchwork allegations of scienter falling far short of the strong inference required. Even taken together, these flawed premises cannot establish that Defendants made any false or misleading statement or that, at the time of any challenged statement, Defendants had actual knowledge that such statement was untrue. Without more, Plaintiffs' securities fraud claim cannot proceed.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in Defendants Memorandum of Law in Support of Their Motion to Dismiss Consolidated Amended Complaint, ECF 42 ("MTD").

[2] Lead Pls.' Memorandum of Law in Opposition to Defs.' Mot. to Dismiss the Consolidated Compl., ECF 43 ("Opp.") at 39 (quoting AC ¶ 270).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION

#### A.    Plaintiffs Do Not Allege Any False or Misleading Statement.

Plaintiffs fail to plead particularized facts that demonstrate any of Defendants' statements were false or misleading.  MTD at 16–25.  As Defendants explained in their MTD, many of the statements challenged by Plaintiffs do not constitute material misstatements or omissions as a matter of law because they are: (1) non-actionable opinions, statements of corporate optimism, or puffery; and/or (2) forward-looking statements protected by the PSLRA's safe harbor.  *Id.* at 10–16; *see also* Ex. A (Pls.' Appendix A, as modified to include Defendants' arguments).  Plaintiffs' arguments to the contrary are wrong.

#### 1.    The Trend-Right and Triple-Double Statements Constitute Nonactionable Opinions, Corporate Optimism, or Puffery.

The Trend-Right Statements and Triple-Double Statements are nonactionable opinions or puffery.  *See* MTD at 10–12.  Plaintiffs first contend the Trend-Right Statements are not puffery because they are "determinate, verifiable statement[s] of fact."  Opp. at 30.  Plaintiffs similarly assert that the Triple-Double Statements "have a factual basis, namely the timing of execution and nature of progress toward the Triple-Double goal."  *Id.* at 32.

As Defendants explained in their MTD,[3] certain Trend-Right Statements are textbook examples of nonactionable opinions or puffery because they simply tout the Company's qualities and characteristics using general descriptions as opposed to verifiable facts, *see* MTD at 11–12:

---

[3] Plaintiffs also are wrong when they represent that "Defendants' argument does not engage with the language or content of the particular statements."  Opp. at 30 n.10.  Pages 11 and 12 of Defendants' MTD described, and quoted at length, the statements challenged by Plaintiffs.  For example, on page 11, Defendants specifically quoted paragraphs 213 and 223 of the AC and also cited paragraphs 5, 28, 44–47, 49, 208, 211–13 of the AC, which challenged similar statements.

- "Our teams continue to move quickly to adjust to changing customer preferences," AC ¶ 211;

- "Trends were strong . . . we've really got a good cadence with those [trends], how to get into them, how to get out of them," *id.* ¶ 212;

- "[I]t's kind of part of the secret sauce of Five Below. And it's kind of in our DNA, and it's not only about getting into a trend, but also knowing how to land the plane and get out of it . . . And we're pretty nimble and quick . . . . When we identify something, we move really quick to get that in the store, test it and then push it out to the stores," *id.* ¶ 213;

- "We stay on top of hot trends and swiftly move to capitalize on them," *id.* ¶ 214; and

- "We monitor trends in the ever-changing tween and teen markets and are able to quickly identify and respond to trends," *id.* ¶ 215.[4]

Similarly, other Trend-Right Statements generally describe management's opinion about how Five Below embraces trend-right products in its business model to attract customers. *See* MTD at 11–12. Indeed, these statements do not even describe what a trend is but merely state that Five Below aims to source and deliver trend-right products:

- "[W]e love trends, that's what we're all about. It's really kind of the mindset that we have around those. We deal with this all the time," AC ¶ 213;

- "We deliver an edited assortment of trend-right . . . We have a highly planned merchandise strategy focused on trend-right," *id.* ¶ 215; and

- "Our broad-based sales performance and transaction trends demonstrate that we are gaining trips and customers through our amazing value, trend-right products and Five Beyond prototype," *id.* ¶ 216.

As this court has explained, statements such as "among the best in the business" may be puffery, while statements describing a ***specific*** number of new customers the company had

---

[4] Further, Plaintiffs' cited case suggesting the Trend-Right Statements are similar to other statements found actionable is easily distinguishable. In *In re Providian Financial Corporation Securities Litigation*, the court found a statement was actionable because defendant had ***omitted*** undisclosed business practices that plaintiffs alleged were the true cause of its financial success. 152 F. Supp. 2d 814, 824 (E.D. Pa. 2001). Here, in contrast, the AC does not allege that Five Below omitted undisclosed business practices relating to the Trend-Right Statements.

attracted may not constitute puffery. *Steamfitters Local 449 Pension Fund v. Alter*, No. 09-CV-4730, 2011 WL 4528385, at *6 (E.D. Pa. Sept. 30, 2011). Here, the non-actionable statements are vague and do not include any specific details about inventory or products.[5] For example, the AC challenges as actionable the statement: "[o]ur stores are stocked and ready with an amazing assortment of value products." AC ¶ 211. There is nothing alleged that belies the accuracy of this statement. Thus, rather than describing specific inventory levels, Defendants' Trend-Right Statements are classic puffery, merely subjectively describing the Company's business strategy and their opinions about Five Below's mission around delivering trend-right products. *See supra* at 2–3; *see also* Ex. A.

The Triple-Double Statements are similarly nonactionable statements of optimism or puffery as they simply describe Five Below's long-term growth strategy, *see* MTD at 12:

- "We are gaining momentum going into '23 and expect that to continue to grow," AC ¶ 253;

- "[We] feel extremely confident around the Triple-Double vision," *id.* ¶ 256; and

- "[O]ur focus on executing our store growth plans with excellence is unwavering," *id.* ¶ 298.

The court's recent decision in *In re Rite Aid Corp. Securities Litigation*, No. 22-CV-04201, 2025 WL 968306 (E.D. Pa. Mar. 31, 2025) makes as much clear. In *Rite Aid*, the court found that the "terms 'growth story' and 'strong growth' are extremely vague." *Id.* at *13. "These types of statements are in line with what other courts have deemed to be puffery." *Id.* (citing *Key Equity*

---

[5] *Ortiz v. Canopy Growth Corp.*, cited by Plaintiffs, *see* Opp. at 31, is factually irrelevant. There, the court found that defendant's statements included ***specific*** "factual assertions regarding sales prospects and inventory," when they stated that they "feel very good that we're balanced on high THC bud. We feel very good that we're ***balanced*** on low THC, high CBD bud. The mainstream bud which is the balance is what we call it. We're a little longer than what we'd like to be today." 537 F. Supp. 3d 621, 649 (D.N.J. 2021) (emphasis added).

*Inv'rs, Inc. v. Sel-Leb Mktg., Inc.*, 246 F. App'x 780, 785–86 (3d Cir. 2007) (finding statements about "strong revenue and earnings growth" to be puffery not giving rise to Section 10(b) liability); *In re PayPal Holdings Inc. Sec. Litig.*, No. 22-CV-586, 2025 WL 325603, at *21 (D.N.J. Jan. 29, 2025) (holding statements about "strong growth" inactionable as opinion or puffery); *In re Nice Systems, Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 580 (D.N.J. 2001) (holding statements predicting "another year of continuous growth" to be no more than mere puffery)).  Here, the Triple-Double Statements are in alignment with these terms—hyperbolic and vague statements about the Company's growth.  *See supra* at 4; *see also* Ex. A.

In all, the Trend-Right and Triple-Double Statements are nonactionable statements of opinion or corporate puffery and, thus, cannot support a claim under the PSLRA.

### 2.     Defendants' Statements Are Forward-Looking and Protected by the Safe Harbor.

Many of the statements challenged by Plaintiffs are forward-looking statements, which include financial "projection[s]," statements about "future economic performance," and "any statement of the assumptions underlying or relating to" any projection or plan, and are protected by the PSLRA's safe harbor.  MTD at 13.

Initially, the Trend-Right Statements, Shrink Statements, and Triple-Double Statements were contained in documents that included language identifying them as forward-looking.  *Id.*  For example, the majority of Defendants' Triple-Double Statements are forward-looking because they reflect the Company's plans for expansion and growth.  MTD at 13–14; *see, e.g.*, AC ¶ 254 ("We plan to open 200 new stores [in 2023] and expect to end the year with 1,540 stores or unit growth of approximately 15%."); *id.* ¶ 255 ("We now expect to reach a milestone of over 200 new stores this year, while building our pipeline for next year and beyond."); *id.* ¶ 258 ("As it relates to

- 5 -

tripling our stores by 2030, I repeat, nothing has changed.  We still . . . expect to triple our stores by 2030.").

These statements were also accompanied by meaningful cautionary language.  Plaintiffs' claim otherwise, Opp. at 35, is demonstrably wrong.  As Defendants established in their opening brief, disclosures referencing specific risk factors were made at the start of each earnings call. MTD at 15 (citing MTD, Ex. E at 1, Ex. J at 1 & Ex. K at 1).  Further, Plaintiffs ignore the many specific risk factors that were included in Five Below's public filings that directly relate to the Triple-Double Statements, such as Five Below's warning that its Triple-Double vision could potentially negatively impact its financial results and that it would be opening up new stores in markets with existing stores which could adversely affect its overall financial performance as a result of "inadvertent over-saturation of markets."  MTD at 15.  Accordingly, Defendants included specific cautionary language—whether referenced in the beginning of each earnings call or in public filings—warning about the specific risks which Plaintiffs now complain materialized.  This precludes any finding of a material misstatement.

**B.**     **Even if Any Alleged Misstatement Was Potentially Actionable, Plaintiffs' Claim Fails as They Have Not Pled Particularized Facts Supporting Falsity.**

    **1.**     **Plaintiffs Have Failed to Meet the PSLRA's Exacting Pleading Requirements.**

As the MTD established, the former employees' anecdotal, general, and vague allegations fail to meet the exacting pleading standards.  *See* MTD at 16–20.  Plaintiffs must plead "true facts" which could demonstrate how and why challenged statements are false and "cannot rely exclusively on hindsight."  *Id.* at 16 (quoting *Williams v. Globus Med., Inc.*, 869 F.3d 235, 244 (3d Cir. 2017)).  Recognizing that Plaintiffs cannot overcome this standard, Plaintiffs attempt to deflect and argue that the CWs tell a "coherent story."  Opp. at 23–25.  However, the CWs do not present

specific knowledge about a single topic or offer corroborating accounts.[6]  Rather, the CWs'
allegations relate to a number of different purported issues in addition to being anecdotal and
confined to a very small percentage of Five Below's approximately 1,600 stores.

The CWs' allegations that purportedly relate to the Company's Trend-Right Statements are
disconnected and span a wide variety of topics—certain CWs recalled issues with Five Below
having too little inventory, *see, e.g.*, AC ¶¶ 59, 78, whereas other CWs alleged that the Company
had too much inventory at certain points, *see id.* ¶ 90 (CW 6 alleging that "inventory became
extremely saturated"); *id.* ¶ 94 (CW 7 alleging that "his team frequently sat on extra inventory");
*id.* ¶ 81 (CW 4 alleging "his store had **no 'choice in what products it received'**") (emphasis
added).[7]  Another CW complained about the Company's inventory systems.  *Id.* ¶ 66 (explaining
CW 2 generally alleged that the Company "**did not have proper systems** in place for product
selection and inventory distribution") (emphasis added).  And, finally, a CW made vague
statements that his superior "received information about inventory."  *Id.* ¶ 87 (emphasis added).

The alleged statements of the CWs concerning shrink fare no better—some CWs claimed
that shrink posed less of an issue than other issues, such as the inability to stock trend-right
merchandise, *id.* ¶ 119, and "inventory control," *id.* ¶ 123.  One CW alleged that self-checkout was
the primary contributor to theft, *see id.* ¶ 120, whereas another CW complained that Five Below

---

[6] Plaintiffs rely heavily on *In re Mylan N.V. Securities Litigation*, No. 20-CV-955, 2023 WL
3539371 (W.D. Pa. May 18, 2023), to argue that the Court should credit the CWs' allegations
because they are consistent.  Opp. at 23–25.  However, the allegations in that case were very
different from the allegations here.  In *Mylan*, the former employees that plaintiffs relied on
allegedly had specific knowledge about a single topic that was directly related to the alleged
securities fraud.  2023 WL 3539371, at *5.  More specifically, the court found that all of the former
employees were "compliance-related employees . . . who would be qualified to speak on the
compliance and quality-control processes and procedures at [the company]."  *Id.*

[7] Indeed, it is unremarkable that the distribution of products to stores would be centrally decided
in a company with over 1,600 stores.

required employees to sign a contract that prevented them from doing anything if they witnessed theft, *id.* ¶ 122.  These statements do not contradict the statements made by Defendants concerning shrink.  And there simply is no coherent storyline alleged.

The CWs also do not tell a coherent story as to the Triple-Double Statements.  The CWs alleged a number of different purported issues, such as CW 8's perception that "when new stores opened, sales in comparable stores immediately dropped," *id.* ¶ 143, CW 7's general allegation that "it was known throughout the Company that Five Below's expansion plan was far too aggressive," *id.* ¶ 144, and CW 1's and CW 2's general observations that new locations had empty sections, *id.* ¶¶ 146, 147.  Simply put, the CWs that Plaintiffs rely on do not present ***any specific knowledge*** on a relevant topic or offer corroborating accounts and, thus, do not move the needle.

Moreover, Plaintiffs contend they need not produce a "source with nationwide knowledge" but, instead, can rely upon "markedly consistent allegations" from "low-level" employees.  Opp. at 27 (citing *In re Toronto-Dominion Bank Sec. Litig.*, No. 17-CV-1665, 2018 WL 6381882, at *7 (D.N.J. Dec. 6, 2018)).  However, Plaintiffs' cited authority explained that nineteen confidential witnesses who were "from multiple levels . . . ***not*** just the lowest levels" could be relied on.  *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *2, 7 (emphasis added).[8]  Accordingly, the CWs' unreliable allegations are insufficient to satisfy the exacting pleading requirements here.

---

[8] In their Opposition, Plaintiffs further attempt to misconstrue the AC's allegations, stating that "[CW]s attended calls with Anderson and saw him observe the issues first-hand, while others worked with Anderson's direct reports and were told what was said to or by Anderson."  Opp. at 27 (citing AC ¶ 88).  But Plaintiffs only allege that "[CW] 5 ***believed*** that Anderson 'knew about everything,'" AC ¶ 88 (emphasis added), which is conclusory and must be rejected, MTD at 18.

## 2. The CWs' General Anecdotes, Which Are Wholly Disconnected from the Challenged Statements, Do Not Support Falsity.

The AC is replete with "[g]eneric and conclusory allegations based upon rumor or conjecture [which] are undisputedly insufficient," MTD at 21 (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004)); *see, e.g.*, AC ¶ 64 ("understood" these issues were passed to upper management); *id.* ¶ 80 ("believed" that these issues were discussed); *id.* ¶ 90 (alleging Company did an "underwhelming job" on staying on top of trends). This approach should be rejected by the Court because the CW allegations do not establish the falsity of any challenged statement, as set forth in Defendants' MTD, *see* MTD at 16–25, and Plaintiffs' Opposition fails to refute that argument.

