**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE FIVE BELOW, INC. SECURITIES LITIGATION | Case No. 2:24-cv-03638-GAM |

**DEFENDANTS' ANSWER TO CONSOLIDATED AMENDED COMPLAINT**
**FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Defendants Five Below ("Five Below"), Joel D. Anderson ("Anderson"), and Kenneth R. Bull ("Bull"), by their attorneys, hereby answer the allegations of the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint") of Lead Plaintiffs Arkansas Teacher Retirement System and Arkansas Public Employees' Retirement System (collectively, "Lead Plaintiffs" or "Plaintiffs"), and state as follows:

**PRELIMINARY STATEMENT**

All allegations in the Complaint are generally denied as to each of the Defendants. Moreover, any factual averment that is admitted below is admitted only as to specific facts as stated herein and not as to any conclusions, characterizations, implications or speculation in the averment or the Complaint as a whole. To the extent the introductory paragraph of the Complaint contains allegations to which a response may be required, Defendants deny each and every averment thereof. Defendants further state that they are without knowledge or information sufficient to form a belief as to the truth of the averments regarding the investigation allegedly conducted by Plaintiff's counsel, and these averments are, therefore, denied.

1. Court-appointed Lead Plaintiffs Arkansas Teacher Retirement System and Arkansas Public Employees' Retirement System (collectively, "Lead Plaintiffs" or "Plaintiffs"), bring this action on behalf of themselves and all other persons and entities that purchased or otherwise acquired the common stock of Five Below, Inc. ("Five Below" or the "Company"), from December 1, 2022 through July 16, 2024, inclusive (the "Class Period"), and were damaged thereby (the "Class").

**ANSWER:**  Defendants deny each and every averment of paragraph 1 of the Complaint, except they admit that Plaintiffs purport to bring this action on behalf of purchasers of Five Below securities between December 1, 2022 through July 16, 2024 ("putative Class Period").

2.      Lead Plaintiffs allege the following upon information and belief, except as to those allegations concerning Lead Plaintiffs, which are alleged upon personal knowledge. Lead Plaintiffs' information and belief is based upon, inter alia, Lead Counsel's investigation, which included the review and analysis of, among other things: (a) regulatory filings made by Five Below with the United States Securities and Exchange Commission ("SEC"); (b) press releases, and presentations issued and disseminated by the Company; (c) analyst and media reports concerning Five Below; (d) transcripts of Five Below's investor and analyst conference calls; (e) communications with knowledgeable individuals, including former employees of Five Below; (f) trading data for Five Below securities and related documents; and (g) other publicly available information.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 2 of the Complaint, and these averments are, therefore, denied.

## I.      INTRODUCTION

3.      Throughout the Class Period, Defendants touted Five Below's ability to find the right mix of "trend-right" products and to bring those products into their stores to meet customer demand as the most critical operational feature to the Company's success. They referred to this set of skills as Five Below's key differentiator—its "secret sauce." Defendants also sold investors on Five Below's expansion, trumpeting plans to triple the number of stores while doubling the Company's sales. Defendants portrayed Five Below as a thriving and growing Company well-positioned for continued success based on these unique aspects of its business.

**ANSWER:**  Defendants deny the averments in the first and last sentences of paragraph 3 of the Complaint.  Defendants state that the Court's Order (ECF 46) dismissed the averments in the second and third sentences of Paragraph 3 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in the second and third sentences of paragraph 3 of the Complaint.

4.      Unfortunately for investors, Defendants' statements were materially false and misleading, and omitted key material facts. In reality, Five Below did not operate with any real ability to stock its stores with in-demand products. The Company had no secret sauce—it lacked

- 2 -

the infrastructure and ability to identify trends, as well as the ability to allocate and track inventory so that "trend-right" products were available in sufficient volume to meet and drive customer demand. These issues increasingly pressured Five Below's results as the Class Period progressed. Defendants Joel Anderson (the Company's CEO) and Kenneth Bull (the Company's COO) knew about the problems as they personally observed them during visits to stores, from internal reports and from discussions at meetings. Rather than disclose Five Below's problems to the public, Defendants, led by Anderson, misleadingly blamed declining sales and margins on "shrink"—i.e., shoplifting and theft. But rather than see things through and reveal to investors that the Company was unable to identify "trend-right" products and get them onto store shelves, when the problems became too big to conceal, Anderson abandoned ship in July 2024. At that point, Five Below and Defendant Bull were forced to reveal that the Company's results were adversely affected by its failure to stock the right product mix in its stores. These disclosures shocked investors and ultimately, Five Below shares declined by over 64% from the Class Period high, wiping out over $7.7 billion in shareholder value.

**ANSWER:** Defendants deny each and every averment of paragraph 4 of the Complaint.

5.      Defendants' misrepresentations concern three subjects. First, Defendants repeatedly highlighted Five Below's ostensive practice of "*offering a dynamic, edited assortment of trend-right products*," calling that practice the *"principal basis upon which we compete*."[1]  At a January 2023 conference, Defendant Anderson emphasized this point, telling attendees "*we've really got a good cadence with those [trends], how to get into them, how to get out of them*" and calling the ability to identify and capitalize on trends Five Below's "*secret sauce*." In earnings calls, Anderson claimed that Five Below "*persistently pursue[s] trends [with] newness and value*," and that the flexibility of Five Below's model "enables our teams to quickly introduce trend-right relevant products to our customers." Just six weeks before he abruptly resigned, Defendant Anderson again insisted that "*chasing trends has always been a strength of ours.* And we will continue to *quickly identify* and *capitalize on trends, bringing them in-store quickly*."

**ANSWER:** Defendants deny each and every averment of paragraph 5 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 2023 10-K, Five Below's January 2023 conference, Five Below's August 2023 earnings call, and Five Below's June 2024 earnings call.  Defendants refer to these public filings for a complete and accurate statement of their contents and deny any characterization or interpretation of these documents that would be inaccurate if read in the context of the entire March 2023 10-K, January 2023 conference, August

---

[1] Unless otherwise noted, all emphasis in quotations is added.

2023 earnings call, and June 2024 earnings call.  Defendants further state that, as to the following

statements—"offering a dynamic, edited assortment of trend-right products," "principal basis upon

which we compete"; "secret sauce"; "persistently pursue[s] trends [with] newness and value"; and

"we will continue to quickly identify and capitalize on trends, bringing them in-store quickly"—

the Court's Order (ECF 46) dismissed these averments from the Action for purposes of liability.

Defendants deny the remaining averments of paragraph 5 of the Complaint.

6.	*Second*, Defendants sold investors on their ability to take Five Below's trend-right practices to new heights through its "Triple-Double" initiative, an ambitious plan to triple Five Below's locations while doubling its sales and more than doubling its earnings per share. At the start of the Class Period, Defendant Anderson assured investors that "we're still on track for the long-term Triple-Double goals. . . . ***We are gaining momentum going into '23 and expect that to continue to grow***." Defendants told investors in August 2023 that they were "extremely confident" in the Triple-Double plan, represented in March 2024 that the Company planned to open between 225 and 235 stores by the end of the year and, just a few weeks before the Company's announcement of Defendant Anderson's departure and its poor earnings results led analysts to question the plan's future, claimed that "our focus on executing our store growth plans with excellence is ***unwavering***." The Triple-Double plan was abruptly throttled down a month after Defendant Anderson resigned.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in

paragraph 6 of the Complaint from the Action for purposes of liability.  To the extent a response

is required, Defendants deny the averments in paragraph 6 of the Complaint, except admit that this

paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis

supplied by Plaintiffs, from Five Below's November 2022 earnings call, August 2023 earnings

call, and March 2024 earnings call.  Defendants refer to these public filings for a complete and

accurate statement of its contents and deny any characterization or interpretation of the November

2022 earnings call, August 2023 earnings call, and March 2024 earnings call that would be

inaccurate if read in the context of the entire earnings call transcripts.

7.	*Finally*, even as the Company's problems with its product assortment, inventory and expansion clearly hurt operating performance, rather than admit and disclose those issues, Defendants falsely laid the blame for Five Below's ills at the foot of the public, claiming that the "societal problem" of "shrink" (i.e., theft) was to blame. Starting on the March 15, 2023 earnings

call, Defendants blamed increasingly constrained results on "higher-than-expected shrink." These statements continued throughout 2023. Then during the Company's March 20, 2024 earnings call, Defendants announced lower-than-expected earnings per share and claimed the disappointing results "***can be fully attributed to higher-than-planned shrink***." Defendants coupled these excuses with claims that Five Below was addressing the problem, claiming that it was "doing things on our part to mitigate shrink" and later specifying that it had ***"dedicated a team to look at all different areas to help with mitigation efforts***." Defendants' efforts to **solely blame** the "societal" problem of shrink for the Company's declining performance, and their attempts to assuage those concerns based on "mitigation efforts," were a mirage created to conceal Five Below's true problems.  Defendants' tactic of falsely blaming shrink is consistent with a line of media and analyst reports identifying a pattern of retailers using shrink as an excuse for their own unrelated business failures.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in the fifth sentence of paragraph 7 of the Complaint from the Action for purposes of liability.  Defendants deny the averments in paragraph 7 of the Complaint, except this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 15, 2023 and March 20, 2024 earnings calls.  Defendants refer to the March 15, 2023 and March 20, 2024 earnings calls for a complete and accurate statement of their contents and deny any characterization or interpretation of these documents that would be inaccurate if read in the context of the entire March 15, 2023 and March 20, 2024 earnings calls.

8.      At the end of the Class Period Defendants admitted that Five Below "lost its way" in terms of delivering trend-right products to its customers. Those admissions are discussed below, and importantly, are corroborated by multiple former employees who have confirmed that Defendants were not telling the truth about Five Below's business during the Class Period. These former employees consistently reported that Five Below "absolutely" had issues stocking in-demand inventory. They reported that Five Below had no strategy for sourcing in-demand products, such that stores often received "dumb junk" instead of products customers wanted, and that warehouses were often stacked with extra inventory that the Company had to dispose of, including by shipping to retail stores to sell at a loss or donating to liquidators. Former employees similarly indicated that Five Below could not get in-demand products into its stores because the Company lacked any semblance of inventory control. Other employees reported that when stores did receive in-demand products, they did not receive them in sufficient quantities, and that shelves could sit empty for months on end, especially in the Company's touted "Five Beyond" sections. Moreover, former employees reported that to stock products, the Company relied on inventory reports that were frequently inaccurate.

**ANSWER:** Defendants deny each and every averment of paragraph 8 of the Complaint. Defendants further state that the Court's Order (ECF 46) dismissed the averments in the first sentence of paragraph 8 of the Complaint from the Action for purposes of liability.

9. Former employees also challenged the Company's claims that shrink was responsible for Five Below's issues, with three separate employees in different positions acknowledging that the true problems facing the Company were a failure to identify in-demand products and inventory control. They also indicated that Five Below failed to take any significant efforts to mitigate shrink, largely because the Company was not willing to make the necessary labor investments.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in the second sentence of paragraph 9 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 9 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied.

10. The relevant truth was revealed to investors through a series of partial corrective disclosures in March, June, and July 2024. On March 20, 2024, Five Below announced disappointing earnings, which Defendants blamed on shrink, acknowledging that Five Below had not implemented effective shrink mitigation measures. Defendants also disclosed lower productivity in Five Below's newer locations, partially correcting statements that trumpeted the expansion strategy. This information conclusively showed an overall decline in Five Below's performance. While Defendants avoided attributing this decline to their failure to purchase and stock trending products or execute on the expansion plan, those were the true factors driving the performance problems. In response to the performance decline, Five Below's share price plummeted by over 15%, or $32.18 per share.

**ANSWER:** Defendants deny each and every averment of the first sentence of paragraph 10 of the Complaint. Defendants state that the Court's Order (ECF 46) dismissed the averments in the second through sixth sentences of paragraph 10 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the second through sixth sentences of paragraph 10 of the Complaint, except admit that this paragraph of the Complaint purports to summarize from Five Below's March 20, 2024 earnings call. Defendants

- 6 -

refer to this public filings for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

11.    Then, on June 5, 2024 (after the close of trading), Five Below released "painful" sales results, disclosing that various income metrics declined from the prior year. Defendant Anderson tried to blame these results on macroeconomic factors, including shrink, but admitted that part of the Company's issues stemmed from "*declining sales and older merchandise trends*," and that it had "proven harder for us to lap some of the big trends from last year." The Company's shares fell another 10.6% by market close on June 6. Still, despite these issues, Defendant Anderson reassured investors and insisted the Company's "focus" remained intact. Less than six weeks later, he would be gone.

**ANSWER:** Defendants deny the averments in the third sentence of paragraph 11 of the Complaint as stated, and admit only that Five Below's share price was lower on June 6, 2024 than its closing price the previous trading day.  Defendants deny the remaining averments of paragraph 11 of the Complaint, except admit that the remaining averments of this paragraph of the Complaint purport to summarize and contain partial excerpts, with emphasis supplied by Plaintiffs, from Truist's analyst report and Five Below's June 5, 2024 earnings call.  Defendants refer to Truist's analyst report and the June 5, 2024 earnings call for a complete and accurate statement of their contents and deny any characterization or interpretation of these documents that would be inaccurate if read in the context of the entire Truist's analyst report and the June 5, 2024 earnings call.  Defendants deny the remaining averments of paragraph 11 of the Complaint.

12.    Finally, on July 16, 2024, Defendants shockingly announced that Defendant Anderson was departing as CEO after nearly a decade at the helm, with Defendant Bull being appointed as interim CEO. The Company also disclosed that comparable sales had declined 5% from the same period the year before, and the Company expected "an approximate 6% to 7% decrease in comparable sales" for the quarter as a whole. In follow-up calls with analysts Defendants made further admissions that they had failed to find "trend-right" products and the Company "*need[ed] to improve trend-right product in stores*." This news shocked the markets and caused Five Below's shares to decline by $25.57, or 25% , leading to Five Below's lowest share price since 2018.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in the first sentence of paragraph 12 of the Complaint from the Action for purposes of liability. Defendants admit that Five Below announced on July 16, 2024 that Defendant Anderson was departing as CEO, and Defendant Bull was being appointed interim CEO. Defendants deny the averments in the last sentence of paragraph 12 of the Complaint as stated, and admit only that Five Below's share price was lower on July 17, 2024 than its closing price the previous trading day. Defendants deny the remaining averments in paragraph 12 of the Complaint, except admit that the remaining averments of this paragraph of the Complaint purport to summarize and contain partial excerpts, with emphasis supplied by Plaintiffs, from JP Morgan's analyst report and Five Below's July 16, 2024 press release. Defendants refer to JP Morgan's analyst report and the July 16, 2024 press release for a complete and accurate statement of their contents and deny any characterization or interpretation of these documents that would be inaccurate if read in the context of the entire JP Morgan's analyst report and the July 16, 2024 press release.

13.     Investors bore the brunt of this bad news: the three disclosures wiped out over ***$7 billion*** in Five Below's market capitalization. This stands in sharp contrast with the financial benefits Anderson and Bull obtained. They sold over $9 million in Five Below shares during the Class Period, at inflated prices, while also receiving incentive compensation valued at over $10 million based on the inflation in the Company's share price.

**ANSWER:** Defendants deny the averments in the first sentence of paragraph 13 of the Complaint as stated, and admit only that Five Below's share price was lower on June 17, 2024 than its closing price the previous trading day. Defendants further admit that the remaining sentences of paragraph 13 of the Complaint purport to summarize SEC Form 4 filings. Defendants refer to the Company's SEC Form 4 filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's SEC Form 4 filings that would be inaccurate if read in the context of all SEC Form 4 filings relating to changes in Messrs. Anderson's

- 8 -

and Bull's ownership of Five Below securities.  Defendants deny the remaining averments of paragraph 13 of the Complaint.

14.    Following the Class Period, on earnings calls on August 28 and December 4, 2024, executives confessed how far the Company had fallen, with Defendant Bull going so far as to say Five Below had "*lost our way*." Defendant Bull admitted that for the previous "few years" Five Below had gotten away from the "core part" of its business, and Executive Chairman Vellios admitted that *"[o]ver the past few years, we lost some of that sharp focus on our core customers*." Despite Defendant Anderson's claim six weeks earlier that Five Below's commitment to its Triple-Double initiative was "unwavering," on August 28, 2024, Defendant Bull admitted that the strategy was "*too aggressive and put a tremendous amount of pressure on the organization*" and would be slowed down. Defendant Bull also explained that the Triple-Double plan led to a loss of "focus" by management, including with respect to its trend-right strategy.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 14 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 14 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call and December 4, 2024 earnings call.  Defendants refer to these public filings for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 earnings call and December 4, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcripts.

15.    On December 4, 2024, Vellios and Defendant Bull acknowledged how deep the issues were, admitting that the Company needed to "get back" to its trend-right strategy, and both of them stated that Five Below had a "ways to go" with regard to regaining its focus.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 15 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 15 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's December 4, 2024 earnings call.  Defendants refer to this public filings for a complete

and accurate statement of its contents and deny any characterization or interpretation of the December 4, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

## II.    JURISDICTION AND VENUE

16.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

**ANSWER:**  The averments in paragraph 16 of the Complaint purport to state a legal conclusion to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

17.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

**ANSWER:**  Defendants admit the averments in paragraph 17 of the Complaint.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as Five Below maintains its headquarters in this District and many of the acts and transactions that constitute violations of law complained of herein, including the dissemination to the public of untrue statements of material fact, occurred and/or were directed in substantial part in this District.

**ANSWER:**  Defendants deny each and every averment of paragraph 18 of the Complaint, except they admit that venue is proper in this District, the Company's headquarters is located within this District, and the Company conducts substantial business in this District.

19.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**ANSWER:**  Defendants deny each and every averment of paragraph 19 of the Complaint, except admit that Five Below uses the United States mail and interstate telephone communications, and that its common stock is traded on a national securities market.

III.    **PARTIES**

      A.    **Lead Plaintiffs**

20.    Co-Lead Plaintiff Arkansas Teacher Retirement System ("ATRS") is a state-wide defined benefit plan that provides retirement benefits for the employees of public schools and other educational institutions in the State of Arkansas. As set forth in the certification previously filed with the Court reflecting all of its Class Period transactions (ECF No. 17-4), ATRS purchased Five Below common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 20 of the Complaint, and these averments are, therefore, denied. Defendants deny the averments of the second sentence of paragraph 20 of the Complaint.

21.    Co-Lead Plaintiff Arkansas Public Employees' Retirement System ("APERS") is a state-wide defined benefit plan that provides retirement benefits for qualified employees of the State of Arkansas. As set forth in the certification previously filed with the Court reflecting all of its Class Period transactions (ECF No. 17-4), APERS purchased Five Below common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 21 of the Complaint, and these averments are, therefore, denied. Defendants deny the averments of the second sentence of paragraph 21 of the Complaint.

      B.    **Corporate Defendant**

22.    Defendant Five Below is incorporated under the laws of Pennsylvania with its principal executive offices located in Philadelphia, Pennsylvania. Five Below's common stock trades on the NASDAQ under the symbol "FIVE."

**ANSWER:** Defendants admit the averments of paragraph 22 of the Complaint.

      C.    **Officer Defendants**

23.    Defendant Joel D. Anderson ("Anderson") served as Five Below's Chief Executive Officer (CEO) and President from February 2015 until July 15, 2024. Defendant Anderson was Five Below's primary spokesperson during the Class Period, including on all quarterly earnings

conference calls. Defendant Anderson signed and certified each Five Below Form 10-K and 10-Q filed with the SEC during the Class Period, including signing Certifications stating those filings contained no material false or misleading statements or omissions.

**ANSWER:**  Defendants admit the averments in the first sentence of paragraph 23 of the Complaint.  Defendants refer to Five Below's public filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's public filings that would be inaccurate if read in the context of all Five Below public filings.  Defendants further admit that Defendant Anderson spoke during earnings calls and signed certain Five Below SEC filings.  The remaining averments of the third sentence of paragraph 23 of the Complaint purport to state a legal conclusion to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants deny the remaining averments of paragraph 23 of the Complaint.

24.     Defendant Kenneth R. Bull ("Bull") has served as Five Below's Chief Operating Officer since March 2023. He was Five Below's interim President and CEO from July 15, 2024 until December 2, 2024. He also served as the Company's Chief Financial Officer (CFO) from 2012 to July 2023. Defendant Bull regularly spoke on the Company's quarterly earnings conference calls. Defendant Bull signed and certified each Five Below Form 10-K and 10-Q filed with the SEC from the beginning of the Class Period to the first quarter of 2023, including signing Certifications stating that those filings contained no material false or misleading statements or omissions.

**ANSWER:**  Defendants admit the averments in the first through third sentences of paragraph 24 of the Complaint.  Defendants refer to Five Below's public filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's public filings that would be inaccurate if read in the context of all Five Below public filings.  Defendants further admit that Defendant Bull spoke during earnings calls and signed certain Five Below SEC filings.  The remaining averments of the fifth sentence of paragraph 24 of the Complaint purport to state a legal conclusion to which no response is required and, therefore,

are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

Defendants deny the remaining averments of paragraph 24 of the Complaint.

25.    Defendants Anderson and Bull are collectively referred to herein as the "Officer Defendants." The Officer Defendants directly participated in the management of Five Below's operations and had direct and supervisory involvement in Five Below's day-to-day operations. The Officer Defendants possessed the power and authority to control, and did in fact control, Five Below's public statements to the market, including in SEC filings, press releases, and presentations to securities analysts, investors, and the media. In their respective roles, the Officer Defendants were directly involved in preparing, reviewing, and approving the Company's public statements and disclosures to the market.

**ANSWER:**  The first sentence of paragraph 25 of the Complaint contains no allegations to which a response is required.  Defendants admit only that the Officer Defendants held the positions referenced in paragraphs 23–24 of the Complaint.  The remaining averments of paragraph 25 of the Complaint purport to state a legal conclusion to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

## IV.    SUMMARY OF THE FRAUD

### A.    Five Below's History And Business

26.    Five Below, so named because most of its products are priced between $1 and $5, styles itself as "a leading high-growth value retailer."[2]  While ostensibly geared toward "teens, tweens, and beyond," Five Below's SEC filings claim that "[b]ased on our management's experience and industry knowledge, we believe our customer-centric, experience-first, innovative approach to retail has led to a loyal customer base and has fostered universal appeal across a variety of age groups beyond our target demographic."

**ANSWER:**  Defendants admit that paragraph 26 of the Complaint purports to summarize and analyze information in the Company's Form 10-K filings and accurately describes the Company's operations at certain points in time.  Defendants refer to the Company's Form 10-K filings for a complete and accurate statement of their contents and deny any characterization or

---

[2] Five Below 2024 Form 10-K at 6.

interpretation of the Form 10-K filings that would be inaccurate if read in the context of the entire

Form 10-K or other Five Below Form 10-K filings.

27.     Five Below sells over 4,000 products across eight product areas or "worlds," which are: Style (clothing accessories), Room (items to customize a living space), Sports (sports balls, team merchandise, exercise accessories), Tech (accessories for cell phones, tablets, audio and computers), Create (arts and crafts supplies), Party (party goods, decorations, gag gifts, etc.), Candy, and New & Now (seasonal goods geared, for example, toward holidays like Christmas and Halloween).[3] Five Below "focus[es] [its] merchandising strategy on maintaining core categories within [its] stores but aim[s] to generate high item velocity and sell-through to keep [its] assortment fresh and drive repeat visits."[4]

**ANSWER:**  Defendants admit that paragraph 27 of the Complaint purports to summarize

and analyze information in the Company's Form 10-K filings and accurately describes the

Company's operations at certain points in time.  Defendants refer to the Company's Form 10-K

filings for a complete and accurate statement of their contents and deny any characterization or

interpretation of the Form 10-K filings that would be inaccurate if read in the context of the entire

Form 10-K or other Five Below Form 10-K filings.

28.     A key value proposition for Five Below is its ability to predict and sell products in connection with consumer trends. Five Below describes its products as "trend-right," meaning that it purchases the products it sells based on existing marketplace trends.[5] The Company claims it "monitor[s] trends in our target demographic market, historical sales trends of current and prior products and the success of new product launches to ensure that our merchandise is relevant for our customers," and boasts that it has "a highly planned merchandise strategy focused on trend-right and everyday products supplemented by selected opportunistic purchases from our vendors to drive traffic and therefore offer our customers a consistently exciting shopping experience."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in

the third sentence of paragraph 28 of the Complaint from the Action for purposes of

liability.  Defendants admit that paragraph 28 of the Complaint purports to summarize and analyze

---

[3] *Id*. at 6, 9.

[4] *Id*. at 9.

[5] *Id*.

- 14 -

information in the Company's Form 10-K filings and accurately describe the Company's operations at certain points in time.  Defendants refer to the Company's Form 10-K filings for a complete and accurate statement of their contents and deny any characterization or interpretation of the Form 10-K filings that would be inaccurate if read in the context of the entire Form 10-K or other Five Below Form 10-K filings.

29.    While Defendant Anderson was reportedly involved in all aspects of the Company's business, as was Defendant Bull, other senior executives also played key roles in the aspects of the Company's business relevant to this case. Five Below's Chief Financial Officer since July 2023, Kristy Chipman, was closely involved in financial reporting and operation of the Company's Triple-Double strategy (discussed below). Five Below's Chief Retail Officer, George Hill, who reported directly to Anderson, was ultimately responsible for the operation of the Company's network of retail stores. The "operators" of those stores, Regional Directors and District Managers, frequently interacted with Hill and reported their concerns and the problems Five Below was experiencing to him. Similarly, Michael Romanko, who recently left Five Below after serving as the Company's Executive Vice President of Merchandising since 2015 and Chief Merchandising Officer since 2019, was deeply involved in the Company's product selection and "trend-right" strategy. Like Hill, Romanko reported directly to Anderson.

ANSWER:  Defendants admit only that the Kristy Chipman, George Hill, and Michael Romanko held the positions referenced in paragraph 29 of the Complaint.  Defendants deny the remaining averments in paragraph 29 of the Complaint.

30.    In recent years, Five Below has expanded both its product scope and overall number of stores. A major part of its strategy before and during the Class Period was the introduction and expansion of its "Five Beyond" product offerings. In 2019, for the first time Five Below introduced "Ten Below," a section of the store that charged slightly higher prices (as the name implies, typically below $10). In 2021, Defendant Anderson announced an expansion of the concept to one third of Five Below stores, with the concept rebranded as "Five Beyond" (reports at the time noted the rebranding gave the Company "wiggle room" to charge more than $10).[6]

ANSWER:  Defendants admit the averments in paragraph 30 of the Complaint.

31.    In 2022, Five Below converted 250 of its stores to include the Five Beyond concept, and Defendant Anderson announced in March 2023 that "our goal is for Five Beyond everywhere."

---

[6] Matthew Stern, *Will Five Below's Sales Go Above And Beyond With a New Store-In-Store Concept?*, RetailWire.com (Mar. 24, 2021).

- 15 -

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 31 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 31 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 2023 earnings call. Defendants refer to this public filings for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

32.    Additionally, Five Below positioned itself prior to and throughout the Class Period as an expansion opportunity. At the time of filing its first Form 10-K as a public company in 2013, it operated 244 locations in 18 states, and predicted it had the capacity to operate up to 2,000 stores.[7] By February 2024, Five Below operated over 1,500 stores in 43 states, with the capacity to open up to 3,500 stores.[8]

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 32 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 32 of the Complaint, except admit that paragraph 32 of the Complaint purports to summarize and analyze information in the Company's Form 10-K filings and accurately describe the Company's operations at certain points in time. Defendants refer to the Company's Form 10-K filings for a complete and accurate statement of their contents and deny any characterization or interpretation of the Form 10-K filings that would be inaccurate if read in the context of the entire Form 10-K or other Five Below Form 10-K filings.