Plaintiffs also have not alleged an actionable misrepresentation regarding Trend-Right products. To demonstrate the supposed falsity of the Trend-Right Statements, Plaintiffs rely on the purported observations of five former employees—CW 1, CW 2, CW 3, CW 6, and CW 7. Apart from the fact that these former employees were lower-level employees who almost all lacked access to management and the Individual Defendants, only three of them actually observed stores—CW 1, CW 2, and CW 3.[9] Indeed, a careful read of Plaintiffs' allegations demonstrates they cannot support a finding that the Trend-Right Statements were false or misleading. For example, CW 1 generally stated that *some* stores—unidentified by geographic location, store number, or otherwise—"rarely stocked enough trending merchandise to meet customer demand." AC ¶ 59. Not only does this general statement fail to suggest that Five Below overall (*i.e.*,

---

[9] According to the AC's allegations CW 1, CW 2, and CW 3 were collectively involved with *at most* approximately 57 stores out of Five Below's 1,600 stores, or less than 3.6%, at various points in time. AC ¶ 58 ("[CW] 1 oversaw between 12 and 16 stores on the West Coast"); *id.* ¶ 63 ("[CW] 2 oversaw 16 locations in the Midwest"); *id.* ¶ 77 ("At the maximum [CW 3] had 25 stores that he was responsible for"; on average he had about 10 stores).

company-wide) did not "effectively identify consumer trends and efficiently and timely supply in-demand merchandise to its store locations," *id.* ¶ 43, it also gives rise to the logical inference that Five Below *was* effectively identifying trends because those products were in demand. Similarly, CW 2 only made the conclusory allegation that "Five Below had great difficulty identifying and stocking trending items that were in high demand." *Id.* ¶ 65. However, the majority of CW 2's observations were about an entirely different topic unrelated to any challenged statements—Five Below's alleged ability to track inventory and sales. *See, e.g.*, *id.* ¶¶ 66–76. Thus, Plaintiffs never identify true facts showing that the Company struggled to execute its trend-right strategy or had issues identifying, sourcing, or stocking trend-right products.

Plaintiffs have not alleged an actionable misrepresentation regarding Shrink Statements. Plaintiffs argue that, once the Company discussed shrink, "Defendants were obliged to discuss how those mitigation programs were 'deficient' and not serious." Opp. at 20 (citations omitted). However, Plaintiffs put the cart before the horse. As Defendants explained in their opening brief, Plaintiffs have not alleged a single fact suggesting that: (1) Defendants' statements about the amount of and impact of shrink were false; or (2) Defendants knew contrary information at the time the statements about shrink were made. MTD at 23.

Specifically, Plaintiffs complain that "Five Below never disclosed or quantified the actual impact of shrink-related losses," Opp. at 18 (citing AC ¶ 109), and that, on March 20, 2024, Defendants misrepresented that "lower-than-expected EPS was 'fully attributed to higher-than-planned shrink,'" *id.* (citing AC ¶ 103). But, as Kristy Chipman—Five Below's CFO—explained, "our guidance assumed a shrink headwind of 50 to 70 basis points in fiscal year 2023 and we expected our margins to [deliver] by approximately 10 basis points at the midpoint versus the prior year due to higher shrink, partially offset by both direct shrink mitigation and other expense

reductions." MTD, Ex. H at 6. However, "[a]ctual shrink levels for the full year came in at approximately 100 basis points higher than the prior year before accounting for approximately 30 basis points of true-up." *Id.* So, Five Below indeed disclosed the impact of shrink. MTD at 6–7. And the math is clear—had it not been for shrink, Five Below would have beaten the guidance.

Similarly, Plaintiffs have not alleged an actionable misrepresentation regarding the Triple-Double plan. Indeed, Plaintiffs' argument that the CW allegations demonstrate falsity regarding the Triple-Double Statements is deficient. More specifically, Plaintiffs are only able to point to two CWs who had any arguably relevant allegations about Defendants' purported problems regarding the Triple-Double strategy. Plaintiffs state that CW 3 and CW 8 alleged that "sales in comparable stores immediately dropped" when new stores opened[10] and that the Triple-Double strategy was unrealistic because stores were severely understaffed. Opp. at 22 (citing AC ¶¶ 123, 143, 145).[11] However, CW 3 and CW 8 were only District Managers who were responsible for approximately *20* stores between them—out of Five Below's 1,600 stores across the country—at a given time. *See* AC ¶¶ 77, 142. This general, conclusory allegation does not establish falsity.

The Court should similarly reject Plaintiffs' argument that Defendants' Triple-Double Statements were misleading because Defendants failed to mention concerns about the initiative. Plaintiffs contend that a company's "statements touting a business initiative's expansion [are] misleading where defendants 'fail [] to mention . . . significant concerns' about the initiative."

---

[10] This was a risk that Five Below specifically warned investors about. *See* MTD at 14 (Five Below would open up new stores in markets with existing stores and, although it has experience in these markets, this could adversely affect its financial performance due to "inadvertent over-saturation of markets" or diversion of customers and sales from existing stores) (citing MTD, Ex. I at 20).

[11] Plaintiffs also cite allegations from CW 1 and CW 2 that new locations did not have enough inventory, Opp. at 22, but these allegations are, at best, only tangentially related to the Triple-Double Statements.

Opp. at 22 (quoting *Alberici v. Recro Pharma, Inc.*, No. 18-CV-2279, 2021 WL 798299, at *8 (E.D. Pa. Mar. 1, 2021)). However, in *Alberici*, plaintiffs had alleged that a significant majority of 200 to 300 key opinion leaders had stated that they did not intend to use the drug at issue in certain procedures. 2021 WL 798299, at *2. The court found that those alleged concerns "could seriously impact the marketability of the drug" and that, if proven true, "a jury may reasonably find that the [challenged] [s]tatements are false or misleading." *Id.* at *8. Here, in contrast, Plaintiffs have failed to allege particularized facts suggesting that there were concerns with the Triple-Double strategy at the time the Triple-Double Statements were made. *See* MTD at 25. The only statements that Plaintiffs can point to are related to a decision that was made after the Class Period to change strategy. There is no evidence of any undisclosed concerns with the Triple-Double strategy during the Class Period. Consequently, Plaintiffs have failed to plead that any Triple-Double Statement was false or misleading.

### C.    Plaintiffs' Attempt to Rely on Subsequent Events Must Be Rejected.

As Defendants explained in their opening brief, the Court should reject Plaintiffs' improper fraud-by-hindsight theory attempting to misconstrue certain post-Class Period statements of Defendants as "admissions." MTD at 21–25. Plaintiffs have failed to allege any "admissions" by Defendants—indeed, on their face, none constitute anything of the sort. *Williams*, 869 F.3d at 244 (finding factual "allegations cannot rely exclusively on hindsight, but must be sufficient to show that the challenged statements were actionably unsound when made") (citations omitted).

As to the Trend-Right Statements, Plaintiffs' claimed "admissions" hinge on two statements concerning a "culmination of things over a period of years" and a loss of focus "[o]ver the past few years." Opp. at 5; AC ¶¶ 54, 194, 199. But these were ***not*** admissions of knowledge at the time when the alleged misrepresentations were made. Nor is this evidence that Defendants had knowledge in the past—quite the opposite, as it shows that Defendants did not have knowledge

during the Class Period but were reexamining the business following an earnings disappointment and the departure of the CEO.  Tellingly, Plaintiffs rely on a statement taken completely out of context and made ***by Deutsche Bank, not by Defendants***, to argue that Defendants admitted their statements blaming shrink were misleading.  In their Opposition, Plaintiffs state that, "[i]n calls with analysts in July 2024, management admitted that, rather than being caused by theft, a 'significant part of this year's top-line challenges is self-inflicted from less-than-exciting product assortment.'"  Opp. at 19 (quoting AC ¶ 188).  But the AC alleges that ***Deutsche Bank*** made that statement, not Defendants.  AC ¶ 188.[12]  Defendants also did not make any later-in-time admissions regarding Five Below's Triple-Double plan.  Defendants' post-Class Period statement that its expansion plan was "too aggressive"—made "[w]ith the benefit of hindsight"—does not support an inference that any statement relating to the Triple-Double Plan was false when it was made.  MTD at 25.  Consequently, Plaintiffs have failed to show how any purported "admissions" establish any falsity.

In any event, these so-called "admissions"—which are not actually admissions—cannot support a finding that any challenged statement was false or misleading.  Plaintiffs' allegations improperly contort and mischaracterize Defendants' statements.  For instance, Plaintiffs twist the following comment by Mr. Bull to contend that it was an admission: "what we got away from was the core part of our business around . . . trend product."  Opp. at 13 (quoting MTD, Ex. L at 8).  But Plaintiffs omit key language from the earnings call that shows this was not an admission that Five Below's Trend-Right Statements were false or misleading: "what we got away from was the core part of our business around ***preteens and teens, and really the mission for us in delivering***

---

[12] These cannot form the basis for liability because they were not made by any Defendant.  MTD at 10 n.8 (citing *City of Edinburgh Council v. Pfizer, Inc.,* 754 F.3d 159, 172 (3d Cir. 2014) ("Defendants cannot be held responsible for statements they did not make.")).

*an edited assortment*, trend product, *high-quality and extreme value in a fun and exciting environment*." MTD, Ex. L at 8 (emphasis added). As the full quote demonstrates, Mr. Bull was far from admitting that the Company's statements that it was able to effectively identify consumer trends and timely supply in-demand merchandise to its stores were false or misleading. Plaintiffs also assert that the Company's Executive Chairman, Tom Vellios, "admitted" that "over the past few years [Five Below actually] lost some of [its] sharp focus on our core customers," Opp. at 13 (quoting MTD, Ex. L at 4), and that this is somehow an admission that Defendants' Trend-Right Statements were false. Not only was this statement ***not*** an admission, but it also cannot support a finding of falsity as to the Trend-Right Statements. Mr. Vellios' statement made in hindsight discussed losing focus on core customers, but it did not address Five Below's ability to effectively identify trends and stock in-demand products in its stores. Plaintiffs' improper mischaracterizations must be rejected.

## II.    THE AC FAILS TO ADEQUATELY PLEAD SCIENTER

Plaintiffs have not pled a strong inference of scienter as cogent and at least as compelling as any opposing inference of nonfraudulent intent. MTD at 26. The Opposition tracks the hodgepodge of scienter allegations in the AC, but neither meets the PSLRA's heightened pleading standard for scienter. Rather than offer any compelling inference of scienter, Plaintiffs attempt to obscure the standard for scienter, arguing inaptly that "[i]t is not appropriate to 'divid[e] [plaintiff's] allegations into discrete parts and argu[e] that each part fails to give rise to sufficient scienter.'" Opp. at 37 (quoting *Strougo v. Mallinckrodt Pub. Ltd. Co.*, No. 20-CV-10100, 2022 WL 17740482, at *9 (D.N.J. Dec. 16, 2022)). But that is only true where defendants have not presented "plausible, nonculpable explanations for [their] conduct." *Strougo*, 2022 WL 17740482, at *9. That is not the case here as a more rational and compelling inference may be drawn from the AC—Defendants genuinely believed in the Company's strategy of being a trend-right retailer,

that shrink had a large and unexpected impact on its year end 2023 financial results, and that its

shrink mitigation tactics and its Triple-Double plan would benefit shareholders.  MTD at 36–37.

Thus, "[t]he most plausible inference" to draw is "that [D]efendants honestly believed their

descriptions of [the goals of the Company]," and the Court should afford this most plausible

inference due weight.  *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 546 (S.D.N.Y. 2015); *see* MTD

at 36–37.

Plaintiffs claim in several places that, when "coupled with the other allegations of scienter,"

Opp. at 40 n.16, the insufficiency of any particular allegation is somehow cured by the presence

of additional weak and unavailing allegations of scienter elsewhere.  Plaintiffs' lack of any real

scienter argument is laid bare by their allegations of so many weak and unavailing allegations

claiming scienter.  Plaintiffs then ask the Court to look at the scattershot patchwork of scienter

allegations holistically to create an otherwise non-existent scienter inference out of whole cloth.

"But the sheer number of ways Plaintiffs try to plead scienter actually underscores the fact that

none of them are that compelling."  *Cupat v. Palantir Techs., Inc.*, No. 22-CV-02384, 2025 WL

1141534, at *7 (D. Colo. Apr. 4, 2025).  "Pleading scienter is not an insurmountable task if facts

exist to support it.  The approach is to state with particularity what each Defendant did and why

the conduct rises to the level of scienter, rather than taking a shotgun approach in which Plaintiffs

attempt to overwhelm the court with conclusory, speculative and esoteric allegations."  *Id.* at *8.

Despite Plaintiffs asserting that an "inferential leap . . . must be drawn in Plaintiffs' favor

at this stage of the case," Opp. at 40, only "***reasonable*** inferences are drawn in favor of the

plaintiff" at the motion to dismiss stage, *DeVito v. Liquid Hldgs. Grp., Inc.*, No. 12-CV-6969, 2018

WL 6891832, at *12 (D.N.J. Dec. 31, 2018 (emphasis added).  And, in conducting the scienter

inquiry, the Court should consider ***all*** facts collectively and weigh "plausible opposing inferences"

to determine whether an inference of scienter is not merely reasonable but "cogent and at least as compelling as any opposing inference" one could draw from the facts alleged. *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013) (citation omitted).[13]

Plaintiffs also misconstrue Defendants' position as claiming "later in time" statements cannot be considered, Opp. at 39 (citing MTD at 31–32), and take the unremarkable position that "[p]ost-class-period data . . . [can] be used to confirm what a defendant should have known during the class period," *Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 249 n.13 (3d Cir. 2009). This is nothing more than a straw man. Defendants merely—and correctly—point out that "a plaintiff cannot 'rely on **conjecture based on subsequent events**,' but should instead cite contemporaneous sources." MTD at 10 (citing *In re Newell Brands, Inc. Sec. Litig.*, 837 F. App'x 869, 875 (3d Cir. 2020)) (emphasis added). To hold otherwise would be to permit impermissible fraud-by-hindsight. *See Tanaskovic v. Realogy Holdings Corp.*, No. 19-CV-15053, 2021 WL 211049, at *6 (D.N.J. Jan. 21, 2021) ("[A] purported claim of securities fraud based merely on information that became apparent after the fact, with no indication that the speaker was aware, or at least should have been aware ... at the time of his earlier statement, is [a] . . . 'fraud by hindsight' argument that the Third Circuit has long rejected as improper.") (citation omitted).

---

[13] Plaintiffs also challenge how often the Individual Defendants spoke on trend-right strategy and execution, shrink and shrink mitigation efforts, and Triple-Double plan as somehow bolstering an inference of scienter. Opp. at 41–42. But the more logical inference is that the Individual Defendants spoke about these issues because they believed in, and embraced, the Company's mission and strategy. *See supra* at 14–1 .

**A.    Plaintiffs Fail to Allege that Any Individual Defendant Acted with Knowledge or Reckless Disregard for the Falsity of His Statements.**

**1.    Plaintiffs Have Not Adequately Pled Contemporaneous Knowledge to Support Scienter.[14]**

Plaintiffs attempt in three ways to achieve the end of pleading contemporaneous knowledge: (1) Defendants' purported "admissions"; (2) alleged statements of three CWs (including only CW 1 and CW 5 as to inventory, and CW 7 as to the Company's growth plans); and (3) the Individual Defendants' "control over the entire Company."  None, whether taken individually or together, suffices to establish the strong inference of scienter required.