33.    Five Below revealed the scope of its ambitions on March 30, 2022. Announcing the fourth quarter results and a "record year," Defendant Anderson explained that in 2022 Five Below would "continue to play offense and focus on innovation and experience as we navigate a dynamic macro environment related to the lingering impacts of the pandemic."

---

[7] Five Below 2013 Form 10-K.

[8] *Id.*

- 16 -

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 33 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 33 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 2022 earnings call. Defendants refer to this public filings for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 2022 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

34.    In connection with the Company's plan to "play offense," Defendant Anderson announced Five Below's "long-term vision," which the Company named its "Triple-Double" plan. Under the Triple-Double plan, Five Below would triple its current number of stores by 2030 and double its sales and more than double its earnings per share by 2025. To achieve that goal, he explained, Five Below planned "to open approximately 1,000 stores," including "375 to 400 new stores over the next two fiscal years."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 34 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 34 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 2022 earnings call. Defendants refer to this public filings for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 2022 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

35.    Defendant Anderson closed his discussion of this initiative by assuring investors that Five Below's "teams remain dedicated to delivering high growth while executing against our key strategic initiatives within product, experience and supply chain, all while maintaining financial discipline and always placing the customer at the center of our decision-making."

**ANSWER:** Defendants deny each and every averment of paragraph 35 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial

excerpts from Five Below's March 30, 2022 earnings call.  Defendants refer to this public filing for a complete and accurate statement of its contents and deny any characterization or interpretation of these documents that would be inaccurate if read in the context of the entire March 30, 2022 earnings call transcript.

36.    The Triple-Double initiative remained a point of emphasis throughout the Class Period, with Defendant Anderson announcing on the March 15, 2023 earnings call that the Company was moving from "strategy to execution" with the plan. In a sign of how much Five Below was focused on the initiative, two days before that call Defendant Bull had been promoted to Chief Operating Officer in order to "focus on important building blocks of [Five Below's] Triple-Double growth vision." Defendant Bull announced that he was "looking forward to driving the next chapter of growth at Five Below."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 36 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 36 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 15, 2023 earnings call.  Defendants refer to this public filings for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 15, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

37.    While ambitious, the Triple-Double initiative also reflected the importance of the Company being able to execute on its "trend-right" retail strategy. As a retailer of low-priced merchandise, Five Below had limited organic options to increase profits without significantly expanding the volume of stores and, in turn, sales. This was the basis for the Triple-Double plan. Moreover, at the start of the Class Period Five Below had declining gross margins—i.e., the portion of revenue left over after subtracting direct costs, such as labor and materials. At the start of the Class Period, its gross margin was 32.2%, which marked a 1.1% decline from the prior year. Gross margins also declined at year-end 2022 versus the prior year, and in several quarters thereafter. Given the declining margins on an individual product basis, the Company needed to increase its sales volume to achieve meaningful increases in its overall net income. The trend-right strategy was a critical component of that sales growth because without in-trend products, customers would be less attracted to its stores and the expansion of the number of stores—each with associated fixed costs (leases, minimum labor, insurance, utilities)—would detract from the Company's profits (especially in terms of earnings per share), rather than "double" them.

**ANSWER:** Defendants deny each and every averment of paragraph 37 of the Complaint. Defendants further state that the Court's Order (ECF 46) dismissed the averments in the first three sentences in paragraph 37 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny these averments.

38.    The expansion plan itself explicitly recognized these margin pressures that Five Below faced. As the name itself conveys, Five Below would need to *triple* its store count to double the amount of sales and earnings per share, meaning that even under this plan each store would have lower sales rates, and lower profit margins than the Company's then-existing stores.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 38 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 38 of the Complaint.

39.    Therefore, even if successful, the Triple-Double expansion plan posed serious risks. To ensure that Five Below maintained acceptable levels of profitability, it was essential that Five Below continue to execute on its trend-right strategy to identify products customers wanted and make sure that Five Below locations, including the many new locations called for in the expansion plan, were fully stocked with goods that would sell.

**ANSWER:** Defendants deny each and every averment of paragraph 39 of the Complaint. Defendants further state that the Court's Order (ECF 46) dismissed the averments in the first sentence of paragraph 39 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in the first sentence of paragraph 39 of the Complaint.

40.    What Defendants did not tell investors, and in fact actively concealed during the Class Period, was that in its pursuit of supposedly more profitable initiatives like Five Beyond and the Triple-Double plan Five Below was unable to identify, purchase, allocate and stock a product mix that would lead to the Company's success.

**ANSWER:** Defendants deny each and every averment of paragraph 40 of the Complaint.

41.    Five Below's share price was inflated by Defendants' statements concerning product selection, shrink mitigation, and the Company's expansion plans, only to plummet when the truth came out.

**ANSWER:** Defendants deny each and every averment of paragraph 41 of the Complaint.

42.      In fact, as Five Below's sales and expansion plans stopped yielding the growth that Defendants targeted, they blamed "shrink"—inventory losses due to theft or shoplifting—for what was really a failure to select the right products, ensure that those products were actually delivered to their stores, and reliably track its inventory quantities internally. In doing so, Defendants blamed an external factor (shrink) when internal factors were impairing Five Below's business.

**ANSWER:** Defendants deny each and every averment of paragraph 42 of the Complaint.

**B.      Throughout The Class Period, Defendants Trumpet Five Below's Ability To Recognize And Respond To Product Trends**

43.      Central to Five Below's value proposition is its status as a "trend-right" retailer, able to effectively identify consumer trends and efficiently and timely supply in-demand merchandise to its store locations. From the first day of the Class Period forward, Defendants emphasized that point in press releases, earnings calls, SEC filings, and conferences.

**ANSWER:** Defendants deny each and every averment of paragraph 43 of the Complaint, except admit that Five Below is a retailer offering trend-right products and strives to stock its shelves with a dynamic, edited assortment of trend-right and everyday products.

44.      The Class Period begins on December 1, 2022, the day after Five Below held its earnings call to discuss the Company's results for the third quarter of 2022.[9] On that call, Defendant Anderson told investors that Five Below was in a "great position" moving forward, and to support that pronouncement he claimed: "Our stores are stocked and ready with an *amazing assortment of value products* that promises to delight our customers. . . . [W]e're also excited for *Five Beyond to provide new and extreme value products* in different categories." Defendant Bull represented on the same earnings call that "*[o]ur teams continue to move quickly to adjust to changing customer preferences.*"

**ANSWER:** Defendants admit the averments in the first sentence of paragraph 44 of the Complaint.  Defendants admit only that Five Below held an earnings call on November 30, 2022 and that paragraph 44 of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the November 30, 2022 earnings call.  Defendants refer to this public filing for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 30, 2022 earnings call that would be inaccurate if read in the context of the entire November 30, 2022 earnings call transcript.  Defendants further

---

[9] The Company's fiscal year ends on the Saturday closest to January 31 each year.

state that, as to the following statement—"we're also excited for Five Beyond to provide new and extreme value products in different categories"—the Court's Order (ECF 46) dismissed these averments from the Action for purposes of liability.

45.    Looking ahead to the upcoming holiday season, Defendant Anderson emphasized the purported strength of Five Below's process of getting the right products into stores. He told investors that the Company was "***set up to deliver products to our growing store base even more efficiently***."

**ANSWER:**  Defendants deny each and every averment of paragraph 45 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 30, 2022 earnings call.  Defendants refer to this public filing for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 30, 2022 earnings call that would be inaccurate if read in the context of the entire November 30, 2022 earnings call transcript.

46.    Defendants Anderson and Bull sounded a similar tone at the January 9, 2023 ICR Conference.[10] At that conference, when asked about Five Below's ability to capitalize on new trends, Defendant Anderson claimed that recognizing and responding to trends was "***part of the secret sauce of Five Below. And it's kind of in our DNA***, and it's not only about getting into a trend, but also ***knowing how to land the plane and get out of it. . . . And we're pretty nimble and quick***. There's not a lot of bureaucracy at Five Below. ***When we identify something, we move really quick to get that in the store, test it and then push it out to the stores***."

**ANSWER:**  Defendants admit only that Defendants Anderson and Bull spoke at the 2023 ICR Conference and that paragraph 46 of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the 2023 ICR Conference.  Defendants refer to the ICR Conference transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the

---

[10] ICR, according to its website, is a "global strategic communications and advisory firm" made up of "Wall Street analysts, journalists, comms professionals and lawyers." Who Is ICR?, ICRConference.com, https://icrconference.com/our-story/#who-is-icr (last visited Dec. 27, 2024).

context of the entire ICR Conference transcript.  Defendants further state that, as to the following statement—"part of the secret sauce of Five Below.  And it's kind of in our DNA, and it's not only about getting into a trend, but also knowing how to land the plane and get out of it. . . ."—the Court's Order (ECF 46) dismissed these averments from the Action for purposes of liability. Defendants deny the remaining averments in paragraph 46 of the Complaint.

47.     In announcing the Company's fourth quarter 2023 financial results, Defendant Anderson told investors, "***We stay on top of hot trends and swiftly move to capitalize on them***. . . The flexibility of our model . . . is unique and enables ***swift recognition and introduction of trend-right and relevant products*** to our customers, and we honed our expertise and discipline to ***effectively manage the constant cycling of these trends***."

**ANSWER:**  Defendants admit only that Five Below held an earnings call on March 15, 2023 and that paragraph 47 of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the March 15, 2023 earnings call.  Defendants refer to the March 15, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire March 15, 2023 earnings call transcript.

48.     These statements continued into the last few months of the Class Period. At the January 8, 2024 ICR Conference, Five Below's CFO Chipman touted the impact of the Company's "Five Beyond" section expansion: "***Five Beyond conversions drive traffic, they elevate sales in the overall box and that includes both Five Below and Five Beyond products***."

**ANSWER:**  Defendants admit only that CFO Chipman spoke at the 2024 ICR Conference and that paragraph 48 of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the 2024 ICR Conference.  Defendants refer to the ICR Conference transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire ICR Conference transcript.  Defendants further state that the Court's Order (ECF 46) dismissed the averments in paragraph 48 of the Complaint from the Action for purposes of

- 22 -

liability.  To the extent a response is required, Defendants deny the averments in paragraph 48 of the Complaint.

49.    As late as March 20, 2024, even as the Company issued disappointing guidance, Defendant Anderson stated that the Company's "buyers *scour the globe to bring our customers the value, trends, wow and newness that keep them coming back to Five Below*." He also stated that the "flexibility of our model with our 8 worlds is unique and enables our teams to *quickly introduce trend-right relevant products to our customers*."

**ANSWER:**  Defendants deny each and every averment of paragraph 49 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the March 20, 2024 earnings call.  Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.  Defendants further state that, as to following statement—"buyers scour the globe to bring our customers the value, trends, wow and newness that keep them coming back to Five Below"—the Court's Order (ECF 46) dismissed these averments from the Action for purposes of liability.

50.    Securities analysts covering Five Below accepted Defendants' representations. In its December 1, 2022 report, Telsey Advisory Group reported that the Company "exceeded expectations" as a result of "store expansion, innovation of its store format, trend-right product newness (e.g., Five Beyond items), enhancements to its supply chain network, and solid execution." The same day, Guggenheim's description of the Company referenced its "Value-Oriented Merchandising Magic" and claimed that "[u]nique, extreme value merchandising lies at the heart of the FIVE brand experience" and that this "strength" would be "apparent heading into Holiday 2022."

**ANSWER:**  Defendants deny each and every averment of paragraph 50 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the December 2022 Telsey Advisory Group report and the December 2022 Guggenheim report.  Defendants refer to the December 2022 Telsey Advisory Group report and the December 2022 Guggenheim report for a complete and accurate statement of their contents

and deny any characterization or interpretation of the reports that would be inaccurate if read in the context of the entire December 2022 Telsey Advisory Group report and December 2022 Guggenheim report.

51.      Similar analyst commentary continued throughout the Class Period. On March 16, 2023, Morgan Stanley reported that "key building blocks and initiatives [were] in place" at the Company, while UBS reported that the Company's "results demonstrate the allure of its value-oriented assortment." Deutsche Bank similarly reported on June 1, 2023 that Five Below's "value proposition [was] increasingly resonating with consumers" and claimed that the Company had "a compelling value offering" and a "nimble and scaling business model." And on November 30, 2023, Telsey Advisory Group attributed increased guidance in part to Five Below's "trend-right and value-focused product newness."

**ANSWER:** Defendants deny each and every averment of paragraph 51 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the March 2023 Morgan Stanley report, the June 2023 Deutsche Bank report, and the November 2023 Telsey Advisory Group report.  Defendants refer to the March 2023 Morgan Stanley report, the June 2023 Deutsche Bank report, and the November 2023 Telsey Advisory Group report for a complete and accurate statement of their contents and deny any characterization or interpretation of the reports that would be inaccurate if read in the context of the entire March 2023 Morgan Stanley report, June 2023 Deutsche Bank report, and November 2023 Telsey Advisory Group report.

52.      Indeed, as late as June 6, 2024, analysts continued to accept part of Five Below's supposed value proposition. Jeffries analysts opined that "the inclusion of higher price-point products into the company's assortment should enhance FIVE's value offering and yield a multitude of benefits."

**ANSWER:** Defendants deny each and every averment of paragraph 52 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the June 2024 Jeffries report.  Defendants refer to the June 2024 Jeffries report for a complete and accurate statement of its contents and deny any characterization or interpretation of the report that would be inaccurate if read in the context of the entire June 2024 Jeffries report.

### 1.    Contrary To Defendants' Representations, Five Below Lacked The Ability To Stock In-Demand Products At Its Stores

53.    Behind the scenes, former Five Below employees consistently reported that from at the least the beginning of the Class Period the Company lacked the ability to effectively identify trends and ensure that stores received the goods customers actually wanted. As a result, Five Below stores, including newly-opened stores, almost always were burdened by too much unwanted or too little in-demand inventory, leaving customers unsatisfied. The Company's touted Five Beyond sections were frequently left without any inventory at all.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 53 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied.  Defendants deny the averments in the second and third sentences of paragraph 53 of the Complaint.

54.    Five Below executives ultimately admitted the issues that were plaguing the Company. The Company's Executive Chairman and co-founder Thomas Vellios acknowledged on August 28, 2024 that *"[o]ver the past few years, we lost some of that sharp focus on our core customers"* and that Five Below "need[ed] to *regain our speed and intensity in identifying and bringing in key trend items* into our stores that delight our customers."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 54 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 54 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call.  Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

55.    Defendant Bull, once tasked with shepherding the Company's expansion, admitted on August 28, 2024 that Five Below had "overexpanded our assortments across our worlds *without the strict editing process of past years* and without the key item focus that screamed value and differentiation" and echoed that what Five Below "*got away from was the core part of our business* around pre-teens and teens and really the mission for us in delivering an edited

- 25 -

assortment, trend product, high quality at extreme value." He went so far as to concede that Five Below had "lost [its] way."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 55 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny each and every averment of paragraph 55 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

56.    These problems had tangible impacts on Five Below's strategy. As Defendants admitted in the August 28 and December 4, 2024 earnings calls, the Company was dramatically scaling back its product offerings, with a potential "20% reduction" in SKUs (stock keeping units, i.e., unique items).

**ANSWER:** Defendants deny each and every averment of paragraph 56 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 28, 2024 and December 4, 2024 earnings calls. Defendants refer to the August 28, 2024 and December 4, 2024 earnings calls transcripts for a complete and accurate statement of their contents and deny any characterization or interpretation of the transcripts that would be inaccurate if read in the context of the entire August 28, 2024 and December 4, 2024 earnings calls transcripts.

57.    Former Five Below employees both confirm these admissions and that Five Below's issues occurred throughout the Class Period, even as Defendants repeatedly insisted otherwise.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 57 of the Complaint with respect to the identity of,

and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied.

58.    FE 1[11] recalled that Five Below's biggest issue was its inability to stock trend-right, in-demand merchandise at its stores. FE 1 was a District Manager at Five Below from January 2018 to November 2023. In his role as District Manager, FE 1 oversaw between 12 and 16 stores on the West Coast. FE 1 was responsible for managing sales, shrink, and the employees of his locations. FE 1 reported to Lupe Alferez, a Regional Director, who, in turn, reported to George Hill. FE 1 had regular calls with Alferez every Monday, which other district managers attended and during which his team discussed concerns such as staffing shortages and opening stores with a Five Beyond section. On these regular calls, FE 1 also discussed concerns about the highest priority sale items with his manager. Specifically, FE 1 told Alferez when his stores did not have the necessary inventory to drive sales.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 58 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

59.    According to FE 1, Five Below stores rarely stocked enough trending merchandise to meet customer demand. FE 1 reported that, when stores did not have the trend-right merchandise advertised to customers, customers would become visibly disappointed. FE 1 asked his supervisor about the lack of inventory, but his stores still rarely received enough of those hot trends (e.g., Squishmallows, Hello Kitty) to satisfy demand.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 59 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

60.    When FE 1 first joined Five Below, the Company was coming off a great year in 2017, having profited from "S-trends" (i.e., fidget spinners) from China. But as time went on, FE 1 reported that Five Below had difficulty satisfying customer demand. According to FE 1, when the stores did not have "trend right" merchandise that drove foot traffic into the stores they did not

---

[11] The terms "Former Employees" and "FE" refer to the former Five Below employees whose reports are discussed in this Complaint. In order to preserve the Former Employees' anonymity while maintaining readability, the Complaint uses the pronouns "he" and "his" in connection with all the Former Employees, regardless of their actual gender.

benefit from the sales of other products that would accompany having trendy merchandise in stock (i.e., impulse buys).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 60 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

61.    FE 1 also reported that Defendant Anderson regularly visited stores, including stores that FE 1 oversaw, and Defendant Anderson personally observed the inventory issues during his visits to the stores. Defendant Anderson would tell FE 1, it was "in the pipeline, it's in the pipeline."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 61 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

62.    FE 1 attended bi-monthly and quarterly meetings that were run by George Hill and that Defendant Anderson also attended. According to FE 1, inventory concerns for hot items always came up at those meetings. When the attendees asked about Hello Kitty, Squishmallows, boogie boards, or other trending items, they were told, "Oh, you'll have enough of it," but the trending item inventory concerns never changed; it remained a problem through the end of FE 1's tenure.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 62 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

63.    FE 2 worked as a District Manager at Five Below from June 2023 through October 2023. In that capacity, FE 2 oversaw 16 locations in the Midwest. FE 2 had planned on taking a regional director role at Five Below, but after observing how the Company was operated during his initial tenure he chose to seek other employment. As a District Manager, FE 2 was responsible for the daily operations of the stores he oversaw, including opening and closing the stores, checking the profits and losses of stores, managing deliveries, managing employees, and ensuring that everything was functioning correctly. FE 2 was also responsible for staffing and hiring as well

as attending calls with colleagues in various departments: merchandising, corporate, other regional directors, loss prevention, and human resources.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 63 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

64.    As part of his role FE 2 attended regular regional conference calls with Michael Stricklin, the Regional Director for FE 2's area. During these conference calls managers and senior executives discussed a variety of concerns, such as staffing shortages and the lack of control and intention behind product selection and inventory. FE 2 understood that Stricklin passed these concerns and the issues discussed up the chain to more senior executives at Five Below. Other executives from human resources, loss prevention, and marketing would join the regional conference calls as well and these executives—who had company-wide responsibilities—attended each region's call separately. FE 2 also reported that every Monday, the District Managers met with the other District Managers in their region, as well as their respective Regional Directors, during which similar concerns were discussed.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 64 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

65.    Based on this experience, FE 2 reported that Five Below had great difficulty identifying and stocking trending items that were in high demand. FE 2 said that the Company wanted to get into stores items that were popular on Tik-Tok: Squishmallows and Slime were two examples. FE 2 did not believe the Company was actually purchasing products in the correct quantities, or that the Company knew what its overall inventory for sale consisted of.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 65 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

66.    FE 2 said that the Company did not have proper systems in place for product selection and inventory distribution across Five Below stores. Specifically, FE 2 reported that there were huge problems with Five Below's ability to track inventory and sales, so much so that any

ability to track which products were popular and selling was totally compromised. FE 2 indicated that Five Below monitored sales trends through Salesforce, but the Company had no ability to track specific products or items and how those were selling.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 66 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

67.    According to FE 2, Five Below "absolutely" had trouble stocking in-demand inventory. FE 2 reported that Five Below did not have any systems in place for store employees to determine what they were selling.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 67 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

68.    FE 2 reported that the Company also lacked systems to carefully track things at the product level. As a result of these issues, FE 2 reported that the managers never knew what products were coming in. On a store level, FE 2 reported that there was no control over inventory or ability to adjust it; they might have 100 of one item and zero of another. FE 2 further reported that stores could not even order specific items. He said that even though certain products were in high demand and selling, the stores would receive "dumb junk" instead. For example, cell phone accessories and chargers consistently sold well in FE 2's stores, but he had trouble getting enough of them. Instead, FE 2's stores received things like shoes and clothing items that did not sell.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 68 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

69.    FE 2 indicated that there was nowhere to put this "junk," and it was rarely the right mix of products. According to FE 2, there was no efficient way to transfer excess product to other stores. As a result, FE 2 said Five Below had big warehouses full of inventory. Indeed, FE 2 reported that no one had control over inventory—not even the Regional Directors.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 69 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

70.    FE 2 repeatedly pushed back and raised his concerns to Stricklin on the lack of control and intention behind product selection and inventory, but the Company simply could not get specific enough information on inventory, as there was just no true process for that. Stores just received whatever the distribution centers sent—making the stores like "yard sale[s]."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 70 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

71.    Similarly, FE 2 said that Five Below did not have a true inventory system. Instead, the Company asked employees to count each section manually, but this method was inaccurate and there was no reliable way to know what the store had for inventory on hand. Five Below store employees also did not have enough time to perform the inventory counts because there was always too much going on at the stores. According to FE 2, there should have been a more adequate and precise inventory process.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 71 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

72.    FE 2 specified that although products were largely tracked at the department level for one of Five Below's departments (e.g., candy or sports), there was no clear-cut process for counting particular products because Five Below's inventory tracking capabilities were so poor that Regional and District Managers never knew if they actually received the inventory they were supposed to receive.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 72 of the Complaint with respect to the identity of,

and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

73.    Online sales for store pick-up further exacerbated Five Below's inventory control issues. FE 2 indicated that customers were purchasing products online to pick up at the store (promoted by Five Below as "BOPI"—buy online pickup in-store), but there was no way for the Company to accurately know what inventory was actually available in the store. Customers were supposed to pick up online orders, but the young store employees had no idea how to track that and pack orders that matched what the customer had purchased. FE 2 said the underpaid store employees did not know, and they did not care. Five Below sought to keep wages down to reduce expenses, but these suppressed wages prevented the Company from hiring more experienced employees who would have done a better job managing inventory and customers.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 73 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

74.    FE 2 said that Five Below did not control logistics for product deliveries and used third-party companies to handle all their freight. As a result, store employees never knew how much inventory was actually on the pallets that were delivered. This created an additional layer of problems in terms of inventory control and stocking in-demand products.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 74 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

75.    FE 2 similarly reported that due to Five Below's inability to track inventory, product was often lost in transit. FE 2's colleagues who worked in the store told him that trucks came in, but they only had six pallets of inventory when they were supposed to have received eight. Everything was everywhere. The third-party freight companies used by Five Below just dropped inventory off; sometimes they just stacked pallets up and left them outside the rollout door.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 75 of the Complaint with respect to the identity of,

- 32 -

and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

76.    According to FE 2, whenever shrink numbers came back at high levels, the Company directed the store operators to perform inventory counts. If the inventory shortages were significant, they were told by Stricklin to halt the inventory process because the numbers were "coming back like shit."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 76 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

77.    FE 3 echoed the notion that, contrary to its representations throughout the Class Period, Five Below did not carefully select the inventory going to each store. FE 3 was a Store Operator at Five Below and then became a District Manager at Five Below and served in that role from February 2016 to March 2023. As a District Manager, FE 3 oversaw stores in the western part of the country and was responsible for day-to-day operations in the stores, including hiring employees, ensuring processes were followed, ensuring the safety and security of the buildings, conducting inventory counts, managing internal and external shrink, and handling employee investigations. At the maximum he had 25 stores that he was responsible for; on average he had about 10 stores.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 77 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

78.    FE 3 said there was no strategy focused on how to stay on top of hot trends and that Five Below struggled to stock in-demand products. According to FE 3, Five Below would often advertise a product, like Squishmallows, but when customers showed up, they found out there were limits on how many they could purchase. Other times, customers drove to the stores only to discover there were no Squishmallows in stock. Five Below shipped 20 cases of the product to some stores but only three to others. They "created demand but had no supply," due to the myriad inventory control issues.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 78 of the Complaint with respect to the identity of,

and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

79.    FE 3 further reported that Five Below's inventory problems affected the Five Beyond sections too. FE 3 stated that the Five Beyond sections were often empty or understocked.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 79 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

80.    Senior Executives at Five Below, including the Company's Chief Retail Officer, Hill, were well aware of problems with store inventory. Following FE 3's expression of concerns to his Regional Director about inventory control issues, FE 3's Regional Director instructed FE 3 to stop making weekly adjustments to stores' inventory, FE 3 believed that this followed his Regional Director discussing these issues with George Hill.

**ANSWER:** Defendants deny the averments in the first sentence of paragraph 80 of the Complaint.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph 80 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these remaining averments are, therefore, denied.

81.    FE 4 similarly reported that his store had no "choice in what products it received." FE 4 was a Merchandise Manager at Five Below from October 2023 to March 2024. FE 4's District Manager was Steve Vareberg. As a Merchandise Manager, FE 4 was responsible for store inventory as well as managing the setup of merchandise inside the store.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 81 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

82.    FE 4 recalled that his store had no "choice in what products it received." Instead, it was sent pallets of inventory and told to "just sell it." As pallets of unwanted inventory piled up, FE 4's store reached its capacity because most of the inventory they received was not selling. FE

4 requested that his District Manager, Steve Vareberg, stop sending pallets to his store, as it was overstocked and there were many excess pallets everywhere, FE 4 confirmed that Vareberg was asked via email to stop doing so. FE 4 was aware of multiple conversations where his direct boss told Vareberg that the backroom was full. FE 4 said that this was met with the response, "Nope, sell it. Too bad."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 82 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

83.    Additionally, FE 4 reported that he was never provided with documentation to compare what his store was supposed to have received with what it actually received. According to FE 4, boxes could have been missing and they would not have known.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 83 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

84.    FE 4 further recalled that, when his store conducted inventory counts, they were able to see the numbers of items they were supposed to have, but if there was a gap between that number and the inventory they actually had on hand, employees were instructed to attribute the missing items to theft. That instruction came from Vareberg when FE 4's store was conducting inventory. FE 4 confirmed that much of the "gap" between the inventory records was attributable to Five Below's poor inventory control and not to theft. To FE 4, the order to mark missing inventory as theft seemed to have been Company-wide and thus "theft" or "shrink" incorporated products that stores never received or lost track of.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 84 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

85.    FE 5 reported that Five Below's senior leadership, including direct reports to Defendant Anderson, received information about product inventory each week. FE 5 was a Director at Five Below from January 2019 to February 2024. In his role as a Director, FE 5 created digital ads and production projects, and generally oversaw various aspects of Five Below's

marketing. FE 5 reported to a Senior Creative Director, who reported to John Caruso, a Vice President, who reported to Felipe Zardo, a Senior Vice President.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 85 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

86. FE 5 recalled that the senior leader responsible for product trends was Michael Romanko, CMO, who reported directly to Defendant Anderson. Specifically, Romanko was in charge of the merchandising team, who picked the products and decided what was trending. Felipe Zardo and James Ho also assisted with marketing.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 86 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

87. According to FE 5, Romanko, Zardo, and Ho all received information about inventory, including when inventory was low for a particular product. In fact, FE 5 reported that Zardo and Ho released reports about inventory each week. FE 5's knowledge of this stems from his involvement in multiple discussions about inventory each week, including to align the current store inventory with the Company's marketing and advertising.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 87 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

88. Those discussions included at least Ho and Romanko; based on his conversations with Ho and Romanko, and his knowledge of the Company, FE 5 concluded that Anderson was generally involved as well. Anderson, Romanko, Zardo, and Ho were all "deeply involved" in Five Below's marketing strategy. Romanko reported directly to Anderson. According to FE 5, "everything ran through Anderson." FE 5 believed that Anderson "knew about everything." In meetings FE 5 attended Ho, Zardo, and Romanko would indicate that they "talked to Joel," meaning the issues to be discussed had been shared with Anderson. FE 5 said Anderson knew about everything, including for example, that the Company was often marketing or advertising products that were low on inventory.