*First*, Plaintiffs have failed to plead that any Defendant knew that any statements about the Company's plans and strategy were false or misleading ***at the time made***.  *See* MTD at 30–33; *see also Williams*, 869 F.3d at 244 (finding plaintiff must plead "true facts" which could demonstrate how and why any statements are false and "cannot rely exclusively on hindsight").  "Although 'later developments ***may*** allow a reasonable inference that prior statements were untrue or misleading when made,' the Court 'cannot credit factual allegations, such as this, which do not rise above the speculative level.'"  *Connor v. Unisys Corp.*, No. 22-CV-4529, 2024 WL 387633, at *7 (E.D. Pa. Feb. 1, 2024) (emphasis added).  "The Amended Complaint does not allege specific facts about 'the inquiry the issuer did or did not conduct.'  It instead relies on 'conjecture based on subsequent events.'"  *Id.* at *8 (citations omitted).

Plaintiffs point to the unremarkable proposition that "[t]o adequately plead scienter, it is sufficient for plaintiffs to allege that defendants had knowledge of facts or access to information

---

[14] For instance, Plaintiffs oddly claim that there were concerns about the Triple-Double strategy "in 2021."  Opp. at 41.  But the Triple-Double strategy was not even unveiled until 2022.  AC ¶¶ 33–34 (explaining that on March 30, 2022, "[Mr.] Anderson announced Five Below's 'long-term vision,' which the Company named its 'Triple-Double' plan").

that contradicts their statements."  Opp. at 38 (citations omitted).  But that has not occurred.[15]

Here, the general disclosures highlighted by Plaintiffs about what they identified in their post-

Anderson departure lookback in July 2024 that uncovered revelations about the last "few years,"

"a period of years," "last several years," or even last "several quarters," *id.*, shed absolutely no

light on Defendants' knowledge at the time their statements were made—the only thing that

matters for purposes of the Court's inquiry here.

      As to the Trend-Right Statements, Plaintiffs contend that mismanagement can be the basis

of a securities fraud claim because "Defendants place[d] their management practices 'in play'

through affirmative statements."  Opp. at 40 (quoting *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272,

282 (3d Cir. 1992)).  The Third Circuit explained that where a defendant "address[es] the quality

of a particular management practice, a defendant declares the subject of its representation to be

material to the reasonable shareholder, and thus is bound to speak truthfully."  *Shapiro*, 964 F.2d

at 282 (explaining that management puts management practices "in play" when it "affirmatively

characterizes management practices as 'adequate,' 'conservative,' 'cautious,' and the like").  Here,

the alleged misrepresentations include that Mr. Anderson stated that trends "[are] kind of part of

the secret sauce of Five Below," and in the Company's "DNA," AC ¶ 213, and "[c]hasing trends

has always been a strength of ours," *id.* ¶ 223.  These allegations describe a Company's strategy,

*see* MTD at 22–23, and do not categorize management decisions, *cf. Shapiro*, 964 F.2d at 282.

      Similarly, Plaintiffs assert that Defendants admitted that the Triple-Double initiative was

"too aggressive and put a tremendous amount of pressure on the organization."  Opp. at 39 (quoting

---

[15] *Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*, *Transfer LP*, 744 F. Supp. 3d 355 (E.D.
Pa. 2024) is factually and legally inapposite.  First, the court was deciding a motion for ***summary
judgment***.  *Id.* at 355.  Second, the plaintiffs there had presented evidence detailing the defendants'
knowledge—the plaintiffs showed that the defendants received contemporaneous weekly reports
and updates contradicting their public statements.  *Id.* at 392.  Plaintiffs have failed to do that here.

AC ¶ 198).  But this was only "[w]ith the benefit of hindsight," MTD, Ex. L at 5, when Five Below was "reset[ting] the business," AC ¶ 198.  Finally, Mr. Anderson's so-called "admission" during the Class Period—on June 5, 2024—that Five Below "had '*noticed* some pressures over the *last several quarters*' regarding customers being 'far more deliberate with their discretionary dollars,'" likewise amounts to no such thing.  Opp. at 39 (emphasis added).  This is yet another factor that Five Below identified as affecting sales, and in no way suggests that shrink was a contributing— if not the primary—driver behind the disappointing financials during the Class Period.  Indeed, the comments had *nothing to do with* the Company's trend-right strategy, shrink, *or* the Triple-Double growth plan.[16]

Plaintiffs rely on *Kanefsky v. Honeywell International Inc.*, No. 18-CV-15536, 2020 WL 2520669, at *6 (D.N.J. May 18, 2020) for the proposition that purported admissions by Defendants "are evidence of Defendants' knowledge at the time of the misrepresentations and omissions." Opp. at 39.  But here there are no such admissions.  *See supra* at 17–18.  In *Kanefsky*, the

---

[16] Plaintiffs' case authorities suggesting the Individual Defendants' control over the Company supports an inference of scienter are inapposite.  For instance, in *In re Urban Outfitters, Inc. Securities Litigation*, the court found that plaintiffs' allegations gave rise to an inference of scienter because the individual defendants: (1) were directly involved in the company's business activities; and (2) also had knowledge of "*actual circumstances* that were *contrary* to their answers" in response to analyst questions and, thus, constituted omissions. 103 F. Supp. 3d 635, 653 (E.D. Pa. 2015) (emphasis added).  Here, Plaintiffs have not adequately alleged that Defendants had knowledge of *actual facts* that rendered their responses to *specific inquiries* from analysts false or misleading.  Similarly, in *Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*, the court acknowledged "[i]t is not enough that a plaintiff alleges that an individual defendant '*must have*' known something solely by virtue of his or her position with a company."  532 F. Supp. 3d 189, 228 (E.D. Pa. 2021) (quoting *In re Advanta*, 180 F.3d at 539) (emphasis added).  In that case, however, plaintiffs alleged specific facts that the individual defendants' allegedly knew about given their positions that suggested their statements were misleading when made.  *Id.* (describing how statements made by one individual defendant about pipeline projects were misleading because proffered timing was impossible given other projects not yet completed).  Here, Plaintiffs have failed to allege any specific facts that suggest the Individual Defendants' public statements were false or misleading; thus, those cannot support a finding of scienter.  Opp. at 41–42.

defendants admitted that they chose to truncate certain liabilities ***at the time*** not because the data was unreliable, as previously disclosed, but "based on what the data would have otherwise indicated." *Id.* at \*5. Here, instead, Defendants were engaging in "an operational and strategic refocus of [the] business" after reviewing the state of the business, which does not amount to contemporaneous knowledge. *See* AC ¶ 194; *see also id.* ¶ 198 ("focus again and go after the [other] initiatives").

Here, *In re Apogee Enterprises, Inc. Securities Litigation*, No. 18-CV-3097, 2020 WL 1445856 (D. Minn. Mar. 25, 2020) is particularly instructive. There, plaintiffs alleged the defendants made an admission in stating that as they "got more involved in the business in the second half of calendar year 2017," they "realized that the problems were more substantial than [they] learned in due diligence." *Id.* at \*9. The court found that "the facts alleged raise an inference that as [d]efendants learned more about problems, they disclosed them to investors," which "does not convert an allegation of fraud by hindsight into actionable fraud." *Id.* at \*9–10. Here, similarly, not a single statement by Defendants in the AC constitutes an admission by any Defendant that it had knowledge about information at the time it was disclosed and failed to disclose it. Thus, Plaintiffs try to morph backward-looking and hindsight statements into "admissions"—but that does not make it so.

At bottom, Defendants are not conceding there was any mismanagement, but, rather, there was a change in approach after the fact. Indeed, Plaintiffs' alleged "admissions" do not refute the statements made during the Class Period. For example, Five Below stating that it was refocusing on core customers says ***nothing*** about trend-right products. Likewise, the various alleged statements of CWs where they claim that they did not have enough inventory on shelves suggests that the stores ***did*** have trend-right merchandise and it was selling fast. Consequently, Defendants'

"admissions"—which are not admissions at all—fail to show that Defendants had actual knowledge of undisclosed material adverse facts contrary to their statements made during the Class Period. *See* MTD at 30–32.

*Second*, Plaintiffs' attempt to plead knowledge through CWs likewise founders. The purported knowledge does not at all contradict[17] statements made to the public. Plaintiffs' Opposition points to supposed examples of how the "[Individual] Defendants" (although in reality just Mr. Anderson, as alleged) had information "about Five Below's inability to align inventory with trends." Opp. at 40. But these examples are about how Five Below managed inventory, and have ***nothing*** to do with its ability to identify trend-right products.

For example, Plaintiffs cite to paragraphs 88 and 276 of the AC as examples, but there, Plaintiffs merely allege that the Company had an inventory tracking system, which Mr. Anderson had access to. AC ¶¶ 88, 276; *see supra* at 12–14. Far from related, the Trend-Right Statements were that trend-right products are "kind of part of the secret sauce of Five Below," *see id.* ¶¶ 46, 213, and "[c]hasing trends has always been a strength of ours," *id.* ¶ 223; *see also id.* ¶¶ 5, 28, 44–47, 49, 208, 211–23. Thus, the CWs' allegations about inventory management do not contradict—or even relate to—the Trend-Right Statements.

*Third*, Plaintiffs claim—wrongly—that an inference of scienter can be based merely upon the Individual Defendants' "control over the entire Company." Opp. at 42. That, again, cannot be the law because then every Individual Defendant would be perpetually in the crosshairs, staring down the barrel of a strong inference of scienter. Plaintiffs state in a conclusory fashion that, because the Individual Defendants "oversaw the operations and financial reporting function of

---

[17] Plaintiffs seeking to rely on public statements to demonstrate scienter must "demonstrate actual knowledge of the alleged falsity of [their] public statements." MTD at 32 (citing *Hall v. Johnson & Johnson*, No. 18-CV-1833, 2019 WL 7207491, at *79–80 (D.N.J. Dec. 27, 2019)).

Five Below," "they had access to—and a duty to obtain—information relating to the Company's operations." *Id.* However, courts have held that similar allegations are too speculative to support an inference of scienter. *See, e.g.*, *In re Ferroglobe PLC Sec. Litig.*, No. 19-CV-00629, 2020 WL 6585715, at *11 (S.D.N.Y. Nov. 10, 2020) ("[T]he Court finds too speculative the general allegation that the Individual Defendants, by virtue of their position as Chief Executive Officer and Chief Financial Officer, respectively, must have known the true facts of [the Company's] financial performance at the time of the . . . presentations."); *Shapiro*, 964 F.2d at 285 (a "boilerplate allegation that plaintiffs believe the necessary information 'lies in defendants' exclusive control'" is insufficient under Rule 9(b)).[18] But Plaintiffs cannot derive scienter from the fact that a defendant is a "key officer" who is well versed in a company's business. Opp. at 42–43; AC ¶¶ 277–78, 283. Plaintiffs' tenuous position is wholly "undermined by the assembled case law, which rejects the premise of *ex officio* omniscience of all business risks." *In re Checkpoint Therapeutics Sec. Litig.*, No. 24-CV-2613, 2025 WL 1434400, at *25 (S.D.N.Y. May 19, 2025) (citation omitted). Simply put, a claim that "by dint of being CEO, should have known"

---

[18] Somewhat on-brand here, Plaintiffs again admit that "executive positions on their own cannot satisfy scienter," while in the same breath stating that while it is an "unremarkable proposition" that this does not amount to scienter, somehow it is enough on its own to contribute to the collective. Opp. at 43 n.17. Not so. As even Plaintiffs know when they sit down to do the math: "zero plus zero (plus zero plus zero plus zero) cannot equal one." *In re Diebold Nixdorf, Inc., Sec. Litig.*, No. 19CV6180, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (granting dismissal on scienter grounds) (citation omitted); *see also* MTD at 36. Plaintiffs further argue that Defendants' cited case law does not apply here, Opp. at 43 n.17, but just like those cases, Plaintiffs are arguing that by virtue of Defendants' positions they had knowledge of the alleged falsities; for example, Plaintiffs allege that "[a]s COO," Mr. Bull had access to information about shrink, which does not say anything. *See, e.g.*, *Kasilingam v. Tilray, Inc.*, No. 20-CV-03459, 2021 WL 4429788, at *8 (S.D.N.Y. Sept. 27, 2021) ("[a]t best, Plaintiffs claim that '[b]y virtue of [his] position[ ],' [individual defendant] had knowledge of the alleged falsities"); *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 96 (3d Cir. 2017) ("Plaintiff's scienter arguments boil down to the assertion that Defendants must have known about [falsities], given their position at the company . . . .").

about the company's practices "is a classic, and impermissible, one of 'fraud by hindsight.'" *Id.* (citation omitted)).

Further, Plaintiffs inaptly point to Messrs. Anderson and Bull signing Form 10-Qs and 10-Ks during the Class Period as purported evidence of "access." Opp. at 42. But the fact that any Individual Defendant signed the Company's SEC filings "does not prove his scienter." *In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at *25. As a matter of policy, that simply cannot be as "[t]hat argument 'would allow plaintiffs to plead the scienter of whole classes of defendants solely by alleging a misstatement.'" *Id.* (citing *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 485 (S.D.N.Y. 2006)); *see also Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019) (collecting cases holding that signing SEC filings "add ***nothing*** substantial to the scienter calculus") (emphasis added).

## 2.    The Core Operations Doctrine Adds Nothing to the Scienter Calculus.

Plaintiffs also assert that Defendants' alleged misrepresentations "concerned the most significant aspects and initiatives of Five Below's business." Opp. at 43 (asserting alleged misrepresentations and omissions "involve matters that were central to the Company's operations"). But even where a court finds that a plaintiff has sufficiently alleged that the misstatements and omissions at issue touch upon the Company's "core operations," "the Court must also assess whether Plaintiff's core operations theory of scienter is supported by additional specific allegations that each of the Individual Defendants had access to specific information related to the alleged [misrepresentations]." *Hall*, 2019 WL 7207491, at *22 (citation omitted). Indeed, "[i]t is only when taken ***in addition to specific connections to an executive's knowledge***, that it can support an inference of scienter." *In re Rite Aid Corp. Sec. Litig.*, 2025 WL 968306, at *13 (emphasis added). Where that is lacking, as here, *see supra* at 16–23, the core operations doctrine adds nothing to the equation.

*First*, Plaintiffs' alleged misrepresentations do not concern Five Below's "core operations." MTD at 33–34. Plaintiffs argue that the trend-right strategy was part of the Company's core operations and that Defendants' authority does not apply here. Opp. at 43, 44 n.19. But *Baer v. Shift4 Payments, Inc.* explained that "***where*** [the company] gets the bulk of its revenue is a part of its core business. ***How*** [the company] incentivizes third parties to get that revenue is adjacent to its core business." No. 23-CV-3206, 2025 WL 269715, at *9 (E.D. Pa. Jan. 22, 2025) (emphasis added). Similarly, here, as Defendant Bull explained, which Plaintiffs attempt to misrepresent, the "***core part of our business***" is "***preteens and teens***," and how Five Below attracts these customers is through offering "an edited assortment, trend product, high-quality and extreme value in a fun and exciting environment." MTD, Ex. L at 8 (emphasis added). Plaintiffs further state without support that "[t]he Triple-Double plan was core to the Company's operations due to the impact of tripling the number of stores," *see* Opp. at 47, but that does not make it so. And Plaintiffs *affirmatively allege* that the Shrink Statements were *not* part of Five Below's core business. *See* AC ¶ 109 (alleging that Defendants only made "opaque references" to shrink); *see also* Opp. at 43–44.[19] Thus, alleged misrepresentations do not concern Five Below's core operations. *See* MTD at 33–34.