- 36 -

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 88 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

89. FE 6 likewise reported that Five Below's inability to predict trends led to serious inventory issues. FE 6 was an Operations Manager of Fulfillment from February 2022 to August 2023. As an Operations Manager, FE 6 was responsible for Five Below's e-commerce department at a Five Below distribution center. FE 6 oversaw three supervisors, who oversaw between 40 and 80 employees. FE 6's team was responsible for packing and shipping any orders from FiveBelow.com.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 89 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

90. FE 6 reported that, at best, Five Below did an "underwhelming" job of staying on top of trends. FE 6 said that Five Below's inventory became extremely saturated due to the Company's inability to accurately predict demand for trend-right products. For example, FE 6 recalled that Five Below launched multiple different versions of the Squishmallow. But when demand fell off, FE 6 was stuck with far too much inventory. FE 6 repeatedly asked management if he could offload the unwanted inventory but was told to just "sit on it." This issue was not uncommon. According to FE 6, during his regular Monday calls with other managers, including both retail and e-commerce, he learned that all of Five Below's distribution centers were struggling to find a solution to their overstock of unwanted goods.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 90 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

91. FE 7 reported that his team utilized a dashboard, which depicted how many orders were projected to come out of each facility, to determine the product flow and mix of each store. FE 7 was an Associate Director of Fulfilment Center Operations at Five Below from March 2021 to December 2023. As an Associate Director, FE 7 oversaw the operations of one of Five Below's fulfillment centers, including supply chain and e-commerce operations. In addition, FE 7 managed

operations supervisors and associates and was responsible for tactical ground operations, such as planning labor.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 91 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

92.    FE 7 reported that each day, he checked a dashboard, which depicted how many orders were projected to come out of each of the Company's three distribution facilities. According to FE 7, the allocations team helped feed data into the dashboard to create a forecast. The allocations represented how many inbound and outbound loads of inventory to expect. FE 7 stated that the allocations team dictated the product flow and mix. FE 7 used the forecast dashboard to plan labor, but inaccuracies in the dashboard compounded Five Below's inventory issues.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 92 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

93.    FE 7 said that there was a daily call to review the forecast of orders and inventory. Vice President of Operations Jason Sheffer was always on the call, along with the general managers for the New Jersey Fulfillment Center, the Arizona Fulfillment Center, and the Indianapolis Fulfillment Center. On these calls, FE 7 said that they discussed upcoming allocation of products.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 93 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

94.    According to FE 7, all of the historical online sales data was tracked by Five Below's corporate offices on a tracking system called Tableau. In fact, FE 7's team could even see how many clicks certain products received. Even with this data, FE 7 said that Five Below had no strategy for sourcing and selling in-demand products. FE 7's team frequently sat on extra inventory—so much so that his warehouse was constantly overstocked. When this happened, FE 7's team was forced to dispose of the inventory, often by shipping it to retail stores to sell at a loss. Another strategy was to donate the extra inventory to a liquidator.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 94 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

95.    In sum, the common theme running through these FEs' statements was that Five Below lacked an ability to effectively identify trends and ensure that its stores received the goods its customers actually wanted. The Company's stores were burdened by too much unwanted inventory and too little in-demand inventory. Five Below lacked adequate inventory monitoring systems to reliably track how much inventory was in its stores and how much inventory should and would be sent to its stores. These issues were widespread throughout the Company's stores, persisted throughout the Class Period, and were corroborated by multiple FEs.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in the first and fourth sentences of paragraph 95 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied. Defendants deny the remaining averments in paragraph 95 of the Complaint.

96.    The Company's inability to execute its trend-right strategy led to decreased revenues and earnings. Contrary to Defendants' touting of the trend-right strategy and blaming shrink for the Company's declining financial results, the Company's own failures were the key cause of its financial downturn.

**ANSWER:** Defendants deny each and every averment of paragraph 96 of the Complaint.

C.    **Defendants Obscure Five Below's Strategic Failings By Falsely Blaming The Company's Problems On Shrink**

97.    When Five Below's structural issues impacted results, Defendants refused to admit the Company's missteps. Instead, they told investors that the public was to blame, asserting that shrink—an external, "societal" problem—was weighing down the Company's results.

**ANSWER:** Defendants deny each and every averment of paragraph 97 of the Complaint.

98.    On the June 1, 2023 earnings call, Defendant Anderson claimed to investors that Five Below "trued [up shrink] last year, and it had an impact on our fourth quarter [and] *we are accruing at the higher rates this year and doing things on our part to mitigate shrink*."

- 39 -

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 98 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 98 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 1, 2023 earnings call. Defendants refer to the June 1, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 1, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

99.    On the next earnings call, on August 30, 2023, Defendant Anderson blamed shrink for Five Below's margins by explaining, "with us not changing the top line [i.e., sales], the 20 basis point decline [in operating margin guidance] is really the only change from the last quarter, and *that pretty much is all based on the changes we're making with the assumption of shrink*." Anderson further stated, "[w]hile *we are adjusting our earnings guidance to reflect an anticipated increase in shrink reserves, our sales outlook remains unchanged*." In other words, Defendants conveyed that shrink was the primary issue weighing on the Company's lowered earnings guidance.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in the second sentence of paragraph 99 of the Complaint from the Action for purposes of liability. Defendants deny the averments in paragraph 99 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire August 30, 2023 earnings call transcript.

100.    On the August 30, 2023 call, Defendants explicitly linked Five Below's shrink issues to perceived national crime trends. In response to an analyst's question, Defendant Bull remarked: "I think you're all familiar with the recent media and videos that are out there where retailers across the sector are experiencing increased levels of shrink and related crime incidents and we are not immune to this as we're finding out." Later, when again asked about the shrink increase, Defendant Anderson explained: "[Y]ou've got several cities now which just simply aren't

prosecuting below the $500 level. Sadly, our hometown here in Philly is a city that's seen some of our highest shrink rates."

**ANSWER:** Defendants deny each and every averment of paragraph 100 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire August 30, 2023 earnings call transcript.

101. Similarly, on Five Below's November 29, 2023 earnings call for the third quarter of 2023, Five Below's CFO Chipman claimed: "Gross margin decreased by approximately 190 basis points to 30.3%, as anticipated. This decline was ***primarily driven by recording actual shrink results for the stores that completed their physical inventories in August as well as recording the true-up of shrink reserves for the full chain***, which we shared during our last quarter's earnings call."

**ANSWER:** Defendants deny each and every averment of paragraph 101 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 29, 2023 earnings call. Defendants refer to the November 29, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 29, 2023 earnings call that would be inaccurate if read in the context of the entire November 29, 2023 earnings call transcript.

102. The next day, Defendant Anderson appeared on Fox Business to discuss Five Below's earnings report with host Maria Bartiromo. Toward the end of the interview, Bartiromo asked to discuss shrink, reminding viewers "and what it really means, is theft." Defendant Anderson replied "[w]e talked about theft in our second quarter call. Theft is real, it's impacting all retailers." He later stated that "this is a real societal problem and we've got to lean together with the politicians to figure this out."

**ANSWER:** Defendants admit the averments in the first sentence of paragraph 102 of the Complaint. Defendants admit that the remaining averments in paragraph 102 of the Complaint

purport to summarize and contain partial excerpts from a November 2023 interview.  Defendants

refer to the November 2023 interview for a complete and accurate statement of its contents and

deny any characterization or interpretation of the document that would be inaccurate if read in the

context of the entire November 2023 interview.

103.    Even as Defendants first began to reveal the truth concerning the Company's problems on Five Below's March 20, 2024 earnings call for the fourth quarter of 2023, Defendants continued to represent shrink as the primary reason for the Company's disappointing financial results. For example, during the earnings call, Defendant Anderson told investors, "[d]espite these strong sales results, earnings per share of $3.65 was at the low end of our internal expectations and can be fully attributed to higher-than-planned shrink."

**ANSWER:**  Defendants deny each and every averment of paragraph 103 of the Complaint,

except admit that this paragraph of the Complaint purports to summarize and contains partial

excerpts from Five Below's March 20, 2024 earnings call.  Defendants refer to the March 20, 2024

earnings call transcript for a complete and accurate statement of its contents and deny any

characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if

read in the context of the entire March 20, 2024 earnings call transcript.

104.    Defendants' false narrative attributing its weakening financial results to shrink is a growing tactic in the retail industry. A series of articles have reported on the issue. An article by CNN on January 18, 2023 stated:

> Companies say these [theft] incidents have led to a spike in merchandise losses, known as shrink. . . . But the retail industry's own figures on shrink cast doubt on their claim that the problem is ballooning. Researchers say *retailers may be blaming theft for losses when they don't actually know the cause*.
>
> . . . .
>
> It's also *easier for companies and the public to blame theft for store closures and retail struggles than admit stores' over-expansion, strategy mistakes and customers abandoning stores for online shopping*, said Jonathan Simon, a criminal justice professor at UC Berkeley School of Law. "It's much more convenient if we can blame it on people we already consider reprehensible," he said.

**ANSWER:** Defendants deny each and every averment of paragraph 104 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the January 2023 CNN article. Defendants refer to the January 2023 CNN article for a complete and accurate statement of its contents and deny any characterization or interpretation of the January 2023 CNN article that would be inaccurate if read in the context of the entire January 2023 CNN article. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the January 2023 CNN article. By way of further response, Defendants deny that the January 2023 CNN article was reflective of what was being experienced at Five Below.

105. Similarly, CNBC reported on the issue on August 10, 2023, stating:

***Retailers who blame organized theft for lower profits could be overstating crime's impact to cover up internal flaws or self-inflicted problems***, CNBC has learned. During recent earnings calls, major companies have blamed disappointing bottom lines or shrinking margins in part on roving bands of organized gangs that ransack their shelves.

. . . .

"Shrink has been going up but sometimes it's very difficult to unpack how much is down to theft and how much is down to internal retailer issues and stumbles," Neil Saunders, a retail analyst and the managing director of GlobalData, told CNBC. "It is a problem, we know that, it does take money off margins, we know that, but ***there's too much opacity in the way in which it's reported and it is being partly used as an excuse for generally bad performance***," Saunders said.

**ANSWER:** Defendants deny each and every averment of paragraph 105 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the August 2023 CNBC article. Defendants refer to the August 2023 CNBC article for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 2023 CNBC article that would be inaccurate if read in the context of the entire August 2023 CNBC article. Defendants expressly

deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the August 2023 CNBC article. By way of further response, Defendants deny that the August 2023 CNBC article was reflective of what was being experienced at Five Below.

106. CNBC followed up its reporting with another article dated September 8, 2023 stating:

Over the last few quarters, more and more retailers have called out shrink as a drain on profits and blamed theft for those losses. But they have offered few details about how much inventory losses are actually costing them. *Experts have said some companies could be using crime as an excuse to distract from other operational challenges that drive shrink, such as poor inventory management and staffing issues*.

Companies that have disclosed shrink numbers and explained to investors how they're working to solve it show that they have a grasp on the problem, Sonia Lapinsky, a partner and managing director with AlixPartners' retail practice, told CNBC. Others that *loosely blame shrink and theft for plummeting profits without providing much more explanation may be trying to obfuscate internal issues*, said Lapinsky.

"Are you clearing way more inventory because you mis-planned it and you mis-bought it and that's what's really getting a bigger profitability hit?" said Lapinksy. "But because everybody's saying 'let's just blame the theft that's increased and that's out of my control,' let me tell the Street that that's why it's happening and not disclose what's really going on in operation."

**ANSWER:** Defendants deny each and every averment of paragraph 106 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the September 2023 CNBC article. Defendants refer to the September 2023 CNBC article for a complete and accurate statement of its contents and deny any characterization or interpretation of the September 2023 CNBC article that would be inaccurate if read in the context of the entire September 2023 CNBC article. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the September 2023 CNBC article. By way of further response, Defendants deny that the September 2023 CNBC article was reflective of what was being experienced at Five Below.

- 44 -

107.    Likewise, NPR reported on the issue on March 11, 2024 stating:

[C]rime became a common theme on retailers' typically dry quarterly earnings calls. Executives often mentioned "shrink" – inventory missing for one reason or another – as a factor behind declining profits.

. . . .

Crime data has yet to indicate a nationwide epidemic of theft, leaving us only to guess at the true scale of the problem.

. . . .

[A]nalysts surmised that *retailers also likely used crime as a cover for closures of underperforming locations and lackluster financial results, making up for shoppers' tightening budgets, for example, or a glut of unpopular products*.

**ANSWER:** Defendants deny each and every averment of paragraph 107 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the March 2024 NPR article. Defendants refer to the March 2024 NPR article for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 2024 NPR article that would be inaccurate if read in the context of the entire March 2024 NPR article. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the March 2024 NPR article. By way of further response, Defendants deny that the March 2024 NPR article was reflective of what was being experienced at Five Below.

108.    Analysts have also recognized that companies have used shrink losses as an excuse for underlying financial issues. For example, S&P Global Ratings' analysts noted in September 2023 that they "believe some retail companies could be overstating the contribution of theft." William Blair analysts similarly noted in October 2023 that "[w]hile theft is likely elevated, companies are also likely using the opportunity to draw attention away from margin headwinds in the form of high promotions and weaker inventory management in recent quarters" and that "[w]e also believe some more recent permanent store closures enacted under the cover of shrink relate to underperformance of these locations."

**ANSWER:** Defendants deny each and every averment of paragraph 108 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial

excerpts from the September 2023 S&P Global Ratings report and the October 2023 William Blair report. Defendants refer to the September 2023 S&P Global Ratings report and the October 2023 William Blair report for a complete and accurate statement of their contents and deny any characterization or interpretation of the September 2023 S&P Global Ratings report and the October 2023 William Blair report that would be inaccurate if read in the context of the entire September 2023 S&P Global Ratings report and the October 2023 William Blair report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the September 2023 S&P Global Ratings report and the October 2023 William Blair report. By way of further response, Defendants deny that the September 2023 S&P Global Ratings report and the October 2023 William Blair report were reflective of what was being experienced at Five Below.

109. Consistent with CNBC's reporting above, Five Below provided scant details about its actual shrink levels. Defendants did not quantify the Company's total shrink expense in any quarter or year during the Class Period or break down how much of its shrink was attributable to theft, versus its own inventory control and related problems. Rather, Defendants made opaque references to the amount by which shrink increased from one period to another. Investors were not told whether shrink in any given period totaled $10 million, $100 million, or any other number. The lack of transparency prevented investors from understanding the full impact of shrink on the Company's business. It also provided Defendants with a convenient cover to assign blame to the unquantified and amorphous shrink figure that was attributed to vague criminals stealing items that in reality Five Below lost track of or just couldn't sell.

**ANSWER:** Defendants deny each and every averment of paragraph 109 of the Complaint.

110. Defendants coupled their representations blaming the Company's issues on shrink with misleading claims that they had taken steps to mitigate shrink and that those efforts were bearing fruit. For example, on the June 1, 2023 earnings call for the first quarter of 2023, Defendant Anderson stated, "we are . . . *doing things on our part to mitigate shrink*." On the same call, Defendant Bull stated, "we're *focusing on preventative measures around shrink*."

**ANSWER:** Defendants deny the first sentence of paragraph 110 of the Complaint. Defendants state that the Court's Order (ECF 46) dismissed the averments in the second and third sentences of paragraph 110 of the Complaint from the Action for purposes of liability. To the

extent a response is required, Defendants deny the averments in the second and third sentences of paragraph 110 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 1, 2023 earnings call. Defendants refer to the June 1, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 1, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

111.    On the August 30, 2023 earnings call for the second quarter of 2023, Defendant Bull stated, "I am also leading a team to focus on operational mitigation efforts to counter the elevated shrink trends." He added: "[W]e've *dedicated a team to look at all different areas to help with mitigation efforts. And that includes enhanced technology, merchandise presentation, . . . register formats, policies and procedures*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 111 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 111 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

112.    On the same call, Defendant Anderson claimed that the mitigation efforts were already working, stating: "We'd *already mitigated some of the things from the 30 basis [point] increase from last year*. . . . The difference is . . . a year ago, we weren't doing anything about it. . . . So *all the mitigation efforts we are putting in just started*." He further stated, "I see nothing but upside as we get past this shrink, put mitigation efforts in for that."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 112 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 112 of the Complaint, except admit that

this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

113. On the November 29, 2023 earnings call for the third quarter of 2023, CFO Chipman stated, "[a]s it relates to shrink, *we are working on many initiatives throughout the organization* to help mitigate the anticipated increase we have forecasted." On the same call, Defendant Anderson stated, "we obviously think *our mitigation efforts are working*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 113 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 113 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 29, 2023 earnings call. Defendants refer to the November 29, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 29, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

114. Defendants touted their shrink mitigation in an apparent effort to calm investor concerns about the purported impact of shrink. In other words, as part of the scheme to blame shrink, Defendants pointed to their shrink mitigation strategies to ease investors' concerns about shrink going forward and keep the focus on proactive measures that the Company was purportedly undertaking. Defendants claimed that theft was Five Below's biggest issue and that the Company had changed its "business model" to address the issue, then told investors the Company could and was solving that problem through a "dedicated team" led by the then-Chief Operating Officer (Defendant Bull). But these statements were misleading and Defendants failed to disclose, and in fact actively concealed, the true problems facing the Company with product selection, inventory control and allocation.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 114 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 114 of the Complaint.

115. Analysts accepted Defendants' explanation that shrink was the key pressure on the Company's business and their assurances that shrink mitigation efforts were underway. For example, in its June 2, 2023 report William Blair reported that "[i]n line with many of its peers, Five Below highlighted increased pressures related to shrink where the company recorded a one-time true-up." In its August 30, 2023 report, Credit Suisse explained that Five Below joined "the long list of retailers embedding significant margin headwinds from shrink in their forward outlooks," while Truist accepted that shrink was responsible for Five Below's lower "bottom line." Similarly, UBS reported that the Company had lowered its earnings per share outlook "due in large part to a rise in shrink," while also explaining that Five Below "expects to take steps that will offset some of this impact," including "taking steps to mitigate the shrink." Along the same lines, Wells Fargo characterized Five Below as "[a]nother [s]hrink [c]asualty" while also noting that the Company "sounds confident it[']s seen the worst of shrink." On November 29, 2023, discussing Five Below's most recent financial results, BofA Securities reported that the Company had "taken initiatives to mitigate shrink."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 115 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 115 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from analyst reports. Defendants refer to these analyst reports for a complete and accurate statement of its contents and deny any characterization or interpretation of the analyst reports that would be inaccurate if read in the context of the entire analyst reports.

### 1.   Defendants Exaggerated Both The Impact Of What They Called Shrink And Five Below's Mitigation Efforts

116. As discussed in ¶¶179-205, the Company's management ultimately admitted–contrary to their insistence that shrink was to blame for any issues–that a "significant part of" Five Below's "top-line challenges [were] *self-inflicted from less-than-exciting product assortment* and likely suboptimal pricing."

**ANSWER:** Defendants deny each and every averment of paragraph 116 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 Deutsche Bank report. Defendants refer to the July 2024 Deutsche Bank report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 Deutsche Bank report

that would be inaccurate if read in the context of the entire the July 2024 Deutsche Bank report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 Deutsche Bank report.

117. In the March 20, 2024 earnings call, Defendants also acknowledged that the efforts to control shrink, contrary to their prior claims, were not "working." Defendant Anderson, explaining why the Company fell short of guidance, explained that their "prior expectations assumed that our mitigation efforts would result in a reduction of the shrink rate," which did not occur. Indeed, Defendant Anderson called into question how extensively the efforts had been implemented, stating only that in the last two quarters of 2023 Five Below had "tested many shrink mitigation initiatives."

ANSWER: Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 117 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 117 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire the earnings call transcript.

118. Former employees interviewed by Lead Plaintiffs further peeled back the curtain by revealing that shrink, despite receiving the lion's share of Defendants' blame during the Class Period, was not the principal issue impacting Five Below. They also confirmed that the Company, despite Defendants' representations to the contrary, did not take its shrink mitigation efforts seriously. Specifically, employees noted that since Five Below was not willing to increase its staffing levels and payroll costs, which would further compress profit margins, it had no realistic approach to meaningfully combat shrink. Defendants' statements blaming shrink and claiming to address it were thus merely an attempt to attribute its own poor performance to external factors.

ANSWER: Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 118 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 118 of the Complaint with respect to the identity of, and the

information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

119. According to FE 1, the District Manager who oversaw over a dozen stores through November 2023, shrink headwinds were a lesser part of the sales decline at Five Below, and the real problem was that Five Below was unable to stock trend-right merchandise.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 119 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

120. FE 1 reported that the primary contributor to theft was self-checkout. FE 1 explained that the only measure Five Below took to address theft was to instruct one or two associates to help ring up customers in the self-checkout registers. But according to FE 1, that policy only created more problems, as customers did not like it and pushed back against store associates who attempted to help them at checkout. FE 1 recalled how the employees, who were young and inexperienced, could not handle customers' dissent. FE 1 further recalled that Five Below kept constantly changing its checkout policy due to the amount of customer complaints. FE 1 stated that there were no other major proposals from Five Below to combat shrink.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 120 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

121. FE 1 was perplexed by Five Below's minimal efforts to combat shrink. Despite hearing from corporate that shrink was a problem, FE 1 stated that Five Below continued to open stores with only self-checkout registers. The ongoing shrink issues were compounded by the introduction of Five Beyond sections. According to FE 1, the Five Beyond sections created visual difficulties for store employees and were mostly empty, creating even more opportunities for customers and employees to steal.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 121 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

122. Similarly, according to FE 4, the former Merchandise Manager, Five Below claimed they wanted to prevent shrink but gave managers and employees no options to do so. FE 4 said that employees and managers were not trained or provided with any strategies or ideas to prevent theft—Five Below "didn't do anything about shrink." In fact, FE 4 reported that employees were required to sign a contract which prevented them from doing anything if they witnessed theft. FE 4 had to sign a contract that promised he would not intervene if someone stole inventory.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 122 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

123. FE 3, the former Store Operator, also reported that shrink posed less of an issue than other problems, such as inventory control. FE 3 did not believe the measures Five Below took to deal with shrink were adequate because they did not address the inventory issues. FE 3 heard about the shrink team led by the COO. But according to FE 3, anything the team suggested would have been impossible to implement without additional payroll. The only measure to prevent shrink that FE 3 was told to take was to instruct stores to have an employee assist customers at the self-checkout registers. FE 3 reported that this could never have worked because the stores were too understaffed. FE 3 further confirmed that another problem was that employees were instructed not to do anything about shoplifting. If they saw a customer shoplift, they were not allowed to intervene.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 123 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

124. FE 2, the District Manager responsible for the Midwest, also reported that the only measure he recalled Five Below taking in response to theft was a policy on the assisted self-checkouts. If there were more than three people in line, a store employee was required to check out the customers. The Company wanted an employee to oversee the registers and help scan items for customers. According to FE 2, it was difficult to do that because of Five Below's reluctance to increase its labor costs. FE 2 reported that Five Below sought to keep wages down and reduce expenses, but the suppressed wages prevented the Company from hiring employees that could have done a better job managing inventory and customers. FE 2 indicated that the way Five Below allocated certain things, like hours or theft, just did not make sense; it was a "free-for-all." FE 2 stated that Five Below executives could have used shrink as an excuse to conceal inventory issues.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 124 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

125. Meaningful mitigation would have required more labor costs. The former employees stated that the Company would not spend more on labor. The Company even acknowledged the tension between labor costs and shrink on the March 20, 2024 earnings call when Defendant Anderson stated: "[I]t doesn't do us much good at the operating margin level if we have to take up labor by 30 [basis] points just to reduce shrink by 30. So it's a little bit of a balancing act of how much labor can you put in to reduce shrink." His statement revealed the Company's hesitancy to devote labor costs to combat shrink, which was contrary to Defendants' repeated statements throughout the Class Period touting their shrink mitigation efforts.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 125 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 125 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

126. Five Below even implemented self-checkout to reduce labor costs. But self-checkout necessarily led to increased theft. The Company apparently felt the reduction in labor costs was worthwhile despite the increased shrink. Five Below was not going to do what it took to meaningfully address shrink despite its lip service touting mitigation.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 126 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 126 of the Complaint.

127. Low staffing contributed to shrink even beyond the self-checkout issue. In a UBS analyst report dated July 21, 2024, UBS summarized its interview of a former Five Below executive, stating: "[t]he expert believes recent shrink issues are not solely attributable to more

self-checkout registers. He believes lower staffing levels have also been a contributing factor over time."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 127 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 127 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a July 21, 2024 UBS report. Defendants refer to the July 21, 2024 UBS report transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 21, 2024 UBS that would be inaccurate if read in the context of the entire report.

128. Critically, in contrast with Defendants' statements that they were taking multiple approaches to mitigate shrink, they were not. The FEs consistently reported that the only thing Five Below did to mitigate shrink at all was to make inconsistently applied changes to self-checkout. But those efforts were similarly limited by the Company's refusal to increase labor costs.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 128 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 128 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

129. At bottom, Defendants' shrink mitigation efforts were not serious attempts to control shrink. The lack of effort implies that shrink was not a major concern to the Company. Rather, it was a satellite issue used as an excuse for the Company's financial struggles.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 129 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 129 of the Complaint.

- 54 -

**D.**     **Defendants Consistently Touted Five Below's Expansion Strategy As A Benefit To The Company**

130.    Defendants also made misleading statements and omissions regarding Five Below's ambitious Triple-Double plan, failing to disclose any issues with or adverse consequences of the plan. Defendants made a series of misleading statements throughout the Class Period touting the Triple-Double plan. Absent from those statements was any mention of the toll the Triple-Double plan was taking on management or the distractions it was creating internally.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 130 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 130 of the Complaint.

131.    For example, at the start of the Class Period, on the November 30, 2022 earnings call for the third quarter of 2022, Defendant Anderson stated: "[W]e're still on track for the long-term Triple-Double goals. . . . We are gaining momentum going into '23 and expect that to continue to grow."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 131 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 131 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's November 30, 2022 earnings call.  Defendants refer to the November 30, 2022 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 30, 2022 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

132.    On the March 15, 2023 earnings call for the fourth quarter of 2022, Defendant Bull stated, "[w]e plan to open 200 new stores [in 2023] and expect to end the year with 1,540 stores or unit growth of approximately 15%." On the same call, Defendant Anderson added: "[T]he process -- we streamlined it in several different ways to be able to execute more leases in a faster time line more per month. We are expanding the types of centers we're going into." Defendant Anderson reiterated that prediction on the next earnings call on June 1, 2023.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 132 of the Complaint from the Action for purposes of liability.  To the extent a response

is required, Defendants deny the averments in paragraph 132 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 15, 2023 earnings call.  Defendants refer to the March 15, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 15, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

133.   On August 30, 2023, Defendant Bull asserted "[we] feel extremely confident around the Triple-Double vision."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 133 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 133 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 30, 2023 earnings call.  Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

134.   On the November 29, 2023 earnings call for the third quarter of 2023, Defendant Anderson stated: "We remain on track to achieve the goal of opening over 200 stores [in 2023]. . . Our real estate teams have built a strong pipeline of new stores for 2024 and have also started working on 2025 stores."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 134 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 134 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's November 29, 2023 earnings call.  Defendants refer to the November 29, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization

or interpretation of the November 29, 2023 earnings call that would be inaccurate if read in the

context of the entire earnings call transcript.