*Second*, Plaintiffs' sole citation to case authority is aligned on this point. Opp. at 43 (citing *Energy Transfer*, 532 F. Supp. 3d at 232 ("[M]isstatements and omissions made on core matters of central importance to the company and its high-level executives give rise to an inference of scienter ***when taken together with additional allegations connecting the executives' positions to***

---

[19] *See Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."), *aff'd*, 136 F. App'x 551 (3d Cir. 2005); *Pers. v. Teamsters Loc. Union 863*, No. 12-CV-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver.") (citation omitted).

*the knowledge*.")) (emphasis added).  And, here, Plaintiffs have failed to allege specific allegations

that the Individual Defendants had access to specific information—instead, they merely state "[i]t

is reasonable to **infer** that the [Individual] Defendants knew the Company was straying from its

trend-right strategy and the Triple-Double plan was straining management and causing a loss of

focus on trend-right issues."  Opp. at 44 (emphasis added).  Plaintiffs do not point to specific facts

that the Trend-Right Statements were not true—rather, they focus on inventory and other related

issues.  This is not enough, as it does nothing to establish specific knowledge on the part of the

Individual Defendants and, for this reason, fails to establish contemporaneous knowledge for the

reasons already discussed above.  *See supra* at 16–23.

Finally, Plaintiffs' tired argument that it does not matter that "the core operations doctrine

cannot satisfy scienter on its own" because there are so many other things that support scienter

once more should be rejected.  *Id.* at 43 n.18.  Enough is enough—even if that were true (and it is

not), Plaintiffs must still actually meet their burden rather than constantly obscuring it as they

attempt to do.  *See supra* at 14–16.

### 3.    Any Temporal Proximity Does Not Support a Finding of Scienter.

Plaintiffs assert that "[t]he temporal proximity between Defendants' misleading statements

and the revelation of the truth concealed by those statements **strengthens** the inference of scienter."

*Id.* at 44–45 (emphasis added) (citing AC ¶¶ 294–98).  Plaintiffs allege that because Defendants

allegedly "touted" the Company's trend-right strategy and expressed its commitment to the Triple-

Double strategy throughout the Class Period, this creates an inference of scienter.  AC ¶¶ 294–98.

Plaintiffs are wrong.  This again amounts to "nothing more than hindsight."  MTD at 35–36

(quoting *Elam v. Neidorff*, 544 F.3d 921, 930 (8th Cir. 2008)).  And Plaintiffs further misstate the

law—"[t]he proximity of corrective disclosures made on the heels of 'firm and rosy representations

of revenue, backlog, and realization' **may** strengthen circumstantial allegations of scienter, but it

'is **not sufficient by itself** to constitute scienter.'" *Marquez v. Bright Health Grp., Inc.*, 755 F. Supp. 3d 266, 284 (E.D.N.Y. 2024) (emphasis added); *see also In re Rite Aid Corp. Sec. Litig.*, 2025 WL 968306, at *13 ("[T]emporal proximity, without any other specific factual allegations, is not enough to sustain a finding of a strong inference of scienter."); *Jaszczyszyn v. SunPower Corp.*, No. 22-CV-00956, 2024 WL 3463348, at *13 (N.D. Cal. July 17, 2024).

Here, Plaintiffs allege that "Defendants' shift from blaming shrink on March 20, 2024 to mostly abandoning that excuse shortly afterward supports an inference of scienter for the March 20, 2024 statements." Opp. at 45 (citing AC ¶ 103).[20] But that was because Defendants' shrink mitigation strategy **was working** in reducing shrink. MTD, Ex. K at 14 (explaining that, as of June 4, 2024, Five Below has implemented shrink mitigation across the "entire chain namely around the shift from self-checkout to associate checkout," "[i]n addition to that, [in 70 store]s, we put in extra shrink mitigation," "[a]nd those 70 stores *saw even bigger declines than the stores that just had the associate checkout*") (emphasis added).[21] Indeed, once Defendants were initially surprised by elevated levels of shrink, they recognized the issue and that initial surprise did not recur to the same degree. As discussed above, if it had not been for shrink, Five Below would have beaten the guidance. *See supra* at 10.

---

[20] Plaintiffs' case authorities are inapposite as defendants in those cases released positive statements about the company's financials followed by the release of negative earnings shortly thereafter. *See Avaya*, 564 F.3d at 271–72; *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 953 n.10 (E.D. Pa. 1999); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 395–96 (D. Del. 2016).

[21] *See also* MTD at 7 (explaining that Five Below had "successfully implemented" move to associate-led checkouts, and it was still reacting to "early reads" of initial shrink mitigation efforts) (quoting MTD, Ex. K at 5–7); *id.* (explaining Mr. Anderson stated that "[s]o again, we put those self-checkout mitigations where we switch to associate checkouts more closer to the beginning of February" 2024) (quoting MTD, Ex. K at 11); *id.*, Ex. H at 8 (explaining "[w]e tested many shrink mitigation initiatives late in Q3 into Q4, [and] [t]he most significant change . . . was to limit the number of self-checkout registers that were open while positioning an associate upfront to further assist customers.").

Consequently, Plaintiffs still have failed to show Defendants knew their statements were false when made, undermining any temporal proximity argument.

### 4.  Resignation of Executives Does Not Lend to An Inference of Scienter.

Plaintiffs assert that "[t]he timing and circumstances of Anderson's resignation support an inference of scienter." Opp at 45.[22] But "Plaintiffs . . . alleged no facts linking the resignation of [Mr. Anderson] to the . . . [alleged] improprieties at [the Company]. In reality, there are any number of reasons that an executive might resign, most of which are not related to fraud." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 446 (S.D.N.Y.2005); *see also Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1172 (S.D. Fla. 2004) (plaintiffs failed to allege facts indicating that defendants resigned because they knew about or approved of any misconduct on the part of other employee); *In re Corrpro Sec. Litig.*, No. 02-CV-1198, 2003 WL 23138459, at *5–6 (N.D. Ohio May 27, 2003) (no inference of scienter created by departure of four CFOs when complaint did not establish any connection between job turnover and company's problems).[23]

It cannot be, and is not, the law that an inference of scienter is created in every case where an officer departs a company. Indeed, the Third Circuit, and other courts have found resignations

---

[22] Plaintiffs also allege that "[t]he sudden departure of [Mr.] Romanko closely following [Mr.] Anderson, and immediately on the heels of the issues revealed related to his role as Chief Merchandising Officer, further strengthens the inference of Defendants' scienter. Opp. at 46 n.22. Mr. Romanko announced his **retirement** from the Company in September 2024, which was not effective until November. *See* Five Below's Form 8-K, at 6 (Sept. 18, 2024), *available at*: https://www.sec.gov/Archives/edgar/data/1177609/000119312524221442/d868491d8k.htm. This was hardly sudden. Like Anderson, Plaintiffs have failed to allege any linking conduct between Messrs. Anderson's and Romanko's departures and the alleged fraud. *See In re BISYS*, 397 F. Supp. 2d at 447 ("[A]bsent any alleged facts linking the two resignations and the alleged fraud, the resignations of [two former executives] do not support an inference of conscious misbehavior or recklessness.").

[23] Plaintiffs' cited authority, Opp. at 46, is factually irrelevant. *See In re Novo Nordisk Sec. Litig.*, No. 17-CV-209, 2018 WL 3913912, at *4, *8 (D.N.J. Aug. 16, 2018) (finding evidence that individual defendants were "**fired**" and evidence of "share-based compensation structure" **together** contributes to a finding of scienter) (emphasis added); *In re Pareteum Sec. Litig.*, No. 19-CV-9767,

of key officers to be insufficient to show that they acted with the requisite scienter to commit the alleged fraud. *See In re Hertz Glob. Hldgs. Inc.*, 905 F.3d 106, 118–19 (3d Cir. 2018); *see also Dang v. Amarin Corp. plc*, 750 F. Supp. 3d 431, 477 (D.N.J. 2024) (holding mere fact that two executives left the company, "absent any allegation that they were in any way punished or censured, does not evidence scienter").

Here, fatally, "the allegations do not cogently suggest that the resignations resulted from the relevant executives' knowing or reckless involvement in a fraud." *Hertz*, 905 F.3d at 118–19 (finding resignations of three corporate executives, in proximity to company's public releases of bad news stemming from its accounting problems, did not materially add to an inference of scienter); *see also*, *e.g.*, *Baer v. Shift4 Payments, Inc.*, No. 5:23-CV-3206, 2024 WL 3836676, at *11 (E.D. Pa. Aug. 14, 2024) (finding CFO's resignation did not "add meaningfully to inference of scienter"). While it is true that "resignations or terminations ***might*** form a 'piece to the scienter puzzle,' . . . if, for example, a relatively contemporaneous and public firing is ***accompanied by extreme corporate punishment*** such as the denial of previously accrued benefits," that is not what occurred here. *Fain*, 707 F. App'x at 97 (emphasis added); *see also In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 347 (D.N.J. 2007) (stating that a termination can be "a piece of the scienter puzzle" ***only if*** accompanied by an "extraordinary corporate punishment measure" such as "denial of severance payment"). Rather, as the Company made clear, Mr. Anderson departed "to pursue other interests." MTD, Ex. A at Item 5.02 & Ex. 99.1. Far from admonishment, the Company

---

2021 WL 3540779, at *17 (S.D.N.Y. Aug. 11, 2021) ("The timing of terminations and resignations, ***in relation to the magnitude of corrections in a restatement***, also can be a strong inference of scienter . . . .") (emphasis added); *In re CenturyLink Sales Pracs. & Sec. Litig.,* 403 F. Supp. 3d 712, 734 (D. Minn. 2019) (explaining that defendant announced his "***early*** retirement several weeks after" the results of the investigation) (emphasis added). Here, there is no allegation that Mr. Anderson or Mr. Romanko were fired nor entered early retirement. There is similarly no allegation of a restatement here.

further stated: "We want to thank Joel for his contributions to Five Below and we wish him the best in the future."  *Id.*  Further, as publicly disclosed, Mr. Anderson departed to become CEO of Petco, further taking the wind out of the sails of any purported inference here.  MTD, Ex. P at 2.

Because Plaintiffs have ***failed to link*** the resignation to specific executives' knowledge or reckless involvement in the fraud, they have failed to plead any inference of scienter.  *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *18.  Rather, Plaintiffs broadly allege that Mr. Anderson's "resignation was announced in a press release that also revealed poor sales and lowered guidance."  Opp. at 45–46 (citing AC ¶ 290).  But that is wholly inadequate to demonstrate any link.  *See Hawes v. Argo Blockchain plc*, No. 23-CV-7305, 2024 WL 4451967, at *19 (S.D.N.Y. Oct. 9, 2024) (finding allegation that executive departures "broadly coincided with disappointing corporate announcements" "fail[ed] to tie" the departures to any evidence of fraud).  As Plaintiffs have failed to tie the departure to any evidence of fraud, neither Mr. Anderson nor Mr. Romanko's voluntary departure from the Company supports any inference of scienter.

### B.    Plaintiffs' Sole Allegations of Motive Surrounding Compensation and Related Stock Sales Do Nothing to Support a Finding of Scienter.

While motive cannot serve as "an independent means of establishing scienter," MTD at 26 (citing *Avaya*, 564 F.3d at 276–77; *Lewakowski v. Aquestive Therapeutics, Inc.*, No. 21-CV-3751, 2023 WL 2496504, at *11 (D.N.J. Mar. 14, 2023)), Plaintiffs nonetheless rely heavily upon it in attempting to plead an inference of scienter, Opp. at 46–50.  Motive can only be pled by showing "concrete and personal benefits to the individual defendants"—motives possessed by most corporate officers are not enough.  *See* MTD at 26 (citing *Avaya*, 564 F.3d at 278).

### 1.    Defendants' Incentive Compensation Is No Motive for Fraud.

Plaintiffs claim that Messrs. Anderson and Bull's incentive compensation structure supports an inference of scienter, Opp. at 46–47, and specifically that "[t]he Company's

performance-based stock compensation plan motivated [Messrs.] Anderson and Bull to make the false and misleading statements and omissions at issue" and that "[t]he substantial value of the PRSUs relative to Anderson's and Bull's base salaries contributes to their motive." AC at ¶¶ 299, 306; Opp. at 47. However, "[a] wall of case law blocks that argument." *In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at *20; *see also* MTD at 26–27. Courts within this Circuit have regularly recognized the same. *See* MTD at 26–27 (collecting cases); *see also, e.g.*, *In re Synchronoss Techs., Inc. Sec. Litig.*, No. 17-CV-2978, 2019 WL 2849933, at *16 n.12 (D.N.J. July 2, 2019) (noting "courts in the Third Circuit frequently reject such allegations as a basis to infer scienter" with respect to motive allegations based upon company's compensation system being tied to its performance, including revenue and operating income); *Mallozzi v. Innovative Indus. Props., Inc.*, No. 22-CV-2359, 2023 WL 6121499, at *12 (D.N.J. Sept. 19, 2023) ("[D]esire to maintain or increase executive compensation . . . cannot support an inference of scienter") (citation omitted). This is because, "[i]f scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at *19 (citation omitted); *see* MTD at 26–27.[24]

Further, here, Messrs. Anderson's and Bull's PSRUs were not solely tied to Five Below's stock price. Plaintiffs conveniently omitted this fact from the AC. AC ¶ 302. However, as the May 3, 2023 Proxy Statement clearly states, 50% of performance for an award of PSRUs is based

---

[24] And even Plaintiffs' cited authorities, Opp. at 47, do not compel any other result, recognizing that "incentive compensation, without more, may be insufficient to allege scienter." *Loc. 307, I.B. of Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 10-CV-2847, 2011 WL 12855820, at *8 (N.D. Ala. June 7, 2011).

on "the Company's relative total shareholder return performance against the Company's compensation per group," and 50% of performance for an award of PSRUs is based on "the Company's **three-year cumulative operating income** . . . as determined by the compensation committee." MTD, Ex. B at 8 (emphasis added). In contrast to the 50% of incentive compensation through PSRUs that was tied to stock price, operating income would not even arguably be impacted by statements to the public about Five Below's trend-right products, shrink, or its Triple-Double plan.[25] Thus, Plaintiffs' reliance on *In re Coinbase* should be rejected, as that case involved allegations that the defendant-CEO's entitlement to tranches of stock options depended solely on whether the company maintained stock prices following a direct listing. No. 22-CV-0491, 2024 WL 4053009, at *16 (D.N.J. Sept. 5, 2024).[26]

It also is of no import that Plaintiffs allege that Messrs. Anderson's and Bull's equity-based compensation in certain years was greater than their respective annual salaries, AC ¶ 306; Opp. at 47, where it is standard for "today's corporate executives [to be] compensated in terms of stock and stock options." MTD at 27 (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1424 (3d Cir. 1997); *In re Party City Sec. Litig.,* 147 F. Supp. 2d 282, 313 (D.N.J. 2001)). Courts routinely find allegations that executive compensation is tied to corporate earnings insufficient to support a strong inference of scienter because generally officers and directors have such motives.

---

[25] *See also Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253, 1275 (M.D. Fla. 2009) (finding bonuses based on "qualitative and subjective factors, including the pre-tax profitability of the Company, business development, operational performance, and other measures of efficiency appropriate to the officer compensated . . . yield no inference of scienter as to any defendant"), *aff'd*, 594 F.3d 783 (11th Cir. 2010).