135.    At the January 8, 2024 ICR Conference, Defendant Anderson spoke at length about the Triple-Double plan, stating:

> Now I'd like to update you on the Triple-Double strategy. As you recall, we shared the strategy with you back in March of 2022, and it was very simple. We were going to triple our stores by 2030, we're going to double our earnings and sales by 2026 -- 2025. Today I will update you on exactly where that vision stands. . . .

> . . . As it relates to tripling our stores by 2030, I repeat, ***nothing has changed***. We still . . . expect to triple our stores by 2030. We opened 1,000 stores in the last seven years. We're going to open 2,000 stores in the next seven years.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in

paragraph 135 of the Complaint from the Action for purposes of liability.  To the extent a response

is required, Defendants deny the averments in paragraph 135 of the Complaint, except admit that

this paragraph of the Complaint purports to summarize and contains partial excerpts from the 2024

ICR Conference.   Defendants refer to the 2024 ICR Conference earnings call transcript for a

complete and accurate statement of its contents and deny any characterization or interpretation of

the 2024 ICR Conference that would be inaccurate if read in the context of the entire 2024 ICR

Conference transcript.

136.    At the same ICR Conference, CFO Chipman stated: "So the first pillar is our store growth plan and store expansion. As I just mentioned, we opened a record 204 net new stores in fiscal year '23, and we'll grow that to between 225 and 235 in fiscal '24 and grow again to 250 to 270 by the end of fiscal 2025." Absent from the remarks of Defendant Anderson and CFO Chipman was any mention of the toll the plan was taking on management or the distractions it was creating internally.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in

paragraph 136 of the Complaint from the Action for purposes of liability.  To the extent a response

is required, Defendants deny the averments in paragraph 136 of the Complaint, except admit that

this paragraph of the Complaint purports to summarize and contains partial excerpts from the 2024

ICR Conference.  Defendants refer to the 2024 ICR Conference earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the 2024 ICR Conference that would be inaccurate if read in the context of the entire 2024 ICR Conference transcript.

137.  On the June 5, 2024 earnings call for the first quarter of 2024, Defendant Anderson again discussed the "pillars" of Five Below's growth strategy, claiming: "Our first pillar is store expansion. [We have] over 1,600 stores currently and a road map to 3,500 Five Below locations nationwide by the end of 2030. . . . *We are confident in our path to achieve approximately 230 new store openings this year and have already built a strong pipeline for 2025*." He further stated, "our focus on executing our store growth plans with excellence is *unwavering*." He gave no hint that the Company was considering slowing the pace of store openings.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 137 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 137 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's June 5, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

138.  At the June 12, 2024 Oppenheimer Conference, Defendant Anderson stated: "[I]t's also important we don't lose sight of the long term and the Five Below growth story and that remains *solidly intact* and there are several components to it. One, it's all about a strong new store growth pipeline, which we reiterated several times on our [Q1 2024] call. It's about the Five Beyond expansion continuing . . . . [T]he long term growth of Five Below is something I am very excited about and we continue to pursue."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 138 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 138 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the 2024

- 58 -

Oppenheimer Conference.  Defendants refer to the 2024 Oppenheimer Conference earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the 2024 Oppenheimer Conference that would be inaccurate if read in the context of the entire 2024 Oppenheimer Conference transcript.

139.    However, within a few months, the Company would openly walk back its expansion plans, in recognition of long-running issues with the plans. Defendants would also admit that the Triple-Double plan distracted management from other business matters including its trend-right strategy and was overly aggressive.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 139 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 139 of the Complaint.

### 1.    In Reality, Five Below's Expansion Strategy Hurt Existing Stores, And The Company Did Not Properly Staff Or Stock The New Locations

140.    Following the decline in Five Below's financial results and the clear difficulty in executing its stated strategies, it was clear that the Anderson-championed expansion plan was not working. The Company confirmed this when Defendant Bull announced on the August 28, 2024 call – as analysts predicted at the end of the Class Period – that Five Below would "moderat[e] [its] store growth for 2025."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 140 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 140 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 28, 2024 earnings call.  Defendants refer to the August 28, 2024  earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

141.    Former Employees confirmed that Five Below dealt with issues from its expansion strategy throughout the Class Period.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 141 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 141 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied.

142.    According to FE 8, when Five Below opened new stores, older stores in the same area were always negatively affected. FE 8 was a District Manager at Five Below from February 2016 through July 2024. In that role, FE 8's responsibilities included overseeing 12 stores, daily communication with the regional director, and visiting stores to evaluate asset protection and customer engagement. FE 8 reported to a Regional Director, who reported to Craig Herr, Divisional Vice President, who reported to George Hill, Chief Retail Officer.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 142 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

143.    FE 8 stated that when new stores opened, sales in comparable stores immediately dropped. But Five Below did not adjust the sales targets for comparable stores—even when everyone knew internally that new stores would take away sales.

**ANSWER:** Defendant denies the averments in the second sentence of paragraph 143 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph 143 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

144.    FE 7, the Associate Director of Fulfillment Center Operations, explained that it was known throughout the Company that Five Below's expansion plan was far too aggressive. On calls, FE 7 and senior leadership, including Jason Scheffer, Rich Tannenbaum, and Defendant Bull, discussed the issues with Five Beyond sections. FE 7 reported that employees started expressing concerns over Five Below's expansion plan as early as 2021.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 144 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 144 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

145.    Other former employees identified specific issues with the new stores. For example, FE 3, the Store Operator, said that the Company's Triple-Double strategy was totally unrealistic because the stores were so severely understaffed.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 145 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 145 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

146.    FE 2, the District Manager, similarly reported issues with the new locations. One new store under his area was opened with an entire empty section. Staff had to "fluff" the section just to fill the hole. He did not have the right product to fill the empty section, and he could not order it from the warehouse. FE 2 submitted a request to take the product from another store, to just transfer it over for the opening at least, but that was very complicated at Five Below and did not happen.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 146 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

147.    FE 1, another District Manager, indicated that the Five Beyond sections of new stores remained empty months after they were opened. In some cases, FE 1 recalled that Five Below took over a year to ship any Five Beyond inventory to stores opening Five Beyond sections. Instead, FE 1 stated that Five Below would put banners up saying that products were on their way.

In some cases of empty stores, Five Below might send outdated product to make the stores appear fuller, but no store had any control over the products it received.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 147 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

148.    FE 1 reported that stores began receiving Five Beyond inventory and other new products a couple weeks before their fifteen-month mark, at which point they became a "comp store" eligible for inclusion in the Company's same-store comparable sales figures. FE 1's boss, Alferez, talked openly about the strategy on calls.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 148 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witness, and these averments are, therefore, denied.

149.    Five Below's efforts to suppress initial sales results in new stores created the false impression of growth or over-performance in same-store sales.

**ANSWER:** Defendants deny each and every averment of paragraph 149 of the Complaint.

150.    The Company, which as explained in ¶¶53-96 had difficulty identifying and stocking trend-right inventory customers wanted at its existing locations, simply was not prepared to profitably maintain its growth, and which it severely cut back following Anderson's departure.

**ANSWER:** Defendants deny each and every averment of paragraph 150 of the Complaint. By way of further response, Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 150 of the Complaint relating to Five Below's Triple Double strategy from the Action for purposes of liability.

## V.    THE TRUTH EMERGES

### 1.    March 20, 2024

151.    Investors began to learn the true state of Five Below's business on March 20, 2024, when the Company reported its results for the fourth quarter of 2023 (after the close of trading).

In its press release, the Company disclosed earnings per share ("EPS") of $3.65, which was 3.5% ($0.13) below analysts' consensus EPS target. The truth was revealed that the Company's performance was deteriorating. However, Defendants misrepresented the reason for the deterioration, attributing it to increases in shrink while omitting that the Company's inability to execute on its trend-right strategy was the true cause for the fall-off in performance.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 151 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 151 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

152. Defendant Anderson claimed in the accompanying press release that "[t]he benefit of strong sales performance to our profitability *was offset by higher than anticipated shrink headwinds*, resulting in earnings at the low end of our guidance range."

**ANSWER:** Defendants deny each and every averment of paragraph 152 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 press release. Defendants refer to the March 20, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 press release that would be inaccurate if read in the context of the entire March 20, 2024 press release.

153. On that day's earnings call, Defendant Anderson misleadingly claimed that the lower-than-expected earnings per share was "*fully attributed to higher-than-planned shrink*."

**ANSWER:** Defendants deny each and every averment of paragraph 153 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 earnings call.

Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

154. While blaming shrink for the Company's disappointing financial results, Defendants sought to minimize investors' concerns by pointing to the Company's efforts to mitigate shrink. Later in the March 20, 2024 call, Defendant Anderson downplayed shrink as a Five Below-specific issue, claiming it was "industry-wide and a societal problem that accelerated over the last year," while also claiming that the Company had taken specific efforts to combat it.

**ANSWER:** Defendants deny each and every averment of paragraph 154 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

155. Despite Defendants' attribution of all of Five Below's troubles to the "societal problem" of shrink, the announced results partially revealed larger issues specific to Five Below, including the issues described above related to problems with new stores opened as part of the Triple-Double plan. For example, an analyst from Gordon Haskett referenced Five Below's "new store productivity" (NSP), a figure that "measures the sales generation efficiency of a new store in its first year as a percentage of the performance of a pre-existing [store]."[12] The analyst pointed out a decline in NSP – which meant that Five Below's new stores were performing worse than their existing stores, and that this trend was increasing. Defendant Anderson attributed this decline to a change in strategy. He admitted that while in "earlier years" new store productivity had been in the "90s," it had declined first to the high 80s and, as of the previous quarter, the "upper 80s," and then, in the prior quarter, the "mid-80s." However, he blunted the impact of that admission by claiming that prior, higher new store productivity rates were attributable to pre-pandemic "marketing campaigns when we opened new stores," which the Company no longer undertook.

---

[12] *Retail Industry Overview*, VisibleAlpha.com, https://visiblealpha.com/consumer-services/retail/retail-kpis/ (last visited December 12, 2024). New store productivity of 100% would indicate a similar performance of a new store compared to a pre-existing or same-store.

**ANSWER:** Defendants deny each and every averment of paragraph 155 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

156.    Analysts reacted sharply to the news of disappointing earnings, with many either downgrading Five Below (for example, JP Morgan downgraded Five Below shares from "Overweight" to "Neutral") or reducing the Company's stock price target.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 156 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 156 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a JP Morgan report.  Defendants refer to the JP Morgan report for a complete and accurate statement of its contents and deny any characterization or interpretation of JP Morgan report that would be inaccurate if read in the context of the entire report.

157.    Guggenheim explained that it had expected Five Below's Q4 results to be "better set-up than peers," but acknowledged that it "couldn't have been more wrong." The Guggenheim report explained that both the Company's results and guidance for the next year were below forecasts and identified the "meaningful labor investments designed to curtail shrink" as a drag on guidance, explaining that "FIVE is leaning into associate-assisted, rather than self-checkout, including receipt checking, which was piloted in 20 stores in the 4Q."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 157 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 157 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a

Guggenheim report.  Defendants refer to the Guggenheim report for a complete and accurate statement of its contents and deny any characterization or interpretation of the Guggenheim report that would be inaccurate if read in the context of the entire report.  Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the Guggenheim report.

158.    Similarly, Craig-Hallum described the guidance miss as "among the biggest misses in the decade-plus the company has been public," while also acknowledging that the shrink mitigation efforts "will involve increased staffing efforts and a shift away from self-checkout that will drag [costs] higher." And Evercore ISI, which lowered Five Below's price target from $240 to $230, explained that "[s]hifting into employee assisted checkout/ security/ and mitigation efforts should reduce theft, but with higher wage/ longer checkouts EBIT margin recovery likely constrained this year and next."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 158 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 158 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a Craig-Hallum report and Evercore ISI report.  Defendants refer to the Craig-Hallum report and Evercore ISI report for a complete and accurate statement of its contents and deny any characterization or interpretation of the Craig-Hallum report and Evercore ISI report that would be inaccurate if read in the context of the entire reports.  Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the Craig-Hallum report and Evercore ISI report.

159.    UBS Securities lowered its price target from $270 to $245. UBS analysts led off their report claiming the earnings release would be "sure to spark an intense debate" on the Company's status as a worthy investment, and even before addressing shrink pointed out that "the company noted that its new-store productivity was around 85% for FY'23. This is lower than the historical 90%-100% the company has achieved." UBS concluded that it was "likely that the company's NSP productivity is simply going to moderate as it further saturates its addressable market."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 159 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 159 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a UBS Securities report.  Defendants refer to the UBS Securities report for a complete and accurate statement of its contents and deny any characterization or interpretation of the UBS Securities report that would be inaccurate if read in the context of the entire report.  Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the UBS Securities report.

160.    Analysts also expressed surprise at how the Company's tone changed from the recent ICR Conference held on January 8, 2024. For example, Wells Fargo wrote on March 20, 2024, "FIVE provided a surprisingly disappointing update given a generally upbeat tone at ICR." Unbeknownst to analysts, the weak performance was due in large part to the Company's lack of execution on its trend-right strategy.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 160 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 160 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a Wells Fargo report.  Defendants refer to the Wells Fargo report for a complete and accurate statement of its contents and deny any characterization or interpretation of the Wells Fargo report that would be inaccurate if read in the context of the entire report.  Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the Wells Fargo report.

161.    Despite these reactions, Defendants' attribution of the lowered earnings per share "fully" to shrink, coupled with their insistence that the Company was implementing mitigation measures and their characterization of shrink as an industry-wide problem, lessened the impact of the disclosure. For example, while claiming to be "disappointed with the management of guidance," Wells Fargo Securities reported that Five Below was "not the only company with a

shrink problem and the issue seems to have peaked." Telsey Advisory Group reported its belief that the shrink mitigation efforts would "work as the year progresses" and opined that "the shrink pressure will prove somewhat transitory."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 161 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 161 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from a Wells Fargo report and Telsey Advisory Group report. Defendants refer to the Wells Fargo report and Telsey Advisory Group report for a complete and accurate statement of their contents and deny any characterization or interpretation of the Wells Fargo report and Telsey Advisory Group report that would be inaccurate if read in the context of the entire reports. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the Wells Fargo report and Telsey Advisory Group report.

162. Despite these caveats, following the March 20, 2024 announcement, earnings call, and market reaction, Five Below's share price plummeted by $32.18 per share to close on March 21, 2024 at $176.79, a decline of more than 15% from its $208.97 close on March 20.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 162 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 162 of the Complaint as stated, and admit only that Five Below's share price was lower on March 21, 2024 than its closing price the previous trading day.

### 2. June 5, 2024

163. On June 5, 2024, Five Below released its earnings for the first quarter of 2024, with sales results that Defendant Anderson described as disappointing and securities analysts at Truist characterized as "painful." Market analysts also proved increasingly unwilling to swallow Five Below's explanation for the downturn.

**ANSWER:** Defendants deny each and every averment of paragraph 163 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's June 5, 2024 press release. Defendants refer to the June 5, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 press release that would be inaccurate if read in the context of the entire June 5, 2024 press release.

164. Specifically, comparable sales decreased by 2.3% from the first quarter of fiscal year 2023, operating income declined 14.6% from $42.4 million to $36.2 million, net income declined 16% from $37.5 million to $31.5 million, and diluted income per common share declined 15% from $0.67 to $0.57.

**ANSWER:** Defendants deny each and every averment of paragraph 164 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 press release. Defendants refer to the June 5, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 press release that would be inaccurate if read in the context of the entire June 5, 2024 press release.

165. On the earnings call, Defendant Anderson tried to place the blame on macro trends, claiming that "consumers are feeling the impact of multiple years of inflation . . . and are therefore far more deliberate with their discretionary dollars." However, he also acknowledged that the Company's unfavorable product mix significantly impacted its financial results, noting the Company's "declining sales and older merchandise trends led by Squishmallows." As this acknowledges, Five Below's inability to stock trend-right products, mitigate shrink as it said it would, and execute the expansion strategy, where the true reasons underlying the performance decline.

**ANSWER:** Defendants deny each and every averment of paragraph 165 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

166.    An analyst from Barclays pushed back on the Company's attribution of financial problems to macroeconomic trends, pointing out that "[w]e've obviously seen declines in discretionary demand at many of your peers," but "up until this quarter, Five had outperformed a lot of those peers," while "that gap is narrowed a lot this quarter." Defendant Anderson conceded that it had "proven harder for us to lap some of the big trends from last year," and claimed "that's probably been the biggest difference from last year's outperformance to this year." This was the Company's first partial revelation that its trend-right failures were a cause of its deteriorating financial results.

**ANSWER:** Defendants deny each and every averment of paragraph 166 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

167.    A Truist analyst questioned whether the harms might be "self-inflicted," noting that "the [other] off-price retailers are performing very well" and questioning whether it was possible Five Below's "product[]s [had] gotten a little bit stale." Defendant Anderson pushed back, claiming that for the retailers the analyst mentioned "a large percentage of their business is apparel," and claiming that the dollar stores such as Dollar General and Dollar Tree were also experiencing "negative comps and discretionary categories."

**ANSWER:** Defendants deny each and every averment of paragraph 167 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

168.    Defendant Anderson dissembled in seeking to make the point that Five Below's problems were purely macroeconomic and not based on any operational or other issues specific to Five Below, including that competitors were taking market share. For example, a UBS analyst questioned whether the slowdown was "caused by simply increased competition, whether it's some new Dollar store competitor or inexpensive Asian direct sellers or marketplaces that are gaining increased traction in the United States?" Defendant Anderson sought to deflect blame away from the effects of competition and claimed that Five Below's "quarterly research" asked "where do

you go when you want fun, trend-right, high-value items," and claimed that "we have not seen some of the retailers you just mentioned move up the list on that." He also insisted that Five Below had "sliced our sales performance by where our competition is. . . . And so we didn't really see any trend that would lead it to say when we're near these retailers or those retailers are closer to us that our performance was worse." Finally, he claimed that if the slowdown were attributable to increased competition it would not have dropped off "in the middle of the quarter."

**ANSWER:** Defendants deny each and every averment of paragraph 168 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

169. A Goldman Sachs analyst raised the question of whether Five Below's expansion strategy was benefiting the Company when she spotlighted the problem of "cannibalization," but Defendant Anderson insisted that, while cannibalization had increased from "in the 50 basis points" pre-COVID to "in the 80 to 100 basis points annually," he did not "expect that to be any contributing factor," based on the fact that it could not account for the sales drop in the middle of the quarter.

**ANSWER:** Defendants deny each and every averment of paragraph 169 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

170. Defendant Anderson concluded his remarks by again trying to treat Five Below's problems as industry-wide, claiming that "our core customer, they are clearly prioritizing needs over wants, and that had a big impact on our performance in Q1."

**ANSWER:** Defendants deny each and every averment of paragraph 170 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call transcript for a complete

and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

171. Analyst reaction was once again disappointed, and a number of them questioned the excuses that all of Five Below's issues were attributable to macroeconomic trends.

**ANSWER:** Defendants deny each and every averment in paragraph 171 of the Complaint.

172. For example, Truist reported that "while the macro has clearly been a headwind..., the company also saw incremental weakness from some of their older products like Squishmallows." Truist reported that it had a call with Five Below's management, where the Company's executives admitted it was a "fair assumption" that "there just isn't a lot of 'new' and 'exciting product' right now in the stores." This was further confirmation that the Company's trend-right failures were the main cause of its deteriorating financial results.

**ANSWER:** Defendants deny each and every averment of paragraph 172 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the June 2024 Truist report. Defendants refer to the June 2024 Truist report for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 2024 Truist report that would be inaccurate if read in the context of the entire June 2024 Truist report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the June 2024 Truist report.

173. Analysts also noted that Five Below's problems seemed specific to the Company. For example, Truist pushed back on Defendant Anderson's contention that Five Below's competitors were also struggling with the same trends by highlighting, consistent with its analyst's earnings call question, that "a lot of companies that tend to co-locate with Five Below, like the off-price retailers, are performing very well," and specifically explaining that "Close-out specialist Ollie's . . . just posted a strong quarter earlier in the day, while Costco . . . highlighted that their discretionary goods were their best-selling products in the store this quarter."

**ANSWER:** Defendants deny each and every averment of paragraph 173 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the June 2024 Truist report. Defendants refer to the June 2024 Truist report for a complete and accurate statement of its contents and deny any characterization or interpretation of

the June 2024 Truist report that would be inaccurate if read in the context of the entire June 2024 Truist report.  Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the June 2024 Truist report.

174.    The Truist report further explained that the "sales slowdown has also coincided with multiple store-related changes," including the growth of Five Beyond, which has higher price points, the shrink mitigation efforts and a move to associate-assisted checkout which "may not have been a smooth process, based on various industry sources," and that "*the store is currently more 'stale' than it has been in quite some time*."

**ANSWER:**  Defendants deny each and every averment of paragraph 174 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the June 2024 Truist report.  Defendants refer to the June 2024 Truist report for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 2024 Truist report that would be inaccurate if read in the context of the entire June 2024 Truist report.  Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the June 2024 Truist report.

175.    Similarly, Wells Fargo acknowledged that notwithstanding any "macro" issues it was surprising that Five Below's "business has slowed this much with more mixed results elsewhere" (i.e., among competitors). Wells Fargo dropped its price target nearly 20%, from $180 to $145.

**ANSWER:**  Defendants deny each and every averment of paragraph 175 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the June 2024 Wells Fargo report.  Defendants refer to the June 2024 Wells Fargo report for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 2024 Wells Fargo report that would be inaccurate if read in the context of the entire June 2024 Wells Fargo report.  Defendants expressly deny any allegations of

wrongdoing or misconduct by the Defendants that are stated or implied in the June 2024 Wells Fargo report.

176.   UBS similarly predicted that while Defendants "attributed the weakness to the macro, the market will likely be skeptical of this explanation," and that "[a]t least some will assign the explanation to a combination of rising competition, some give-back of the outperformance from the last few years, *the lack of newness in the product assortment* and some degradation of the company's unit economics."

**ANSWER:** Defendants deny each and every averment of paragraph 176 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the June 2024 UBS report. Defendants refer to the June 2024 UBS report for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 2024 UBS report that would be inaccurate if read in the context of the entire June 2024 UBS report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the June 2024 UBS report.

177.   However, the market still expressed some optimism, at least partially accepting Defendants' explanation of what happened. For example, Telsey Advisory Group concluded that "the stock is close to a bottom, with the bad news reflected in the share price" and relayed its expectation that "the company's focus on merchandizing and operational improvement [will] boost performance."

**ANSWER:** Defendants deny each and every averment of paragraph 177 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the June 2024 Telsey Advisory Group report. Defendants refer to the June 2024 Telsey Advisory Group report for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 2024 Telsey Advisory Group report that would be inaccurate if read in the context of the entire June 2024 Telsey Advisory Group report. Defendants expressly deny any allegations of wrongdoing or

misconduct by the Defendants that are stated or implied in the June 2024 Telsey Advisory Group report.

178. Following the news, Five Below's stock price dropped precipitously again from $132.79 per share at close on June 5, 2024 to $118.72 at close on June 6, 2024, a one-day decline of $14.07 or 10.6%. The prediction that the stock price was "close to a bottom," however, proved incorrect.

**ANSWER:** Defendants deny the averments in the first sentence of paragraph 178 of the Complaint as stated, and admit only that Five Below's share price was lower on June 6, 2024 than its closing price the previous trading day. Defendants deny the averments in the second sentence of paragraph 178 of the Complaint.

### 3. July 16, 2024

179. The Class Period ends on July 16, 2024 with the shocking news– released just after market close in a press release attached to a Form 8-K filed with the SEC–that Defendant Anderson, after nearly a decade at the helm, was stepping down as the CEO and President of Five Below, as well as resigning from the Board of Directors, effective immediately. Defendant Bull, the Chief Operating Officer, was appointed interim President and CEO.

**ANSWER:** Defendants deny each and every averment of paragraph 179 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from a Form 8-K Five Below filed on July 16, 2024. Defendants refer to the Company's July 16, 2024 Form 8-K for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 16, 2024 Form 8-K that would be inaccurate if read in the context of the entire July 16, 2024 Form 8-K.

180. In the same press release, Five Below coupled this news with the revelation of second quarter-to-date results, which disclosed that comparable sales had declined 5% from the same period the last year, and the Company expected "an approximate 6% to 7% decrease in comparable sales" for the quarter as a whole, while "[d]iluted income per common share is expected to be in the range of $0.53 to $0.56," which marked a decline of up to 19% from the forecast of $0.57 to $0.69 that the Company forecasted just six weeks previously on the earnings call.

**ANSWER:** Defendants deny each and every averment of paragraph 180 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from a Form 8-K Five Below filed on July 16, 2024. Defendants refer to the Company's July 16, 2024 Form 8-K for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 16, 2024 Form 8-K that would be inaccurate if read in the context of the entire July 16, 2024 Form 8-K.

181. Predictably, analysts and the market did not take the news calmly, with Five Below experiencing multiple downgrades and price target decreases. Based on admissions from management in communications directly with analysts following the July 16 press release, analyst reports made clear that there were fundamental issues with the Company, belying Defendants' earlier insistence that macroeconomic trends, including shrink, were to blame.

**ANSWER:** Defendants deny each and every averment in paragraph 181 of the Complaint.

182. JP Morgan reduced its price target 28.6%, from $122 to $87. As the market reacted to the news on the next trading day, July 17, 2024, JP Morgan also published statements from a conversation with management where a Five Below executive specifically acknowledged the Company "having 'strayed' from the historical three-fold playbook during and exiting the pandemic and citing the need to (i) Get back to trend-right product, (ii) Refocus on extreme values, and (iii) Execute to a more consistent, fun and enjoyable in-store experience." This was further confirmation by the Company that its trend-right failures were the main cause of its deteriorating financial results.

**ANSWER:** Defendants deny each and every averment of paragraph 182 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 JP Morgan report. Defendants refer to the July 2024 JP Morgan report for a complete and accurate statement of its contents and deny any characterization or interpretation of July 2024 JP Morgan report that would be inaccurate if read in the context of the entire July 2024 JP Morgan report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 JP Morgan report.

183. Later in the report, JP Morgan reported that in its conversation Five Below management had identified five potential issues in addition to macro trends, including

"Merchandising w/mgmt citing the need to improve trend-right product in stores (w/ the seasonal product merchandised for this year characterized as "stale" w/ teams focused on improving 2025 buys . . . [and] Trend Product w/ Trend sales penetration in 1Q declining by 100bps Y/Y lapping strong Squish trends last year & representing a comp headwind."

**ANSWER:** Defendants deny each and every averment of paragraph 183 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 JP Morgan report. Defendants refer to the July 2024 JP Morgan report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 JP Morgan report that would be inaccurate if read in the context of the entire July 2024 JP Morgan report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 JP Morgan report.

184. Also on July 17, Guggenheim lowered its price target more than 24%, from $165 to $125. Their report pointed to fundamental issues at the Company. For example, Guggenheim echoed that Five Below "shouldn't be as vulnerable" to the economy as the results made it seem, and claimed that management, in discussions, had "stressed multiple times a need to return to the extreme value product distortion and differentiated 'wow' experience that made the brand unique," while Guggenheim also questioned the impact of the higher-priced Five Beyond, and the "elimination of self-checkout."