[26] Plaintiffs also cite an out-of-circuit decision for the proposition that "compensation tied to company performance is a possible motive that may be considered, collectively, with the other allegations of scienter." Opp. at 47 (quoting *Loc. 307, I.B. of Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2011 WL 12855820, at *8). However, as described above, courts in the Third Circuit have squarely rejected that proposition. *See supra* at 30.

*See, e.g.*, *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, No. 05-CV-1151, No. 05-CV-2367, 2011 WL 3444199, at *26 (D.N.J. Aug. 8, 2011) (finding insufficient allegations of motive stemming from link between defendant's bonus and compensation and corporate sales and earnings); *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 635–36 (D.N.J. 2002) (rejecting allegations that defendants had ***potential*** to benefit because their compensation was directly tied to the reported financial performance of the company and holding "[i]t is by now well-established that such allegations, standing alone, are clearly be insufficient to support a strong inference of intent to defraud") (citations omitted).

Plaintiffs' cited authorities, Opp. at 47–48, do not compel any other result. In *Evanston Police Pension Fund v. McKesson Corp*., the two individual defendants received cash and stock awards amounting to ***9.6*** times and ***6.5*** times their base salaries, No. 18-CV-06525, ECF 43 at ¶ 190 (N.D. Cal Apr. 9, 2019), which the court held "***far*** outstripped their base salaries," 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019) (emphasis added). Similarly, in *In re Fibrogen, Inc., Securities Litigation*, both defendants' "salaries were merely a tenth of their other forms of compensation, most of which was stock and option awards," which "***far*** outweigh[ed] their salary." No. 21-CV-02623, 2022 WL 2793032, at *28 (N.D. Cal. July 15, 2022) (emphasis added). Here, ***at most***, Mr. Anderson received PSRUs that were three times his base salary, and Mr. Bull received PSRUs that were two times his base salary. AC ¶ 306. Thus, the relative size of Defendants' PSRUs does not "far" outweigh their base salary.

Finally, yet again, Plaintiffs attempt to distinguish one of Defendants' cases because "the court merely held that performance-based bonuses '***without more***' do not establish scienter." Opp. at 47 n.24 (emphasis added). This attempted shell game cannot be condoned—at some point, Plaintiffs actually have to point to something that in fact supports the desired inference.

2.    **Defendants' Stock Sales Cannot Support an Inference of Scienter.**

Plaintiffs unavailingly claim Defendants' stock sales support scienter where Mr. Anderson allegedly sold $7.5 million and Mr. Bull sold $1.5 million worth of stock, during the Class Period. *Id.* at 48. Plaintiffs argue these sales were significant to the analysis based upon: (1) they were "significant relative to [the Individual Defendants'] base salaries"; (2) neither sold **before** the Class Period; and (3) proximity to negative disclosures. *Id.* at 48–49. However, because Plaintiffs have failed to establish that any of the subject stock sales were suspicious, the AC fails to plead any inference of scienter. *See* MTD at 27–28; *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1424 ("[w]here plaintiffs choose to allege fraudulent behavior based on what they perceive as 'suspicious' trading, they have to allege facts that support that suspicion"); *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 415 (D.N.J. 2010) (explaining plaintiffs must show "insider's trades at issue are so heavily laden with suspicious circumstances that they suggest trades based on an abuse of confidential material information") (citation omitted).[27]

***Size of Stock Sales.*** Plaintiffs have not pled specific facts showing "that the trades were made at times and in quantities that were suspicious enough to support the necessary 'strong inference of scienter.'" MTD at 28. Plaintiffs allege that Mr. Anderson's stock sales in 2023 "were nearly triple" his base salary whereas his stock sales in 2022 and 2024 merely "exceeded" his base salaries. Opp. at 48; AC ¶ 313. Plaintiffs also allege that Mr. Bull, in 2022 only, "nearly double[d] his base salary" through stock sales. *Id.* at 48; AC ¶ 314. But this is not enough. *See Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 156 (D. Conn. 2007) ("Although the profits realized by the Individual Defendants from their stock sales were large relative to their base salaries, 'these

---

[27] Indeed, Plaintiffs' failure to address the magnitude of Defendants' stock sales further undercuts a finding of scienter. *See* MTD at 28; *see also Ankele*, 286 F. Supp. 2d at 496; *Pers.*, 2013 WL 5676802, at *2.

proceeds . . . were an intended part of their overall compensation package.'") (citations omitted), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).[28]

***Absence of Prior Sales.***  Plaintiffs assert that "[c]ourts hold that stock sales during the Class Period that substantially exceed comparable pre-class sales may contribute to scienter." Opp. at 48.  However, as Plaintiffs' authority explains, this applies when defendants sell stock "at a time when [the Company's] stock was artificially inflated by inventor's optimism . . . —an optimism [defendants] knew was unfounded." *McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 654 (E.D. Pa. 2021).  But, as Plaintiffs fail to address, Mr. Anderson ***acquired*** shares on September 8, 2023 for $218.96 per share (and, thus, also acquired shares at a purportedly "artificially inflated" price).  MTD at 28–29.  These facts ***negate*** any inference of scienter.  *See In re K-Tel lnt'l, Inc. Sec. Litig.*, 107 F. Supp. 2d 994, 1005 (D. Minn. 2000) (finding defendant's class period stock purchase "further erodes Plaintiffs' arguments of Defendants' fraudulent intent to artificially inflate stock prices"), *aff'd*, 300 F.3d 881 (8th Cir. 2002); *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) (finding plaintiffs' theory of "suspicious sales" was "undermined by evidence showing that over the course of the class period" defendant acquired more of his company's shares, "a position unlikely to be taken by an insider who has unpublished knowledge of the company's slowdown").

Additionally, Plaintiffs also contend that "courts hold that stock sales taking place shortly after false statements may support an inference of scienter."  Opp. at 49.  "But suspicious timing of stock sales 'is insufficient to establish a strong inference of scienter in the absence of ***any other***

---

[28] Plaintiffs' cited authority compels the same result.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 278 (3d Cir. 2006) ("[t]he sales [defendant] made netted him over ***four*** times his annual salary") (emphasis added); *Marsden v. Select Med. Corp.*, No. 04-CV-4020, 2006 WL 891445, at *17 (E.D. Pa. Apr. 6, 2006) (explaining the stock sales were ***12.4 times, 25.5 times, 10.4 times, and 66 times*** each defendants' base salary).

*information* indicating unusual insider trading.'" *Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 820 (D. Minn. 2022) (emphasis added).  For instance, in *Mart*, the plaintiffs "allege[d] other information suggesting insider trading," including that the defendant was a member of certain committees which "had documented a high business risk from kickbacks."  *Id.*  And, in *In re Coinbase Glob., Inc. Securities Litigation*, the defendant had "sold over 1.6 million shares netting gross proceeds *over $600 million*."  2024 WL 4053009, at *16 (emphasis added).  Plaintiffs have failed to allege "any other information" here, and instead, have merely alleged that "Defendants' sales we[re] suspicious given the proximity to false statements."  Opp. at 48–49.

**_Other Unsuspicious Plausible Inferences._**  It is well established that where, as here, "insiders increase their stock holdings during the Class Period, it weakens the allegations of suspicious insider trading."  MTD at 28 (collecting cases).  Overall, Messrs. Anderson and Bull increased their stock ownership during the Class Period from 59,415 shares to 77,748 shares and 78,364 shares to 85,932 shares, respectively.  *Id.* at 28 (citing MTD Exs. R–U).  However, Plaintiffs contend that increases in stock holding due to stock grants do not detract from scienter.  Opp. at 49–50.  But Defendants' respective net stock *increases* demonstrate that the Defendants had an incentive to keep the Company profitable and did not possess any motive to capitalize on allegedly inflated stock price.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 540–41 (3d Cir. 1999) (explaining a far more reasonable inference when insiders hold a sizable percentage of stock even after sales is that they "ha[ve] every incentive to keep the [Company] profitable").[29]

---

[29] Plaintiffs' citation to *Freudenberg v. E*Trade Fin. Corp.*, *see* Opp. at 50 n.31, is unavailing as, there, plaintiffs alleged that defendant was aware of or had access to information contrary to their public statements when they acquired "shares at no cost" and, thus, "may have believed that he could eventually sell his shares at a profit by continuing to hide the fraud or by resolving undisclosed problems without the public learning of the true facts."  712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010).  Plaintiffs do not allege this type of factual scenario here.

Next, it is elementary that a stock sale to cover tax obligations undermines any inference of scienter.  MTD at 29 (collecting cases); *see also Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1998) (recognizing that a stock sale that coincides with an impending tax increase may weigh against an inference of scienter), *aff'd*, 189 F.3d 460 (2d Cir. 1999); *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 611 (E.D. Pa. 2009) (no strong inference of scienter where "the Form 4 for that transaction states that the 5,040 shares [defendant] sold were sold to 'cover taxes on a tranche of restricted stock that vested'").  Despite such well-established case law, Plaintiffs argue that "sales proceeds used for tax purposes still benefit the seller and can support scienter."  Opp. at 50.  Plaintiffs rely on *SEC v. Airborne Wireless Network* for this proposition, but, there, defendant's sale proceeds were specifically used to fund "their ***real estate purchases and*** tax liabilities."  No. 21-CV-01772, 2023 WL 5938527, at *26 (S.D.N.Y. Sept. 12, 2023) (emphasis added).  No such allegation exists here.

***Proximity to Negative Disclosures.***  Plaintiffs contend that "Defendants point to the gap in time between Defendants' stock sales and the corrective disclosures at the end of the Class Period," but this is "not dispositive" and "is just one factor some courts look to."  Opp. at 50 (citing MTD at 29–30).  However, Plaintiffs' allegations fail to establish that these were corrective disclosures.  MTD at 37–38.  And, "[c]ourts routinely hold that such an attenuated gap between stock sales and corrective disclosures sap an inference of scienter."  *Hubiack v. Li-Cycle Holdings Corp.*, No. 23-CV-9894, 2024 WL 2943959, at *9 (S.D.N.Y. June 10, 2024) (citations omitted).  Plaintiffs' argument unabashedly ignores that "[t]he prototypical example of a pattern of stock sales reflecting the requisite intent involves sales ***shortly before*** the public disclosure of negative information."  *In re Avon Prods., Inc. Sec. Litig.*, No. 05-CV-6803, 2009 WL 848017, at *22 (S.D.N.Y. Feb. 23, 2009) (emphasis added), *report and recommendation adopted*, 2009 WL 10698359 (S.D.N.Y.

Mar. 18, 2009). Here, Plaintiffs allege that Defendants sold stock about 3 months, 18 months, and 21 months before any alleged corrective disclosures. AC ¶ 308. Try as they may, Plaintiffs cannot fit a square peg in a round hole. "[S]uch an attenuated gap between stock sales and corrective disclosures saps an inference of scienter." *In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at *21 (citations omitted). Where, as here, stock sales are "more than ***two*** months before the announcement in question," they are "***not*** indicative of scienter." *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 235 (S.D.N.Y. 2020) (emphasis added); *see also*, *e.g.*, *Head v. NetManage*, No. 97-CV-4385, 1998 WL 917794, at *4 (N.D. Cal. Dec. 30, 1998) (holding sales two months before announcement not suspicious); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 985, 1002 (E.D. Wis. 2009) (holding sales of 35% of CEO's holding nine months before "the market became aware of the defendant's fraudulent actions" not suspicious).[30]

Consequently, Plaintiffs pled no motive to support scienter. And, as discussed above, Plaintiffs' allegations do not support a finding of any scienter by any of the Defendants. *See* MTD at 26–36.

### C.    The AC Fails to Separately Plead Scienter Against Five Below.

Plaintiffs claim that scienter can be imputed by the Individual Defendants on the Company. Opp. at 50. That is not correct. The Company's scienter is derivative, and Plaintiffs' failure to allege scienter as to any Individual Defendant is decisive of a lack of scienter as to the Company. *See In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at *28 n.16; *see also Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) ("Where a defendant is a corporation, [plaintiff must]

---

[30] Plaintiffs also wholly fail to address Defendants' argument that an expansive class period cuts against any inference of scienter from stock sales. *See* MTD at 30. The failure to raise any argument to rebut this dispositive issue concedes the point. *See Ankele*, 286 F. Supp. 2d at 496; *Pers.*, 2013 WL 5676802, at *2.

plead facts that give rise to 'a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.'").  Plaintiffs do not, however, claim this is "one of those 'exceedingly rare instances' of such 'dramatic' fraud that 'collective corporate scienter may be inferred' in the absence of scienter on the part of an individual defendant." *Id*.

## III.    THE AC FAILS TO ADEQUATELY PLEAD LOSS CAUSATION

Plaintiffs have failed to meet their burden "of proving that the act or omission of the [D]efendant[s] . . . caused the loss for which the plaintiff seeks to recover damages" under the PSLRA.  MTD at 37 (citing 15 U.S.C. § 78u-4(b)(4)).  Initially, Plaintiffs assert that their "allegations . . . show that the corrective disclosures are causally connected to the earlier misrepresentations."  Opp. at 56.  But, as the MTD established, conclusory allegations do not hold weight.  MTD at 37 (citing *In re DVI, Inc. Sec. Litig.*, No. 03-CV-05336, 2010 WL 3522090, at *6 (E.D. Pa. Sept. 3, 2010)).  Plaintiffs further rely on Mr. Anderson's departure as evidence of loss causation, asserting that "Anderson's departure *coincid[es]* with a rapid decline in performance."  Opp. at 56–57 (emphasis added).  However, "a director's resignation cannot constitute a corrective disclosure when the resignation is *not* connected to the alleged fraud."  MTD at 39 (emphasis added) (citing *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 553 (S.D.N.Y. 2008)).  There are no factual allegations of any connection between Mr. Anderson's departure and the allegations of fraud.  Consequently, the AC has failed to plead loss causation.

## IV.    PLAINTIFFS' SECTION 20(A) CLAIM AGAINST DEFENDANTS FAILS

As the AC fails to allege a Section 10(b) claim, the Section 20(a) claim also should be dismissed.  *See* MTD at 39.

## V.    THE COURT MAY CONSIDER EXHIBITS A, L, M AND P.

Defendants rely on publicly available documents, including SEC filings and press releases, of which the Court may—and should—take judicial notice.  MTD at 3 n.4.  While Plaintiffs assert

that "Defendants ask the Court to take judicial notice of 22 exhibits falling into two broad categories," Opp. at 10, Plaintiffs only challenge Defendants' use of Exhibits A, L, M, and P, asserting that Exhibit A is used to raise factual disputes and that Exhibits L, M, and P are being used by Defendants to establish the truth of their contents. *Id.* at 10–11. Plaintiffs are wrong— Exhibits A, L, M, and P may be considered by this Court (as well as all of Defendants' exhibits).