**ANSWER:** Defendants deny each and every averment of paragraph 184 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 Guggenheim report. Defendants refer to the July 2024 Guggenheim report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 Guggenheim report that would be inaccurate if read in the context of the entire July 2024 Guggenheim report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 Guggenheim report.

185. The same day, Barclays lowered the Company from Overweight to Equal Weight and concluded, macro trends aside, that Five Below "should be performing better, with the right

offering, as a value retailer in the current environment." Barclays noted that Five Below "seemed to shift more to company specific issues, including shortfalls in product and value."

**ANSWER:** Defendants deny each and every averment of paragraph 185 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 Barclays report. Defendants refer to the July 2024 Barclays report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 Barclays report that would be inaccurate if read in the context of the entire July 2024 Barclays report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 Barclays report.

186. Morgan Stanley's July 17 analyst report also downgraded Five Below to Equal Weight from Overweight, explaining that its prior "thesis was based on productive mid-teens % annual unit growth, an ability to consistently comp through merchandising acumen, and benefitting from trade down in weaker economic environments," and that "[t]he current backdrop has proved challenging for these factors."

**ANSWER:** Defendants deny each and every averment of paragraph 186 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 Morgan Stanley report. Defendants refer to the July 2024 Morgan Stanley report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 Morgan Stanley report that would be inaccurate if read in the context of the entire July 2024 Morgan Stanley report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 Morgan Stanley report.

187. Similarly, William Blair downgraded Five Below to "Market Perform," and predicted, based on factors including "softer demand trends" that Five Below would pare back its expansion strategy. William Blair also noted that, "[m]anagement highlighted that many of the recent demand pressures are self-inflicted, suggesting the headwinds are more structural in nature, and the company plans to return to its roots by driving demand through trend-right product, extreme value, and an experiential shopping experience."

**ANSWER:** Defendants deny each and every averment of paragraph 187 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 William Blair report. Defendants refer to the July 2024 William Blair report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 William Blair report that would be inaccurate if read in the context of the entire July 2024 William Blair report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 William Blair report.

188.    Deutsche Bank also downgraded Five Below to "Hold," reporting that addressing the Company's "self-inflicted issues could take time." In reporting on its own follow-up with Five Below management, Deutsche Bank reported that "[m]anagement indicated that a significant part of this year's top-line challenges is self-inflicted from less-than-exciting product assortment and likely suboptimal pricing."

**ANSWER:** Defendants deny each and every averment of paragraph 188 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the July 2024 Deutsche Bank report. Defendants refer to the July 2024 Deutsche Bank report for a complete and accurate statement of its contents and deny any characterization or interpretation of the July 2024 Deutsche Bank report that would be inaccurate if read in the context of the entire July 2024 Deutsche Bank report. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the July 2024 Deutsche Bank report.

189.    Following the news, and as analysts reported on the reasons for the shocking management change and poor performance, Five Below stock plummeted from $102.07 at close on July 16, 2024 to $76.50 at close on July 17, 2024, a one-day decline of $26.20 or more than 25%, dropping to Five Below's lowest closing price since June of 2018.

**ANSWER:** Defendants deny the averments in paragraph 189 of the Complaint as stated, and admit only that Five Below's share price was lower on July 17, 2024 than its closing price the previous trading day.

190.    All told, from its Class Period high closing price of $217.18 on April 11, 2023, Five Below shares plummeted 64%, erasing over $7.7 billion in shareholder value.

**ANSWER:** Defendants deny the averments in paragraph 190 of the Complaint as stated, and admit only that Five Below's share price was lower on July 17, 2024 than its closing price the previous trading day.

## VI.    POST-CLASS PERIOD EVENTS

191.    Taken together, the corrective disclosures on March 20, 2024, June 5, 2024, and July 16, 2024 revealed to the market that Five Below failed to stock trend-right products, misleadingly blamed shrink for its financial deterioration, and expanded beyond its capabilities and customer demand. While the market appreciated the impact of these disclosures, in the months that followed Five Below's leadership provided additional details concerning the underlying causes of these.

**ANSWER:** Defendants deny each and every averment in paragraph 191 of the Complaint.

192.    Less than six weeks after the surprising CEO resignation, Five Below released its earnings results for the second quarter of 2024 on August 28, 2024. Once again, the Company reported declines compared to the year before in several key categories. Comparable sales decreased 5.7%, and operating income, net income and diluted income per share also all declined in the second quarter of fiscal 2023.

**ANSWER:** Defendants deny each and every averment of paragraph 192 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's August 28, 2024 press release. Defendants refer to the August 28, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of August 28, 2024 press release that would be inaccurate if read in the context of the entire press release.

193.    On the August 28, 2024 earnings call, as previewed in conversations with analysts at the end of the Class Period, Five Below's management acknowledged that the Company's problems were self-inflicted.

- 80 -

**ANSWER:** Defendants deny each and every averment of paragraph 193 of the Complaint, except admit that this paragraph of the Complaint purports to summarize Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 earnings call that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

194. Executive Chairman and co-founder Thomas Vellios began the call by conceding to investors that, whereas Five Below had "always been intensely focused on the customer . . . [o]ver the past few years, we lost some of that sharp focus on our core customers." Emphasizing that a drastic change in strategy was necessary, he pledged a change in Five Below's "commit[ment] to an operational and strategic refocus of our business," elaborating that Five Below was now "prioritizing initiatives that enhance value, improve the shopping experience, streamline our operations and ensure that we meet the evolving needs of our customers." He further admitted that the Company "need[ed] *to regain our speed and intensity in identifying and bringing in key trend items into our stores* that delight our customers."

**ANSWER:** Defendants deny each and every averment of paragraph 194 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript. Defendants further state that, as to following statement—"always been intensely focused on the customer . . . [o]ver the past few years, we lost some of that sharp focus on our core customers"—the Court's Order (ECF 46) dismissed this averment from the Action for purposes of liability.

195. Defendant Bull, the new interim CEO, provided a fuller accounting of the Company's failures. He admitted that Five Below had "overexpanded our assortments across our worlds *without the strict editing process of past years* and *without the key item focus that screamed value and differentiation*." Defendant Bull also admitted that what Five Below had "*got away from was the core part of our business* around pre-teens and teens and really the mission for us in delivering an edited assortment, *trend product*, high quality at extreme value," going so far as to say the Company had "*lost our way*." Later during the call, Defendant Bull further

discussed how the Company evaluated value, which was "not just price" but "really a combination of trend and quality and price." He admitted "[s]o *that's where we know we have to do better*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 195 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny each and every averment of paragraph 195 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 transcript that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

196.    These admissions further illustrate the Company's trend-right failures, expanding on the trend-right admissions first revealed in the partial corrective disclosures on June 5, 2024 and July 16, 2024.

**ANSWER:** Defendants deny each and every averment in paragraph 196 of the Complaint.

197.    Given the declining results, Defendant Bull acknowledged that the Company planned to reduce its product offerings and scale back its expansion plans. Specifically, he announced that Five Below would "*significantly reduce the breadth of our assortment* and return to pre-pandemic levels," "evaluat[e] [its] store operating model with the goal of reducing complexity and optimizing our store labor," and "moderat[e] [its] store growth for 2025" as opposed to its prior plan of opening 270 stores. Among other things, Five Below management announced that they would revamp the Five Beyond product offerings.

**ANSWER:** Defendants deny each and every averment of paragraph 197 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024

earnings call that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

198.    Defendants' disclosures reiterated that the Company had difficulties executing its trend-right strategy, noting that the difficulties were due in part to management being distracted by the aggressive Triple-Double plan. On the August 28, 2024 earnings call, Defendant Bull stated: "[W]e [previously] set our Triple-Double vision, to triple our store count by 2030 and double EPS by 2025. . . . [T]he timeline for these goals was *too aggressive and put a tremendous amount of pressure on the organization*." He continued: "As we reset the business, we are moderating our store growth for 2025 and currently expect to open 150 to 180 stores. This moderation allows us to *focus on execution in the [other] key areas [of the business]* that I have outlined." The key areas he outlined included "increase[ing] the flow of newness" and "focusing on key items amplifying value and *trend*." He further revealed: "[T]he real reason [for reducing store openings] was we wanted to make sure we weren't *taxing the organization* with a number because, as I said before, *we really need focus across the company*. So the real driver in terms of the number of stores was that we can have the organization focus again and go after the [other] initiatives . . ." These disclosures illustrated that the Triple-Double plan distracted management from other business matters including the trend-right strategy.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 198 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 198 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call.  Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

199.    Defendant Bull also admitted that the newly disclosed adverse issues had been building for some time and had not simply emerged recently. When asked by a Truist analyst about the seemingly sudden change in fortune, he insisted the most recent results were actually "*a culmination of things over a period of years*," meaning they had been ongoing during the Class Period.

**ANSWER:**  Defendants deny each and every averment of paragraph 199 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call.

Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

200.    Analysts quickly took this news as further support that Five Below was paring back the growth strategy it had pursued for the prior several years (including throughout the Class Period), with William Blair headlining its report "Going Back to the Basics." Similarly, Evercore ISI characterized the Company as "narrowing its focus on product, pricing, and experience."

**ANSWER:** Defendants deny each and every averment of paragraph 200 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the August 2024 William Blair and August 2024 Evercore ISI reports. Defendants refer to the August 2024 William Blair and August 2024 Evercore ISI reports for a complete and accurate statement of their contents and deny any characterization or interpretation of the August 2024 William Blair and August 2024 Evercore ISI reports that would be inaccurate if read in the context of the entire reports. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the August 2024 William Blair and August 2024 Evercore ISI reports.

201.    In a sign that the Company recognized the need for dramatic new leadership, on December 4, 2024, in conjunction with its earnings release for the third quarter of fiscal year 2024, the Company announced that Defendant Bull and other existing members of management had been passed over for the CEO position in favor of Winnie Park, CEO of Forever 21 since 2022 where, as Five Below put it, she led a "transformational brand refresh." Her hiring became effective December 16, 2024.

**ANSWER:** Defendants deny each and every averment of paragraph 201 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's December 4, 2024 press release. Defendants refer to the December 4, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the December 4, 2024 press release that would be inaccurate if read in the context of the entire December 4, 2024 press release.

202.     These underlying issues with the trend-right strategy were further described on the December 4, 2024 earnings call for the third quarter of 2024. On that call, Defendant Bull stated: "We were not there in our results in Q2 [2024]. Again, I know it sounds repetitive, but to get back to trend-right product it's high quality . . . and there's newness. . . . *[W]e still have a ways to go with doing this* . . . ." He also stated: "[i]t [has] always been and always will be around trend-right product, high-quality, extreme-value, all focused towards and targeting kids. And I think *that's the piece that we're going to get back to* from a focus perspective for the teams . . . ." Similarly, Vellios stated: "*[W]e have a ways to go* to deliver the performance that we believe this company is capable of. . . . *Work is underway to edit our assortment, leverage our scale, and deliver newness and trend-right high-quality product* . . . ." He added that the Company needs to "make sure that the . . . same filter of extreme value trend right product is what we are focusing on." These admissions confirm the trend-right failures revealed in the corrective disclosures on June 5, 2024 and July 16, 2024.

**ANSWER:**  Defendants deny each and every averment of paragraph 202 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's December 4, 2024 earnings call. Defendants refer to the December 4, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the December 4, 2024 earnings call that would be inaccurate if read in the context of the entire December 4, 2024 earnings call transcript.  Defendants further state that, as to following statement—"[i]t [has] always been and always will be around trend-right product, high-quality, extreme-value, all focused towards and targeting kids. And I think that's the piece that we're going to get back to from a focus perspective for the teams . . . ."—the Court's Order (ECF 46) dismissed this averment from the Action for purposes of liability.

203.     On that same December 4, 2024 call, Defendants revealed that the Company's difficulties executing its trend-right strategy were exacerbated by its work-from-home policy that was in effect throughout the Class Period. The work-from-home policy stymied collaboration critical to identifying and capitalizing on trends. The Company required its employees to return to the office in the second quarter of 2024. On the December 2, 2024 earnings call, Defendant Bull stated: "With the teams back together in the office, we have seen positive momentum toward greater innovation and speed driven by improved collaboration and communication across multiple groups . . . . We believe our merchant teams are now better organized and equipped to quickly capitalize on trends and innovate. They have a renewed focus on sourcing truly amazing trend-right items." He also stated: "[I]t was important for us to get everybody back to the office, and that's been, I think it's been a few months now. You can see and feel the difference because this

business is all about collaboration and innovation. And really, the only way to get there is that's tough to do in a hybrid environment, it is tough to do virtually, it's tough to do online."

**ANSWER:** Defendants deny each and every averment of paragraph 203 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's December 4, 2024 earnings call. Defendants refer to the December 4, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the December 4, 2024 earnings call that would be inaccurate if read in the context of the entire December 4, 2024 earnings call transcript.

204.    As noted in the calls beginning in June 2024, the Company's trend-right strategy was also hampered during the Class Period by excess product offerings. The Company first hinted at this on the June 5, 2024 earnings call when Defendant Bull stated: "[W]e had a -- I would call it a double-digit percentage increase in SKUs versus pre-pandemic. And that's us becoming over SKU-ed and over-assorted . . . and we're going to get that back. . . . [W]e're going to . . . renew a focus in terms of reducing those SKUs."[13]  Then, on the December 4, 2024 earnings call, Defendant Bull stated: "[W]e could see up to say, a 20% reduction in SKUs. . . . What that does for us is it opens up the opportunities for newness. Newness is really critical to the business, especially when you talk about trend and excitement for the customer. So, that will give us the ability to really focus more on newness as we go forward." In other words, excess SKUs was part of the problem hindering the trend-right strategy, which Defendants knew at the time that they made their misstatements set forth above.

**ANSWER:** Defendants deny each and every averment of paragraph 204 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

205.    Following the Class Period, analysts continued to observe the problems facing the Company during the Class Period. On August 29, 2024, an analyst report by Craig-Hallum stated

---

[13] A SKU is a "stock-keeping unit," a numeric identifier used to identify products.

that the "Triple Double Strategy unveiled in March 2022 became a distraction from core operations as management pushed to reach targets while straying from core values." The day before, a Wells Fargo analyst report stated: "[M]anagement believes much of its problem is self-inflicted. The pitch [by management] is that the company lost its way over the years; issues were cited in merchandising/value, assortment/sku expansion, store experience, shrink mitigation, a remote management structure, and the negative implications of chasing overly aggressive triple-double targets." A BNP Paribas analyst report on August 29, 2024 stated, "Mgmt. admitted that through the COVID [years] they've become over-sorted and over-SKU'd."

**ANSWER:** Defendants deny each and every averment of paragraph 205 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the August 2024 Craig-Hallum, Wells Fargo, and BNP Paribas reports. Defendants refer to the August 2024 Craig-Hallum, Wells Fargo, and BNP Paribas reports for a complete and accurate statement of their contents and deny any characterization or interpretation of the August 2024 Craig-Hallum, Wells Fargo, and BNP Paribas reports that would be inaccurate if read in the context of the entire reports. Defendants expressly deny any allegations of wrongdoing or misconduct by the Defendants that are stated or implied in the August 2024 Craig-Hallum, Wells Fargo, and BNP Paribas reports.

## VII.   DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

206.   Throughout the Class Period, Defendants made materially false and misleading statements and omissions: (i) touting the Company's trend-right strategy while omitting its problems executing that strategy; (ii) misrepresenting and omitting its inventory management problems; (iii) falsely blaming shrink for the Company's disappointing financial results; (iv) misrepresenting its shrink mitigation efforts; and (v) touting its Triple-Double plan while omitting that the plan was distracting management from its trend-right strategy and causing its stores to underperform.

**ANSWER:** The averments of paragraph 206 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants further state that the Court's Order (ECF 46) dismissed the following averments—"touting its Triple-Double plan while omitting that the plan was distracting management from its trend-right strategy and causing its

stores to underperform"—in paragraph 206 of the Complaint from the Action for purposes of liability. To the extent a response is required, the averments of paragraph 206 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

### A. Defendants' False And Misleading Statements Concerning The Company's Trend-Right Products And Ability To Capture Customer Demands

207. Defendants made false and misleading statements throughout the Class Period touting the Company's trend-right strategy and ability to quickly identify trends and stock its stores with in-demand items. These statements were highly detailed and described not just the differentiation of Five Below's business, but the focus, means and success the Company purportedly had in driving "trend-right" products onto its shelves and turning that into growing sales.

**ANSWER:** The averments of paragraph 207 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

208. In its Form 10-Ks and 10-Qs issued during the Class Period, the Company described itself as a "specialty value retailer offering a broad range of trend-right, high-quality merchandise" and stated that the "***principal basis upon which we compete is by offering a dynamic, edited assortment of trend-right products***."[14] In the majority of the Company's press releases issued during the Class Period, the very first sentence began with the phrase, "the trend-right, high-quality extreme-value retailer." On its quarterly earnings calls, including the Q3 2023 earnings call, Defendant Anderson described that "delivering WOW product is who we are and what we do and is key to our success." In short, trend-right was a core component of the Company's identity and branding.

**ANSWER:** Defendants deny each and every averment of paragraph 208 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's Form 10-Ks, 10-Qs, and Q3 2023 earnings call. Defendants refer to the Form 10-Ks, 10-Qs, and Q3 2023 earnings call

---

[14] In this section, the specific language in Defendants' public statements that Plaintiffs allege to be materially false and misleading is emphasized in **bold italics**, and additional context for those statements is included for clarity.

transcript for a complete and accurate statement of their contents and deny any characterization or interpretation of the Form 10-Ks, 10-Qs, and Q3 2023 earnings call that would be inaccurate if read in the context of the entire Form 10-Ks, 10-Qs, and Q3 2023 earnings call transcript. Defendants further state that the Court's Order (ECF 46) dismissed the following averments— "principal basis upon which we compete is by offering a dynamic, edited assortment of trend-right products"—in paragraph 208 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the remaining averments in paragraph 208 of the Complaint.

209.    During the Class Period Defendants' statements misrepresented or were misleading for failing to disclose problems with Five Below's (i) identification and acquisition of "trend-right" products, and (ii) inventory control and management, which led to empty shelves, unwanted and unsellable products being stocked, and lost product.

**ANSWER:**  The averments of paragraph 209 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

210.    The Class Period begins on December 1, 2022, the first day the markets were open for trading after Five Below held a conference call with analysts on November 30, 2022, to discuss the Company's earnings and operations for the third quarter of 2022.

**ANSWER:**  Defendants deny each and every averment of paragraph 210 of the Complaint, except they admit that the putative Class Period begins on December 1, 2022, and Five Below held a conference call with analyst on November 30, 2022.

211.    On the November 30, 2022 earnings conference call, Defendant Anderson boasted about the "great progress" Five Below had made "on several initiatives in the third quarter," and assured investors that Five Below was "in a great position for the fourth quarter." Defendant Anderson explained: "***Our stores are stocked and ready with an amazing assortment of value products that promises to delight our customers***. . . . [W]e're also excited for ***Five Beyond to provide new and extreme value products in different categories***." Defendant Bull represented on the same earnings call that "***[o]ur teams continue to move quickly to adjust to changing customer preferences***."

- 89 -

**ANSWER:** Defendants deny each and every averment of paragraph 211 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 30, 2022 earnings call. Defendants refer to the November 30, 2022 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 30, 2022 earnings call that would be inaccurate if read in the context of the entire November 30, 2022 earnings call transcript. Defendants further state that the Court's Order (ECF 46) dismissed the following averments—"[W]e're also excited for Five Beyond to provide new and extreme value products in different categories"—in paragraph 211 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the remaining averments in paragraph 211 of the Complaint, except admit that Five Below held an earnings conference call on November 30, 2022.

212.    At the January 9, 2023 ICR Conference, Defendants Anderson and Bull participated in a Q&A with Citigroup's Paul Lejuez asking the questions. Defendant Anderson stated: "[I]t was a very good holiday. ***Trends were strong***, Squishmallows, Slime Lickers, Hello Kitty. And I think that's something that – I've been here eight years now, ***we've really got a good cadence with those [trends], how to get into them, how to get out of them***."

**ANSWER:** Defendants deny each and every averment of paragraph 212 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the January 2023 ICR Conference. Defendants refer to the January 2023 ICR Conference transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the January 2023 ICR Conference transcript that would be inaccurate if read in the context of the entire January 2023 ICR Conference transcript.

213.    At the ICR Conference, in response to a question about the Company's ability to capitalize on new trends, Defendant Anderson stated: "[I]t seems like we're always talking about trends. And I think it all goes back to '17 with that [fidget] spinner year. . . . But from the

- 90 -

beginnings of those times to now, it's really – it's kind of *part of the secret sauce of Five Below*. *And it's kind of in our DNA, and it's not only about getting into a trend, but also knowing how to land the plane and get out of it. . . . And we're pretty nimble and quick*. There's not a lot of bureaucracy at Five Below. *When we identify something, we move really quick to get that in the store, test it and then push it out to the stores*." Defendant Bull echoed Anderson's statements, adding: "The other thing with the trends too is, again, as Joel mentioned, *we love trends, that's what we're all about. It's really kind of the mindset that we have around those. We deal with this all the time*. The two keys is they do help drive traffic and they also bring in new customers. So we continue to see that. And that's really powerful for the growth of the brand as we continue to do that. *And as some fall off*, although Squishmallows has been out there for a few years, *we saw the introduction of new ones come on. And that happens every year. So you're going to see that continuing*."

**ANSWER:** Defendants deny each and every averment of paragraph 213 of the Complaint, except admit that Messrs. Anderson's and Bull's alleged statements purport to summarize and contain partial excerpts, with emphasis supplied by Plaintiffs, from the January 2023 ICR Conference. Defendants refer to the January 2023 ICR Conference transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the January 2023 ICR Conference transcript that would be inaccurate if read in the context of the entire January 2023 ICR Conference transcript. Defendants further state that the Court's Order (ECF 46) dismissed the remaining averments in paragraph 213 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the remaining averments in paragraph 213 of the Complaint.

214. On the March 15, 2023 earnings call for the fourth quarter of 2022, Defendant Anderson stated: "[W]e are passionate about sourcing an incredible trend-right assortment for our customers . . . . *We stay on top of hot trends and swiftly move to capitalize on them*. . . . The flexibility of our model . . . is unique and enables *swift recognition and introduction of trend-right and relevant products to our customers, and we honed our expertise and discipline to effectively manage the constant cycling of these trends*."

**ANSWER:** Defendants deny each and every averment of paragraph 214 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 15, 2023 earnings call. Defendants refer to the March 15, 2023 earnings call transcript for a complete and accurate

statement of its contents and deny any characterization or interpretation of the March 15, 2023 earnings call that would be inaccurate if read in the context of the entire March 15, 2023 earnings call transcript.  Defendants further state that the Court's Order (ECF 46) dismissed the following averments—"[W]e are passionate about sourcing an incredible trend-right assortment for our customers . . . ."—in paragraph 214 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the remaining averments in paragraph 214 of the Complaint.

215.    In the Company's Class Period Form 10-Ks, issued on March 16, 2023 for the fiscal year ended January 28, 2023 and on March 21, 2024 for the fiscal year ended February 3, 2024, Defendants touted the Company's trend-right strategy and capabilities by disclosing:

a)    "We *monitor trends* in the ever-changing tween and teen markets and *are able to quickly identify and respond to trends*."

b)    "We deliver *an edited assortment of trend-right* as well as everyday products within each of our category worlds that changes frequently to create a sense of anticipation and freshness . . . ."

c)    "We monitor trends in our target demographic market, historical sales trends of current and prior products and the success of new product launches to ensure that our merchandise is relevant for our customers. *We have a highly planned merchandise strategy focused on trend-right* and everyday products supplemented by selected opportunistic purchases from our vendors *to drive traffic and therefore offer our customers a consistently exciting shopping experience*."

d)    "The *principal basis upon which we compete is by offering a dynamic, edited assortment of trend-right products* . . . ."

**ANSWER:**  Defendants deny each and every averment of paragraph 215 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's 2023 Form 10-K filing. Defendants refer to the 2023 Form 10-K for a complete and accurate statement of its contents and deny any characterization or interpretation of the 2023 Form 10-K that would be inaccurate if read in the context of the entire 2023 Form 10-K filing.  Defendants further state that the Court's Order

(ECF 46) dismissed the averments in paragraphs 215(c)–(d) of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the remaining averments in paragraph 215 of the Complaint.

216.    On Five Below's June 1, 2023 press release announcing first quarter 2023 results, Defendant Anderson announced:

> We are pleased with our first quarter results that were in line with our outlook highlighted by a 3.9% comp transaction increase. While our customers face multiple macro headwinds, we continue to be there for them, flexing our offering to bring them the Wow products they need and want. ***Our broad-based sales performance and transaction trends demonstrate that we are gaining trips and customers through our amazing value, trend-right products and Five Beyond prototype****. . . .* Looking to the rest of the year, we remain focused on playing offense to drive increased market share. We now plan to open a record 200-plus new stores and complete over 400 conversions to the new Five Beyond prototype in 2023 while building a strong pipeline of new stores for 2024. With the headwinds of the pandemic moderating, combined with our continued experience and efficiency-based initiatives, we believe we are well-positioned to continue our high growth.

**ANSWER:** Defendants admit that Five Below issued a press release on June 1, 2023 and that the averments contain a partial excerpt, with emphasis supplied by Plaintiffs, from this press release.  Defendants refer to the June 1, 2023 press release for a complete and accurate statement of its contents and deny any characterizations or interpretation of the June 1, 2023 press release that would be inaccurate if read in the context of the entire press release.  Defendants state that the Court's Order (ECF 46) dismissed the remaining averments in paragraph 216 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the remaining averments in paragraph 216 of the Complaint.

217.    On the August 30, 2023 earnings call for the second quarter of 2023, Defendant Anderson stated, "Five Below's merchants ***persistently pursue trends [with] newness and value***, both in the United States and across the globe." He also stated, "***we can quickly capitalize on a trend***."

**ANSWER:** Defendants admit that Five Below held an earnings call on August 30, 2023 and that the averments contain a partial excerpt, with emphasis supplied by Plaintiffs, from this

earnings call.  Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterizations or interpretation of the earnings call that would be inaccurate if read in the context of the entire earnings call transcript.  Defendants state that the Court's Order (ECF 46) dismissed the following averments in paragraph 217 of the Complaint from the Action for purposes of liability—"Five Below's merchants persistently pursue trends [with] newness and value, both in the United States and across the globe."  To the extent a response is required, Defendants deny the remaining averments in paragraph 217 of the Complaint.

218.    Similarly, in Five Below's August 30, 2023 press release announcing second quarter 2023 results, Defendant Anderson stated as follows:

> As we look to the second half of the year, ***our merchants have sourced a terrific line-up of fresh, trend-right product*** at outstanding value for the holiday season. While we are ***adjusting our earnings guidance to reflect an anticipated increase in shrink reserves, our sales outlook remains unchanged***. We will continue to play offense on sourcing amazing product, capitalizing on an improved supply chain, opening a record number of new stores, and ***executing on the continued success of our Five Beyond store format***.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 218 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 218 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 30, 2023 earnings call.  Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

219.    On the November 29, 2023 earnings call for the third quarter of 2023, Defendant Anderson stated, "[o]ur merchants have sourced . . . fresh and trend-right products at outstanding values." He continued, "in summary, ***our teams are focused on delivering incredible value, trend-right products***."

**ANSWER:** Defendants admit that Five Below held an earnings call on November 29, 2023 and that paragraph 219 of the Complaint contains a partial excerpt from this earnings call. Defendants refer to the November 29, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterizations or interpretation of the earnings call transcript that would be inaccurate if read in the context of the entire earnings call transcript. Defendants state that the Court's Order (ECF 46) dismissed the averments in the second sentence of paragraph 219 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in the second sentence of paragraph 219 of the Complaint.