Plaintiffs admit that "the Court may consider [Defendants'] documents," Opp. at 10, while at the same time specifically complaining that Defendants' Exhibit A, the July 16, 2024 Press Release—noting that the "reason Mr. Anderson resigned was to 'pursue other interests'"—is somehow off-limits. MTD, Ex. A at Item 5.02 & Ex. 99.1. However, Plaintiffs cite the ***exact same*** press release for the premise that Mr. Anderson resigned. AC ¶ 6 ("just a few weeks before the Company's announcement of Mr. Anderson's departure"); *id.* ¶ 291 ("[Mr.] Anderson resigned 'effective immediately.' There is no indication that his departure was a planned event."). Plaintiffs cannot on the one hand cite to certain disclosures in a document and at the same time ask the Court to turn a blind-eye to the substance right next to it in the same document. Indeed, as noted in Plaintiffs' own authority, "[t]he purpose of the integral documents exception is to avoid the situation where a plaintiff 'selected only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 328 (E.D. Pa. 2020).[31]

Further, Plaintiffs initially complain that Defendants have submitted exhibits incorporated into the complaint by reference "not to note their existence, but to raise factual disputes concerning

---

[31] The AC—and Opposition, for that matter—both reference that Mr. Anderson's "resignation was announced in a press release." Opp. at 45–46 (citing AC ¶ 290). However, inexplicably, Plaintiffs elsewhere claim they do not rely on said press release, which Defendants cite as Exhibit A to the MTD. *Compare id.*, *with* Opp. at 11 (claiming "Defendants offer a press release not relied on in the Complaint"). Plaintiffs cannot have it both ways.

Plaintiffs' allegations." Opp. at 10.[32] But courts should ***not*** accept a complaint's conclusory allegations over facts from an integral document. *In re PDI Sec. Litig.*, No. 02-CV-0211, 2005 WL 2009892, at *21 (D.N.J. Aug. 17, 2005) ("When allegations contained in a complaint are contradicted by the document it cites, the document controls.") (citation omitted). Plaintiffs further contend that exhibits not incorporated by reference (*i.e.*, Exhibits L, M, and P) can only be used to "establish the truth of their existence, not the truth of their contents." Opp. at 10 (citation omitted). Not so. Allegations that are "no more than conclusions," as here, "are not entitled to the assumption of truth. This is especially true when the allegations are directly contradicted by 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice,' such as SEC filings, press releases, and earnings call transcripts." *Sapir v. Averback*, No. 14-CV-733, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016) (citations omitted).[33]

At bottom, the dispute here is between fact and unsupported conclusion, not between different "version[s] of the facts," *Trevena*, *Inc.*, 482 F. Supp. 3d at 329, and, thus, the Court can consider the exhibits attached to the MTD and should not accept Plaintiffs' conclusory allegations.

---

[32] *Trevena, Inc.* merely holds that courts may not consider extrinsic documents if a plaintiff could not access the document's contents when drafting the complaint. 482 F. Supp. 3d at 328. There, the court struck certain exhibits that the defendants attached to a motion to dismiss as the exhibits, though cited in the complaint, were ***confidential*** and ***not previously disclosed to the public***. *Id.*

[33] While Plaintiffs complain about Defendants' cite to a Wall Street Journal article, *see* Opp. at 10–11 (citing MTD at 6 n.6, Ex. M), the Court can consider that the public was aware of shrink on an industrywide basis, *see In re Initial Public Offering Sec. Litig.*, 341 F. Supp. 2d 328, 345 (S.D.N.Y.2004) ("[a] plaintiff in a securities fraud case 'is charged with knowledge of publicly available news articles and analyst's reports'"). Plaintiffs again attempt to have it both ways, citing to an article about shrink in the AC while seeking to block Defendants from the same. AC ¶ 104.

## VI.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the AC should be dismissed in its entirety with prejudice.[34]

June 12, 2025

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

/s/  Jay A. Dubow
Jay A. Dubow (PA Bar No. 41741)
Erica H. Dressler (PA Bar No. 319953)
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Email: jay.dubow@troutman.com
Email: erica.dressler@troutman.com

Mary M. Weeks (admitted *pro hac vice*)
Hannah Baskind (admitted *pro hac vice*)
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30062
Telephone: (404) 885-3000
Email: mary.weeks@troutman.com
Email: hannah.baskind@troutman.com

*Counsel for Defendants*

---

[34] Plaintiffs' perfunctory one-line request for leave to amend without any detail is deficient, Opp. at 58, as Plaintiffs have "failed to suggest any factual developments that would cure the deficiencies of the [AC]."  *In re Ocugen, Inc. Sec. Litig.*, No. 23-CV-1570, 2024 WL 1209513, at *6 (3d Cir. Mar. 21, 2024).

- 41 -

# EXHIBIT A

## RESPONSE TO PLAINTIFFS' APPENDIX A

For ease of reference, Defendants have copied Plaintiffs' Appendix A in its entirety below, *see* Opp. Br. at Ex. A. Defendants do not agree with or concede any points or characterizations of Defendants' arguments in Plaintiffs' Appendix A which has been copied below.  Nor do Defendants waive any arguments in their opening brief in support of their Motion to Dismiss and/or reply in support of their Motion to Dismiss.  Defendants have added a column, labeled as "**Defendants' Response**," in blue to respond to Plaintiffs' arguments.

### Chart of False And Misleading Statements[1]

| | **Statement/Source** | **Defendants' Arguments** | **Plaintiffs' Response** | **Defendants' Response** |
|---|---|---|---|---|
| **Trend-Right Statements** | | | | |
| 211 | Defendant Anderson: "***Our stores are stocked and ready with an amazing*** | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right | Not puffery: Statement of verifiable fact (stores were "stocked and ready"); Defendants' repeated emphasis on this issue shows | Puffery:  Not a verifiable fact; describing the Company's general opinion that it has identified products that its |

---

[1] All defined terms have the same means as in Plaintiffs' accompanying Memorandum. "¶," refers to the paragraphs of the Amended Complaint, and references to "§" are to the various sections of Plaintiffs' Memorandum.

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | *assortment of value products that promises to delight our customers*…. [W]e're also excited for *Five Beyond* to provide *new and extreme value products in different categories*." <br><br> November 30, 2022 Earnings Call | Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | materiality to investors (§ IV.C.); <br><br> Not forward-looking: Mixed statement of present fact with forward-looking elements ("our stores *are* stocked and ready") (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and <br><br> Falsity adequately alleged: Statement was false or misleading when made. | customers will want and corporate optimism about Five Beyond. MTD at 11-12 (citing AC ¶ 211). <br><br> Forward-looking subject to Safe Harbor: Describes what Five Below is excited for in the future and thus a forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | Statements were false. MTD at 22–23; Reply at 9–12. |
| 211 | Defendant Bull: "***Our teams continue to move quickly to adjust to changing customer preferences***." November 30, 2022 Earnings Call | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (explains what teams were doing); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); Not Forward-Looking: Mixed statement of present fact with forward-looking elements (described what the teams had done and were "continu[ing] | Puffery:  Not a verifiable fact; describing in general terms the Company's business strategy for quickly identifying products in response to customer preferences. MTD at 11 (citing AC ¶ 211). Forward-looking subject to Safe Harbor:  Forward looking statement |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | to" do at the time of the statement) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and | identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 212 | Defendant Anderson: "[I]t was a very good holiday. **Trends were strong,** Squishmallows, Slime Lickers, Hello Kitty. And I think that's something that – I've been here eight years now, **we've really got a good cadence with those [trends], how to get into them, how to get out of them.**" | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (claims trends were "strong" and describes specific products that were supposedly doing well, and describing "cadence" of getting into and out of trends); Defendants' repeated emphasis on this issue shows materiality to investors; Statement was directly in response to an analyst question (§ IV.C.);<br><br>Not Forward-Looking: Statement of present or past facts as opposed to future projections (describes past events – "[t]rends were strong" | Puffery:  Not a verifiable fact; generally describing the Company's business strategy for identifying products and adjusting based on trends.  MTD at 11 (citing AC ¶ 212).<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | January 9, 2023 ICR Conference | | – and present capability "we've got a good cadence") (§ IV.D.); <br><br> No Safe Harbor: Cautionary language absent and not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as | Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |

| | **Statement/Source** | **Defendants' Arguments** | **Plaintiffs' Response** | **Defendants' Response** |
|---|---|---|---|---|
| | | | corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 213 | Defendant Anderson: "[I]t seems like we're always talking about trends. And I think it all goes back to '17 with that [fidget] spinner year…. But from the beginnings of those times to now, it's really – it's kind of **part of the secret sauce of Five Below. And it's kind of in our DNA,** and **it's not** | Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient.<br><br>Defendants cite this statement as an example of puffery and "strategies being pursued by the Company, which ultimately did not deliver the results the Company had hoped." | Not Puffery: Statement of verifiable fact (describes speed with which a company introduces a product and claims there is an effective vetting process to get trend-right goods into stores); Defendants' repeated emphasis on this issue shows materiality to investors; Statement was directly in response to an analyst question (§ IV.C.);<br><br>Not Forward-Looking: Statement of past and present fact (explicitly states that the capabilities described had | Puffery:  Not a verifiable fact;  vague rhetoric describing the Company's business strategy for identifying products to sell and the Company's opinion that it gets those products to stores quickly. MTD at 11 (citing AC ¶ 213 ("[I]t seems like we're always talking about trends . . . it's kind of part of the secret sauce of Five Below.  And it's kind of in our DNA, and it's not only about getting |

| | **Statement/Source** | **Defendants' Arguments** | **Plaintiffs' Response** | **Defendants' Response** |
|---|---|---|---|---|
| | **only about getting into a trend, but also knowing how to land the plane and get out of it…. And we're pretty nimble and quick.** There's not a lot of bureaucracy at Five Below. **When we identify something, we move really quick to get that in the store, test it and then push it out to the stores."** January 9, 2023 ICR Conference | | been "part of the secret sauce" and in Five Below's "DNA" since at least 2017) and describes present-day capabilities and practices (§ IV.D); No Safe Harbor: Cautionary language absent and not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made. | into a trend but also knowing how to land the plane and get out of it[.]")). Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product. MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | Plaintiffs allege that the trend-right strategy was failing during Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | Not Actionable:  Solely allege management decisions that did not come to fruition.  MTD at 22 (citing AC ¶ 213 (stating that trends "[are] kind of part of the secret sauce of Five Below,"and in the Company's "DNA")). |
| 213 | Defendant Bull: "The other thing with the trends too is, again, as Joel mentioned, **we love trends, that's what we're all about. It's really kind of the mindset that we have around those. We deal with this all the time.** The two keys is they do | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (claims that company will replace trend-right products as trends "fall off," specifically mentions Squishmallows); Defendants' repeated emphasis on this issue shows materiality to investors; Statement was directly in response to an analyst question (§ IV.C.); | Puffery:  Not a verifiable fact; simply describing the Company's business strategy and corporate optimism.  MTD at 11 (citing AC ¶ 213).<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | help drive traffic and they also bring in new customers. So we continue to see that. And that's really powerful for the growth of the brand as we continue to do that. **And as some fall off,** although Squishmallows has been out there for a few years, **we saw the introduction of new ones come on. And that happens every year. So you're going to see that continuing**." <br><br> January 9, 2023 ICR Conference | | Not Forward-Looking: Mixed statement of present fact with forward-looking elements (describes how Five Below had responded to trends in addition to discussing how it would "continue" to respond) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language absent and not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and | investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Trend-Right Statements were false.  MTD at 22–23; Reply at 9–12. <br><br> Not Actionable:  Solely allege management decisions that did not come to fruition.  MTD at 22 (citing AC ¶ 213). |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 214 | Defendant Anderson: "[W]e are passionate about sourcing an incredible trend-right assortment for our customers …. **We stay on top of hot trends and** | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the | Not Puffery: Statement of verifiable fact (describes the process by which Defendants are supposedly able to capitalize on trends); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); | Puffery: Not a verifiable fact; describing the Company's business strategy for identifying products to sell. MTD at 11 (citing AC ¶ 214).<br><br>Forward-looking subject to Safe Harbor: Forward looking statement |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **swiftly move to capitalize on them**…. The flexibility of our model … is unique and enables **swift recognition and introduction of trend-right and relevant products to our customers, and we honed our expertise and discipline to effectively manage the constant cycling of these trends.**" March 15, 2023 Earnings Call | Complaint's allegations of falsity are insufficient. | Not Forward-Looking: The statement makes claims about Five Below's current capabilities (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as | identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Trend-Right Statements were false.  MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 215 | Five Below: a) "We **monitor trends** in the ever-changing tween and teen markets and **are able to quickly identify and respond to trends**." <br><br> b) "We deliver **an edited assortment of trend-right** as well as everyday products within each of our category worlds that changes frequently to | Defendants do not make any arguments specific to these statements. <br><br> Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statements of verifiable fact (discusses the "principal basis" by which the Company competes, and details the Company's strategy, capabilities and methods); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: The statements make claims about Five Below's current capabilities (§ IV.D.); | Puffery: Not a verifiable fact; describing the Company's business strategy for identifying products to sell and generic optimism about its strategy. MTD at 11 (citing AC ¶ 215). <br><br> Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors about risks |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | create a sense of anticipation and freshness …." <br><br> c) "We monitor trends in our target demographic market, historical sales trends of current and prior products and the success of new product launches to ensure that our merchandise is relevant for our customers. **We have a highly planned merchandise strategy focused on trend-right** and everyday products supplemented by selected opportunistic purchases from our | | No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Statements were false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory | inherent in stocking its shelves with trend-right product. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. <br><br> Further, the topic of inventory tracking and/or inventory control is not related to Plaintiffs' allegations based on the Trend-Right Statements so these statements are irrelevant. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | vendors **to drive traffic and therefore offer our customers a consistently exciting shopping experience**." | | tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| | d) "The **principal basis upon which we compete is by offering a dynamic, edited assortment of trend-right products** …." | | | |
| | March 16, 2023 Form 10-K (for the fiscal year ended January 28, 2023), signed by Defendants Anderson and Bull | | | |
| | March 21, 2024 Form 10-K (for the fiscl year ended February | | | |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | 3, 2024), signed by Defendant Anderson | | | |
| 216 | Defendant Anderson: "While our customers face multiple macro headwinds, we continue to be there for them, flexing our offering to bring them the Wow products they need and want. **Our broad-based sales performance and transaction trends demonstrate that we are gaining trips and customers through our amazing value, trend-right products and Five** | Defendants do not make any arguments specific to this statement. <br><br> Defendants generally claim that the Trend-Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (claims that the success of the strategy led to an increase in Five Below customers); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Discussion of past and present fact (makes claims about current and past trends) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was | Puffery:  Not a verifiable statement; generally describing the Company's business strategy for gaining sales through its ability to find "amazing value, trend-right products" MTD at 11 (citing AC ¶ 216). <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. <br><br> Falsity not alleged:  Plaintiffs have not alleged |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **Beyond prototype.**" June 1, 2023 Press Release | | being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and  Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |
| 217 | Defendant Anderson: "Five Below's merchants **persistently pursue** | Defendants do not make any arguments specific to this statement. | Not Puffery: Statement of verifiable fact (makes specific claims about Five Below's ability to "capitalize" on | Puffery: Not a verifiable fact; simply describing the Company's business strategy for identifying |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **trends [with] newness and value,** both in the United States and across the globe." He also stated, "we can **quickly capitalize on a trend**." August 30, 2023 Earnings Call | Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | trends); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); Not Forward-Looking: The statement makes claims about Five Below's current capabilities (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or | products to sell and capitalizing quickly on trend-right products. MTD at 11 (citing AC ¶ 217). Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product. MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 218 | Defendant Anderson: "As we look to the second half of the year, **our merchants have sourced a terrific line-up of fresh, trend-right product** at outstanding value for the holiday | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (contains claims about products that have already been sourced and providing specific explanation for lowered financial performance); Defendants' repeated emphasis on this issue shows materiality to investors; Statement was | Puffery: Not a verifiable fact; generally describing the strategy of sourcing trend-right products "at outstanding value for the holiday season" describing optimism about future strategy . MTD at 11 (citing AC ¶ 218). |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | season. While we are **adjusting our earnings guidance to reflect an anticipated increase in shrink reserves, our sales outlook remains unchanged.** We will continue to play offense on sourcing amazing product, capitalizing on an improved supply chain, opening a record number of new stores, and **executing on the continued success of our Five Beyond store format**." <br><br> August 30, 2023 Press Release | | directly in response to an analyst question (§ IV.C.); <br><br> Not Forward-Looking: Mixed statement of present fact with forward-looking elements (claims that merchants had already "sourced" the trend-right items in addition to providing "outlook" (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and | Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Trend-Right Statements were false.  MTD at 22–23; Reply at 9–12. |