220.    In Five Below's November 29, 2023 press release announcing third quarter 2023 results, Defendant Anderson stated:

> We are very pleased with our results and operational execution in the third quarter. We exceeded our guidance for sales, comparable sales and EPS, as *our value offering resonated with customers and we effectively capitalized on multiple trends*. We opened a record 74 new stores in the third quarter and are on track to open over 200 new stores for the year. We have also successfully converted over 400 stores to our new Five Beyond format, ending the third quarter with approximately 50% of our comparable store base in this format. *We entered the all-important holiday quarter ready to Wow our customers with an outstanding assortment of gifts and stocking stuffers at incredible value*. We are well-positioned to execute this holiday season and deliver on our goals for the year.

**ANSWER:** Defendants admit that Five Below issued a press release on November 29, 2023 and that paragraph 220 of the Complaint contains a partial excerpt, with emphasis supplied by Plaintiffs, from this press release. Defendants refer to the November 29, 2023 press release for a complete and accurate statement of its contents and deny any characterizations or interpretation of the press release that would be inaccurate if read in the context of the entire press release. Defendants state that the Court's Order (ECF 46) dismissed the remaining averments in paragraph 220 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the remaining averments in paragraph 220 of the Complaint.

221.    During Five Below's January 8, 2024 ICR Conference presentation, Chipman stated on behalf of Five Below: "Our merchants continue to innovate on the assortment not only during the holidays, but are bringing new and innovative things to [Five Beyond] . . . . Five Beyond conversions drive traffic, they elevate sales in the overall box and that includes both Five Below and Five Beyond products." Their accompanying conference presentation slides boast:



**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 221 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 221 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the 2024 ICR Conference.  Defendants refer to 2024 ICR Conference for a complete and accurate statement of its contents and deny any characterization or interpretation of the 2024 ICR Conference that would be inaccurate if read in the context of the entire 2024 ICR Conference transcript.

222.    On the March 20, 2024 earnings call for the fourth quarter of 2023, Defendant Anderson stated that the Company's "buyers *scour the globe to bring our customers the value, trends, wow and newness that keep them coming back to Five Below*." He also stated that the

"flexibility of our model with our 8 worlds is unique and enables our teams to quickly introduce trend-right relevant products to our customers."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in the first sentence of paragraph 222 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 222 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

223. On the June 5, 2024 earnings call for the first quarter of 2024, Defendant Anderson stated: "[C]hasing trends has always been a strength of ours. And we will continue to quickly identify and capitalize on trends, bringing them in-store quickly . . . ." He also stated that the Company's "merchants remain passionate and are committed to bringing the best trend-right amazing value products to our customer, while newness are part of our DNA, and I am really pleased with the latest trends they have identified." He further stated that the Company's "merchants are definitely looking at new trends, chasing trends, finding new ways to drive footsteps."

**ANSWER:** Defendants deny the averments in paragraph 223 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript. Defendants state that the Court's Order (ECF 46) dismissed the remaining averments from the Action for purposes of liability. To the extent a response is required, Defendants deny the remaining averments in paragraph 223 of the Complaint.

224.    Defendants' statements set forth above in ¶¶208-23 were materially false or misleading when made, or omitted material facts necessary to render such statements not misleading. By choosing to speak about the Company's ability to stay on-trend and provide in-demand products, Defendants had a duty to speak completely and accurately, including to disclose material facts necessary to make those statements not misleading. As detailed above and incorporated by reference here, including in §§ IV.B-C, V, and VI, notwithstanding this duty, Defendants failed to disclose that throughout the Class Period, the Company was increasingly struggling to execute its trend-right strategy, particularly concerning identifying and sourcing trend-right products and stocking those products in its stores. As Defendants have now admitted (¶¶179-205), during the Class Period, Five Below "got away from [] the core part of [its] business," "overexpanded...without the strict editing process," and now "need[s] to regain our speed and intensity in identifying and bringing in key trend items." As alleged above, Defendants also admitted that the Company's product selection was stale, lacked "newness" and "wow" and suffered from overbreadth, and that to return to its earlier, pre-Class Period focus, that it was dramatically reducing the number of SKUs it would stock.

**ANSWER:**  As to the averments that "Five Below "got away from [] the core part of [its] business," "overexpanded...without the strict editing process," and now "need[s] to regain our speed and intensity in identifying and bringing in key trend items," Defendants state that the Court's Order (ECF 46) dismissed these averments from the Action for purposes of liability.  To the extent a response is required, Defendants deny these averments in paragraph 224 of the Complaint.  The remaining averments of paragraph 224 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

225.    Former Five Below employees have corroborated Defendants' admissions, consistently reporting that, contrary to Defendants' representations about the Company's ability to deliver "trend-right" items to stores: (i) Five Below had no reliable strategy for sourcing and selling in-demand products (¶¶59-62, 65-75, 78, 89-90, 92-95); (ii) the Company had huge problems allocating what "in-demand" products it did have because it did not have systems in place to track inventory and sales (¶¶59-62, 65-75, 90, 92-95); (iii) the Company rarely purchased products in the correct quantities (¶¶59-62, 65, 68-69, 75, 78, 90, 95); and (iv) rather than carefully curate trend-right items, the Company automatically shipped "whatever [was in] the warehouse" to stores, leaving them full of "dumb junk" that was not selling and created a moribund store environment (¶¶68-70, 81-82, 90). Five Below's failure to stay on top of trends left its stores with too much inventory for certain products, which stores either disposed of or sold at a loss, and too little in-demand inventory, which consistently disappointed customers (¶¶95-96). Five Below also misrepresented that its Five Beyond sections, rather than driving growth, were frequently not stocked at all or with only highly limited product selections, often for periods of up to a year or more (¶¶79, 95, 147-50).

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 225 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied.

226.    In addition, the statements identified in ¶¶208-23 were misleading because Defendants knew or were reckless in failing to know, but failed to disclose, that the Company not only lacked any meaningful strategy or process for identifying trends, but Five Below's Triple-Double plan was also "too aggressive and put a tremendous amount of pressure on the organization," and thereby compromised the Company's ability to "focus[] on key items amplifying value and trend."

**ANSWER:**  As to the averments that "Five Below's Triple-Double plan was also 'too aggressive and put a tremendous amount of pressure on the organization,'" Defendants state that the Court's Order (ECF 46) dismissed these averments from the Action for purposes of liability. To the extent a response is required, Defendants deny these averments in paragraph 226 of the Complaint.  Defendants deny the remaining averments in paragraph 226 of the Complaint.

**B.      Defendants' False And Misleading Statements Blaming Shrink For Five Below's Deteriorating Financial Results**

227.    When Five Below's failure to properly respond to trends and provide the products customers wanted began impacting sales, Defendants chose not to admit the problem and course-correct, but to effectively shift the blame to its customers, claiming that shrink (i.e., retail theft) was responsible for any disappointing performance.

**ANSWER:**  Defendants deny each and every averment in paragraph 227 of the Complaint.

228.    Defendants began executing this strategy no later than the March 15, 2023 earnings call for the fourth quarter of 2022, when they laid the groundwork to blame shrink for the Company's disappointing results and reduced earnings expectations. On that call, Defendant Bull stated the Company experienced "***higher-than-expected shrink***," and that "[o]n an annual basis, ***shrink for 2022 was approximately 30 basis points higher than what we experienced in 2021***."

**ANSWER:**  Defendants deny each and every averment of paragraph 228 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 15, 2023 earnings call.

Defendants refer to the March 15, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 15, 2023 earnings call transcript that would be inaccurate if read in the context of the entire March 15, 2023 earnings call transcript.

229.    On the June 1, 2023 earnings conference call for the first quarter of 2023, Defendant Anderson stated that Five Below "trued [up shrink] last year, and it had an impact on our fourth quarter [and] *we are accruing at the higher rates this year and doing things on our part to mitigate shrink*." While Anderson blamed the impact of shrink, both Anderson and Bull made clear that the Company's guidance fully included and incorporated the effects of shrink – effectively creating a buffer/explanation that the negative effects were attributable to theft losses and not the Company's faulty trend-right execution, or inventory control.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 229 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 229 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 1, 2023 earnings call.  Defendants refer to the June 1, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 1, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

230.    On Five Below's August 30, 2023 earnings call for the second quarter of 2023, Defendant Anderson blamed shrink for Five Below's margins being pressed when he explained, "with us not changing the top line [i.e., sales], the 20 basis point decline [in operating margin guidance] is really the only change from the last quarter, and *that pretty much is all based on the changes we're making with the assumption of shrink*." As noted above, in § VII.A, Anderson further stated, "[w]hile *we are adjusting our earnings guidance to reflect an anticipated increase in shrink reserves, our sales outlook remains unchanged*."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 230 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 230 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five

Below's August 30, 2023 earnings call.  Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

231.    On the same call, Defendants deflected from Five Below's issues by explicitly blaming crime. Defendant Bull, when asked about shrink increase and mitigation measures, told attendees "I think you're all familiar with the recent media and videos that are out there where retailers across the sector are experiencing increased levels of shrink and related crime incidents and we are not immune to this as we're finding out."

**ANSWER:** Defendants deny each and every averment of paragraph 231 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call  that would be inaccurate if read in the context of the entire August 30, 2023 earnings call transcript.

232.    Later on the August 30, 2023 earnings call, Defendant Anderson blamed city prosecutors for the increase in shrink and, by extension, Five Below's difficulties, saying: "And so, where is it coming from? It's coming on all angles. And you've got several cities now which just simply aren't prosecuting below the $500 level. Sadly, our hometown here in Philly is a city that's seen some of our highest shrink rates. And we watched Target and we watched Wawa exit Center City. And so while I don't think we're yet at that extreme of closing Five Below stores there, these are the type of mitigation strategies that will be included as we consider what to do if we don't see things improve."

**ANSWER:** Defendants deny each and every averment of paragraph 232 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023

earnings call  that would be inaccurate if read in the context of the entire August 30, 2023 earnings

call transcript.  Defendants further state that the Court's Order (ECF 46) dismissed the last sentence

of paragraph 232 of the Complaint from the Action for purposes of liability.  To the extent a

response is required, Defendants deny these averments in paragraph 232 of the Complaint.

233.    On Five Below's November 29, 2023 earnings call for the third quarter of 2023, CFO Chipman disclosed on behalf of the Company: "Gross margin decreased by approximately 190 basis points to 30.3%, as anticipated. This decline was ***primarily driven by recording actual shrink results for the stores that completed their physical inventories in August as well as recording the true-up of shrink reserves for the full chain***, which we shared during our last quarter's earnings call." Again, Defendants attributed the Company's weakening financial results largely to shrink.

**ANSWER:**  Defendants deny each and every averment of paragraph 233 of the Complaint,

except admit that this paragraph of the Complaint purports to summarize and contains partial

excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 29, 2023 earnings

call.  Defendants refer to the November 29, 2023 earnings call transcript for a complete and

accurate statement of its contents and deny any characterization or interpretation of the November

29, 2023 earnings call  that would be inaccurate if read in the context of the entire November 29,

2023 earnings call transcript.

234.    The next day, Defendant Anderson appeared on Fox Business's "Mornings with Maria" to discuss the earnings report. During the interview, host Maria Bartiromo asked Defendant Anderson to discuss shrink, adding "and what it really means, is theft." Defendant Anderson replied "[w]e talked about theft in our second quarter call. Theft is real, it's impacting all retailers." He later claimed "this is a real societal problem and we've got to lean together with the politicians to figure this out."

**ANSWER:**  Defendants deny each and every averment of paragraph 234 of the Complaint,

except admit that this paragraph of the Complaint purports to summarize and contains partial

excerpts from a Fox Business interview with Defendant Anderson.  Defendants refer to the Fox

Business interview for a complete and accurate statement of its contents and deny any

characterization or interpretation of the interview that would be inaccurate if read in the context of the entire Fox Business interview.

235.    On Five Below's March 20, 2024 earnings call for the fourth quarter of 2023, Defendants continued to represent shrink as the primary reason for the Company's disappointing financial results. During the earnings call, Defendant Anderson told investors that, "[d]espite these strong sales results, earnings per share of $3.65 was at the low end of our internal expectations and *can be fully attributed to higher-than-planned shrink*."

**ANSWER:**  Defendants deny each and every averment of paragraph 235 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

236.    Later in the call, Defendant Anderson reminded investors that "shrink is industry-wide and a societal problem that accelerated over the last year."

**ANSWER:**  Defendants deny each and every averment of paragraph 236 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 earnings call.  Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire March 20, 2024 earnings call transcript.

237.    Defendants' statements set forth above in ¶¶228-36 were materially false or misleading when made, or omitted material facts necessary to render such statements not misleading. By choosing to speak about the impact of shrink, Defendants had a duty to speak completely and accurately, including to disclose material facts necessary to make the statements not misleading. As detailed above and incorporated by reference here, including in §§ IV.B-C, V, and VI, the above statements gave investors the materially false and misleading impression that shrink was the primary issue hampering the Company's financial results. In reality, unbeknownst to investors, the Company was struggling to stock trend-right products and was unable to capture customer demands as set forth in ¶¶53-96. Former Five Below employees have reported that shrink headwinds were not the real source of the Company's declining sales results (¶¶116-29). Instead,

according to former employees, Five Below used shrink to conceal the Company's inability to appropriately stock trend-right inventory for its stores and its inability to manage and track its inventory (¶¶83, 116-29).

**ANSWER:** The averments of the first through third sentences of paragraph 237 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the averments in the fourth sentence of paragraph 237 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of in the fourth and fifth sentences of paragraph 237 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied. Defendants deny the remaining averments of paragraph 237 of the Complaint.

238.    Moreover, "shrink" was used to be consistent with "theft" as noted above and repeatedly stated by Defendants to investors. In reality much of what Five Below captured as shrink was not theft, but reflected the Company's inability to track, maintain and sell the inventory it acquired (¶¶72, 74-76, 83-84, 109). Thus, Defendants' efforts to equate the impact of shrink on purely "macro" or "societal" factors like theft and the lack of prosecution for stealing, actively mislead investors about the Company's lack of inventory control and inability to sell significant amounts of its inventory.

**ANSWER:** Defendants deny each and every averment in paragraph 238 of the Complaint.

C.    **Defendants' False And Misleading Statements Concerning Shrink Mitigation Measures**

239.    While Defendants shifted the blame from their failing strategy to the industry-wide issue of shrink, they also assured investors that the Company was implementing mitigation efforts to combat shrink. Defendants touted their mitigation efforts in an apparent effort to minimize investors' concerns about shrink. The purported shrink mitigation efforts furthered Defendants' efforts to create the false impression that shrink was the reason for the Company's struggles. The mitigation statements were a way for Defendants to paint shrink as a controllable issue they could fix, when in reality they were using shrink as an excuse to mask other, significant underlying problems that were their own causing (and not "societal").

- 104 -

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 239 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 239 of the Complaint.

240. Defendants' shrink mitigation statements continued throughout the Class Period until Defendants admitted, on March 20, 2024, that their mitigation efforts had failed to the degree that Five Below needed to walk back its once-touted self-checkout plans. For example, on the June 1, 2023 earnings call for the first quarter of 2023, Defendant Anderson stated, "we are . . . *doing things on our part to mitigate shrink."* On the same call, Defendant Bull stated, "we're *focusing on preventative measures around shrink*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 240 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 240 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

241. On the August 30, 2023 earnings call for the second quarter of 2023, Defendant Bull stated, "I am also leading a team to focus on operational mitigation efforts to counter the elevated shrink trends." He added: "*[W]e've dedicated a team to look at all different areas to help with mitigation efforts. And that includes enhanced technology, merchandise presentation, . . . register formats, policies and procedures*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 241 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 241 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its

contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

242.    On the same call, Defendant Anderson claimed that the mitigation efforts were already working, stating: "We'd *already mitigated some of the things from the 30 basis [point] increase from last year*. . . . The difference is . . . a year ago, we weren't doing anything about it. . . . So all the mitigation efforts we are putting in just started." He further stated, "I see nothing but upside as we get past this shrink, *put mitigation efforts in for that*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 242 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 242 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call.  Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.  .

243.    On his November 30, 2023 Fox Business interview, Defendant Anderson again insisted that Five Below was taking the necessary steps to address the issue of shrink, claiming "we're making some changes to our business model, we've had to really tighten up our self-checkouts, *we're putting some more labor in the stores*. . . we will figure out the shrink and theft problem."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 243 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 243 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from a November 30, 2023 Fox Business interview.  Defendants refer to the November 30, 2023 Fox Business interview for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 30, 2023 Fox Business

interview that would be inaccurate if read in the context of the entire November 30, 2023 Fox Business interview.

244.    On March 20, 2024, Five Below issued a press release announcing its fourth quarter 2023 results. The press release quoted Anderson as stating, "[w]e have ***implemented additional shrink mitigation initiatives*** based on our 2023 learnings."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 244 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 244 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 earnings call.  Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

245.    In conjunction with blaming shrink for the Company's struggles, Defendants needed a way to soften investors' concerns around shrink issues. Defendants' shrink mitigation statements were a means to counterbalance their portrayal of shrink as the key issue hampering the Company and one that could be solved through "mitigation."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 245 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 245 of the Complaint.

246.    Defendants' touting of their mitigation efforts helped lull investors into a sense of security. It lessened investors' concerns around shrink allowing Defendants to maintain the artificial inflation in the Company's stock price caused by concealing its flawed trend-right strategy and inventory management systems.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 246 of the Complaint from the Action for purposes of liability.  To the extent a response is required, the averments of paragraph 246 of the Complaint purport to state legal conclusions to

which no response is required and, therefore, are denied. To the extent these averments are deemed

to be factual in nature, they are denied.

247. Defendants' statements set forth in ¶¶240-46 above were materially false and misleading, and omitted material information necessary to make them not misleading. As detailed above and incorporated by reference here, including in §§ IV.B-C, V, and VI, contrary to Defendants' claims that the Company had undertaken substantial efforts—including "additional labor," and "policies and procedures"—to combat shrink, according to several former employees the Company's shrink mitigation efforts were largely illusory, and the few efforts it made were totally ineffective. Indeed, during the March 20, 2024 disclosure, Defendants admitted that prior guidance had wrongly incorporated benefits from shrink mitigation measures, shrink mitigation efforts had largely failed, and significant labor increases were necessary.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in

paragraph 247 of the Complaint from the Action for purposes of liability. To the extent a response

is required, the averments of paragraph 247 of the Complaint purport to state legal conclusions to

which no response is required and, therefore, are denied. To the extent these averments are deemed

to be factual in nature, they are denied.

248. Former employees also confirmed that the Company's shrink mitigation measures had long proven to be ineffective and that Five Below's refusal to increase labor costs—putting more employees in the stores—was the key obstacle to mitigating shrink (¶¶125-28). For example, FE 4 reported that employees and managers were contractually precluded from intervening in any way to prevent theft, and not trained or provided with any strategies or ideas to mitigate shrink— Five Below "didn't do anything about shrink." Similarly, FE 1 reported that the Company undertook minimal efforts to combat shrink and even took counterproductive measures, such as continuing to open stores with only self-checkout after shrink was recognized as an issue. FE 2 only heard one mention of a shrink task force, and no efforts to mitigate had been implemented by the time of his October 2023 departure. By March 20, 2024 the Company admitted that its shrink mitigation efforts had failed, and that significant labor increases were necessary.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in

paragraph 248 of the Complaint from the Action for purposes of liability. To the extent a response

is required, Defendants are without knowledge or information sufficient to form a belief as to the

truth of the averments in paragraph 248 of the Complaint with respect to the identity of, and the

information supposedly conveyed by, the unidentified "confidential" witnesses, and these

averments are, therefore, denied. Defendants deny remaining averments of paragraph 248 of the Complaint.

249.    Meaningful mitigation required more labor costs. But the Company would not spend more on labor. That made it virtually impossible to combat shrink. Defendants had not taken serious steps to address shrink despite repeatedly touting their mitigation efforts.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 249 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 249 of the Complaint.

### D.    Defendants' Misleading Statements And Omissions Concerning Expansion And The Triple-Double Plan

250.    Defendants also made misleading statements and omissions regarding its ambitious Triple-Double plan.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 250 of the Complaint from the Action for purposes of liability. To the extent a response is required, the averments of paragraph 250 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

251.    In March 2022, Five Below implemented the Triple-Double plan, in which it aimed to triple its number of stores by 2030 and double its sales and earnings by 2025. The plan required a breakneck pace of new store openings.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 251 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 251 of the Complaint.

252.    Throughout the Class Period, Defendants touted the Company's progress with its plan. But Defendants omitted two key issues. First, Defendants omitted the toll the Triple-Double plan was taking on the Company's other business priorities and management's focus. Second, toward the end of the Class Period, Defendants omitted that they needed to reduce the pace of new store openings.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 252 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 252 of the Complaint.

253.    At the start of the Class Period, on the November 30, 2022 earnings call for the third quarter of 2022, Defendant Anderson stated: "[W]e're still on track for the long-term Triple-Double goals. . . . *We are gaining momentum going into '23 and expect that to continue to grow*."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 253 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 253 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 30, 2022 earnings call. Defendants refer to the November 30, 2022 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 30, 2022 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

254.    On the March 15, 2023 earnings call for the fourth quarter of 2022, Defendant Bull stated, "[w]e plan to open 200 new stores [in 2023] and expect to end the year with 1,540 stores or unit growth of approximately 15%." Defendant Anderson added: "[T]he process -- we streamlined it in several different ways to be able to execute more leases in a faster time line more per month. We are expanding the types of centers we're going into."

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 254 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 254 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's March 15, 2023 earnings call. Defendants refer to the March 15, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 15, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

255.    On the June 1, 2023 earnings call for the first quarter of 2023, Defendant Anderson stated, "[w]e now expect to reach a milestone of over 200 new stores this year, while building our pipeline for next year and beyond."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 255 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 255 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 1, 2023 earnings call.  Defendants refer to the June 1, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 1, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

256.    On the August 30, 2023 earnings call for the second quarter of 2023, Defendant Bull stated, "*[we] feel extremely confident around the Triple-Double vision*."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 256 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 256 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 30, 2023 earnings call.  Defendants refer to the August 30, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

257.    On the November 29, 2023 earnings call for the third quarter of 2023, Defendant Anderson stated: "*We remain on track to achieve the goal of opening over 200 stores* [in 2023]. . . . Our real estate teams have built a strong pipeline of new stores for 2024 and have also started working on 2025 stores."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 257 of the Complaint from the Action for purposes of liability.  To the extent a response

is required, Defendants deny the averments in paragraph 257 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's November 29, 2023 earnings call.  Defendants refer to the November 29, 2023 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the November 29, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

258.    At the January 8, 2024 ICR Conference, Defendant Anderson spoke at length about the Triple-Double plan, stating:

> Now I'd like to update you on the Triple-Double strategy. As you recall, we shared the strategy with you back in March of 2022, and it was very simple. We were going to triple our stores by 2030, we're going to double our earnings and sales by 2026 -- 2025. Today I will update you on exactly where that vision stands. . . .
>
> . . . ***As it relates to tripling our stores by 2030, I repeat, nothing has changed. We still . . . expect to triple our stores by 2030***. We opened 1,000 stores in the last seven years. We're going to open 2,000 stores in the next seven years.
>
> . . . [D]oubling our sales is now pushed out by about one year to 2026. . . .

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 258 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 258 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from the 2024 ICR Conference.  Defendants refer to the 2024 ICR Conference for a complete and accurate statement of its contents and deny any characterization or interpretation of the 2024 ICR Conference that would be inaccurate if read in the context of the entire 2024 ICR Conference transcript.

259.    Absent from the remarks of Defendant Anderson was any mention of the toll the plan was taking on management or the distractions it was creating internally.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 259 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 259 of the Complaint.

260. On the March 20, 2024 earnings call for the fourth quarter of 2023, Defendant Anderson stated, "[w]e still expect to open between 225 and 235 new stores [in 2024]." In a Q&A session, an analyst questioned whether the Company was able to avoid making mistakes opening so many stores in a short amount of time. Defendant Anderson responded as follows:

> [Q:] [H]ow do you avoid the mistakes with a more streamlined process when you're opening more stores than you did in the prior years, 225 to 235 is a lot of stores. So I don't want to see the bad ones, basically.

> [A:] . . . We've been on the streamlined process for quite some time, everything from – we're using Placer AI now to help us evaluate stores, which allows us to do it quicker. The legal team has streamlined with some AI advantages, how quickly they're able to approve leases. All those add into -- add up to weeks not days. And so it's less about the approval at the rec committee level and it's more about the individual components that get it to the rec committee and then leases signed after the Rec committee. And this has been going on for a number of years with a extreme focus . . . .

Absent from Defendant Anderson's response was any mention of adverse consequences of the breakneck pace of store openings.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 260 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 260 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 earnings call. Defendants refer to the March 20, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 20, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

261. On March 21, 2024, the Company filed its Form 10-K for the year ended February 3, 2024. The Form 10-K stated, "we plan to open between 225 and 235 new stores in fiscal 2024." The Form 10-K also included data on the pace of new store openings over the past few years, summarized as follows:

- 113 -

| Year | Stores at Start of Period | Stores at End of Period | Number of New Stores | Percent Increase in Number of Stores |
|---|---|---|---|---|
| Fiscal 2021 | 1,020 | 1,190 | 170 | 17% |
| Fiscal 2022 | 1,190 | 1,340 | 150 | 13% |
| Fiscal 2023 | 1,340 | 1,544 | 204 | 15% |

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 261 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 261 of the Complaint, except admit that paragraph 261 of the Complaint purports to summarize and analyze information in the Company's Form 10-K filings and accurately describe the Company's operations at certain points in time. Defendants refer to the Company's Form 10-K filings for a complete and accurate statement of their contents and deny any characterization or interpretation of the Form 10-K filings that would be inaccurate if read in the context of the entire Form 10-K or other Five Below Form 10-K filings.

262.    Absent from the Form 10-K was any mention that the Triple-Double plan was distracting management and diluting its focus. Also absent was any hint that management was considering slowing the pace of new store openings.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 262 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 262 of the Complaint.

263.    On the June 5, 2024 earnings call for the first quarter of 2024, Defendant Anderson stated: "Our first pillar is store expansion. [We have] over 1,600 stores currently and a road map to 3,500 Five Below locations nationwide by the end of 2030. . . . We are confident in our path to achieve approximately 230 new store openings this year and have already built a strong pipeline for 2025." He further stated, "*our focus on executing our store growth plans with excellence is unwavering*." He gave no hint that the Company was considering slowing the pace of store openings.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 263 of the Complaint from the Action for purposes of liability. To the extent a response

is required, Defendants deny the averments in paragraph 263 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's June 5, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

264.    At the June 12, 2024 Oppenheimer Conference, Defendant Anderson stated: "[I]t's also important we don't lose sight of the long term and the Five Below growth story and that remains *solidly intact* and there are several components to it. One, it's all about a *strong new store growth pipeline, which we reiterated several times on our [Q1 2024] call. It's about the Five Beyond expansion continuing . . . . [T]he long term growth of Five Below is something I am very excited about and we continue to pursue*." Defendant Anderson claimed, "[w]hile we certainly didn't earn the right to put forth a guide for you that says immediate return to positive comps, there are certainly signs out there that this shouldn't be long term. *We certainly don't think it's structural at all or wouldn't be continuing our growth*."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 264 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 264 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from the 2024 Oppenheimer Conference.  Defendants refer to the 2024 Oppenheimer Conference transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the 2024 Oppenheimer Conference that would be inaccurate if read in the context of the entire earnings call transcript.