|  | **Statement/Source** | **Defendants' Arguments** | **Plaintiffs' Response** | **Defendants' Response** |
|---|---|---|---|---|
|  |  |  | Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). |  |
| 219 | Defendant Anderson: "Our merchants have sourced … fresh and trend-right products at outstanding values." He continued, "in summary, **our** | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the | Not Puffery: Statement of verifiable fact (contains claims about products that have already been sourced); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.);<br><br>Not Forward-Looking: Discusses past and current | Puffery:  Not a verifiable fact; generally describing the Company's business strategy and focus.  MTD at 11 (citing AC ¶ 219).<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **teams are focused on delivering incredible value, trend-right products**." November 29, 2023 Earnings Call | Complaint's allegations of falsity are insufficient. | facts (claims that merchants had already "sourced" in addition to present "focus") (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as | continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Trend-Right Statements were false.  MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 220 | Defendant Anderson: "We exceeded our guidance for sales, comparable sales and EPS, as **our value offering resonated with customers and we effectively capitalized on multiple trends** We opened a record 74 new stores in the third | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (contains representations about what Five Below had purportedly accomplished); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.);<br><br>Not Forward-Looking: Discusses past and current facts (claims that the value offering had already "resonated," that Five Below had "capitalized" on trends, and that the Company had already | Puffery:  Not a verifiable fact; describing general reasons Company's business strategy is successful.  MTD at 11 (citing AC ¶ 220).<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | quarter and are on track to open over 200 new stores for the year. We have also successfully converted over 400 stores to our new Five Beyond format, ending the third quarter with approximately 50% of our comparable store base in this format. **We entered the all-important holiday quarter ready to Wow our customers with an outstanding assortment of gifts and stocking stuffers at incredible value.** | | "entered" the quarter ready to supply trend-right items) (§ IV.D.);<br><br>No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as | shelves with trend-right product.  MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Trend-Right Statements were false.  MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | We are well-positioned to execute this holiday season and deliver on our goals for the year." <br><br> November 29, 2023 Press Release | | corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 221 | CFO Chipman: "Our **merchants continue to innovate** on the assortment not only during the holidays, but are **bringing new and innovative things to [Five Beyond**] …. Five Beyond conversions drive traffic, they elevate sales in the overall box and that | Defendants do not make any arguments specific to this statement. <br><br> Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (represents the current impact of Five Beyond offerings and how Five Beyond sections attract sales); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Mixed statement of present fact with forward-looking elements (describes the present impact of Five Beyond offerings, not impact in the future) (§ IV.D.); | Puffery:  Not a verifiable fact; describing the Company's business strategy for the holidays and general optimism regarding its strategy in the future.  MTD at 11 (citing AC ¶ 221). <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | includes both Five Below and Five Beyond products." January 8, 2024 ICR Conference | | No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory | inherent in stocking its shelves with trend-right product. MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | |
| 222 | Defendant Anderson: The Company's "buyers **scour the globe to bring our customers the value, trends, wow and newness that keep them coming back to Five Below.**" He also stated that the "flexibility of our model with our 8 worlds is unique and enables our teams to **quickly introduce trend- right relevant products to our customers.**" | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. | Not Puffery: Statement of verifiable fact (makes claims about the process by which Five Below stocks trend-right items); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.);<br><br>Not Forward-Looking: Discusses current facts (makes claims about Five Below's current process, not what it would do in the future) (§ IV.D.);<br><br>No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on | Puffery:  Not a verifiable fact; generally describing the Company's business strategy for identifying products to sell and the Company's opinion that it provides the products that customers want.  MTD at 11 (citing AC ¶ 222).<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | March 20, 2024 Earnings Call | | allegations that the trend-right strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| 223 | Defendant Anderson: "[C]hasing trends has always been a strength of ours. And we will continue to quickly identify and capitalize on trends, bringing them in-store quickly …." "[M]erchants remain passionate and are committed to bringing the best trend-right amazing value products to our customer, while newness are part of our DNA, and I am really pleased with the latest | Defendants generally claim that the Trend- Right Statements are puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are insufficient. Defendants cite this statement as an example of puffery and "strategies being pursued by the Company, which ultimately did not deliver the results the Company had hoped." | Not Puffery: Statement of verifiable fact (claims the ability to quickly respond to trends had "always been a strength" of Five Below); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); Not Forward-Looking: Mixed statement of present fact with forward-looking elements (the statement discusses one of Five Below's purported "strengths" in the past as well as its future commitment) (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the trend-right | Puffery:  Not a verifiable fact; describing the Company's business strategy and corporate optimism for the future.  MTD at 11 (citing AC ¶ 223 ("Chasing trends has always been a strength of ours.")). Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors about risks inherent in stocking its shelves with trend-right product.  MTD at 13–15. Falsity not alleged:  Plaintiffs have not alleged any "admissions" by Defendants.  Reply at |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | trends they have identified." "[M]erchants are definitely looking at new trends, chasing trends, finding new ways to drive footsteps." June 5, 2024 Earnings Call | | strategy was not being implemented properly and was being hampered by inventory control deficiencies, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made. Plaintiffs allege that the trend-right strategy was failing during the Class Period, as corroborated by FEs, corrective disclosures, and later admissions – partly due to Five Below lacking inventory tracking and controls to allocate in demand merchandise to its stores (§ IV.A.1.). | 12–13.  CWs do not show any Trend-Right Statements were false. MTD at 22–23; Reply at 9–12. Not Actionable:  Solely allege management decisions that did not come to fruition.  MTD at 22 (citing AC ¶ 223 (stating "[c]hasing trends has always been a strengthen of ours")). |

|  | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **Shrink-Related: Statements Blaming Shrink For Deteriorating Financial Results** | | | |
| 228 | Defendant Bull: Five Below experienced "**higher-than-expected shrink**," and "[o]n an annual basis, **shrink for 2022 was approximately 30 basis points higher than what we experienced in 2021**." March 15, 2023 Earnings Call | Defendants generally claim that the Shrink-Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (quoting this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: Discusses past events (describes the previous quarter's results) (§ IV.D.). No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self- | Not false: Had it not been for shrink, Five Below would have beaten the guidance. Reply at 10, 26. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs' allegations do not suggest any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | inflicted" and rooted in operational and execution failures (§ IV.A.2.). | |
| 229 | Defendant Anderson: Five Below "trued [up shrink] last year, and it had an impact on our fourth quarter [and] **we are accruing at the higher rates this year and doing things on our part to mitigate shrink**." June 1, 2023 Earnings Call | Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (quoting this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: Describes previous quarter's results and purports to describe current actions by Five Below (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not | Not false:  Had it not been for shrink, Five Below would have beaten the guidance. Reply at 10, 26. Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | any "admissions" by Defendants. Reply at 12–13. CWs do not show any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |
| 230 | Defendant Anderson: "[W]ith us not changing the top line [i.e., sales], the 20 basis point decline [in operating margin guidance] is really the only change from the last quarter, and **that pretty much is all based on the changes we're making with the assumption of shrink**…. [w]hile we are adjusting | Defendants generally claim that the Shrink-Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (citing this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward Looking: Mixed statement of present fact with forward-looking elements (incorporates shrink's impact to date) (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this statement was made (§ IV.D.); and | Not false: Had it not been for shrink, Five Below would have beaten the guidance. Reply at 10, 26. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **our earnings guidance to reflect an anticipated increase in shrink reserves, our sales outlook remains unchanged**." August 30, 2023 Earnings Call | | Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | successful. MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |
| 231 | Defendant Bull: "I think you're all familiar with the recent media and videos that are out there where **retailers across the sector are experiencing increased levels of shrink** and related crime incidents and **we** | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Shrink-Related Statements were forward-looking statements subject to the PSLRA Safe Harbor and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: Discusses events that have purportedly already occurred (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this | Not false: It is uncontroversial that the prevalence of higher than historic levels of shrink was mounting on an industry-wide basis, impacting companies throughout the retail industry. MTD at 6. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings |

|  | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
|  | **are not immune to this as we're finding out**." August 30, 2023 Earnings Call |  | statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful. MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |
| 232 | Defendant Anderson: "And so, where is it coming from? It's coming | Defendants do not make any arguments specific to this statement. | Not Forward-Looking: Discusses events that have purportedly already occurred (§ IV.D.); | Not false: It is uncontroversial that the prevalence of higher than historic levels of shrink |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | on all angles. And you've got several cities now which just simply aren't prosecuting below the $500 level. Sadly, our hometown here in Philly is a city that's seen some of our highest shrink rates. And we watched Target and we watched Wawa exit Center City. And so while I don't think we're yet at that extreme of closing Five Below stores there, **these are the type of mitigation strategies that will be included as we consider what to** | Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (quoting this statement) and that the Complaint's allegations of falsity are insufficient. | No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | was mounting on an industry-wide basis, impacting companies throughout the retail industry.  MTD at 6.<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15.<br><br>Falsity not alleged:  Plaintiffs have not alleged any "admissions" by Defendants.  Reply at |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **do if we don't see things improve**." August 30, 2023 Earnings Call | | | 12–13.  CWs do not show any Shrink Statements were false.  MTD at 23–24; Reply at 9–12 |
| 233 | Chipman: "Gross margin decreased by approximately 190 basis points to 30.3%, as anticipated. This decline was **primarily driven by recording actual shrink results for the stores that completed their physical inventories in August as well as recording the true-up of shrink** | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (quoting this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: Describes previous quarter's results (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not | Not false:  Had it not been for shrink, Five Below would have beaten the guidance.  Reply at 10, 26. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Shrink Statements were false.  MTD at 23–24; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **reserves for the full chain,** which we shared during our last quarter's earnings call." November 29, 2023 Earnings Call | | primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | |
| 234 | Defendant Anderson (after being asked about shrink and prompted that what shrink "really means, is theft"): "We talked about theft in our second quarter call. Theft is real, it's impacting all retailers." He later claimed "this is a real societal problem and we've got to lean together | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (quoting this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: Purports to discuss the current state of affairs regarding theft (§ IV.D.); No Safe Harbor: Cautionary language absent and not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this | Not false: It is uncontroversial that the prevalence of higher than historic levels of shrink was mounting on an industry-wide basis, impacting companies throughout the retail industry. MTD at 6. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that its financial |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | with the politicians to figure this out." November 30, 2023 Fox Business Interview | | statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful. MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |
| 235 | Defendant Anderson: "Despite these strong sales results, earnings per share of $3.65 was at the low end of our internal expectations and **can be fully** | Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (quoting this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: Describes previous quarter's results (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was | Not false: Had it not been for shrink, Five Below would have beaten the guidance. Reply at 10, 26. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **attributed to higher-than-planned shrink**." March 20, 2024 Earnings Call | | not a main driver of declining performance, which facts were known at the time this statement was made (§ V.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Shrink Statements were false.  MTD at 23–24; Reply at 9–12. |
| 236 | Defendant Anderson: "**Shrink is industry-wide** | Defendants do not make any arguments specific to this statement. | Not Forward-Looking: The statement purports to discuss the current | Not false:  It is uncontroversial that the prevalence of higher than historic levels of shrink |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **and a societal problem** that accelerated over the last year." <br><br> March 20, 2024 Earnings Call | Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor and that the Complaint's allegations of falsity are insufficient. | state of affairs regarding theft (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that shrink was not a main driver of declining performance, which facts were known at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Statement was false or misleading when made because Five Below's issues were not primarily attributable to shrink but as the Company would later admit, "self-inflicted" and rooted in operational and execution failures (§ IV.A.2.). | was mounting on an industry-wide basis, impacting companies throughout the retail industry.  MTD at 6. <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | | 12–13.  CWs do not show any Shrink Statements were false.  MTD at 23–24; Reply at 9–12. |
| | **Shrink-Related Statements: Statements Regarding Shrink Mitigation Measures** | | | |
| 240 | Defendant Anderson: "[W]e are … **doing things on our part to mitigate shrink**." June 1, 2023 Earnings Call | Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor (citing this statement) and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: The statement claims to describe what efforts were currently underway ("doing things") (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and | Not false:  It is uncontroversial that the prevalence of higher than historic levels of shrink was mounting on an industry-wide basis, impacting companies throughout the retail industry.  MTD at 6. Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | Falsity Adequately Alleged: Statement was false or misleading when made because, as former employees attest, the Company was not undertaking serious efforts to combat shrink (§ IV.A.2.). | by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Shrink Statements were false.  MTD at 23–24; Reply at 9–12. |
| 240 | Defendant Bull: "[W]e're **focusing on preventative measures around shrink**."<br><br>June 1, 2023 Earnings Call | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Shrink- Related Statements were forward-looking<br><br>statements subject to the PSLRA Safe Harbor and | Not Forward-Looking: The statement claims to describe what efforts were currently underway ("focusing on") (§ IV.D.);<br><br>No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge | Not false:  Five Below had **just** implemented shrink mitigation strategies which **were working** in reducing shrink. *See*, *e.g.*, MTD at 7; MTD, Ex. K at |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | that the Complaint's allegations of falsity are insufficient. | that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made because, as former employees attest, the Company was not undertaking serious efforts to combat shrink (§ IV.A.2.). | 14; Reply at 25–26 & n.21.<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Shrink Statements |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | | were false.  MTD at 23–24; Reply at 9–12. |
| 241 | Defendant Bull: "I am also leading a team to focus on operational mitigation efforts to counter the elevated shrink trends." "[W]e've **dedicated a team to look at all different areas to help with mitigation efforts. And that includes enhanced technology, merchandise presentation, … register formats,** | Defendants do not make any arguments specific to this statement.

Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: The statement claims to describe what efforts were currently underway (have "dedicated a team") (§ IV.D.);

No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and

Falsity Adequately Alleged: Statement was false or misleading when made because, as former employees attest, the Company was not | Not false:  Five Below had *just* implemented shrink mitigation strategies which *were working* in reducing shrink. *See*, *e.g.*, MTD at 7; MTD, Ex. K at 14; Reply at 25–26 & n.21.

Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **policies and procedures**." August 30, 2023 Earnings Call | | undertaking serious efforts to combat shrink (§ IV.A.2.). | and that its mitigation tactics might not be successful.  MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |
| 242 | Defendant Anderson: "We'd **already mitigated some of the things from the 30 basis [point] increase from last year….** The difference is … a year ago, we weren't doing | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor and that the Complaint's | Not Forward-Looking: The statement claims to describe what efforts were currently underway, purports to reference results to date (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement | Not false:  Five Below had *just* implemented shrink mitigation strategies which *were working* in reducing shrink. *See*, *e.g.*, MTD at 7; MTD, Ex. K at |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | anything about it…. So all the mitigation efforts we are putting in just started." "I see nothing but upside as we get past this shrink, **put mitigation efforts in for that**." August 30, 2023 Earnings Call | allegations of falsity are insufficient. | made with actual knowledge that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because, as former employees attest, the Company was not undertaking serious efforts to combat shrink (§ IV.A.2.). | 14; Reply at 25–26 & n.21. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful.  MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Shrink Statements |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | | were false.  MTD at 23–24; Reply at 9–12. |
| 243 | Defendant Anderson: "[W]e're making some changes to our business model, we've had to really tighten up our self-checkouts, **we're putting some more labor in the stores**…. [W]e will figure out the shrink and theft problem." November 30, 2023 Fox Business Interview | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor and that the Complaint's allegations of falsity are insufficient. | Not Forward-Looking: The statement claims to describe what efforts were currently underway (§ IV.D.); No Safe Harbor: Cautionary language absent and not sufficiently tied to the statement; statement made with actual knowledge that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Statement was false or misleading when made because, as former employees | Not false:  Five Below had *just* implemented shrink mitigation strategies which *were working* in reducing shrink. *See*, *e.g.*, MTD at 7; MTD, Ex. K at 14; Reply at 25–26 & n.21. Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage |

|  | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
|  |  |  | attest, the Company was not undertaking serious efforts to combat shrink (§ IV.A.2.). | and that its mitigation tactics might not be successful. MTD at 13–15. Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Shrink Statements were false. MTD at 23–24; Reply at 9–12. |
| 244 | Defendant Anderson: "We have **implemented additional shrink mitigation initiatives** based on our 2023 learnings." | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Shrink- Related Statements were forward-looking statements subject to the PSLRA Safe Harbor and that the Complaint's | Not Forward-Looking: The statement claims to describe what efforts were currently underway (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge | Not false: Five Below had *just* implemented shrink mitigation strategies which *were working* in reducing shrink. *See*, *e.g.*, MTD at 7; MTD, Ex. K at |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | March 20, 2024 Earnings Call | allegations of falsity are insufficient. | that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Statement was false or misleading when made because, as former employees attest, the Company was not undertaking serious efforts to combat shrink (§ IV.A.2.). | 14; Reply at 25–26 & n.21.<br><br>Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that its financial results could be impacted by inventory shrinkage and that its mitigation tactics might not be successful. MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Shrink Statements were |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | | false.  MTD at 23–24; Reply at 9–12. |
| **Statements Concerning Expansion and The Triple-Double Plan** | | | | |
| 253 | Defendant Anderson: "[W]e're still on track for the long-term Triple-Double goals…. **We are gaining momentum going into '23 and expect that to continue to grow**." November 30, 2022 Earnings Call | Defendants generally claim that the Triple-Double Statements were puffery (citing this statement), forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (affirmatively represents momentum of plan); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); Not Forward-Looking: Mixed statement of present fact with forward-looking elements (discusses momentum that was ongoing in addition to expectations) (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be | Puffery:  Generally describing the Company's growth plan.  MTD at 12 (citing AC ¶ 253 ("We are gaining momentum going into '23 and expect that to continue to grow.")). Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | floundering at the time this statement was made; statement made with actual knowledge that Five Below was not undertaking any serious effort to mitigate shrink, which facts were known at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statements were made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | opening new stores may impact existing stores. MTD at 13–15.<br><br>Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Triple-Double Statements were false.  MTD at 25; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| 254 | Defendant Bull: "We plan to open 200 new stores [in 2023] and expect to end the year with 1,540 stores or unit growth of approximately 15%." <br><br> March 15, 2023 Earnings Call | Defendants do not make any arguments specific to this statement. <br><br> Defendants generally claim that the Triple-Double Statements were puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (affirmatively represents number of stores to be opened); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the | Puffery: Not a verifiable fact; describing the Company's future growth plan and optimism for expansion. MTD at 12. <br><br> Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | statements were made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |
| 254 | Defendant Anderson: "[T]he process -- we streamlined it in several different ways to be able to execute more leases in a faster time line more per month. We are expanding the types of centers we're going into." March 15, 2023 Earnings Call | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Triple- Double Statements were immaterial puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (describes steps that the Company had already taken to prepare the Triple-Double plan); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); Not Forward-Looking: Mixed statement of present fact with forward-looking elements (describing steps already undertaken—"we streamlined it"—and omitted the fact that | Puffery: Not a verifiable fact; generally describing the Company's growth plan. MTD at 12. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | the plan was floundering) (§ IV.D.); | opening new stores may impact existing stores. MTD at 13–15. |
| | | | No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and | Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |
| | | | Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statements were made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly | |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | and the plan was "too aggressive" (§ IV.A.3.). | |
| 255 | Defendant Anderson: "We now expect to reach a milestone of over 200 new stores this year, while building our pipeline for next year and beyond."<br><br>June 1, 2023 Earnings Call | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Triple- Double Statements were immaterial puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (affirmatively represents momentum of plan and number of stores to be opened); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.);<br><br>No Safe Harbor: Cautionary language not sufficiently tied to the statement, statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and<br><br>Falsity Adequately Alleged: Company's former employees report that the Triple-Double | Puffery:  Not a verifiable fact; describing the Company's growth plan and optimism for expansion.  MTD at 12.<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. |

|  | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
|  |  |  | expansion strategy was already failing and hurting existing stores at the time the statements were made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |
| 256 | Defendant Bull: "**[We] feel extremely confident around the Triple-Double vision.**" August 30, 2023 Earnings Call | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Triple- Double Statements were immaterial puffery (quoting this statement), forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of | Not Puffery: Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); Not Forward-Looking: Mixed statement of present fact with forward-looking elements (expressed confidence in plan while omitting the plan was floundering) (§ IV.D.); No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement | Puffery: Not a verifiable fact; describing the Company's opinion of its growth plan. MTD at 12 (citing AC ¶ 256 ("[We] feel extremely confident around the Triple-Double vision.")). Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | falsity are not sufficient (citing this statement). | made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |
| 257 | Defendant Anderson: "**We remain on track to** | Defendants generally claim that the Triple- Double Statements were immaterial | Not Puffery: Statement of verifiable fact (provides update as to the status of the | Puffery: Generally describing the Company's growth plan and |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **achieve the goal of opening over 200 stores** [in 2023].… Our real estate teams have built a strong pipeline of new stores for 2024 and have also started working on 2025 stores." <br><br> November 29, 2023 Earnings Call | puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient (citing this statement). | plan, and that it is currently "on track"); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Mixed statement of present fact with forward-looking elements (includes the progress on the plan to date) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double | optimism for expansion. MTD at 12. <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Triple-Double |

|  | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
|  |  |  | expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | Statements were false. MTD at 25; Reply at 9–12. |
| 258 | Defendant Anderson: "Now I'd like to update you on the Triple-Double strategy. As you recall, we shared the strategy with you back in March of 2022, and it was very simple. We were going to triple our stores by 2030, we're going | Defendants do not make any arguments specific to this statement.<br><br>Defendants generally claim that the Triple- Double Statements were immaterial puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (provides update as to the status of the plan with specific details of the plan); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.);<br><br>Not Forward-Looking: Mixed statement of present fact with forward-looking elements (includes the progress on the plan to date while omitting | Puffery:  Not a verifiable fact; generally describing the Company's growth plan and optimism for expansion.  MTD at 12.<br><br>Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | to double our earnings and sales by 2026 -- 2025. Today I will update you on exactly where that vision stands…. **As it relates to tripling our stores by 2030, I repeat, nothing has changed. We still … expect to triple our stores by 2030.** We opened 1,000 stores in the last seven years. We're going to open 2,000 stores in the next seven years." <br><br> January 8, 2024 ICR Conference | | issues that the plan was experiencing) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly | implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Triple-Double Statements were false.  MTD at 25; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | and the plan was "too aggressive" (§ IV.A.3.). | |
| 260 | Defendant Anderson: "We still expect to open between 225 and 235 new stores [in 2024]." March 20, 2024 Earnings Call | Defendants do not make any arguments specific to this statement. Defendants generally claim that the Triple- Double Statements were immaterial puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (affirmatively represents momentum of plan and number of stores to be opened); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); No Safe Harbor: Cautionary language not sufficiently tied to the statement, statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and Falsity Adequately Alleged: Company's former employees report that the Triple-Double | Puffery: Not a verifiable fact; describing the Company's growth plan and optimism for expansion. MTD at 12. Forward-looking subject to Safe Harbor: Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. |

| | **Statement/Source** | **Defendants' Arguments** | **Plaintiffs' Response** | **Defendants' Response** |
|---|---|---|---|---|
| | | | expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Triple-Double Statements were false.  MTD at 25; Reply at 9–12. |
| 260 | Defendant Anderson (when asked "how do you avoid the mistakes with a more streamlined process when you're opening more stores than you did in the prior years"): "[A:] … We've been on the streamlined process for quite | Defendants do not make any arguments specific to this statement.  Defendants generally claim that the Triple- Double Statements were immaterial puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (purports to describe details of how the initiative is executed); Defendants' repeated emphasis on this issue shows materiality to investors; Statement made in direct response to analyst question (§ IV.C.);  Not Forward-Looking: Mixed statement of present fact with forward-looking elements | Puffery:  Not a verifiable fact; generally describing an aspect of the Company's growth plan. MTD at 12.  Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully |

| | **Statement/Source** | **Defendants' Arguments** | **Plaintiffs' Response** | **Defendants' Response** |
|---|---|---|---|---|
| | some time, everything from – we're using Placer AI now to help us evaluate stores, which allows us to do it quicker. The legal team has streamlined with some AI advantages, how quickly they're able to approve leases. All those add into -- add up to weeks not days. And so it's less about the approval at the rec committee level and it's more about the individual components that get it to the rec committee and then | | (describes how the plan had been implemented, and Defendant Anderson explicitly claimed Five Below had been employing the same techniques for "a number of years") (§ IV.D.); | implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. |
| | | | No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and | Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |
| | | | Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statement | |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | leases signed after the Rec committee. And this has been going on for a number of years with a[n] extreme focus …." <br><br> March 20, 2024 Earnings Call | | was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | |
| 261 | Form 10-K: "[W]e plan to open between 225 and 235 new stores in fiscal 2024." <br><br> Summary of new store openings in fiscal years 2021 through 2023. <br><br> March 21, 2024 10-K for the year ended February 3, 2024, signed by Defendant Anderson. | Defendants do not make any arguments specific to this statement. <br><br> Defendants generally claim that the Triple- Double Statements were immaterial puffery, forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (affirmatively represents momentum of plan, number of stores to be opened, and describes the progress of the plan to date); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Statement of present/historical facts (historical store openings and omitted the harm that new stores were doing to existing | Puffery:  Not a verifiable fact; generally describing the Company's growth plan and optimism for expansion.  MTD at 12. <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | stores and the difficulties in stacking and staffing stores) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new | strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Triple-Double Statements were false.  MTD at 25; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | |
| 263 | Defendant Anderson: "Our first pillar is store expansion. [We have] over 1,600 stores currently and a road map to 3,500 Five Below locations nationwide by the end of 2030…. We are confident in our path to achieve approximately 230 new store openings this year and have already built a strong pipeline for 2025." | Defendants generally claim that the Triple- Double Statements were immaterial puffery (quoting this statement), forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | Not Puffery: Statement of verifiable fact (provides update as to the status of the plan); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Mixed statement of present fact with forward-looking elements (includes the progress on the plan to date, and the Company's then-current "focus" on it, while omitting issues that the plan was experiencing) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it | Puffery:  Not a verifiable fact; describing corporate optimism and generally describing the Company's growth plan.  MTD at 12 (citing AC ¶ 263 ("[O]ur focus on executing our store growth plans with excellence is unwavering.")). <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | … "**[O]ur focus on executing our store growth plans with excellence is unwavering**." <br><br> June 5, 2024 Earnings Call | | was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and Defendants' later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |
| 264 | Defendant Anderson: "[I]t's also important we | Defendants generally claim that the Triple-Double Statements were | Not Puffery: Statement of verifiable fact (describes progress of plan to date and | Puffery:  Not a verifiable fact; describing corporate optimism and generally |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | don't lose sight of the long term and the Five Below growth story and that remains **solidly intact** and there are several components to it. One, it's all about a **strong new store growth pipeline, which we reiterated several times on our [Q1 2024] call. It's about the Five Beyond expansion continuing …. [T]he long term growth of Five Below is something I am very excited about** | immaterial puffery (quoting this statement), forward-looking statements subject to the PSLRA Safe Harbor, and that the Complaint's allegations of falsity are not sufficient. | incorporation of Five Beyond sections into new stores); Defendants' repeated emphasis on this issue shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Mixed statement of present fact with forward-looking elements (omitted the harm that new stores were doing to existing stores and the difficulties in stocking and staffing stores) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and | describing the Company's growth plan.  MTD at 12. <br><br> Forward-looking subject to Safe Harbor:  Forward looking statement identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants.  Reply at 12–13.  CWs do not show any Triple-Double Statements |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | **and we continue to pursue.**" June 12, 2024 Oppenheimer Conference | | Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | were false. MTD at 25; Reply at 9–12. |
| 264 | Defendant Anderson: "While we certainly didn't earn the right to put forth a guide for you that says immediate return | Defendants generally claim that the Triple-Double Statements were immaterial puffery (quoting this statement), forward-looking statements subject to the PSLRA Safe | Not Puffery: Statement of verifiable fact (claims that there are no "structural" issues with the Triple-Double initiative); Defendants' repeated emphasis on this issue | Puffery: Not a verifiable fact;vaguely describing the Company's growth plan. MTD at 12. Forward-looking subject to Safe Harbor: Forward looking statement |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | to positive comps, there are certainly signs out there that this shouldn't be long term. **We certainly don't think it's structural at all or wouldn't be continuing our growth**." <br><br> June 12, 2024 Oppenheimer Conference | Harbor, and that the Complaint's allegations of falsity are not sufficient. | shows materiality to investors (§ IV.C.); <br><br> Not Forward-Looking: Mixed statement of present fact with forward-looking elements (omitted the harm that new stores were doing to existing stores and the difficulties in stacking and staffing stores) (§ IV.D.); <br><br> No Safe Harbor: Cautionary language not sufficiently tied to the statement; statement made with actual knowledge that it was misleading, based on allegations that the expansion plan was known to be floundering at the time this statement was made (§ IV.D.); and <br><br> Falsity Adequately Alleged: Company's former employees report that the Triple-Double expansion strategy was already | identified in public filings where Five Below continued to warn investors that it may not be able to successfully implement its growth strategy, its ability to open new stores depends on "many factors," and opening new stores may impact existing stores. MTD at 13–15. <br><br> Falsity not alleged: Plaintiffs have not alleged any "admissions" by Defendants. Reply at 12–13. CWs do not show any Triple-Double Statements were false. MTD at 25; Reply at 9–12. |

| | Statement/Source | Defendants' Arguments | Plaintiffs' Response | Defendants' Response |
|---|---|---|---|---|
| | | | failing and hurting existing stores at the time the statement was made, which is directly corroborated by the corrective disclosures and later admissions, including that new stores were performing poorly and the plan was "too aggressive" (§ IV.A.3.). | |