265.    Defendants' statements set forth above in ¶¶251-64 were materially false or misleading when made, or omitted material facts necessary to render such statements not misleading. By choosing to speak about the Company's Triple-Double expansion strategy, Defendants had a duty to speak completely and accurately about that strategy, including to disclose material facts necessary to make their statements regarding the strategy not misleading. As detailed above and incorporated by reference here, including in §§ IV.D, V, and VI, notwithstanding this duty, Defendants failed to disclose that the expansion strategy was too aggressive, as the newly-opened stores were understaffed, under-stocked, and ultimately hurt Five Below's existing locations. As Defendants acknowledged following the end of the Class Period, see ¶¶191-205

above, Five Below's Triple-Double plan was also "too aggressive and put a tremendous amount of pressure on the organization," and caused management to lose "focus" on other business matters including the trend-right strategy. In reaction to these issues, the Company abruptly slowed the pace of the Triple-Double plan.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 265 of the Complaint from the Action for purposes of liability. To the extent a response is required, the averments of paragraph 265 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

266. These admissions shined additional light on the reasons underlying the Company's trend-right failures and inventory management problems first revealed in the corrective disclosures on June 5, 2024 and July 16, 2024.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 266 of the Complaint from the Action for purposes of liability. To the extent a response is required, the averments of paragraph 266 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

267. Former Employees confirm that serious issues with the expansion strategy arose prior to and throughout the Class Period (¶¶140-50). FE 7, the Director of Fulfilment Center Operations, described the strategy as way too aggressive and confirmed that employees had raised issues about Five Below's expansion plan since at least 2021. FEs 1 and 2,reported that new store locations had problems properly stocking inventory, with whole sections of new stores sometimes sitting empty after opening. They reported that Five Below needed to resort to tricks such as ordering products from other stores and receiving shipments of outdated products to avoid empty shelves. FE 3, a former Store Operator, reported that the strategy was unrealistic because the stores were understaffed. Moreover, in addition to underperforming themselves, FE 8, a District Manager who oversaw a dozen locations, explained that when new stores opened, sales in comparable stores immediately dropped.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 267 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the

truth of the averments of paragraph 267 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied. Defendants deny the remaining averments of paragraph 267 of the Complaint.

## VIII.   ADDITIONAL ALLEGATIONS OF SCIENTER

268.    In addition to the facts discussed above, the following facts further support a strong inference of scienter, evidencing that Defendants knowingly or recklessly made materially false and misleading statements and omissions to investors during the Class Period.

**ANSWER:** The averments of paragraph 268 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

269.    *Actual Knowledge*. The Officer Defendants had actual knowledge of undisclosed, material adverse facts contrary to their alleged misrepresentations and omissions. Defendants knew, but did not disclose, that the Company was straying from its trend-right strategy, that shrink was not the primary cause of the Company's financial struggles, and that the Triple-Double plan was too aggressive, straining management and causing a loss of focus. *See supra* ¶¶182, 191-205.

**ANSWER:** The averments of paragraph 269 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

270.    Indeed, the Officer Defendants admitted that they had prior knowledge of adverse events during the Class Period. On the June 5, 2024 earnings call, Defendant Anderson stated, "we . . . noticed some pressures over the *last several quarters*" regarding customers being "far more deliberate with their discretionary dollars." Despite the Officer Defendants' knowledge of customers' belt-tightening, they misleadingly blamed the Company's poor performance on shrink.

**ANSWER:** Defendants deny the averments in the first and third sentences of paragraph 270 of the Complaint. Defendants deny the averments in the second sentence of paragraph 270 of the Complaint, except admit that this sentence of the Complaint purports to summarize and contains partial excerpts from Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call for a complete and accurate statement of its contents and deny any

characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

271.    Defendant Bull also made admissions of prior knowledge on the August 28, 2024 earnings call. On that call, he stated, "[w]e experienced many macro pressures over the *last several years* that significantly impacted our business . . . [including] evolving customer preferences." Similarly, in a Q&A with an analyst, Defendant Bull admitted that the Company's recently-announced struggles were a culmination of issues that arose over a period of years:

> [Q:] So everything you talked about in terms of the challenges of business -- that the business is facing really should have been true for several quarters. . . .

> [A:] Thanks, Scot. Your question around kind of the timing of this, it really was a culmination of things over a *period of years* that I discussed and again, reactions to kind of post-pandemic macro pressures that we had.

**ANSWER:** Defendants deny the averments in the first sentence of paragraph 271 of the Complaint. Defendants deny the remaining averments in paragraph 271 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 earnings call that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

272.    On the same call, the Company's co-founder and Chairman Vellios stated, "[o]ver the *past few years*, we lost some of that sharp focus on our core customers." This indicated that the Company made internal missteps leading to its financial struggles, and the problems were not caused by shrink.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 272 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 272 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call for a complete and accurate statement of its contents and

deny any characterization or interpretation of the August 28, 2024 earnings call that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.

273.    In sum, the Officer Defendants have admitted to having actual knowledge of undisclosed adverse facts that were contrary to their misrepresentations about the success of the Company's trend-right strategy, and the reasons for the Company's deteriorating financial condition. Defendants also had knowledge of facts indicating shrink was not the primary cause of the Company's financial struggles.

**ANSWER:**  The averments of paragraph 273 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

274.    ***Former Employee Statements***. Information provided by multiple former employees, discussed more fully in §§ IV.B-D supra, supports an inference of Defendants' scienter. First, former employees reported that the Officer Defendants discussed, received or had access to information about Five Below's inability to align inventory with trends throughout the Class Period. The Officer Defendants attended monthly and quarterly meetings during which inventory issues were discussed. As discussed in ¶62 above, FE 1 attended bi-monthly and quarterly meetings that were run by the Company's Chief Retail Officer George Hill and attended by Defendant Anderson. FE 1 reported that concerns about how there was a lack of sufficient hot items in inventory always came up at those meetings. These meetings occurred throughout the Class Period. Additionally, FE 5 reported that senior leadership "talked to [Anderson]" about issues in the Company, including that the Company was often marketing or advertising products that were low on inventory (¶88). According to FE 5 Anderson "knew everything."

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 274 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied.  Defendants deny the remaining averments of paragraph 274 of the Complaint.

275.    Second, multiple former employees also reported that Defendant Anderson and other executives personally observed, and acknowledged Five Below's inventory issues during his visits to Five Below stores (¶¶61-62). For example, in a visit to one of FE 1's stores, Anderson acknowledged the dearth of trend-right products in the store's inventory, telling FE 1, that such product was "in the pipeline, it's in the pipeline."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 275 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied. Defendants deny the remaining averments of paragraph 275 of the Complaint.

276.    Third, former employees further reported that Defendants Anderson and Bull, as well as other executives who directly reported to Defendant Anderson, had access to information about inventory, including a dashboard showing whether inventory was low for a particular product, how inventory was allocated among Five Below stores, sales data in the Company's Salesforce database, as well as another system for tracking sales data called Tableau (¶¶91-94).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 276 of the Complaint with respect to the identity of, and the information supposedly conveyed by, the unidentified "confidential" witnesses, and these averments are, therefore, denied. Defendants deny the remaining averments of paragraph 276 of the Complaint.

277.    ***Control and Access to Information***. The Officer Defendants' control over the entire Company and access to material nonpublic information supports a strong inference of scienter. The Officer Defendants oversaw the operations and financial reporting function at Five Below. In that role, they had access to—and a duty to obtain—information relevant to the Company's operations.

**ANSWER:** Defendants admit only that the Officer Defendants held the positions referenced in paragraphs 23–24 of the Complaint. The remaining averments of paragraph 277 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

278.    Defendant Anderson signed each Form 10-K and 10-Q issued during the Class Period. Defendant Bull signed each Form 10-K and 10-Q issued from the beginning of the Class Period to the first quarter of 2023. Defendants Anderson and Bull also signed Certifications attached to each Form 10-K and 10-Q they signed. The Certifications stated that Defendants maintained disclosure controls ensuring that relevant information about the Company's operations was made known to them, stating: "The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures . . . for the registrant and have:

(a) Designed such disclosure controls . . . to ensure that material information relating to the registrant, including its consolidated subsidiaries, is *made known to us* by others within those entities." Thus, the Officer Defendants had access to all material information about the Company's trend-right execution, inventory control and allocation problems, attribution of operational problems to shrink, and the problematic nature of the Company's expansion and Triple-Double plan during the Class Period. These were all subjects that were covered extensively in Five Below's public disclosures.

**ANSWER:** Defendants refer to Five Below's Form 10-Ks and 10-Qs for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's Form 10-Ks and 10-Qs that would be inaccurate if read in the context of the entire Form 10-Ks and 10-Qs. Defendants admit that Defendant Bull spoke during earnings calls and signed certain Five Below SEC filings. The remaining averments of paragraph 278 of the Complaint purport to state a legal conclusion to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 278 of the Complaint.

279.    Defendant Bull oversaw the Company's shrink mitigation efforts. On the August 30, 2023 earnings call, he stated, "I am also leading a team to focus on operational mitigation efforts to counter the elevated shrink trends." In this role, Defendant Bull had particularly close control and access to information about shrink.

**ANSWER:** Defendants admit that Mr. Bull oversaw the Company's shrink mitigation efforts. Defendants state that the Court's Order (ECF 46) dismissed the remaining averments in paragraph 279 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 279 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 30, 2023 earnings call. Defendants refer to the August 30, 2023 earnings call for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 30, 2023 earnings call that would be inaccurate if read in the context of the entire earnings call transcript.

280.    Defendant Bull also had particularly close control and access to information about the Triple-Double issues given his intimate involvement implementing the Triple-Double plan. A March 13, 2023 press release announcing Bull's promotion from CFO to COO stated, "Ken's new role positions him to focus on important building blocks of our Triple Double growth vision including talent, systems and processes."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 280 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 280 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 13, 2023 press release.  Defendants refer to the March 13, 2023 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the March 13, 2023 press release that would be inaccurate if read in the context of the entire press release.

281.    *Public Statements*. The Officer Defendants' public statements during the Class Period indicate each had detailed knowledge of, or access to, the material facts and information misrepresented or concealed by Defendants, or that they were highly reckless in failing to investigate the very issues on which they spoke publicly—repeatedly and in detail.

**ANSWER:**  The averments of paragraph 281 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

282.    As alleged in Section VII *supra*, Defendants' misrepresentations and omissions pertain to the Company's: (i) trend-right strategy and execution; (ii) inventory management processes; (iii) shrink and shrink mitigation efforts; and (iv) Triple-Double plan. Defendants Anderson and Bull repeatedly spoke about each of these issues in detail in quarterly earnings calls. Defendants Anderson and Bull were also quoted in press releases addressing these issues. The Officer Defendants' frequent representations about these issues—including in response to direct questions from analysts—further strengthens the strong inference of scienter.

**ANSWER:**  The averments of paragraph 282 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

283.    ***Knowledge of the Industry***. The Officer Defendants were intimately knowledgeable about the retail industry. Defendant Anderson had been with Five Below since 2014, prior to which he served as an executive at Walmart. Defendant Bull has been with Five Below since 2005. In these roles, the Officer Defendants gained expertise regarding retail matters, inventory management, shrink, and financial reporting. This expertise contributes to the strong inference that the Officer Defendants knew or acted recklessly when making the false and misleading statements and omissions at issue.

**ANSWER:**  Defendants admit only that the Officer Defendants held the positions referenced in paragraphs 23–24 of the Complaint.  The remaining averments of paragraph 283 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

284.    ***Core Operations***. Defendants' misstatements concerned the most significant aspects and initiatives of Five Below's business. Throughout the Class Period, Defendants touted that the Company's trend-right strategy and ability to quickly identify trends and stock its stores with in-demand products was a competitive advantage and was central to its operations. In its Forms 10-K and 10-Q during the Class Period, the Company described itself as a "specialty value retailer offering a broad range of trend-right, high-quality merchandise" and stated that the "principal basis upon which we compete is by offering a dynamic, edited assortment of trend-right products." In the majority of the Company's press releases issued during the Class Period, the very first sentence began with the phrase, "the trend-right, high-quality extreme-value retailer." Thus, trend-right was a core component of the Company's operations.

**ANSWER:**  Defendants refer to Five Below's Form 10-Ks and 10-Qs for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's Form 10-Ks and 10-Qs that would be inaccurate if read in the context of the entire Form 10-Ks and 10-Qs.  The remaining averments of paragraph 284 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

285.    Further, on the June 5, 2024 earnings call, Defendant Bull indicated that trend-right was part of the Company's core, stating "what we got away from was the ***core part of our business*** around pre-teens and teens and really the mission for us in delivering an edited assortment ***trend product***, high quality, at extreme value."

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 285 of the Complaint from the Action for purposes of liability.  To the extent a response

is required, Defendants deny each and every averment of paragraph 285 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 5, 2024 earnings call. Defendants refer to the June 5, 2024 earnings call for a complete and accurate statement of its contents and deny any characterization or interpretation of the June 5, 2024 earnings call that would be inaccurate if read in the context of the entire June 5, 2024 earnings call transcript.

286. The Triple-Double plan was also a core operation of the Company. It involved tripling the number of the Company's stores and doubling its sales and more than doubling its earnings per share. Increases of that magnitude, in a matter of just a few years, were a core business matter.

**ANSWER:** Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 286 of the Complaint from the Action for purposes of liability. To the extent a response is required, Defendants deny the averments in paragraph 286 of the Complaint.

287. The misrepresentations and omissions in this case involved matters that were central to the Company's operations, not matters that were merely tangential. Given the importance of these issues, the Officer Defendants closely monitored these issues and their impact on Five Below's business. Therefore, it is reasonable to infer that the Officer Defendants knew the Company was straying from its trend-right strategy, that the Company's inventory management systems were flawed, that shrink was not to blame for the Company's financial woes, and that the Triple-Double plan was straining management and causing a loss of focus.

**ANSWER:** The averments of paragraph 287 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

288. *Executive Resignations*. The timing and circumstances of Defendant Anderson's resignation supports an inference of scienter. The resignation of the Company's Chief Merchandising Officer Michael Romanko also supports an inference of scienter.

**ANSWER:** The averments of paragraph 288 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

289.    As discussed above, Defendant Anderson downplayed the extent and causes of the Company's financial struggles in March and June 2024, then resigned shortly thereafter in July 2024. Then, a little more than a month after his resignation, the Company announced major shifts in its business. The Company admitted on the August 28, 2024 earnings call that it strayed from its trend-right strategy and "lost our way." On the same call, the Company announced that it would be slowing its Triple-Double plan and admitted that the prior growth efforts were "too aggressive and put a tremendous amount of pressure on the organization." These admissions, on the heels of Anderson's resignation, suggest that Anderson knew about these issues and sought a new opportunity, while still making false and misleading statements even shortly before he resigned.

**ANSWER:**  Defendants deny each and every averment of paragraph 289 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's August 28, 2024 earnings call. Defendants refer to the August 28, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the August 28, 2024 earnings call that would be inaccurate if read in the context of the entire August 28, 2024 earnings call transcript.  Defendants further state that the Court's Order (ECF 46) dismissed the averments in the third and fourth sentences in paragraph 289 of the Complaint for purposes of liability.  To the extent a response is required, Defendants deny the remaining averments in paragraph 289 of the Complaint.

290.    Defendant Anderson's resignation also coincided with reduced sales and lowered guidance. The press release announcing his resignation stated: "Comparable sales decreased 5.0% versus the . . . comparable period ended July 15, 2023. As a result, the Company now expects sales for the fiscal second quarter ending August 3, 2024 to be in the range of $820 million to $826 million and assumes an approximate 6% to 7% decrease in comparable sales."

**ANSWER:**  Defendants deny each and every averment of paragraph 290 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's July 16, 2024 press release.  Defendants refer to the July 16, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the press release that would be inaccurate if read in the context of the entire July 16, 2024 press release.

291.    Defendant Anderson resigned "effective immediately." There is no indication that his departure was a planned event. The Company had no contingency plans for a successor CEO, and a permanent successor was not named until five months later in December 2024.

**ANSWER:** Defendants deny each and every averment of paragraph 291 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's July 16, 2024 press release. Defendants refer to the July 16, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the press release that would be inaccurate if read in the context of the entire July 16, 2024 press release.

292.    The close temporal proximity between Anderson's abrupt departure and the issues revealed following his resignation further strengthens the scienter inference.

**ANSWER:** The averments of paragraph 292 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

293.    Similarly, in September 2024, the Company announced that Michael Romanko was "retiring" effective November 17, 2024. Romanko was a named executive officer and served as the Company's Chief Merchandising Officer for over five years, since March 2019. He joined the Company in January 2015 as Vice President of Merchandising. In its announcement, the Company stated that Romanko entered into an agreement to "assist in the transition of his duties and, in exchange for his execution of a general release of claims, will receive a lump sum payment of $821,445.53." The sudden departure of Romanko closely following Anderson, and immediately on the heels of the issues revealed related to his role as Chief Merchandising Officer, further strengthens the inference of Defendants' scienter.

**ANSWER:** The averments in the fifth sentence of paragraph 293 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 293 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's September 2024 press release. Defendants refer to the September 2024 press release for a complete and accurate

statement of its contents and deny any characterization or interpretation of the press release that would be inaccurate if read in the context of the entire September 2024 press release.

294.    ***Temporal Proximity***. The temporal proximity between the Officer Defendants' false and misleading statements and omissions and the revelation of the relevant truth concealed by those statements and omissions strengthens the scienter inference.

**ANSWER:**  The averments of paragraph 294 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

295.    Throughout the Class Period, Defendants regularly touted the Company's trend-right strategy. Defendants gave no indication that the strategy was faltering. On the June 5, 2024 earnings call, Defendant Anderson referenced for the first time that it had "proven harder for us to lap some of the big trends from last year." But on the same call, Defendant Anderson downplayed the trend-right concerns stating: "[C]hasing trends has always been a strength of ours. And we will continue to quickly identify and capitalize on trends, bringing them in-store quickly." The next quarter, on the August 24, 2024 earnings call, Defendant Bull revealed that Defendants strayed from their trend-right strategy and "lost our way." The swift shift in messaging from touting the trend-right strategy to admitting its faults supports a reasonable inference that Defendants were aware of the faults at the time of their prior misleading statements.

**ANSWER:**  The averments in the seventh sentence of paragraph 295 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants deny the remaining averments of paragraph 295 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's June 5, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire the June 5, 2024 earnings call. Defendants further state that, as to following statements—"[a]nd we will continue to quickly identify and capitalize on trends, bringing them in-store quickly"; "[t]he next quarter, on the August 24, 2024 earnings call, Defendant Bull revealed that Defendants strayed from their trend-

right strategy and 'lost our way'"—the Court's Order (ECF 46) dismissed this averment from the Action for purposes of liability.

296.    Also, on the August 24, 2024 call, Vellios admitted that the Company's problems focusing on its customers did not evolve overnight and developed over the "past few years":

> Our mission has always been to deliver an exciting assortment of extreme value, trend-right, high-quality products in a fun shopping environment. We have always been intensely focused on the customer. And this commitment has made Five Below a successful standout growth retailer. ***Over the past few years, we lost some of that sharp focus on our core customers***.

**ANSWER:**    Defendants deny the each and every averment of paragraph 296 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's August 24, 2024 earnings call.  Defendants refer to the August 24, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire the August 24, 2024 earnings call.  Defendants further state that, as to following statement—"[o]ver the past few years, we lost some of that sharp focus on our core customers"—the Court's Order (ECF 46) dismissed this averment from the Action for purposes of liability.

297.    This admission supports an inference that the Officer Defendants were aware of the faltering trend-right strategy at the time of their prior misleading statements.

**ANSWER:**    The averments of paragraph 297 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

298.    With respect to the Triple-Double strategy, the temporal proximity between Defendants' misleading statements and abrupt pivot to slow down the plan supports a reasonable inference of scienter. On the June 5, 2024 earnings call, Defendant Anderson emphatically stated, "our focus on executing our store growth plans with excellence is ***unwavering***." Similarly, at the June 12, 2024 Oppenheimer Conference, he stated that the Company's store growth plans were "***solidly intact***." Less than three months later, on the August 28, 2024 earnings call, the Company abruptly announced a reduced pace of the Triple-Double plan. The temporal proximity creates a

reasonable inference that Defendants had been considering reducing the pace at the time of their affirmative statements to the contrary.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 298 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in the second through fourth sentences of paragraph 298 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts, with emphasis supplied by Plaintiffs, from Five Below's June 5, 2024 earnings call, the 2024 Oppenheimer Conference, and Five Below's August 28, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call, the 2024 Oppenheimer Conference, and August 28, 2024 earnings call earnings transcript for a complete and accurate statement of their contents and deny any characterization or interpretation of the June 5, 2024 earnings call, the 2024 Oppenheimer Conference, and August 28, 2024 earnings call earnings that would be inaccurate if read in the context of the entire transcripts.  The averments in the first and fifth sentences of paragraph 291 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

299.    *Incentive Compensation*. The Company's performance-based stock compensation plan motivated Defendants Anderson and Bull to make the false and misleading statements and omissions at issue. Although Plaintiffs need not allege any motive to plead a strong inference of scienter, the Officer Defendants were motivated to artificially inflate and maintain the inflation in Five Below's common stock price during the Class Period.

**ANSWER:**  The averments of paragraph 299 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

300.    The Company's Proxy Statements during the Class Period stated that Five Below's "executive compensation programs strongly align realized compensation outcomes with the Company's absolute and relative stock price performance." The Proxy Statements also indicated that the "most important financial performance measures used by the Company to link [executive

compensation] to the Company's performance" included, among other measures, the Company's "TSR [total shareholder return] as compared to the TSR of a peer group established by the compensation committee." Therefore, the Company's stock performance relative to its peers impacted the amount of stock-based compensation to be awarded to the Officer Defendants. This provided the Officer Defendants with a motive to make the false and misleading statements and omissions at issue in order to artificially inflate and maintain the Company's stock price.

**ANSWER:**  The averments in the fourth sentence of paragraph 300 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants deny the remaining averments of paragraph 300 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements.  Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

301.    The Company referred to its incentive stock awards as "performance-based restricted stock units ('PRSUs')." Certain PRSUs were tied to total shareholder return ("TSR"), and certain PRSUs were tied to operating income.

**ANSWER:**  Defendants deny each and every averment of paragraph 301 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements.  Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

302.    The Company granted TSR-based PRSUs to its senior executives each year as an incentive to improve the Company's stock price going forward. The PRSUs were not yet earned when granted. Rather, they were eligible to be earned during the three-year period immediately following the grant date. Depending on how well the Company's stock price performed relative to peers during the three-year performance period, executives could earn shares underlying the PRSUs. The Company described its PRSUs as follows in its May 2, 2024 Proxy Statement:

The PRSUs granted in March of 2023 (the "2023 PRSUs") were designed to reward performance over a three-year performance period. Key design details include:

- PRSUs represent the right to receive shares of our common stock based on the attainment of applicable performance criteria and, generally, are further subject to continued service through the performance period.

    . . . .

- Performance . . . is evaluated based on the Company's relative total shareholder return performance against the Company's compensation peer group . . . as determined by the compensation committee (the "TSR Units").

    . . . .

- Between 0%-200% of the PRSUs can be earned at the end of the three-year performance period.

**ANSWER:** Defendants deny each and every averment of paragraph 302 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements. Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

303. The Company granted TSR-based PRSUs in 2021, 2022, and 2023 with grant-date fair values as follows:[15]

| Grant Date | Anderson | Bull |
|---|---|---|
| March 9, 2021 | $2,154,917 | $387,852 |
| March 7, 2022 | $2,530,940 | $482,039 |
| March 9, 2023 | $3,513,857 | $1,351,573 |
| **Total** | **$8,199,714** | **$2,221,464** |

---

[15] *See* May 5, 2022 Proxy Statement at 46 n.5; May 3, 2023 Proxy Statement at 44 n.5; May 2, 2024 Proxy Statement at 47 n.5.

**ANSWER:** Defendants deny each and every averment of paragraph 303 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements. Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

304. The three-year performance period has been completed for the PRSUs granted on March 9, 2021. Based on the Company's stock price relative to peers during the three-year performance period, Defendants earned 77% of the PRSUs that were granted, and they received the underlying shares in March 2024.[16] Notably, the Company's stock price relative to peers performed better during the Class Period than it did prior to the Class Period. Specifically, the Company's stock price reached the 29th percentile relative to the Company's peer group in the first year (2021) of the three-year performance period and reached the 53rd percentile in each of the latter two years (2022-2023).[17] This illustrates that the Officer Defendants succeeded in inflating the Company's stock price during the Class Period, leading directly to increased compensation.

**ANSWER:** The averments in the fifth sentence of paragraph 304 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 304 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements. Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

305. The three-year performance period has not yet ended for the PRSUs granted on March 7, 2022 and March 9, 2023. However, the Company disclosed in its May 2, 2024 Proxy Statement that its stock performance thus far in the performance period is on track to trigger a 200% payout of the PRSUs granted on March 7, 2022 and a 100% payout of the PRSUs granted

---

[16] *See* May 2, 2024 Proxy Statement at 44.

[17] *Id.*

on March 9, 2023.[18] This illustrates that the artificial inflation in the Company's stock price during the Class Period is on pace to trigger large stock awards to the Officer Defendants.

**ANSWER:** The averments in the third sentence of paragraph 305 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 305 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements. Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

306.    The value of the PRSUs is large relative to the Officer Defendants' base salaries. Defendant Anderson's PRSU grant on March 9, 2021, valued at $2,154,917, was more than twice the size of his 2021 base salary of $1,000,000. His PRSU grant on March 7, 2022, valued at $2,530,940, was more than twice the size of his 2022 base salary of $1,211,538. His PRSU grant on March 9, 2023, valued at $3,513,857, was almost three times the size of his 2023 base salary of $1,250,000. Similarly, Defendant Bull's PRSU grant on March 9, 2023, valued at $1,351,573, was nearly twice the size of his 2023 base salary of $718,269. The substantial value of the PRSUs relative to Anderson's and Bull's base salaries contributes to their motive.

**ANSWER:** The averments in the sixth sentence of paragraph 306 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 306 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's proxy statements. Defendants refer to the proxy statements for a complete and accurate statement of their contents and deny any characterization or interpretation of the proxy statements that would be inaccurate if read in the context of the entire proxy statements.

---

[18] *Id*. at 48-49 n.4 & n.6.

307.    In sum, the Company's performance-based PRSUs provided a substantial motive for the Officer Defendants to artificially inflate the Company's stock price throughout the Class Period.

**ANSWER:**  The averments in of paragraph 307 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

308.    *Stock Sales*. Defendants Anderson and Bull capitalized on Five Below's artificially inflated stock price by selling substantial amounts of Five Below stock during the Class Period. They sold shares as follows during the Class Period:

| Defendant | Sale Date | Shares | Share Price | Sale Proceeds[19] |
|---|---|---|---|---|
| Anderson | 12/2/2022 | 10,000 | $185.57 | $1,855,700 |
| | 3/9/2023 | 2,390 | $199.53 | $476,877 |
| | 3/16/2023 | 1,072 | $195.33 | $209,394 |
| | 4/11/2023 | 13,653 | $218.97 | $2,989,597 |
| | 3/7/2024 | 1,814 | $206.96 | $375,425 |
| | 3/9/2024 | 1,642 | $204.82 | $336,314 |
| | 3/21/2024 | 7,290 | $176.79 | $1,288,799 |
| | | 37,861 | | **$7,532,106** |
| | | | | |
| Bull | 12/2/2022 | 7,000 | $182.40 | $1,276,800 |
| | 3/7/2024 | 272 | $206.96 | $56,293 |
| | 3/9/2024 | 256 | $204.82 | $52,434 |
| | 3/21/2024 | 914 | $176.79 | $161,586 |
| | | 8,442 | | **$1,547,113** |

---

[19] Defendant Anderson's stock sales in March 2023 and March 2024, totaling $2,686,809 in aggregate, were purportedly sales to generate proceeds to pay taxes. Defendant Bull's sales in March 2024, totaling $270,313 in aggregate, were purportedly sales to generate proceeds to pay taxes.

**ANSWER:** The averments in the first sentence of paragraph 308 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averment of paragraph 308 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings. Defendants refer to the Form 4 filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's Form 4 filings that would be inaccurate if read in the context of all the SEC Form 4 filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities.

309.    The timing of several of these sales is also suspicious. Defendant Anderson sold 10,000 shares of stock, and Defendant Bull 7,000, just three days after the first false statements on November 30, 2022, including that Five Below's "teams continue to move quickly to adjust to changing customer preferences" and that its Triple-Double initiative was "gaining momentum going into '23." The price of Five Below stock had increased $25 per share, or 14%, since those statements.

**ANSWER:** The averments in the first sentence of paragraph 309 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 309 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings and Five Below's November 30, 2022 earnings call. Defendants refer to these public filings for a complete and accurate statement of their contents and deny any characterization or interpretation of these public filings that would be inaccurate if read in the context of all the public filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities.

310.    Defendant Anderson also sold over 1,000 shares of stock for total proceeds of over $209,000 on March 16, 2023, the day after several false statements on the March 15, 2023 earnings call, including statements claiming that Five Below's model "enables swift recognition and introduction of trend-right and relevant products to our customers" and the first statements blaming

Five Below's issues on shrink. He sold more shares a few weeks later on April 11, 2023, for proceeds of nearly $3 million.

**ANSWER:** Defendants deny each and every averment of paragraph 310 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings and Five Below's March 15, 2023 earnings call. Defendants refer to these public filings for a complete and accurate statement of their contents and deny any characterization or interpretation of these public filings that would be inaccurate if read in the context of all the public filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities.

311.    Finally, both Defendants Anderson and Bull made sales on March 21, 2024, when Five Below was forced to admit to disappointing earnings per share, but blunted the deflation to Five Below's share price by blaming the issues on shrink and claiming that the "flexibility of [Five Below's] model with our 8 worlds is unique and enables our teams to quickly introduce trend-right relevant products to our customers." Moreover, these sales were made at significantly inflated prices, given that within four months Five Below shares would fall to a three-year low.

**ANSWER:** Defendants deny the averments in the first sentence of paragraph 311 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings and Five Below's March 15, 2023 earnings call. Defendants refer to these public filings for a complete and accurate statement of their contents and deny any characterization or interpretation of these public filings that would be inaccurate if read in the context of all the public filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities. The averments in the second sentence of paragraph 311 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

312.    Defendants Anderson and Bull's trading patterns during the Class Period departed dramatically from their past practices. During the comparable pre-class period, meaning the nineteen months prior to the nineteen-month Class Period, neither Anderson nor Bull sold any of their Five Below stock.

**ANSWER:** Defendants deny each and every averment of paragraph 312 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings. Defendants refer to the Form 4 filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's Form 4 filings that would be inaccurate if read in the context of all the SEC Form 4 filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities.

313. Notably, Defendant Anderson's sale proceeds of $1,855,700 in 2022 exceeded his $1,211,538 base salary that year. His sale proceeds of $3,675,868 in 2023 were nearly triple the amount of his $1,250,000 base salary that year. His sale proceeds of $2,000,538 in 2024 exceeded his $1,300,000 base salary that year.

**ANSWER:** Defendants deny each and every averment of paragraph 313 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings. Defendants refer to the Form 4 filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's Form 4 filings that would be inaccurate if read in the context of all the SEC Form 4 filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities.

314. Similarly, Defendant Bull's sale proceeds of $1,276,800 in 2022 were nearly double the amount of his $654,615 base salary that year.

**ANSWER:** Defendants deny each and every averment of paragraph 314 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from SEC Form 4 filings. Defendants refer to the Form 4 filings for a complete and accurate statement of their contents and deny any characterization or interpretation of Five Below's Form 4 filings that would be inaccurate if read in the context of all the SEC Form 4 filings relating to changes in Defendants Anderson's and Bull's ownership of Five Below Securities.

## IX.    ADDITIONAL LOSS CAUSATION ALLEGATIONS

315.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Lead Plaintiffs and the Class.

**ANSWER:**  The averments of paragraph 315 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

316.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions. These statements and omissions artificially inflated or maintained the artificial inflation of the price of Five Below common stock. As a result of Defendants' misrepresentations, Five Below's stock price reached a class period high of $217.18 on April 11, 2023, and closed at $208.97 on March 20, 2024, shortly before the first corrective disclosure later that day.

**ANSWER:**  The averments of paragraph 316 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

317.    On March 20, 2024, after trading hours, as detailed in ¶¶151-62, Defendants disclosed information reflecting a decline in performance, which partially revealed certain true facts that were previously the subject of Defendants' false and misleading statements and omissions. As a result of the disclosure, in trading on March 21, 2024, Five Below's stock price suffered a statistically significant decline of over 15% in one day, declining from $208.97 at market close on March 20, 2024 to $176.79 at close on March 21. The decline was significantly greater than the overall market's performance that day.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 317 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 317 of the Complaint as stated, and admit only that Five Below's share price was lower on March 21, 2024 than its closing price the previous trading day and this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 press release.  Defendants refer to March 20, 2024 press release for a complete and accurate statement of its contents and deny any characterization

or interpretation of the transcript that would be inaccurate if read in the context of the entire the March 20, 2024 press release.

318.    The March 20, 2024 disclosure only partially revealed the relevant truth with Defendants insisting that the lower-than-expected earnings per share could be "fully attributed" to shrink, which they portrayed as an industry, rather than Company, issue. Defendants mitigated the price declines of Five Below's stock by making additional false statements concerning the alleged fraud, as described herein. Therefore, Five Below's stock price remained inflated as a result of Defendants' misrepresentations.

**ANSWER:**  Defendants state that the Court's Order (ECF 46) dismissed the averments in paragraph 318 of the Complaint from the Action for purposes of liability.  To the extent a response is required, Defendants deny the averments in paragraph 318 of the Complaint, except admit only this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's March 20, 2024 press release.  Defendants refer to March 20, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire the March 20, 2024 press release.

319.    Later, on June 5, 2024 after the close of financial markets, as detailed in ¶¶163-78, Defendants disclosed additional information reflecting a further material decline in performance, which partially revealed certain true facts that were previously the subject of Defendants' false and misleading statements and omissions. As a result of this disclosure, on June 6, 2024, Five Below's stock price suffered another statistically significant decline, falling from its June 5, 2024 closing price of $132.79 per share, to close at $118.72, a one-day decline of 10.6%. The decline was significantly greater than the overall market's performance that day.

**ANSWER:**  Defendants deny the averments in second and third sentences of paragraph 319 of the Complaint as stated, and admit only that Five Below's share price was lower on June 6, 2024 than its closing price the previous trading day.  The remaining averments of paragraph 319 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied, except admit only this paragraph of the Complaint purports to summarize and contains partial

- 139 -

excerpts from Five Below's June 5, 2024 press release.  Defendants refer to June 5, 2024 press release for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the entire the June 5, 2024 press release.

320.    However, the June 5, 2024 disclosure again only partially revealed the relevant truth because Defendants insisted that the primary issues were macroeconomic, with Defendant Anderson insisting that "consumers are feeling the impact of multiple years of inflation . . . and are therefore far more deliberate with their discretionary dollars." Defendants also claimed that their competitors were experiencing similar issues, again minimizing their own responsibility for the results. Therefore, Defendants' misrepresentations continued to artificially inflate Five Below's stock price.

**ANSWER:**  Defendants deny the first and second sentences of paragraph 320 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's June 5, 2024 earnings call.  Defendants refer to the June 5, 2024 earnings call transcript for a complete and accurate statement of its contents and deny any characterization or interpretation of the transcript that would be inaccurate if read in the context of the June 5, 2024 earnings call.  The remaining averments of paragraph 320 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

321.    The relevant truth concealed by Defendants was revealed on July 16, 2024, after trading hours, as detailed in ¶¶179-90, Defendants disclosed additional information reflecting a further material decline in performance and the resignation of Defendant Anderson, which revealed certain true facts that were previously the subject of Defendants' false and misleading statements and omissions. As a result of this disclosure, on July 17, 2024, Five Below's stock price suffered another statistically significant decline, falling from its July 16, 2024 closing price of $102.07 per share, to close at $76.50, a one-day decline of more than 25% and Five Below's lowest closing stock price since June of 2018. The decline was significantly greater than the overall market's performance that day.

**ANSWER:**  Defendants deny the first sentence of paragraph 321 of the Complaint, except admit that this paragraph of the Complaint purports to summarize and contains partial excerpts from Five Below's July 16, 2024 press release.  Defendants refer to the July 16, 2024 press release

for a complete and accurate statement of its contents and deny any characterization or interpretation of the press release that would be inaccurate if read in the context of the July 16, 2024 press release. The averments second and third sentences of paragraph 321 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied and admit only that Five Below's share price was lower July 17, 2024 than its closing price the previous trading day.

322.    Each of these disclosures also partially revealed the materialization of the foreseeable risks concealed by Defendants' fraud, including: (i) the Company failing to stock its stores with trend-right inventory; and (ii) the failure of Five Below's expansion strategy. The true nature of these risks had been concealed by Defendants' misstatements and omissions, which concealed material information that would have properly informed investors about these risks, including information that: (i) Five Below lacked the capacity to ensure that its stores were stocked with inventory customers wanted, as opposed to "dumb junk" that simply filled the shelves; (ii) while Defendants exaggerated the impact of shrink, the Company also failed to meaningfully engage in shrink mitigation efforts; and (iii) the expansion strategy posed serious issues as the new stores were not properly staffed or stocked and, when they opened, had a negative effect on existing stores.

**ANSWER:** The averments in the second and third sentences of paragraph 322 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied. Defendants deny the remaining averments of paragraph 322 of the Complaint.

323.    As a result of their acquisition of Five Below common stock during the Class Period, Lead Plaintiffs and other members of the Class suffered economic losses when the price of the Company's stock fell in response to the corrective disclosures as described above.

**ANSWER:** The averments of paragraph 323 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

## X.    **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

324.    The statutory safe harbor applicable to forward-looking statements under certain circumstances does not apply to any of the false or misleading statements pleaded in this Complaint. The statements complained of herein were historical statements or statements of

current facts and conditions at the time the statements were made. Further, to the extent that any of the false or misleading statements alleged herein can be construed as forward-looking, the statements were not accompanied by any meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statements.

**ANSWER:** The averments of paragraph 324 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

325. Alternatively, to the extent the statutory safe harbor otherwise would apply to any forward-looking statements pleaded herein, Defendants are liable for those false and misleading forward-looking statements because, at the time each of those statements was made, the speakers knew the statement was false or misleading, or the statement was authorized or approved by an executive officer of Five Below who knew that the statement was materially false or misleading when made.

**ANSWER:** The averments of paragraph 325 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

## XI. PRESUMPTION OF RELIANCE

326. Lead Plaintiffs and other members of the Class relied, and are entitled to have relied, upon the integrity of the market prices for Five Below's common stock, and are entitled to a presumption of reliance on Defendants' materially false and misleading statements and omissions during the Class Period.

**ANSWER:** The averments of paragraph 326 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

327. Lead Plaintiffs are entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud-on-the-market doctrine because during the Class Period Five Below shares traded in an efficient market, as evidenced by the following, among other things:

> (a)  Five Below stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

> (b)  As a registered issuer, Five Below filed periodic public reports with the SEC and the NASDAQ;

(c)     Five Below's common shares traded at high weekly volumes, with an average of over 4.2 million shares traded each week during the Class Period. The average weekly turnover as a percentage of shares outstanding was approximately 7.6%, surpassing the 2% threshold level of average weekly trading volume courts have identified as evidence of an efficient market;

(d)     Five Below was eligible to file registration statements with the SEC on Form S-3;

(e)     Five Below regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(f)     The market reacted promptly to public information disseminated by and concerning Five Below;

(g)     Five Below securities were covered by numerous securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and customers of their respective firms, including, but not limited to: Jefferies Group; Morgan Stanley; J.P. Morgan; UBS Equities, Telsey Advisory Group; SVB Leerink; Evercore ISI; Barclays; Wells Fargo Securities; Deutsche Bank; Truist Securities; BofA Global Research; BNP Paribas; Guggenheim Securities; Craig Hallum; and William Blair. Each of those reports was publicly available and entered the public marketplace; and

(h)     Without knowledge of the misrepresented or omitted material facts alleged herein, Lead Plaintiffs and other members of the Class purchased or acquired Five Below common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed.

**ANSWER:** Defendants deny each and every averment of paragraph 327 of the Complaint, including subparagraphs (a)–(h), except admit that Five Below's stock was traded on NASDAQ, and certain analysts followed Five Below. The remaining averments of paragraph 327 of the Complaint, including subparagraphs (a)–(h), purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent the remaining averments are deemed to be factual in nature, they are denied.

328.    Under these circumstances, all purchasers of Five Below common shares during the Class Period suffered similar injury through their purchase of Five Below common shares at artificially inflated prices and the presumption of reliance applies.

**ANSWER:**  The averments of paragraph 328 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

329.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on material omissions. Because this action involves a failure to disclose material adverse information regarding Five Below's business and operations— information that was required to be disclosed—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the significance of Five Below's ability to stock its stores with trend-right products, the impact of shrink on Five Below's performance, and the prospects for Five Below's Triple-Double expansion strategy, that requirement is satisfied here.

**ANSWER:**  The averments of paragraph 329 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

## XII.    <u>CLASS ACTION ALLEGATIONS</u>

330.    Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons and entities who purchased or otherwise acquired, the publicly traded common stock of Five Below during the Class Period. Excluded from the Class are Defendants and their immediate families, directors and officers of Five Below and their immediate families and affiliates of the Company.

**ANSWER:**  The averments of paragraph 330 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these

averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

331.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of December 4, 2024, Five Below had over 55,009,629 shares of common stock outstanding, owned by hundreds or thousands of investors.

**ANSWER:**  The averments of paragraph 331 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

332.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions that may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants misrepresented and/or omitted material facts, including concerning Five Below's ability to identify trend-right merchandise and appropriately stock Five Below stores, the extent to which shrink was responsible for any underperformance by Five Below, and the prospects for Five Below's expansion strategy;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Officer Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether the price of Five Below common stock was artificially inflated as a result of Defendants' false and misleading statements and omissions;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)    The extent of damage sustained by Class members and the appropriate measure of damages.

**ANSWER:**  The averments of paragraph 332 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

333.    Lead Plaintiffs' claims are typical of those of the Class because Lead Plaintiffs and the Class purchased Five Below stock at artificially inflated prices and sustained damages from Defendants' wrongful conduct.

**ANSWER:**  The averments of paragraph 333 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

334.    Lead Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation. Lead Plaintiffs have no interests which conflict with those of the Class.

**ANSWER:**  The averments of paragraph 334 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

335.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable. Additionally, the damages suffered by some individual Class members may be small relative to the burden and expense of individual litigation, making it practically impossible for such members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER:**  The averments of paragraph 335 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

336.    The names and addresses of those persons and entities that purchased or acquired Five Below's common stock during the Class Period are available from the Company's transfer agent(s) and brokerage and other business records. Notice may be provided to such purchasers and record owners via first-class mail and publication using techniques and a form of notice similar to those customarily used in securities class actions.

**ANSWER:**  The averments of paragraph 336 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.  Defendants further aver that this action is not properly maintainable as a class action because Plaintiffs cannot meet the requirements for the maintenance of a class action set forth in Federal Rule of Civil Procedure 23.

## COUNT I

**Violation of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

337.    Plaintiffs repeat and re-allege each allegation above as if fully set forth herein.

**ANSWER:**  Defendants repeat and reallege their responses to the averments contained in the foregoing paragraphs as if fully set forth herein.

338.    By virtue of the foregoing, Five Below and the Officer Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

**ANSWER:**  The averments of paragraph 338 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

339.     Defendants violated Section 10(b) and Rule 10b-5 in that they: (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in acts, practices, or a course of business that operated as a fraud or deceit upon Plaintiffs and the Class in connection with their purchases of Five Below common stock during the Class Period.

**ANSWER:**  The averments of paragraph 339 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

340.     Defendants' conduct deceived Plaintiffs and the Class, artificially inflated and maintained the market price of Five Below common stock and caused Plaintiffs and the Class to purchase or acquire Five Below common stock at artificially inflated prices.

**ANSWER:**  The averments of paragraph 340 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

341.     Defendants participated directly and indirectly in the preparation and issuance of the false and misleading SEC filings, press releases, earnings call statements, and other statements set forth herein, which were designed to and did influence the market price of Five Below common stock. Such SEC filings, press releases, and statements were materially false or misleading in that they misrepresented the truth about Five Below's: (i) trend-right strategy and execution; (ii) inventory management processes; (iii) shrink and shrink mitigation efforts; and (iv) Triple-Double growth plan.

**ANSWER:**  The averments of paragraph 341 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

342.     Defendants acted with scienter in that they had actual knowledge of the misrepresentations and omissions set forth herein or acted with reckless disregard for the truth in failing to ascertain and disclose the true facts even though such facts were available to them.

**ANSWER:**  The averments of paragraph 342 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

343. By virtue of their executive positions, the Officer Defendants had actual knowledge of the false and misleading statements and omissions or had access to such information. The scienter of the Officer Defendants, and other senior executives of the Company, is imputed to Five Below.

**ANSWER:** The averments of paragraph 343 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

344. The Officer Defendants are liable directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Officer Defendants were able to, and did, directly or indirectly, control the content of the statements of Five Below.

**ANSWER:** The averments of paragraph 344 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

345. As officers of a publicly traded company, the Officer Defendants had a duty to disseminate truthful and accurate information with respect to Five Below's financial condition and operations.

**ANSWER:** The averments of paragraph 345 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

346. As a result of the dissemination of the misleading statements and omissions alleged herein, the market price of Five Below common stock was artificially inflated throughout the Class Period.

**ANSWER:** The averments of paragraph 346 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

347. Plaintiffs and the Class suffered damages in that, in reliance on the integrity of the market price of the Company's securities, they paid artificially inflated prices for Five Below common stock. The artificial inflation was removed from the stock price when the true facts became known. Plaintiffs and the Class would not have transacted in Five Below stock at the prices paid, or at all, if they had known the market price of the stock was artificially inflated due to Defendants' false and misleading statements and omissions.

**ANSWER:**  The averments of paragraph 347 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

348.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class suffered damages attributable to the fraud in connection with their purchases and sales of Five Below common stock.

**ANSWER:**  The averments of paragraph 348 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### (Against the Officer Defendants)

349.    Plaintiffs repeat and re-allege each allegation above as if fully set forth herein.

**ANSWER:**  Defendants repeat and reallege their responses to the averments contained in the foregoing paragraphs as if fully set forth herein.

350.    By virtue of their positions as controlling persons of Five Below, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER:**  The averments of paragraph 350 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

351.    The Officer Defendants controlled, directly and indirectly, the conduct of the Company with respect to the unlawful conduct alleged herein.

**ANSWER:**  The averments of paragraph 351 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

352.    During the Class Period, the Officer Defendants participated in the operation and management of Five Below and participated, directly and indirectly, in the conduct of Five

Below's business affairs. The Officer Defendants had the power and authority to direct the management and activities of the Company and its employees, and to cause the Company to engage in the wrongful conduct alleged herein. In their capacities as senior officers, the Officer Defendants had direct involvement in the day-to-day operations of the Company and had the power to control or influence the policies and practices giving rise to the false and misleading statements and omissions alleged herein.

**ANSWER:** The averments of paragraph 352 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

353. The Officer Defendants were able to, and did, control the contents of the various SEC filings, press releases, and earnings call statements disseminated to the market during the Class Period. They also controlled other personnel who had roles in preparing or disseminating the false and misleading statements alleged herein.

**ANSWER:** The averments of paragraph 353 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

354. The Officer Defendants spoke regularly and prominently on the Company's earnings calls and at investor conferences, making the misrepresentations and omissions set forth herein. Defendant Anderson was quoted in several of the Company's press releases as set forth herein.

**ANSWER:** The averments of paragraph 354 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

355. Defendant Anderson signed each Form 10-K and 10-Q filed with the SEC throughout the Class Period. Defendant Bull signed each Form 10-K and 10-Q from the beginning of the Class Period to the first quarter of 2023. Defendants Anderson and Bull also signed Certifications attached to each such Form 10-K and 10-Q certifying that the filing contained no material false or misleading statements or omissions.

**ANSWER:** The averments of paragraph 355 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied. To the extent these averments are deemed to be factual in nature, they are denied.

- 151 -

356.    During their tenures as senior officers, each of the Officer Defendants was a "controlling person" of Five Below within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER:**  The averments of paragraph 356 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

357.    The Officer Defendants participated in and controlled the actionable conduct alleged herein, which artificially inflated the market price of Five Below common stock.

**ANSWER:**  The averments of paragraph 357 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

358.    As a direct and proximate result of the Officer Defendants' wrongful conduct as controlling persons, Plaintiffs and the Class suffered damages in connection with their purchases of Five Below common stock during the Class Period.

**ANSWER:**  The averments of paragraph 358 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

359.    By reason of the above conduct, the Officer Defendants are liable jointly and severally pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

**ANSWER:**  The averments of paragraph 359 of the Complaint purport to state legal conclusions to which no response is required and, therefore, are denied.  To the extent these averments are deemed to be factual in nature, they are denied.

\* \* \*

Defendants deny allegations in the Complaint—including any allegations in headings or titles—that are not specifically admitted herein.  Defendants deny that they are liable to Plaintiffs or that Plaintiffs are entitled to any remedy or relief that they seek in the Complaint.

\* \* \*

- 152 -

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses.  In stating these affirmative defenses, Defendants do not concede that they have the burden of proof for any issues to which applicable law places the burden on Plaintiffs and do not make any admissions as to liability, which they dispute.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' and members of the putative Class's claims against Defendants are barred, in whole or in part, because Plaintiffs and members of the putative Class lack standing to assert their claims against Defendants.

## SECOND AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because the Complaint fails to comply with the pleading requirements of the Federal Rules of Civil Procedure and/or the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4.

## FOURTH AFFIRMATIVE DEFENSE

There was no misstatement or omission of a material fact with respect to Five Below's public filings or statements during the putative Class Period as to which Defendants could be charged with liability under Section 10 of the Securities Exchange Act.

## FIFTH AFFIRMATIVE DEFENSE

The alleged misrepresentations and omissions set forth in the Complaint were not material.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because Defendants had no duty to disclose any facts allegedly not disclosed.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because notwithstanding the alleged misrepresentations or omissions, Defendants lacked fraudulent intent and/or acted in good faith.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent the Complaint is based upon any forward-looking statements, Defendants are not liable because Plaintiffs and members of the putative Class are barred from recovery in whole or in part by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, as codified at 15 U.S.C. § 78u-5 and 15 U.S.C. § 77z–2.

## NINTH AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because the statements alleged in the Complaint bespoke caution about the risks of investing in Five Below, and/or were corporate puffery.

## TENTH AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because, and to the extent that, the alleged misrepresentations contain expressions of belief or opinion, including expressions of opinions that Plaintiffs have not alleged and cannot prove were not truly held.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendants fully complied with industry practice and all then-existing rules and regulations of the SEC and other regulators in connection with all disclosures.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants are not liable because some or all of the matters now claimed by Plaintiffs to be the subject of misrepresentations or omissions were publicly disclosed or were in the public domain and, as such, were available to Plaintiffs and members of the putative Class and were at all times reflected in the price of the relevant securities.

## THIRTEENTH AFFIRMATIVE DEFENSE

At the time they purchased Five Below common stock, Plaintiffs and each member of the putative Class had actual or constructive knowledge of some or all of the alleged facts upon which Defendants' alleged liability is premised; therefore, each such plaintiff assumed the risk that the value of Five Below common stock could decline.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative Class were expressly advised in the challenged public statements of the material facts and risks to Five Below that the Complaint alleges were the cause of Plaintiffs' and the putative Class's purported damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

If there were any misrepresentations or omissions in Defendants' public statements as alleged (which allegations are specifically denied), Plaintiffs and each member of the putative Class did not reasonably rely on such alleged misrepresentation or omission, or on any alleged superior expertise and knowledge of Defendants, or on the integrity of the market, in purchasing or acquiring Five Below common stock.

## SIXTEENTH AFFIRMATIVE DEFENSE

The putative Class does not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, and, therefore, this action is not properly maintainable as a class action.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and each member of the putative Class would have acquired Five Below common stock even if they had known, at the time they acquired the stock, of the allegedly untrue statements of material fact, omissions of material fact, misleading statements or other allegedly wrongful conduct (none being admitted) upon which Defendants' purported liability rests.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Any depreciation in the market price of the securities purchased by Plaintiffs and members of the putative Class resulted from factors other than the alleged misrepresentations and omissions set forth in the Complaint.

## NINETEENTH AFFIRMATIVE DEFENSE

The alleged misrepresentations and omissions set forth in the Complaint were not the legal cause or the cause in fact of any of the alleged harm, and Plaintiffs and members of the putative Class have suffered no legally cognizable damages.

## TWENTIETH AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because any damages incurred by Plaintiffs or a member of the putative Class were sustained as a direct and proximate result of intervening and superseding acts and/or omissions of persons or entities, other than Defendants, that were outside the control of Defendants, and/or by intervening and superseding events that were beyond the control of, and could not have been foreseen by, Defendants.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

To the extent Plaintiffs and members of the putative Class have suffered any damages, they have failed to mitigate those damages.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Any damages recovery by Plaintiffs or a member of the putative Class is subject to an offset for the amount of tax benefits actually received by that plaintiff through its investments.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because any alleged damages to Plaintiffs or a member of the putative Class were caused by that plaintiff's own negligence in failing to conduct a reasonably diligent investigation of the risks associated with its investment.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The alleged damages of Plaintiffs and members of the putative Class are speculative and, therefore, not recoverable.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The Complaint, including each Count and claim contained therein, is barred, in whole or in part, because awarding Plaintiffs' and members of the putative Class's requested damages would result in unjust enrichment to Plaintiffs and members of the putative Class.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendants did not commit or make any intentional misrepresentation or omission with the requisite degree of scienter necessary to impose liability under Section 10(b) of the Exchange Act or Rule 10b-5 promulgated thereunder.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Because neither Plaintiffs nor any member of the putative Class can establish the primary liability necessary to support their claims for "control person" liability under Section 20(a) of the Exchange Act, such claims are barred.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

The claim under Section 20(a) of the Exchange Act is barred in whole or in part because certain Defendants were not "controlling persons" during some or all of the putative Class Period.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Defendants acted in good faith and did not directly or indirectly induce the act or acts constituting the alleged violation(s) or cause(s) of action.

**THIRTIETH AFFIRMATIVE DEFENSE**

Plaintiffs and members of the putative Class are precluded from recovering attorneys' fees from Defendants under applicable provisions of law.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Defendants reserve the right to amend the above answer and affirmative defenses consistent with further discovery and evidence throughout the pendency of this action.

WHEREFORE, Defendants respectfully request that this Court enter judgment in favor of Defendants and award Defendants their costs, attorneys' fees, and such other relief as may be just and proper.

October 3, 2025

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Jay A. Dubow*

Jay A. Dubow (PA Bar No. 41741)
Erica H. Dressler (PA Bar No. 319953)
Katherine R. Hancin (PA Bar No. 335719)

Mary M. Weeks (admitted *pro hac vice*)
Hannah Baskind (admitted *pro hac vice*)
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3000
Email: mary.weeks@troutman.com
Email: hannah.baskind@troutman.com

3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Email: jay.dubow@troutman.com
Email: erica.dressler@troutman.com
Email: katie.hancin@troutman.com

*Counsel for Defendants*